# EXHIBIT B

# DOCUMENT 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

_____

ANDREA TANTAROS

           *Petitioner,*                             Index No. 156936/2019

vs.


FOX NEWS CHANNEL, LLC., THE ESTATE OF ROGER
AILES, WILLIAM SHINE, SUZANNE SCOTT, DIANNE
BRANDI, IRENA BRIGANTI

           *Respondents.*                         **MOTION TO SEAL PETITION TO**
                                                  **STAY ARBITRATION OF**
                                                  **PETITIONER'S SEXUAL**
                                                  **HARRASSMENT ALLEGATIONS**
                                                  **AND CLAIMS IN EMPLOYMENT**
                                                  **ARBITRATION CASE # 01-16-001-**
                                                  **7288 AND DECLARATORY**
                                                  **JUDGMENT**

_____

Petitioner Andrea Tantaros, through her undersigned attorneys, alleges as follows in support

of her Petition pursuant to new section 7515 of the New York Civil Practice Law and Rules (The

"CPLR") for an order: 1) issuing a temporary restraining order, restraining Respondents Fox News, LLC,

The Estate of Roger Ailes, William Shine, Irena Briganti, Suzanne Scott, Dianne Brandi and the

Arbitration Panel in the above-referenced proceeding from further activity with respect to claims or

defenses that relate to Petitioner's sexual harassment allegations and claims within the remedial ambit of

section 7515 pending resolution of this Petition; (2) granting Petitioner's request for a preliminary and

permanent injunction against arbitration of Petitioner's sexual harassment allegations and claims shielded

from mandatory arbitration under section 7515; and, (3) issuing a Declaratory Judgment that Petitioner

cannot be compelled under section 7515 to continue to arbitrate her sexual harassment allegations, claims,

and defense. Under intervening New York law, Petitioner is entitled to have them finally adjudicated in

this Court in the first instance because mandatory arbitration clauses governing sexual harassment

1

allegations or claims may be revoked at law or because procedurally and substantively unconscionable or otherwise.

## NATURE OF THE ACTION

1.   Sexual harassment in the workplace is epidemic.  The inability of unsuspecting female employees with little bargaining power to resist mandatory arbitration of sexual harassment allegations or claims to enable sexual predators to escape public accountability, disclosure or humiliation is notorious.  Thus, Respondent Fox News Channel, LLC ("Fox"), coerced Petitioner (like a contract of adhesion) into accepting mandatory arbitration, a non-negotiable provision at the channel to stay employed, among other things, of sexual harassment allegations or claims in her employment contract signed in 2014.  In 2017, this Court thus ordered mandatory arbitration of Petitioner's claims against Respondents sounding in sexual harassment, including hostile work environment, retaliation for protesting sexual harassment (including Fox's bogus claim of a book guidelines violation, a pre-textual smokescreen used to retaliate against Petitioner and suspend her from the airwaves, just weeks after her lodging additional, formal sexual harassment complaints through her attorney both orally and writing while employed at the channel).  At present, these sexual harassment allegations and claims are pending before the American Arbitration Association, Case No. 01-16-0001-7288, where they have largely idled *for more than three (3) years with no depositions or hearings scheduled. There is no end in sight for her.*

2.   In 2018, the mushrooming disclosures of sexual harassment or predation—too numerous to chronicle at Fox News Channel and in other fields, and too sordid to detail—provoked remedial action by the New York legislature. On April 12, 2018, New York Governor Andrew Cuomo signed into law the state's budget for fiscal year 2018.  Among other things, the Civil Practice Law and Rules were amended by adding a new section 7515 to address the epidemic of sexual harassment concealed by unconscionable mandatory arbitration clauses that Fox employment contract with Petitioner exemplifies.

3.   The section remedies the notorious practice of multi-billion-dollar companies like Fox, notorious for unsavory or rapacious work environments to foist employment contracts on women mandating unconscionable secret and confidential arbitration of sexual harassment allegations or claims. These

2

Case 1:19-cv-07131-ALC   Document 1-2   Filed 07/30/19   Page 5 of 87

mandatory arbitration clauses embolden notoriously intimidating employers to persist in repugnant behavior by manipulating, intimidating, demeaning, or exploiting women as sex objects.  Section 7515 makes "null and void" any contract provision that requires "mandatory arbitration to resolve any allegation or claim of an unlawful discriminatory practice of sexual harassment."  Section 7515 applies to pending, non-final arbitration proceedings involving sexual harassment allegations or claims, including Petitioner's against Respondents in Case No. 01-16-0001-7288.  New section 7515 necessitates immediate judicial intervention by this Court to prevent its violation by the Panel and Respondents by continuing to arbitrate Petitioner's sexual harassment allegations and claims that the New York legislature has instructed should be resolved in the first instance by this Court.

## PARTIES

4.   Petitioner Andrea Tantaros is a resident of the State of New York

**5.**   Respondents are currently parties in the AAA Case No. 01-16-0001-7288.  Respondent Fox News, LLC is based in the State of New York. Respondent William Shine is a resident of the State of New York. Respondent Dianne Brandi is a resident of the State of New York. Suzanne Scott is a resident of the State of New Jersey. Irena Briganti is a resident of the State of New York. Roger Ailes was a resident of New York prior to his passing. The Ailes Estate and its Administrator claim to be residents of the State of Florida. Ailes' primary residence was, and continues to be, in the State of New York.

## JURISDICTION AND VENUE

**6.**   This Court has jurisdiction over this Petition pursuant to CPLR sections 3001, 7503 (b), 7515.

**7.**   Venue is proper in this County pursuant to CPLR section 7502 (a) (i).   The Arbitration which this Petition seeks to stay is pending in New York.

## FACTUAL BACKGROUND

8.   More than three years ago, Fox initiated an arbitration against then-employee and Petitioner, Andrea Tantaros, on May 11, 2016 to silence her after repeatedly making repeated, documented complaints of sexual harassment, retaliation and hostile workplace while employed at the channel.  Fox invoked a now unenforceable and prohibited mandatory arbitration clause covering sexual harassment

3

allegations and claims under CPLR section 7515 in the Fox-Tantaros employment contract dated

September 17, 2014.  With no carve out for the now specially preferred allegations and claims, Fox's

mandatory arbitration provided in part:

> "Any controversy, claim or dispute arising out of or relating to this Agreement or your
> employment shall be brought before a mutually selected three-member arbitration panel
> and held in New York City in accordance with the rules of the American Arbitration
> Association then in effect."

9.   Fox allowed Petitioner no bargaining over the mandatory arbitration clause as to sexual

harassment allegations or claims or otherwise.  It was a classic contract of adhesion with arbitration being

non-negotiable—take it or leave it.  The provision was substantively unconscionable because a female

employee's ability to vindicate sexual harassment allegations or claims pivots largely on an employer's

fear of public scrutiny, which mandatory arbitration prohibits as its conducted in darkness with no

accountability or incentive to expedite the proceedings. Contract provisions that are procedurally or

substantively unconscionable are unenforceable under New York law.  *Kuzma v. Protective Ins. Co.,* 2011

NY Slip Op 51348 (U) (June 29, 2011 Supreme Court, Queens County, Taylor J. (Reproduced as Exhibit

1).

10.  In AAA Case No. 01-16-0001-7288, Fox seeks a declaratory judgment that Petitioner violated her

employment contract in publishing her book via their sister company, Harper Collins, "Tied Up in

Knots," and damages.

11.  On August 22, 2016, Petitioner filed Complaint in the Supreme Court of New York against

Respondents pivoting on allegations and claims of sexual harassment, including hostile work environment

and retaliation.

12.  On February 15, 2017, the Court entered an order granting Respondents' motion to compel

arbitration of Petitioner's sexual harassment allegations and claims, where they remain pending in the

Horse latitudes interminably.

13.  On April 12, 2018, New York changed the law regarding the enforceability of employer dictated

mandatory arbitration provisions as to allegations or claims of sexual harassment.  CPLR section 7515.

The new section made Fox's mandatory arbitration provision as to Petitioner's sexual harassment allegations and claims null and void and unenforceable in AAA Case No. 01-16-0001-7288 that has now well passed its third anniversary without depositions or hearings permitted to be scheduled inexplicably by the three-man arbitration panel.

14. The protracted and biased arbitration proceedings in that case of Petitioner's sexual harassment allegations and claims exemplify the legislative provocation for section 7515. In a memorandum in support of the law, outlining its intent it states: "This bill would enact a multi-faceted proposal to target sexual harassment in the workplace, ensure accountability, *and combat the culture of silence that victims face.*"

15. The Fox Parties know they have neither the facts nor the law on their side.  They have thus systematically attempted from the inception of this arbitration to delay and to deflect attention from the merits of the claims and defenses to avoid the day of reckoning for their complicity in the sordid sexual harassment and retaliation of Ms. Tantaros using limitless resources and armies of lawyers from five different major law firms, employing a strategy of filing baseless motion after motion, delaying the process, forcing Petitioner to respond, burying her in both astronomical legal fees and six-figures and growing in fees to the AAA to review each filing. It's intended to kill her professionally, emotionally and financially by death of a thousand cuts. The Panel has endorsed the Fox Parties' cynical strategy.  ***The arbitration commenced over three years ago***, forcing Ms. Tantaros to spend well over seven-figures, after being professionally sidelined and slandered at the peak of her career as retaliation for making sexual harassment complaints. No successful female would abandon a well-earned career to intentionally delay justice in favor of financially crippling litigation in darkness.  There is still no light at the end of the tunnel for Ms. Tantaros. Inexplicably, the Panel has refused to allow even the scheduling of depositions as she has urged. They have not ordered the parties to set a stipulated schedule for hearings. The Panel has frozen the action in time like a petrified forest, facilitating the ballooning of their billings, abdicating and ignoring their responsibilities to ensure a swift, equitable process, making Charles Dickens' infamous *Jarndyce v. Jarndyce* in *Bleak House* seem speedy in comparison.

5

16.     Petitioner meanwhile is suffering irreparable harm to her career, reputation, and finances as Fox pursues her with the relentlessness of Captain Ahab and with money to burn. With confidentiality agreements regarding sexual harassment made impermissible under New York law, Fox News is determined to keep her muzzled and mired in secret litigation proceedings interminably. No wonder New York passed CPLR section 7515 with virtual unanimity.

17.     The Panel's rulings have overwhelmingly been overtly asymmetrical in favor Respondents, employing a diametrically different, overt standard of discovery over Petitioner, an individual, than Respondent, a powerful corporation—a standard that would never be permitted in open Court. Fox News et al are now seeking to dismiss the entire action and sanction Ms. Tantaros with the improper filing of two baseless motions to avoid what they view as dreaded depositions, third-party testimony and hearings on the merits. The Panel has chronically violated its obligation to provide written opinions setting forth the reasons for their decisions to ensure due deliberation and to enable judicial review for overleaping arbitration guardrails.

**CAUSES OF ACTION**

18.  Petitioner repeats and re-alleges paragraphs 1-17 as if fully set forth herein.

19.     Petitioner seeks (1) a declaratory judgment that CPLR section 7515 prohibits AAA Case No. 01-16-0001-7288 from continuing to arbitrate Petitioner's sexual harassment allegations and claims; (2) a temporary restraining order, restraining Respondents from proceeding with their claims or defenses in the above-referenced arbitration pending resolution of this application; and, (3) a preliminary and permanent injunction staying the arbitration as to Petitioner's sexual harassment allegations, claims, and defenses.

20.     As elaborated in the accompanying Memorandum of Law in support of the Petitioner's Order to Show Cause, Petitioner fully satisfies the standard for a TRO or preliminary injunctive relief. Petitioner's likelihood of success on the merits because of the clear and unambiguous text and policy of CPLR 7515 making mandatory arbitration clauses null, void and unenforceable as regards sexual harassment allegations and claims because of procedural and substantive unconscionability.  Petitioner

6

Case 1:19-cv-07131-ALC   Document 1-2   Filed 07/30/19   Page 9 of 87

will suffer irreparable injury sans injunctive relief by incurring further crippling expense and delay in continuing to arbitrate before a biased and dilatory Panel.  In contrast, Respondents will suffer no hardship in responding to Petitioner's sexual harassment allegations and claims in this Court with all the trappings of due process.

21.     Petitioner also satisfies the standard for a permanent injunction. Petitioner confronts an ongoing violation of her clearly established right under CPLR section 7515 to avoid mandatory arbitration of her sexual harassment claims and defenses concerning Respondents.  There is no adequate remedy at law because only injunctive relief can halt the illegal arbitration proceedings. Serious and irreparable harm will befall Petitioner by being forced into illegal costly and sluggish arbitration of her sexual harassment allegations and claims. The equities balance in favor of Petitioner because Respondents will enjoy all due process protections in confronting Petitioner's sexual harassment claims and defenses in this Court notwithstanding a permanent injunction against further arbitration.

22.     A Declaratory Judgment is warranted under CPLR section 3001 to declare the right of Petitioner under CPLR section 7515 to prevent further mandatory arbitration of her sexual harassment allegations and claims involving Respondents.

23.     No previous application has been made to this or to any other court for the relief sought herein and no other provisional remedy has been sought in this or any other Court.

## **PRAYER FOR RELIEF**

**WHERFORE,** Petitioner respectfully requests an Order from this Court:

A.      Issuing a temporary restraining order, restraining Respondents from proceeding with their claims and defenses regarding Petitioner's sexual harassment allegations and defenses in AAA Case No. 01-16-0001-7288 until Petitioner's request for preliminary injunctive relief is resolved;

B.      Granting Petitioner's request for a preliminary injunction, staying the above-referenced arbitration as regards Petitioner's sexual harassment allegations and claims pending resolution of this application;

7

Case 1:19-cv-07131-ALC   Document 1-2   Filed 07/30/19   Page 10 of 87

      C.      Permanently staying arbitration of Petitioner's sexual harassment allegations and claims in the above-referenced arbitration.

      D.      Declaring that under CLPR section 7515 Petitioner cannot be required to continue to arbitrate her sexual harassment allegations and claims in the above-referenced arbitration, enjoining the Panel from continuing its jurisdiction, and substituting this Court as the proper tribunal to hear Petitioner's sexual harassment allegations and claims.

      E.   Granting such other and further relief as this Court deems just and proper.

Dated: July 15, 2019
New York, New York


By: /s/ Jonathan Askin
Bruce Fein
250 Joralemon Street
Brooklyn, NY 11201-3700
718-780-0622
Email: jonathan.askin@brooklaw.edu
Attorneys for Petitioner

8

# DOCUMENT 2

**EXHIBIT 1**

**KUZMA V. PROTECTIVE INS. CO.**

NYSCEF DOC. NO. Kuzma v Protective Ins. Co. :: 2011 :: New York Other Courts Decisions :: New York Case Law :: New York Law :: US Law :: Justia    RECEIVED NYSCEF: 07/15/2019

# Kuzma v Protective Ins. Co.

[*1] Kuzma v Protective Ins. Co. 2011 NY Slip Op 51348(U) Decided on June 29, 2011 Supreme Court, Queens County Taylor, J. Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 29, 2011
Supreme Court, Queens County

Ivan Kuzma, Plaintiff(s),

against

Protective Insurance Company, Defendant(s).

13330/09

Janice A. Taylor, J.

This is an action seeking disability benefits for the plaintiff under an insurance policy between himself and the defendant. In his complaint, plaintiff asserts that he was injured on December 14, 2005 when he was involved in a motor vehicle accident on Van Siclen Street at or near its intersection with Avenue S in the County of Kings, City and State of New York. At the time of the accident, plaintiff worked as a driver for Fed Ex Home

FILED: NEW YORK COUNTY CLERK 07/15/2019 07:45 PM    INDEX NO. 156936/2019

NYSCEF DOC. NO. 4    Kuznetz Protective Ins. Co. 3:31 A.M. v. New York Cuneen Ins. Decision File New York Case Law agent 14 of 87 :: US Law :: Justia    RECEIVED NYSCEF: 07/15/2019

Delivery ("Fed Ex"). Plaintiff first applied for disability benefits from the defendant under his no-fault policy. In October, 2006, plaintiff was deemed totally disabled by Fed Ex' physicians. Following the expiration of this no-fault benefits, plaintiff applied for payment from the defendant under his secondary disability policy. It is uncontested that defendant denied [*2]plaintiff's claim for disability benefits. This action was commenced on May 21, 2009 by the filing of a summons and complaint.

By order dated January 10, 2011, this court denied defendant's motion for summary judgment due to defendant's failure to include a signed certification, pursuant to Court Rule 130-1.1(a) with its motion. Defendant Protective Insurance Company ("Protective") now moves, pursuant to CPLR §2221, for leave to renew its prior motion for summary judgment. As the movant has now included the required certification, the instant motion to renew is granted.

Upon renewal, this court will first consider defendant Protective's motion seeking an order, pursuant to CPLR §3025, for leave to amend its answer to include the affirmative defense of statute of limitations. It is well-settled that "a party may amend [its] pleading * * * at any time by leave of court" and that "[l]eave shall be freely given upon such terms as may be just." (CPLR §3025 [b]; Fahey v. County of Ontario, 44 NY2d 934, 935 [1978]; Hempstead Concrete Corp. v. Elite Assocs., 203 AD2d 521, 523[2d Dept. 1994]). Allowing such an amendment is committed "almost entirely to the court's discretion to be determined on a sui generis basis." (See, Leitner v. Jasa Hous. Mgmt. Servs. for the Aged, Inc., 6 AD3d 667 [2d Dept. 2004]; Zeide v. National Cas. Co., 187 AD2d 576 [2d Dept. 1992]; Corsale v. Pantry Pride Supermarkets, 197 AD2d 659, 660 [2d Dept. 1993]; Hickey v. Hudson, 182 AD2d 801, 802 [2d Dept. 1992]). Where, as here, the opposing party fails to make a showing of operative prejudice; i.e., prejudice attributable to the mere omission to plead the defense in the original answer, the amendment may be allowed "during or even after trial" (Murray v. City of New York, 43 NY2d 400, 405 [1977], citing Dittmar Explosives v. A.E. Ottaviano, Inc., 20 NY2d 498, 502 [1967]; see, Breco Envtl. Contrs., Inc. v. Town of Smithtown, 307 AD2d 330 [2d Dept. 2003]; Grall v. Ba Mar, Inc., 233 AD2d 368 [2d Dept. 1996]). As the plaintiff has failed to prove, or to even assert, that he would be prejudiced by the proposed amendment, defendant Protective's motion, pursuant to CPLR §3025, is granted. The supplemental summons and amended complaint annexed to the instant motion is deemed timely served.

Upon amendment of its answer and the inclusion of the affirmative defense of statute of limitations, defendant Protective now moves, pursuant to CPLR §3212, for an order granting summary judgment and dismissing the complaint. It is well-settled that the

proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (See,Zuckerman v. City of New York, 49 NY2d 557, 562 [1980]; Sillman v. Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). Failure to make such a showing necessitates denial of the motion.

CPLR §3212(b) requires that for a court to grant summary judgment it must determine if the movant's papers justify holding, as a matter of law, "that the cause of action or defense has no merit." The evidence submitted in support of the movant must be viewed in the light most favorable to the non-movant (see, Grivas v. Grivas, 113 AD2d 264, 269 [2d Dept. 1985]; Airco Alloys Division, Airco Inc. v. Niagara Mohawk Power Corp., 76 [*3]AD2d 68 [4th Dept. 1980]; Parvi v. Kingston, 41 NY2d 553, 557 [1977].

Defendant Protective asserts that the instant complaint must be dismissed based on documentary evidence, pursuant to CPLR §3211(a)(1),(5), because the plaintiff has failed to commence this action within the contractual time period. A complaint which is facially sufficient may be dismissed if there exists documentary evidence which conclusively contradicts the claims (See, Smuckler v. Mercy College, et al, 244 AD2d 349 [2d Dept. 1997]). In support of its motion, defendant Protective submits, inter alia, the pleadings, the prior motion and responsive papers, a certified copy of the subject insurance policy, its proposed amended answer and a copy of the Note of Issue filed on April 5, 2010.

A review of the subject insurance policy reveals that, paragraph 11 of the General Provisions states:

"Written proof of loss must be furnished to us within ninety (90) days after the date of loss for which claim is made."

Paragraph 13 thereof states:

"No lawsuit may be brought to recover on the Group Master Policy within sixty (60) days after written proof of loss has been given as required by this policy. No such lawsuit may be brought after two (2) years from the time written proof of loss is required to be given.

The movant asserts that, pursuant to the subject insurance policy, plaintiff was required to submit written proof of loss by March 14, 2006 and to commence a lawsuit by March 14, 2008. As aforestated, this action was commenced on May 21, 2009, more than fourteen (14) months after the expiration of the contractual time period.

In opposition to the instant motion, plaintiff does not dispute that the contractual time-period is two years, ninety days from the date of his accident, nor does plaintiff dispute that he failed to commence this action within the contractual time period. Instead, plaintiff asserts that the statute of limitations provision of the subject insurance policy is unconscionable and must be voided by this court.

It is well-settled that the determination of whether a contract, or a provision thereof, is unconscionable is a matter of law reserved for the court (See, Wilson Trading Corp. V. David Ferguson, Ltd., 23 NY2d 398 [1968]). For a court to determine that a contract, or a contractual provision, is unconscionable, a court must determine that the agreement is so one-sided that it "shocks the conscience such that no person in his or her right mind would make it on the one hand, and no honest and fair person would accept it on the other" (Kojovic v. Goldman, 35 AD3d 65, 823 N.Y.S.2d 35 [1st Dept. 2006] citing Christian v. Christian, 42 NY2d 63, 365 N.E.2d 849, 396 N.Y.S.2d 817 [1977]). [*4]

A finding of unconscionability usually requires both a showing that the contract was procedurally and substantively unconscionable when made (emphasis added) (See, Gillman v. Chase Manhattan Bank, N.A., 73 NY2d 1, 534 N.E.2d 824, 537 N.Y.S.2d 787 [1988]). A contract is procedurally unconscionable when one of the parties lacked a meaningful choice in its execution. Misrepresentation of facts, high pressure sales tactics and unequal bargaining position have each been found to be examples of elements of a procedurally unconscionable contract (See, Matter of Friedman, 64 AD2d 70, 407 N.Y.S.2d 999 [2nd Dept 1978]). A contract is substantively unconscionable when the terms of the contract are unreasonably favorable to the other party (Gillman, supra). Examples of elements of substantive unconscionability include contracts that contain inflated prices, unfair disclaimers of warranty and termination clauses (See, Matter of Friedman, supra). While a determination of unconscionability generally requires a court to find elements of both procedural and substantive unconscionability, a contract, or provision thereof, that is deemed to be outrageous on grounds of substantive unconscionability alone can also be stricken by the court (See, Gillman, supra; State of New York v. Wolowitz, 96 AD2d 47[1983]).

In ruling whether a contract is procedurally unconscionable, a court may consider several factors such as the professional experience of the parties, the level of negotiations that occurred during the formation of the contract and the equality of the bargaining positions of the parties (See, Industralease Automated and Scientific Equipment Corporation v. R.M.E. Enterprises, Inc., et al, 58 Ad2d 482 [2d Dept. 1977]). In the instant action, it is uncontested that plaintiff is neither an attorney nor an experienced insurance professional;

and that the subject insurance policy was a part of a pre-negotiated package of benefits he received through his employment with Fed Ex. Neither party asserts that plaintiff actually signed the subject insurance policy and affirmatively agreed to its terms.

In considering plaintiff's allegation of procedural unconscionability of the terms of the subject policy, this court must take into account plaintiff's lack of bargaining power in the formation of the agreement, whether each party had a reasonable opportunity to understand the terms of the contract (See, Gillman, supra). It is clear that plaintiff is neither a legal nor an insurance professional and that he had no opportunity to negotiate any of the terms of the subject policy. Thus, this court finds that, due to the overwhelmingly unequal bargaining power of the parties in the formation of the contract, the disputed contractual statute of limitations contained within the subject policy is procedurally unconscionable.

This court must also determine if the contractual statute of limitations is substantively unconscionable. In actions for breach of contract, the cause of action accrues, and the statute of limitations begins, from the time of the breach (See, McCoy v. Feinman, 99 NY2d 295 [2002]; Fourth Ocean Putnam Corp. v. Interstate Wrecking Company, 66 NY2d 38 [1985]; John J. Kasner & Co. v. City of New York, 46 NY2d 544 [1979]; Mainline Electric Corp. v. East Quogue Union Free School District, 46 AD3d 859 [2d Dept. 2007]; Henry Boeckmann, Jr. and Associates v. Board of Education, Hempstead [*5]Union Free School District No. 1. et al., 207 Ad2d 773 [2d Dept. 1994]).

Pursuant to the terms of subject policy, the defendant had no obligation to pay under plaintiff's secondary disability policy until after the March 1, 2008 expiration of the three-year no-fault benefit period. Until plaintiff actually demanded payment from the defendant and said demand was refused, plaintiff had no cause of action against the defendant for breach of contract. However, the terms of the subject policy require plaintiff to commence an action within two years, ninety days of the underlying accident, before the expiration of the no-fault benefit period. Thus, contrary to established New York law, the subject insurance policy requires plaintiff's contractual statute of limitations to begin to run before he had an enforceable cause of action (See, McCoy, supra; Fourth Ocean Putnam Corp., supra; Mainline Electric Corp., supra).

An examination of the facts as alleged by the parties reveals that, after the expiration of his no-fault benefits, plaintiff had less than two weeks to demand payment from the defendant, for that demand to be refused and for the plaintiff to commence an action for breach of contract. Following a demand from the plaintiff, it was the defendant who controlled when it would pay, or refuse to pay under this disability policy. Thus, the subject insurance policy

FILED: NEW YORK COUNTY CLERK 07/15/2019 07:45 PM INDEX NO. 156936/2019

NYSCEF DOC. NO. Kurose-Pollack v. New York Cmty. Bancorp, Inc.: 2011 NY Slip Op. 51348U... Law ... Justia RECEIVED NYSCEF: 07/15/2019

gave defendant the opportunity to delay its refusal to pay until after the expiration of the contractual statute of limitations. Additionally, if, by the March 14, 2008 expiration of the contractual statute of limitations, plaintiff had not yet demanded payment and said demand had not yet been rejected by the defendant, plaintiff's contractual time to commence a lawsuit would have expired before the defendant ever breached its contractual obligations. Moreover, even if the refusal to pay were ultimately determined to be a breach of contract, the terms of the contractual statute of limitations would have eliminated the possibility that the defendant could be sued for the breach. Thus, this court finds that the disputed contractual statute of limitations is so unreasonably favorable to the defendant that said provision is substantively unconscionable.

In Day Op of North Nassau, Inc. d/b/a Ambulatory Surgery of North Nassau v. Viola, the Supreme Court of New York, Nassau County found that a contractual term was unconscionable where it allowed a defendant to benefit from its own breach (See, Day Op of North Nassau, Inc. d/b/a Ambulatory Surgery of North Nassau v. Viola, 2007 NY Slip Op. 51542U [Supreme Court, Nassau County, 2007]). Citing definitions and examples of unconscionability set forth in Gillman v. Chase Manhattan Bank, N.A. and State of New York v. Wolowitz, the Honorable Ira B. Warshawsky, J.S.C. ruled that a term of a shareholders' agreement which eliminated the shareholder's right to contest the forced sale of her shares, even if the sale resulted from the wrongful breach of contract by the corporation, was oppressive, unjust and unconscionable (See, Day Op of North Nassau, Inc. d/b/a Ambulatory Surgery of North Nassau, supra; Gillman v. Chase Manhattan Bank, N.A., supra, State of New York v. Wolowitz, supra). While the decision of the Supreme Court, Nassau County is not binding on the undersigned, this court similarly finds that, pursuant to the rules of law set forth by both the New York Court of Appeals and the Supreme Court, Appellate Divisions, the contractual statute of limitations of the subject [*6]insurance policy is both procedurally and substantively unconscionable. Where a contract, or a provision thereof, has been deemed unconscionable, it may be voided by this court (See, generally, King v. Fox, 7 NY3d 181 [2006]). Thus, the contractual statute of limitations will not be enforced by this court. Accordingly, that portion of the defendant's motion which seeks summary judgment and dismissal of the complaint, pursuant to CPLR §3212, §3211(a)(1),(5) is denied.

Defendant also moves, pursuant to CPLR §3212, §3211(a)(7), for summary judgment and dismissal of the complaint for plaintiff's failure to state a cause of action. A motion to dismiss made pursuant to CPLR §3211(a)(7), can only be granted if, from the pleadings' four corners, factual allegations are not discerned which manifest any cause of action cognizable at law. In furtherance of this task, the court liberally construes the complaint,

accepts as true the facts alleged in the complaint and any submissions in opposition to the dismissal motion, and accords the plaintiff the benefit of every possible favorable inference (See, 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 NY2d 144 [2002]).

In support of its motion, defendant asserts that the complaint must be dismissed because plaintiff does not yet have a ripe cause of action. Paragraph four of the General Provisions of the subject policy states:

Subrogation: We shall be subrogated to any and all rights of recovery which and Covered Person may have or acquire against any party or the insurer of any party for benefits paid or payable under the Group Master Policy. Any Covered Person who receives benefits from us for any accidental injury or death therefrom shall be deemed to have assigned their right of recovery for such benefits to us and agree to do what is necessary to secure such recovery, including execution of all appropriate papers to cause repayment to us. If the third party pays a Covered Person as a result of judgment, arbitration, compromise settlement or other arrangement for injuries sustained by the Covered Person for which benefits were paid under the Group Master Policy, the Covered Person agrees to repay us for all benefits paid. Cost of collection including attorney's fees and court costs shall be shared pro rata between the Covered Person and us.

In addition, if benefits are payable to a Covered Person under the Group Master Policy after a third party pays the Covered Person, we will take credit for all amounts received by the Covered Person, less amounts paid to us, against all future payments under the Group Master Policy. No amount shall be owed by us until the amount of benefits we would have paid on behalf of or to the Covered Person exceeds the amount received by the Covered Person from a third party.

In support of its motion, defendant asserts that plaintiff has been adjudicated to be partially disabled. The maximum amount of payment under the policy is $750.00 per month. It is uncontested that plaintiff commenced and settled a lawsuit related to this action, in March 2008, with a third-party for the sum of $21,436.00. Under the subrogation [*7]clause of the subject policy, defendant asserts it will take plaintiff 36 months, at $750.00 per month, to run off the credit from the settlement before the defendant must pay plaintiff's disability claims. In opposition, plaintiff asserts that he was deemed to be totally disabled by a physician employed by Fed Ex Delivery and that his settlement was for pain and suffering, not for the lost wages that he claims under this policy. Thus, plaintiff asserts that the subrogation clause does not apply and that his action is ripe.

Thus, when this court accepts as true plaintiff's version of the facts, as required by CPLR §3211(a)(7), it is clear that plaintiff has properly alleged a cognizable cause of action. Accordingly, defendant's motion to dismiss for plaintiff's failure to state a cause of action is denied.

Dated: June 29, 2011

JANICE A. TAYLOR, J.S.C.

# DOCUMENT 3

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

_____

ANDREA TANTAROS

    _Petitioner,_            Index No. <u>156936/2019</u>

vs.

FOX NEWS CHANNEL, LLC., THE ESTATE OF ROGER
AILES, WILLIAM SHINE, SUZANNE SCOTT, DIANNE
BRANDI, IRENA BRIGANTI

    _Respondents._      **PETITION TO STAY**
                   **ARBITRATION OF PETITIONER'S**
                   **SEXUAL HARRASSMENT**
                   **ALLEGATIONS AND CLAIMS IN**
                   **EMPLOYMENT ARBITRATION**
                   **CASE # 01-16-001-7288 AND**
                   **DECLARATORY JUDGMENT**

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE FOR**
**A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Jonathan Askin
Bruce Fein
250 Joralemon Street
Brooklyn, NY 11201-3700
718-780-0622
Email: jonathan.askin@brooklaw.edu
Attorneys for Petitioner

1

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ………………………………………………………4

STATEMENT OF FACTS………………………………………………………….....5

ARGUMENT…………………………………………………………………………...7

I.   THE COURT SHOULD GRANT A TEMPORARY RESTRAINING ORDER AND
     PRELIMINARY INUNCTION

     A.  Petitioner is likely to succeed on the merits because section 7515 of the Civil
         Practice Law and Rules categorically prohibits enforcement of mandatory
         arbitration clause in both pre-existing and prospective employment contracts
         because of procedural and substantive unconscionability……………………...8

     B.  Petitioner will suffer immediate and irreparable injury absent a temporary
         restraining order and preliminary injunctive relief…………………………..12

     C.  The balance of equities favors Petitioner………………………………………17

CONCLUSION……………………………………………………………………………18

## <u>TABLE OF AUTHORITIES</u>

**Cases** **Page**

*Bradley v. Richmond School District,* 416 U.S. 696 (1974)…………………………………...9

*Brown v. Board of Education,* 347 U.S. 483 (1954)…………………………………………..5

*Doe v. Axelrod,* 73 N.Y. 2d 748 (1988)………………………………………………………8

*Kuzma v. Protective Ins. Co.,* 2011 NY Slip Op 51348(u) (June 24, 2011) (Supreme Court, Queens County, Taylor, J.)………………………………………………………………11

*Lamps Plus, Inc. v. Varela,* __ U.S. __ (April 24, 2019)………………………………………..11

*Latif v. Morgan Stanley*, 2019 WL 2610985 (S.D.N.Y.)…………………………………….10

*Steelworkers v. Weber,* 443 U.S. 193 (1979)………………………………………………11

*Young v. UPS,* 575 U.S. __ (2015), 135 S. Ct. 1338 (2015)…………………………………...9

**Statutes**

CPLR 5003-b……………………………………………………………………………..12

CPLR 6301……………………………………………………………………………….8

CPLR 7515…………………………………………………………………………….passim

Federal Arbitration Act, 9 U.S.C. 2……………………………………………………….11

Title VII of the 1964 Civil Rights Act, 42 U.S. C. 2000e et seq………………………………11

**Other Authorities**

Federal Rules of Civil Procedure, Rule 26………………………………………………….12

Rule 9 of AAA Employment Arbitration……………………………………………………15

5 J Wigmore, Evidence, section 1367, p. 32 (Chadbourne rev. 1974)………………………….16

3

FILED: NEW YORK COUNTY CLERK 07/15/2019 07:45 PM
NYSCEF DOC. NO.

INDEX NO. 156936/2019

Case 1:19-cv-07131-ALC   Document 1-2   Filed 07/30/19   Page 25 of 87

RECEIVED NYSCEF: 07/17/2019

## PRELIMINARY STATEMENT

Sexual harassment in the workplace is epidemic.  The inability of unsuspecting female employees with little bargaining power to resist mandatory arbitration of sexual harassment allegations or claims that enable sexual predators to escape public accountability, disclosure or embarrassment is notorious.  Thus, Respondent Fox News Channel, LLC ("Fox"), coerced Petitioner (though a contract of adhesion) into accepting mandatory arbitration, among other things, of sexual harassment allegations or claims in her employment contract signed in 2014—the very definition of procedural and substantive unconscionability.  In 2017, this Court ordered mandatory arbitration of Petitioner's claims against Respondents sounding in sexual harassment, including hostile work environment, retaliation for protesting sexual harassment for eighteen (18) months while employed.  The latter covered Fox's belated bogus claim of a book guidelines violation concocted just weeks after Ms. Tantaros' multiple formal complaints to senior executives escalated into formal complaints made through her business and entertainment attorney, both orally and in writing, and in a meeting with the channel's general counsel and Human Resources Department.

At present, these sexual harassment allegations and claims are pending before the American Arbitration Association, Case No. 01-16-0001-7288, where they have largely *idled for more than three (3) years* at staggering financial, personal and professional expense to Petitioner.  No successful, sophisticated person would plot involvement in exorbitant endless secret arbitration—a nightmare for claimants and a bonanza for corporate employers.

In 2018, the mushrooming public revelations of sexual harassment or predation—too numerous to chronicle at Fox News Channel and other business behemoths and too sordid to detail—provoked remedial action by the New York legislature. On April 12, 2018, New York Governor Andrew Cuomo

4

signed into law the state's budget for fiscal year 2018.  Among other things, the Civil Practice Law and Rules were amended by adding a new section 7515 to address the epidemic of sexual harassment concealed by mandatory arbitration clauses that the Fox employment contract with Petitioner exemplifies.

Section 7515 is to mandatory arbitration of sexual harassment allegations or claims what *Brown v. Board of Education,* 347 U.S. 483 (1954) was to racial discrimination.  Section 7515 recognizes that female employees are no more equal in resources and bargaining power in arbitrating sexual harassment claims against their employers than separate black schools were equal to separate white schools during Jim Crow.  There must be a level playing field.  In opening the courthouse doors to sexual harassment allegations notwithstanding mandatory arbitration clauses, the section diminishes the staggering advantages employers enjoy over their female employees if they are authorized to conceal such disputes in a shroud of arbitration in perpetuity.  Sunlight through due process is the only ammunition female employees victimized by sexual harassment or predation have against their powerful employers.

Section 7515 remedies the unconscionable practice of multi-billion-dollar companies like Fox notorious for unsavory or rapacious work environments to foist employment contracts on women mandating secret arbitration of sexual harassment allegations or claims.  These mandatory arbitration clauses embolden employers to persist in mistreating female employees as sex objects. Section 7515 makes "null and void" any contract provision that requires "mandatory arbitration to resolve any allegation or claim of an unlawful discriminatory practice of sexual harassment" because they are procedurally and substantively unconscionable for victims.

Section 7515 applies to pending, non-final arbitration proceedings triggered by now illegal mandatory arbitration clauses that reach sexual harassment allegations or claims, including Petitioner's against Respondents in Case No. 01-16-0001-7288.  The new remedial section necessitates immediate judicial intervention by this Court to prevent its violation by the Panel and Respondents in continuing to arbitrate Petitioner's sexual harassment allegations and claims on an inherently uneven playing field, notwithstanding the New York legislative directive that her allegations and claims be resolved in the first instance in this Court where justice is safeguarded by due process, accountability, and timeliness.

5

## STATEMENT OF FACTS

More than three years ago, Fox initiated an arbitration against former employee and Petitioner,

Andrea Tantaros, on May 11, 2016.  Fox invoked a now unenforceable and prohibited mandatory

arbitration clause covering sexual harassment allegations and claims under CPLR section 7515 in the

Fox-Tantaros employment contract dated September 17, 2014.  The clause was not subject to bargaining.

It was a "take it or leave it" requirement indistinguishable from a contract of adhesion.  Petitioner had no

choice.  With no carve out for sexual harassment allegations or claims, Fox's mandatory arbitration clause

provided in part:

> "Any controversy, claim or dispute arising out of or relating to this Agreement or your
> employment shall be brought before a mutually selected three-member arbitration panel
> and held in New York City in accordance with the rules of the American Arbitration
> Association then in effect."

In AAA Case No. 01-16-0001-7288, Fox seeks a declaratory judgment that Petitioner violated her

employment contract in publishing her book "Tied Up in Knots," and damages.

On August 22, 2016, Petitioner filed a Complaint in the Supreme Court of New York against

Respondents alleging sexual harassment, a hostile work environment and retaliation.

On March 13, 2017, the Court entered an order granting Respondents' motion to compel arbitration of

Petitioner's sexual harassment allegations and claims, where they remain idling in the Horse latitudes.

On April 12, 2018, New York changed the law regarding the enforceability of employer dictated

mandatory arbitration provisions regarding allegations or claims of sexual harassment.  Section 7515 of

the CPLR made Fox's mandatory arbitration provision as to Petitioner's sexual harassment allegations

and claims null and void and unenforceable in AAA Case No. 01-16-0001-7288 because of procedural

and substantive unconscionability.

Petitioner's arbitration exemplifies the justification for section 7515. Petitioner had no ability to alter

or amend Fox's mandatory arbitration clause regarding sexual harassment allegations or claims or

otherwise.  And mandatory arbitration is substantively unconscionable in disarming a female employee of

her most powerful weapon against a predatory employer with deep pockets:  publicity and a judicial

6

forum guaranteeing due process. Arbitration, in contrast, is shrouded in secrecy and shields a predatory employer from public accountability or loss of goodwill occasioned by complicity in sexual harassment.

Petitioner's protracted arbitration to date highlights the substantive unconscionability of mandatory arbitration of sexual harassment allegations or claims that gave birth to CPLR section 7515. Respondents know they have neither the facts nor the law on their side. They have thus systematically attempted from the inception of the arbitration to delay and to deflect attention from the merits of the claims and defenses to avoid the day of reckoning for their complicity in the sordid sexual harassment and retaliation of Ms. Tantaros. They have expended limitless resources and retained armies of lawyers from three different major law firms. Ms. Tantaros is constantly forced to respond to endless motions, ballooning the cost of the arbitration and the fees to the AAA as large as floats in the infamous Macy's Day Parade.

The Panel has endorsed Respondent's cynical strategy. ***The arbitration commenced over three years ago***, forcing Ms. Tantaros to spend well over seven-figures, after being professionally sidelined and slandered at the peak of her career as retaliation for making sexual harassment complaints. **There is still no light at the end of the tunnel for Ms. Tantaros**. Without explanation, the Panel has refused to allow even the scheduling of depositions. They have not ordered the parties to set a stipulated schedule for hearings. The Panel has frozen the action in time like a petrified forest, making Charles Dickens' infamous *Jarndyce v. Jarndyce* in *Bleak House* seem speedy in comparison.

Meanwhile, Petitioner is suffering irreparable harm to her career, reputation, and finances as Fox pursues her with the relentlessness of Captain Ahab and with money to burn. No wonder New York passed CPLR section 7515 with virtual unanimity because of the procedural and substantive unconscionability of mandatory arbitration of sexual harassment allegations or claims.

The arbitration Panel's rulings have overwhelmingly and overtly favored Respondents. Without explanation, Petitioner has been held to egregiously disproportionate, unreasonable and unjustifiable standards in discovery that her multi-billion-dollar media opponent has not. The Panel has also chronically violated its obligation to provide written opinions setting forth the reasons for their decisions to ensure due deliberation by the Panelists and to enable judicial review for overleaping arbitration guardrails.

7

## ARGUMENT

### I.  THE COURT SHOULD GRANT PETITIONER A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

A temporary restraining order or preliminary relief is justified when the moving party demonstrates (1) a likelihood of success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and, (3) a balance of equities favoring the moving party.  CPLR section 6301; see *Doe v. Axelrod*, 73 N.Y. 2d 748, 750 (1988).

#### A.  Petitioner Is Likely To Succeed On The Merits

On April 12, 2018, New York Governor Andrew Cuomo signed into law the state's budget for fiscal year 2018.  Among other things, the civil practice law and rules were amended by adding a new section 7515 to address the epidemic of sexual harassment that Fox News Network, LLC exemplifies. The anti-sexual harassment provision remedies the practice of powerful businesses like Fox notorious for unsavory or rapacious work environments to foist employment contracts on women mandating unconscionable secret arbitration of sexual harassment allegations or claims.  Such mandatory arbitration clauses embolden companies like Fox to persist in degrading women as sex objects for management to harass, manipulate, intimidate or exploit by shielding their misconduct from the public, muzzling women with never-ending silence, while often allowing bad actors to remain at large. While arbitration languishes, women are unable to find gainful employment, have their reputations tarnished—which vulnerabilities corporate employers are eager to exploit in secret. Justice Louis Brandeis famously observed that, "Sunshine is said to be the best of disinfectants; the electric light the most efficient policeman."

Respondent was powerless to reject Fox's insistence on mandatory arbitration of sexual harassment allegations or claims in her employment contract. Her bargaining power against a multi-billion-dollar media behemoth was illusory.  Mandatory arbitration represented an unconscionable contract of adhesion—take it or leave it.  Female employees at Fox know they are easily replaceable.

To overcome unconscionability, section 7515 makes "null and void" any employment contract provision that requires "mandatory arbitration to resolve any allegation or claim of an unlawful discriminatory practice of sexual harassment." The section applies to pending non-final arbitration proceedings like Petitioner's involving sexual harassment allegations or claims. The United States Supreme Court explained in *Bradley v. School Board of Richmond*, 416 U.S. 696, 715-717 (1974), that an intervening change in the law—administrative, statutory, or constitutional—should be applied to pending disputes unless manifest injustice would result. Among other things, the Court declared that, "[E]ven where the intervening law does not explicitly recite it is to be applied to pending cases, it is to be given recognition and effect." Id. 715. The Court emphasized that, "[W]e must reject the contention that a change in law is to be given effect in a pending case only where that is the clear and stated intention of the legislature." Id.

Section 7515 does not clearly withhold its application to pending arbitrations of sexual harassment allegations or claims arising under pre-existing contracts that foisted unconscionable mandatory arbitration on vulnerable or unsuspecting female employees. *Bradley* teaches the section applies to such pending arbitrations absent manifest injustice.

That conclusion is reinforced by reading section 7515 as an integrated whole. Subsection (b) (1) provides; "Except where inconsistent with federal law, no written contact, entered into on or after the effective date of this section shall contain a prohibited [mandatory arbitration] clause as defined in paragraph two of subdivision (a) of this section." Subsection (b) (1) thus prohibits and makes illegal and unenforceable any *prospective* mandatory arbitration clause covering sexual harassment allegations or claims.     But what about mandatory arbitration clauses in pre-existing employment contracts? They are addressed in subsection (b) (iii). It makes them "null and void." If that were not true, the subsection would be superfluous. It would make null and void what had already been made null and void by subsection (b) (i). A cardinal canon of statutory construction strongly disfavors redundancy. See e.g., Young v. UPS, 135 S. Ct. 1338, 1352 (2015).

9

Case 1:19-cv-07131-ALC   Document 1-2   Filed 07/30/19   Page 31 of 87

Application of section 7515 to pending arbitrations also advances its purpose: to overcome the acute handicap of female employees in secret arbitration of sexual harassment allegations or claims by removing the threat to employers of adverse publicity and loss of business goodwill that could trigger bankruptcy ala the Weinstein Company. That purpose would be undermined, not fortified, if section 7515 were interpreted to leave pre-existing unconscionable mandatory arbitration clauses or ongoing mandatory arbitrations undisturbed.

The result is not manifestly unjust to Respondents. The substantive law governing Petitioner's sexual harassment allegations or claims would not change, but only the procedure for their enforcement. And that procedure would strengthen—not weaken—due process safeguards against injustice. No reasonable reliance interests of Respondents would be upset.

But assume there is ambiguity as to the application of section 7515 to pre-existing mandatory arbitration clauses for sexual harassment allegations or claims. *Bradley* instructs that the interpretive uncertainty be resolved in favor of application to pending, non-final arbitrations.

In sum, section 7515 prohibits Respondents and the Panel from continuing to arbitrate Petitioners' sexual harassment allegations and claims pursuant to the now "null and void" mandatory arbitration clause in her employment contract. Those allegations and claims include Fox's concocted assertion that Petitioner breached her contract book guidelines in writing "Tied Up in Knots." (their baseless justification from suspending Petitioner from the air). That assertion was a pre-textual smokescreen to retaliate against Petitioner for her repeated, documented complaints of sexual harassment, retaliation and hostile workplace beginning in 2015 through 2016.

Petitioner was the Rosa Parks at Fox in protesting against sexual harassment years before others had the courage to come forward. Petitioner protested both internally at the channel and publicly, and well before the #MeToo movement. Multiple complaints were made by Petitioner to Fox Senior Executives, the General Counsel, and via her business and entertainment attorney orally and in writing before Fox voiced any concerns over her book.

District Judge Denise Cote of the United States District Court for the Southern District of New York erred in *Latif v. Morgan Stanley*, et al, 2019 WL 2610985 (S.D.N.Y.) in concluding that section 7515 was preempted by the Federal Arbitration Act, 9 U.S.C. 2. The District Court neglected to consider that mandatory arbitration clauses in employment contracts covering sexual harassment allegations or claims are inherently procedurally and substantively unconscionable for the reasons elaborated above. See, e.g., *Kuzma v. Protective Ins. Co.* 2011 NY Slip Op 51348(U) (June 29, 2011) (Supreme Court, Queens County, Taylor J.) (Reproduced as Exhibit 1). As such, they are revocable at law and are saved from preemption under section 2 of the Act. The District Court correctly acknowledged that arbitration agreements may be invalidated by generally applicable contract defenses such as unconscionability (Slip Op. 6). But the Court failed to consider that employment contracts mandating arbitration of sexual harassment allegations or claims are paradigm examples of procedural and substantive unconscionability under generally applicable New York law. The United States Congress similarly concluded that employees are inherently disadvantaged in seeking to enforce discrimination claims under Title VII of the 1964 Civil Rights Act by endowing the Equal Employment Opportunity Commission with authority to sue private employers on their behalf. 42 U.S.C. 2000e et seq.

The District Court additionally stumbled by disregarding a cardinal principle of statutory construction in interpreting the preemptive ambit of the Federal Arbitration Act, i.e., the letter killeth, but the spirit giveth life. 2 Corinthians 3:6. The United States Supreme Court elaborated in *Steelworkers v. Weber,* 443 U.S. 193, 201 (1979): "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers."

The Federal Arbitration Act was passed in 1925 almost a century antedating #MeToo. The Act contemplated arbitration between commercial entities of comparable size and strength. Its architects did not intend to disarm female employees with sexual harassment allegations or claims of the major weapon they command to receive justice, i.e., publicity and an open judicial forum without ulterior motives or financial conflict of interest dedicated to timeliness and impartiality. United States Supreme Court

11

Justice Ruth Bader Ginsburg dissenting in *Lamps Plus, Inc. v. Varela,* __ U.S. __ (April 24, 2019) (Slip.

Op. 4-5) referenced CLPR 7515 with approval in conjunction with asserting "[p]lainly, it would not

comport with the congressional objectives behind a statute seeking to enforce civil rights…to allow the

very forces that had practiced discrimination to contract away the right to enforce civil rights in the

courts.," citing *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 750 (1981) Burger, C.J.,

dissenting).   Even if mandatory arbitration clauses in employment contracts reaching sexual harassment

allegations or claims fall within the letter of the preemptive ambit of the Federal Arbitration Act, it is not

within the statute because not within its spirit, nor within the intention of its makers.

Moreover, this Court is not bound by the lone, ill-reasoned federal district court decision in *Latif.*

Accordingly, Petitioner is likely to succeed in her claim that section 7515 prohibits continuing arbitration

of her sexual harassment allegations and claims in AAA CASE # 01-16-0001-7288. Petitioner possesses a

statutory right to have them resolved in this Court in the first instance.

### B.  Petitioner Will Suffer Immediate And Irreparable Injury Absent Temporary and Preliminary Injunctive Relief

That conclusion is the premise of section 7515, i.e., that female employees are inherently and

irreparably prejudiced by mandatory arbitration of sexual harassment allegations or claims because it

disarms them of their weapons of publicity and a judicial forum with safeguards against injustice.

Petitioner's arbitration to date speaks volumes.

More than three years have passed and over seven figures has been spent by Petitioner, both in

legal fees and fees to the three-person arbitration Panel (exorbitant fees that exceed six-figures and

growing), yet the Panel has refused to allow even the scheduling of depositions and hearing dates, which

Respondents are desperate to avoid.  For the past six months, the arbitration has been held hostage to

Fox's demand that Ms. Tantaros sign an additional, duplicative, onerous and unlawful Confidentiality

Stipulation under CPLR 5003-b.  The law prohibits forcing confidentiality agreements on sexual

harassment claimants. The new law passed in concert with CPLR 7515 cites the need to increase the

12

"bargaining power for victims of sexual harassment" who are at a significant disadvantage when the employer holds all the power. The Confidentiality Stipulation, crafted by Fox News Channel, is riddled with liability and penalties drafted by Fox to ensure Petitioner's silence in perpetuity.

Petitioner has already signed a confidentiality stipulation regarding the arbitration as part of her employment contract with Fox News Network, LLC.  Exhibit A to Employment Contract, Paragraph 8. (Reproduced as Exhibit 2).  To pressure her further, the Panel has co-opted Fox's demand without explanation of its authority to do so. The terms and conditions of arbitration are a matter of contract between the parties. The Panel has never stated or insinuated that the confidentiality required of Petitioner under her employment contract with Fox is different in any material respect from the confidentiality agreement required by the Panel's Order on Supplemental Discovery, paragraph 1. (Reproduced as Exhibit 3).

The Panel's bias against Petitioner is underscored by its hypocrisy and indifference to the multiple confidentiality violations of the Estate of Roger Ailes in the New York Supreme Court Index Number 652130/2018 seeking an unsuccessful Stay of Arbitration to avoid participation in the arbitration. The violations were flagged by Petitioner's counsel in a letter to the Panel on October 3, 2018.  (Exhibit 4).  The flagrant violations are continuing.  The wrongful disclosures can be downloaded on the Internet, yet the Panel has failed to address the continuing breaches and declined to discipline the Ailes Estate and its attorneys.  These are the same movants who are currently attempting to muscle Ms. Tantaros into signing the agreement that they are flouting.  In other words, the Panel is dropping a nuclear bomb on Tantaros for failing to sign a confidentiality agreement that it has declined to enforce against the Ailes Estate, and frozen the arbitration for six months over the dispute.

Moreover, the Panel's demand for Petitioner to sign a cumulative confidentiality stipulation accomplishes nothing other than to further burden, harass, and strip Petitioner of her right to speak.  It is as mindless as insisting that an affiant sign an affidavit twice rather than once to substantiate its authenticity.  Additionally, for Petitioner's failure to sign the document, the Panel has allowed Fox to withhold the final category of discovery, critical to her case; and, any responsive documents about

13

complaints, settlements, investigations or material related to sexual harassment, retaliation and hostile workplace made by her colleagues.

It is thus stunning that Respondents have used Petitioner's refusal as an opportunity to file a Motion to Dismiss the entire arbitration, which would allow them to avoid any cross-examinations, third-party testimony or hearings on the merits, outright denying Ms. Tantaros a full and fair due process. They have simultaneously filed a third, draconian Motion to impose Sanctions against Ms. Tantaros personally. It was errantly and irregularly smuggled into their Opposition to Respondent's Motion to Reconsider the Confidentiality Order as an unauthorized ambush calculated to prevent Ms. Tantaros from refuting Respondent's frolic.

The Motion is also patently frivolous.  Respondents fail to articulate any reason to believe they have been disabled by Petitioner from a full and fair trial of the consequential or material issues in dispute or have sought proportionate discovery as mandated by Rule 26 (b) (1) of the Federal Rules of Civil Procedure.

Respondents' lengthy Motion to Dismiss and for Sanctions is designed to overwhelm the Panel with irrelevancies and showcases nothing new—old wine in new bottles—and to scare and intimidate Petitioner. Among other things, Respondents earlier improperly smuggled a Motion for additional forensics to be performed on Petitioner's electronic devices in a reply to a Motion to Compel additional discovery. Without explanation, the Panel granted their request without affording Ms. Tantaros the same opportunity to compel discovery on Respondent's electronics.

Renewing their absurd insistence on another round of costly forensics on her electronic devices, Respondent's rely on a batch of inadmissible text messages in a separate action to conclude she was a "prolific" user of text messaging.  They provided no supporting metadata; they were not produced in native format; and, they were not verified by an independent third party—the benchmarks for admission of digital evidence in any legal action, including this arbitration.

That standard has not been enforced in this arbitration against Respondents. In contrast, Ms. Tantaros has gone above and beyond the standard.  She had the suspect text messages forensically

analyzed by the world's foremost cyber-security firm, Cycura—the same firm that conducted the

discovery on her devices and forensic examinations.[1] Cycura concluded the messages were fraudulent.

Ms. Tantaros has submitted this analysis to the opposing parties and to the Panel, yet it continues to be

ignored without written explanation, a violation of Tantaros' arbitration agreement with Fox.

Respondent's echo the refrain of the Bellman in Lewis Carroll's "The Hunting of the Snark" by

repeating three times or more that Petitioner's discovery responses have been deficient; and, then

shouting from the rooftops that what they tell you three times must be true. Petitioner has repeatedly

demonstrated the falsity of the assertions in prior arbitration filings.

The Panel has never provided a written opinion setting forth the reasons explaining why Ms.

Tantaros' arguments were unpersuasive as required by her arbitration clause with Fox. The Panel has

never articulated a credible nexus between Respondent's alleged deficient discovery responses and the

Respondents' ability to fairly prosecute or defend the pending claims and counterclaims. The lacunae are

fatal to the Panel's Order requiring Respondent to conduct further forensic discovery of her electronic

devices. Rule 9 of the AAA's Employment Arbitration Rules and Mediation Procedures circumscribes

discovery to that "necessary to a full and fair exploration of the issues in dispute consistent with the

expedited nature of arbitration." Respondent's discovery demands fall far short of Rule 9's threshold.

Indeed, they already enjoy custody or control over all evidence material to proving their claims or

defenses. Far from being obstructionist, Petitioner shared discovery evidence with the Respondents

voluntarily in December of 2017, before a formal discovery schedule and to avoid any accusation of

dilatoriness.

Rule 26 (b) (1) of the Federal Rules of Civil Procedure provides in relevant part: "Parties may

obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case, considering the importance of the issues at stake in the action, the

---

[1] Cycura is the primary cyber-security firm used by the Federal Bureau of Investigation, The Department of Homeland Security, The Defense Intelligence Agency, and several other alphabet agencies including many allied NATO intelligence services.

15

amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Respondents have not come within shouting distance of showing additional, duplicative forensic discovery of Petitioner's electronic devices currently required by Panel satisfies the proportionality standard of Rule 26 (b) (1).

Contrary to Respondents, Rule 9 does not authorize discovery ad infinitum in search of cumulative or peripheral crumbs.  The disputes before the Panel are factually and legally uncomplex.  They are not antitrust claims.  They do not implicate patents or state secrets.   Why are Respondents terrified of a resolution on the merits and cross-examination of witnesses?  Evidence maven John Henry Wigmore said it all: "[Cross-examination is] beyond any doubt the greatest legal engine ever invented for the discovery of truth."  5 J Wigmore, Evidence, section 1367, p. 32 (Chadbourne rev. 1974).

Petitioner has agreed to run every search term requested by the Fox Parties, almost every category and searched her electronic devices, two personal email accounts and her three social media accounts.  In contrast, Respondents have objected to every additional, highly relevant search term requested by Petitioner, almost every category and custodian, and refused to answer critical interrogatories. This forced Petitioner to exhaust resources on a thirty-page Motion to Compel. The Panel granted a minimal number of her requests, and without justification, denied her Motion for Spoliation Sanctions when Fox News Channel openly admitted to destroying evidence, failed to place the necessary privilege hold on relevant documents, and remotely wiped Ms. Tantaros' work Blackberry, putting her at a severe disadvantage as Fox is the keeper of all data on the device. Additionally, Petitioner had a forensic examination done by Cycura on her work Blackberry to prove the device had been wiped remotely by the Administrator (Fox News Channel). The forensic examination concluded additional troubling evidence that Fox News had placed spyware on her devices—both her work and personal electronics—and key-logging software allowing them to monitor her communications and access her phone, camera and microphone remotely.

**Ms. Tantaros has had all her discovery conducted and verified by two (2) independent third parties and produced the material with accompanying metadata in native format. On the other**

16

hand, The Panel has inexplicably permitted Respondents to self-certify, having **no** independent third party verify their discovery, included no supporting metadata on all of their materials, have not produced the documents in native format, and have not been ordered by the Panel to disclose or search their personal or work electronics, let alone have them examined by an independent third-party as they have ordered of Ms. Tantaros. A judicial tribunal would not permit such skewed, asymmetrical, and prejudicial discovery.

Moreover, the Panel has failed to provide a full written opinion setting forth the reasons for the plurality of its Orders, specifically on Supplemental Discovery and the case-altering Decisions on the Motion to Compel, paragraph 1, as required by Respondent's employment contract, Exhibit A, paragraph 8: "The arbitrators shall issue a full written opinion setting forth the reasons for their decisions." The requirement of written opinions is substantive, not ornamental. It ensures that the Panel fully deliberates and digests the arguments and issues before it. They are also necessary for judicial review in the event the Panel leaps over its arbitration guardrails.

The American Arbitration Association counts Fox News Channel and Disney (a corporation that recently acquired Fox News' former parent company, 21st Century Fox) among their largest customers. They are repeat clients, and, unlike judges, the AAA has a financial interest in keeping it that way. These realities cannot go ignored considering the disproportionate, one-sided orders and standards imposed by the Panel without required explanation, the willingness to delay the proceedings over three years and entertain the opposing parties antics, and the astronomical costs saddled on Petitioner in challenging a multi-billion-dollar media giant.

Arbitration is touted as a faster, more cost-effective alternative to litigation. In Petitioner's case, arbitration has proven the opposite. Change in counsel has not caused substantial delay by either side. Without immediate judicial intervention under CPLR 7515 and due process, Petitioner will suffer irreparable financial injury and prejudice by continuing participation in an illegal, interminable, and biased arbitration of her sexual harassment allegations and claims.

### C. The Balance of Equities Favors Petitioner

17

All the equities favor Petitioner. None favor Respondents. They will suffer no prejudice by litigation of Petitioner's sexual harassment allegations or claims before this Court fully protected by due process to prevent a miscarriage of justice. The pending arbitration has barely gotten off home base, and has no schedule to move it over the finish line. Judicial intervention at this point would entail little or no duplication of effort.

**CONCLUSION**

The arbitration that provoked this application has idled for more than three years shrouded in secrecy and inequity. Justice Louis D. Brandeis instructed, "Sunshine is said to be the greatest of disinfectants; electric light the most efficient policeman." Section 7515 of the CPLR incorporates that gospel in preventing enforcement of procedurally and substantively unconscionable mandatory arbitration clauses in employment contracts that cover sexual harassment allegations or claims.

For the reasons set forth above, Petitioner's requests this Court (1) to issue a temporary restraining order precluding Respondents from continuing to arbitrate Petitioner's sexual harassment allegations and claims in AAA Case No. 01-16-0001-7288 pending resolution of this application; (2) to grant Petitioner's request for a preliminary and permanent injunction staying the afore-referenced arbitration; and (3) to declare that CPLR section 7515 prohibits further mandatory arbitration of Petitioner's sexual harassment allegations or claims consistent with the Federal Arbitration Act and assert jurisdiction over the case itself to ensure a fair and timely adjudication that honors due process and the laws of the State of New York.

Dated: July 15, 2019
New York, New York

Respectfully submitted,

/s/ Jonathan Askin
Bruce Fein
250 Joralemon Street
Brooklyn, NY 11201-3700
Phone: 718-780-0622
Email: jonathan.askin@brooklaw.edu
Counsel for Petitioner Andrea Tantaros

18

# DOCUMENT 4

**EXHIBIT 1**

**KUZMA V. PROTECTIVE INS. CO.**

# Kuzma v Protective Ins. Co.

[*1] Kuzma v Protective Ins. Co. 2011 NY Slip Op 51348(U) Decided on June 29, 2011 Supreme Court, Queens County Taylor, J. Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 29, 2011
Supreme Court, Queens County

Ivan Kuzma, Plaintiff(s),

against

Protective Insurance Company, Defendant(s).

13330/09

Janice A. Taylor, J.

This is an action seeking disability benefits for the plaintiff under an insurance policy between himself and the defendant. In his complaint, plaintiff asserts that he was injured on December 14, 2005 when he was involved in a motor vehicle accident on Van Siclen Street at or near its intersection with Avenue S in the County of Kings, City and State of New York. At the time of the accident, plaintiff worked as a driver for Fed Ex Home

Delivery ("Fed Ex"). Plaintiff first applied for disability benefits from the defendant under his no-fault policy. In October, 2006, plaintiff was deemed totally disabled by Fed Ex' physicians. Following the expiration of this no-fault benefits, plaintiff applied for payment from the defendant under his secondary disability policy. It is uncontested that defendant denied [*2]plaintiff's claim for disability benefits. This action was commenced on May 21, 2009 by the filing of a summons and complaint.

By order dated January 10, 2011, this court denied defendant's motion for summary judgment due to defendant's failure to include a signed certification, pursuant to Court Rule 130-1.1(a) with its motion. Defendant Protective Insurance Company ("Protective") now moves, pursuant to CPLR §2221, for leave to renew its prior motion for summary judgment. As the movant has now included the required certification, the instant motion to renew is granted.

Upon renewal, this court will first consider defendant Protective's motion seeking an order, pursuant to CPLR §3025, for leave to amend its answer to include the affirmative defense of statute of limitations. It is well-settled that "a party may amend [its] pleading * * * at any time by leave of court" and that "[l]eave shall be freely given upon such terms as may be just." (CPLR §3025 [b]; Fahey v. County of Ontario, 44 NY2d 934, 935 [1978]; Hempstead Concrete Corp. v. Elite Assocs., 203 AD2d 521, 523[2d Dept. 1994]). Allowing such an amendment is committed "almost entirely to the court's discretion to be determined on a sui generis basis." (See, Leitner v. Jasa Hous. Mgmt. Servs. for the Aged, Inc., 6 AD3d 667 [2d Dept. 2004]; Zeide v. National Cas. Co., 187 AD2d 576 [2d Dept. 1992]; Corsale v. Pantry Pride Supermarkets, 197 AD2d 659, 660 [2d Dept. 1993]; Hickey v. Hudson, 182 AD2d 801, 802 [2d Dept. 1992]). Where, as here, the opposing party fails to make a showing of operative prejudice; i.e., prejudice attributable to the mere omission to plead the defense in the original answer, the amendment may be allowed "during or even after trial" (Murray v. City of New York, 43 NY2d 400, 405 [1977], citing Dittmar Explosives v. A.E. Ottaviano, Inc., 20 NY2d 498, 502 [1967]; see, Breco Envtl. Contrs., Inc. v. Town of Smithtown, 307 AD2d 330 [2d Dept. 2003]; Grall v. Ba Mar, Inc., 233 AD2d 368 [2d Dept. 1996]). As the plaintiff has failed to prove, or to even assert, that he would be prejudiced by the proposed amendment, defendant Protective's motion, pursuant to CPLR §3025, is granted. The supplemental summons and amended complaint annexed to the instant motion is deemed timely served.

Upon amendment of its answer and the inclusion of the affirmative defense of statute of limitations, defendant Protective now moves, pursuant to CPLR §3212, for an order granting summary judgment and dismissing the complaint. It is well-settled that the

proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (See,Zuckerman v. City of New York, 49 NY2d 557, 562 [1980]; Sillman v. Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). Failure to make such a showing necessitates denial of the motion.

CPLR §3212(b) requires that for a court to grant summary judgment it must determine if the movant's papers justify holding, as a matter of law, "that the cause of action or defense has no merit." The evidence submitted in support of the movant must be viewed in the light most favorable to the non-movant (see, Grivas v. Grivas, 113 AD2d 264, 269 [2d Dept. 1985]; Airco Alloys Division, Airco Inc. v. Niagara Mohawk Power Corp., 76 [*3]AD2d 68 [4th Dept. 1980]; Parvi v. Kingston, 41 NY2d 553, 557 [1977].

Defendant Protective asserts that the instant complaint must be dismissed based on documentary evidence, pursuant to CPLR §3211(a)(1),(5), because the plaintiff has failed to commence this action within the contractual time period. A complaint which is facially sufficient may be dismissed if there exists documentary evidence which conclusively contradicts the claims (See, Smuckler v. Mercy College, et al, 244 AD2d 349 [2d Dept. 1997]). In support of its motion, defendant Protective submits, inter alia, the pleadings, the prior motion and responsive papers, a certified copy of the subject insurance policy, its proposed amended answer and a copy of the Note of Issue filed on April 5, 2010.

A review of the subject insurance policy reveals that, paragraph 11 of the General Provisions states:

"Written proof of loss must be furnished to us within ninety (90) days after the date of loss for which claim is made."

Paragraph 13 thereof states:

"No lawsuit may be brought to recover on the Group Master Policy within sixty (60) days after written proof of loss has been given as required by this policy. No such lawsuit may be brought after two (2) years from the time written proof of loss is required to be given.

The movant asserts that, pursuant to the subject insurance policy, plaintiff was required to submit written proof of loss by March 14, 2006 and to commence a lawsuit by March 14, 2008. As aforestated, this action was commenced on May 21, 2009, more than fourteen (14) months after the expiration of the contractual time period.

In opposition to the instant motion, plaintiff does not dispute that the contractual time-period is two years, ninety days from the date of his accident, nor does plaintiff dispute that he failed to commence this action within the contractual time period. Instead, plaintiff asserts that the statute of limitations provision of the subject insurance policy is unconscionable and must be voided by this court.

It is well-settled that the determination of whether a contract, or a provision thereof, is unconscionable is a matter of law reserved for the court (See, Wilson Trading Corp. V. David Ferguson, Ltd., 23 NY2d 398 [1968]). For a court to determine that a contract, or a contractual provision, is unconscionable, a court must determine that the agreement is so one-sided that it "shocks the conscience such that no person in his or her right mind would make it on the one hand, and no honest and fair person would accept it on the other" (Kojovic v. Goldman, 35 AD3d 65, 823 N.Y.S.2d 35 [1st Dept. 2006] citing Christian v. Christian, 42 NY2d 63, 365 N.E.2d 849, 396 N.Y.S.2d 817 [1977]). [*4]

A finding of unconscionability usually requires both a showing that the contract was procedurally and substantively unconscionable when made (emphasis added) (See, Gillman v. Chase Manhattan Bank, N.A., 73 NY2d 1, 534 N.E.2d 824, 537 N.Y.S.2d 787 [1988]). A contract is procedurally unconscionable when one of the parties lacked a meaningful choice in its execution. Misrepresentation of facts, high pressure sales tactics and unequal bargaining position have each been found to be examples of elements of a procedurally unconscionable contract (See, Matter of Friedman, 64 AD2d 70, 407 N.Y.S.2d 999 [2nd Dept 1978]). A contract is substantively unconscionable when the terms of the contract are unreasonably favorable to the other party (Gillman, supra). Examples of elements of substantive unconscionability include contracts that contain inflated prices, unfair disclaimers of warranty and termination clauses (See, Matter of Friedman, supra). While a determination of unconscionability generally requires a court to find elements of both procedural and substantive unconscionability, a contract, or provision thereof, that is deemed to be outrageous on grounds of substantive unconscionability alone can also be stricken by the court (See, Gillman, supra; State of New York v. Wolowitz, 96 AD2d 47[1983]).

In ruling whether a contract is procedurally unconscionable, a court may consider several factors such as the professional experience of the parties, the level of negotiations that occurred during the formation of the contract and the equality of the bargaining positions of the parties (See, Industralease Automated and Scientific Equipment Corporation v. R.M.E. Enterprises, Inc., et al, 58 Ad2d 482 [2d Dept. 1977]). In the instant action, it is uncontested that plaintiff is neither an attorney nor an experienced insurance professional;

and that the subject insurance policy was a part of a pre-negotiated package of benefits he received through his employment with Fed Ex. Neither party asserts that plaintiff actually signed the subject insurance policy and affirmatively agreed to its terms.

In considering plaintiff's allegation of procedural unconscionability of the terms of the subject policy, this court must take into account plaintiff's lack of bargaining power in the formation of the agreement, whether each party had a reasonable opportunity to understand the terms of the contract (See, Gillman, supra). It is clear that plaintiff is neither a legal nor an insurance professional and that he had no opportunity to negotiate any of the terms of the subject policy. Thus, this court finds that, due to the overwhelmingly unequal bargaining power of the parties in the formation of the contract, the disputed contractual statute of limitations contained within the subject policy is procedurally unconscionable.

This court must also determine if the contractual statute of limitations is substantively unconscionable. In actions for breach of contract, the cause of action accrues, and the statute of limitations begins, from the time of the breach (See, McCoy v. Feinman, 99 NY2d 295 [2002]; Fourth Ocean Putnam Corp. v. Interstate Wrecking Company, 66 NY2d 38 [1985]; John J. Kasner & Co. v. City of New York, 46 NY2d 544 [1979]; Mainline Electric Corp. v. East Quogue Union Free School District, 46 AD3d 859 [2d Dept. 2007]; Henry Boeckmann, Jr. and Associates v. Board of Education, Hempstead [*5]Union Free School District No. 1. et al., 207 Ad2d 773 [2d Dept. 1994]).

Pursuant to the terms of subject policy, the defendant had no obligation to pay under plaintiff's secondary disability policy until after the March 1, 2008 expiration of the three-year no-fault benefit period. Until plaintiff actually demanded payment from the defendant and said demand was refused, plaintiff had no cause of action against the defendant for breach of contract. However, the terms of the subject policy require plaintiff to commence an action within two years, ninety days of the underlying accident, before the expiration of the no-fault benefit period. Thus, contrary to established New York law, the subject insurance policy requires plaintiff's contractual statute of limitations to begin to run before he had an enforceable cause of action (See, McCoy, supra; Fourth Ocean Putnam Corp., supra; Mainline Electric Corp., supra).

An examination of the facts as alleged by the parties reveals that, after the expiration of his no-fault benefits, plaintiff had less than two weeks to demand payment from the defendant, for that demand to be refused and for the plaintiff to commence an action for breach of contract. Following a demand from the plaintiff, it was the defendant who controlled when it would pay, or refuse to pay under this disability policy. Thus, the subject insurance policy

gave defendant the opportunity to delay its refusal to pay until after the expiration of the
contractual statute of limitations. Additionally, if, by the March 14, 2008 expiration of the
contractual statute of limitations, plaintiff had not yet demanded payment and said
demand had not yet been rejected by the defendant, plaintiff's contractual time to
commence a lawsuit would have expired before the defendant ever breached its contractual
obligations. Moreover, even if the refusal to pay were ultimately determined to be a breach
of contract, the terms of the contractual statute of limitations would have eliminated the
possibility that the defendant could be sued for the breach. Thus, this court finds that the
disputed contractual statute of limitations is so unreasonably favorable to the defendant
that said provision is substantively unconscionable.

In Day Op of North Nassau, Inc. d/b/a Ambulatory Surgery of North Nassau v. Viola, the
Supreme Court of New York, Nassau County found that a contractual term was
unconscionable where it allowed a defendant to benefit from its own breach (See, Day Op
of North Nassau, Inc. d/b/a Ambulatory Surgery of North Nassau v. Viola, 2007 NY Slip
Op. 51542U [Supreme Court, Nassau County, 2007]). Citing definitions and examples of
unconscionability set forth in Gillman v. Chase Manhattan Bank, N.A. and State of New
York v. Wolowitz, the Honorable Ira B. Warshawsky, J.S.C. ruled that a term of a
shareholders' agreement which eliminated the shareholder's right to contest the forced sale
of her shares, even if the sale resulted from the wrongful breach of contract by the
corporation, was oppressive, unjust and unconscionable (See, Day Op of North Nassau, Inc.
d/b/a Ambulatory Surgery of North Nassau, supra; Gillman v. Chase Manhattan Bank,
N.A., supra, State of New York v. Wolowitz, supra). While the decision of the Supreme
Court, Nassau County is not binding on the undersigned, this court similarly finds that,
pursuant to the rules of law set forth by both the New York Court of Appeals and the
Supreme Court, Appellate Divisions, the contractual statute of limitations of the subject
[*6]insurance policy is both procedurally and substantively unconscionable. Where a
contract, or a provision thereof, has been deemed unconscionable, it may be voided by this
court (See, generally, King v. Fox, 7 NY3d 181 [2006]). Thus, the contractual statute of
limitations will not be enforced by this court. Accordingly, that portion of the defendant's
motion which seeks summary judgment and dismissal of the complaint, pursuant to CPLR
§3212, §3211(a)(1),(5) is denied.

Defendant also moves, pursuant to CPLR §3212, §3211(a)(7), for summary judgment and
dismissal of the complaint for plaintiff's failure to state a cause of action. A motion to
dismiss made pursuant to CPLR §3211(a)(7), can only be granted if, from the pleadings'
four corners, factual allegations are not discerned which manifest any cause of action
cognizable at law. In furtherance of this task, the court liberally construes the complaint,

FILED: NEW YORK COUNTY CLERK 07/15/2019 07:45 PM          INDEX NO. 156936/2019

NYSCEF DOC. NO. 11   Kuzmin v Protective Life Co. :: 2011 :: New York Other Courts Decisions :: New York Case Law :: New York Law :: US Law :: Justia   RECEIVED NYSCEF: 07/15/2019

accepts as true the facts alleged in the complaint and any submissions in opposition to the dismissal motion, and accords the plaintiff the benefit of every possible favorable inference (See, 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 NY2d 144 [2002]).

In support of its motion, defendant asserts that the complaint must be dismissed because plaintiff does not yet have a ripe cause of action. Paragraph four of the General Provisions of the subject policy states:

Subrogation: We shall be subrogated to any and all rights of recovery which and Covered Person may have or acquire against any party or the insurer of any party for benefits paid or payable under the Group Master Policy. Any Covered Person who receives benefits from us for any accidental injury or death therefrom shall be deemed to have assigned their right of recovery for such benefits to us and agree to do what is necessary to secure such recovery, including execution of all appropriate papers to cause repayment to us. If the third party pays a Covered Person as a result of judgment, arbitration, compromise settlement or other arrangement for injuries sustained by the Covered Person for which benefits were paid under the Group Master Policy, the Covered Person agrees to repay us for all benefits paid. Cost of collection including attorney's fees and court costs shall be shared pro rata between the Covered Person and us.

In addition, if benefits are payable to a Covered Person under the Group Master Policy after a third party pays the Covered Person, we will take credit for all amounts received by the Covered Person, less amounts paid to us, against all future payments under the Group Master Policy. No amount shall be owed by us until the amount of benefits we would have paid on behalf of or to the Covered Person exceeds the amount received by the Covered Person from a third party.

In support of its motion, defendant asserts that plaintiff has been adjudicated to be partially disabled. The maximum amount of payment under the policy is $750.00 per month. It is uncontested that plaintiff commenced and settled a lawsuit related to this action, in March 2008, with a third-party for the sum of $21,436.00. Under the subrogation [*7]clause of the subject policy, defendant asserts it will take plaintiff 36 months, at $750.00 per month, to run off the credit from the settlement before the defendant must pay plaintiff's disability claims. In opposition, plaintiff asserts that he was deemed to be totally disabled by a physician employed by Fed Ex Delivery and that his settlement was for pain and suffering, not for the lost wages that he claims under this policy. Thus, plaintiff asserts that the subrogation clause does not apply and that his action is ripe.

Case 1:19-cv-02131-ALC   Document 1-2   Filed 07/30/19   Page 48 of 87

FILED: NEW YORK COUNTY CLERK 07/15/2019 07:45 PM    INDEX NO. 156936/2019

NYSCEF DOC. NO. Kuzma v Protective Ins. Co. :: 2011 :: New York Other Courts Decisions :: New York Case Law :: New York Law :: US Law :: Justia5/2019

Case 1:19-cv-02131-ALC Document 1-2 Filed 07/30/19 Page 49 of 87

Thus, when this court accepts as true plaintiff's version of the facts, as required by CPLR §3211(a)(7), it is clear that plaintiff has properly alleged a cognizable cause of action. Accordingly, defendant's motion to dismiss for plaintiff's failure to state a cause of action is denied.

Dated: June 29, 2011

JANICE A. TAYLOR, J.S.C.

# DOCUMENT 5

**EXHIBIT 2**

**FOX-TANTAROS ARBITRATON CLAUSE**

## 7. INTERNET RESTRICTIONS:

Performer shall not participate in or publish a web log (i.e. a "blog"), post on internet message boards or chat rooms, maintain a website or publish any other similar content on the internet or through any other form of communication or new media (including ipads and ipods), whether now known or hereafter devised, via personal computer, personal email, instant messenger, blackberry, cell phones or other wireless or online method, or any other method whether now known or hereafter devised, without Fox's prior permission in each instance. Fox agrees to set up a web page dedicated to Performer on Fox's website, Foxnews.com, and to enhance Performer's presence on Fox's social media platforms, including Facebook, Twitter, and Instagram.

## 8. ARBITRATION:

Any controversy, claim or dispute arising out of or relating to this Agreement or your employment shall be brought before a mutually selected three-member arbitration panel and held in New York City in accordance with the rules of the American Arbitration Association then in effect. The arbitrators shall issue a full written opinion setting forth the reasons for their decisions. Such arbitration, all filings, evidence and testimony connected with the arbitration, and all relevant allegations and events leading up to the arbitration, shall be held in strict confidence. Judgment may be entered on the arbitrators' award in any court having jurisdiction; however, all papers filed with the court either in support of or in opposition to the arbitrators' decision shall be filed under seal. Breach of confidentiality by any party shall be considered to be a material breach of this Agreement.

## 9. PROMOTION

Performer shall from time to time make mutually agreeable personal appearances in connection with the Programs as and when reasonably requested by Fox, and shall also render services for promotional announcements, both television and radio, which may be used in any media, all without any additional compensation, and provided Performer is not required to endorse any product or service.

## 10. SECTION 508 OF THE FEDERAL COMMUNICATIONS ACT

Performer warrants that neither Performer, nor to the best of Performer's knowledge, information and belief, has any person accepted or agreed to accept, or paid or agreed to pay, any money, service or any valuable consideration, as defined in Section 508 of the Communications Act of 1934, as amended, for the broadcast of any matter contained in the Program, and Performer further warrants that Performer shall not, during the Term hereof, accept or agree to accept (except from Fox), or pay or agree to pay any money, service or any valuable consideration as defined in Section 508 of the Communications Act of 1934, as amended, for the broadcast of any matter

11

# DOCUMENT 6

**EXHIBIT 3**

**ORDER ON SUPPLEMENTAL DISCOVERY MOTIONS**

American Arbitration Association          Employment Arbitration Tribunal

FOX NEWS NETWORK, LLC,
                        Claimant

              v.                              Case # 01-16-0001-7288

ANDREA TANTAROS,
                        Respondent
-----------------------------------------------------------
ANDREA TANTAROS,
                        Counter-Claimant,

              v.                              Order on Supplemental Discovery Motions

MOTIONS  ORDER
FOX NEWS NETWORK, LLC, ROGER AILES, WILLIAM
SHINE, DIANNE BRANDI, IRENA BRIGANTI, and
SUZANNE SCOTT,

                        Counterclaim-Respondents

The Panel has considered the Supplemental Discovery Motions submitted by the parties and decides as follows:

1. Motion by Claimant and Counterclaim-Respondents to require Respondent to execute a confidentiality stipulation. This motion is granted. Respondent is directed to sign the confidentiality stipulation by April 16, 2019. The obligation of Claimant and Counterclaim-Respondents to provide discovery of confidential information is on hold until Respondent signs the confidentiality stipulation and delivers the executed confidentiality stipulation to Claimant and Counterclaim-Respondents.

2. Motion by Claimant and Counterclaim-Respondents to require Respondent to have a forensic examination of all her devices by a qualified third-party, as Ordered by this

Panel's Order dated January 21, 2019. This motion is granted. The forensic examination required by the Order of January 21, 2019 and this Order, must be conducted subsequent to January 21, 2019. The examination must be completed by May 15, 2019.

3. Motion by Respondent to require Claimant and Counterclaim-Respondents to schedule depositions. This motion is denied, subject to renewal after all discovery required by the January 21, 2019 Order and this Order is complete.

4. The terms of the Order dated January 21, 2019 remain in full force and effect except as herein specifically modified. All deadlines provided in the Order of January 21, 2019 are extended to May 15, 2019, except as herein specifically stated.

5. All other supplemental motions not specifically granted are denied.

Respondent has elected to proceed *pro se*. The Panel advises her that she has a continuing right to be represented by an attorney in this arbitration.

**SO ORDERED,**

Dated: April 12, 2019

L. Paul Kehoe   Arbitrator

S/Ralph S. Berger

Ralph S. Berger   Arbitrator

S/Howard Edelman

Howard Edelman   Arbitrator

# DOCUMENT 7

**EXHIBIT 4**

**PETITIONER'S LETTER TO PANEL FLAGGING CONFIDENTIALITY VIOLATONS**

CRAIG WEINER
212 980 7404 TEL
CWEINER@ROBINSKAPLAN.COM

October 2, 2018                              *Via E-Mail*

Honorable L. Paul Kehoe, Esq.
Ralph S. Berger, Esq.
Howard C. Edelman, Esq.
c/o Michele Gomez
Manager of ADR Services
American Arbitration Association
Labor, Employment & Elections
950 Warren Avenue
East Providence, RI 02914
E-Mail: MicheleGomez@adr.org

> Re:  *Fox News Network, LLC v. Andrea Tantaros / Andrea Tantaros v. Fox News Network LLC et al.*, American Arbitration Association Case No. 01-16-00001-7288

Dear Messrs. Kehoe, Berger and Edelman:

We write to apprise the Panel of certain violations by the Estate of Roger Ailes ("Estate") of its confidentiality obligations in connection with the above-referenced Arbitration, and to request that the Panel remind the Estate of such obligations and instruct it not to commit further violations thereof.

Specifically, on May 1, 2018, the Estate filed a petition in the Supreme Court of the State of New York seeking to stay the Arbitration as to it (N.Y. Sup. Ct. Index No. 652130/2018) (the "Stay Action"). In support of its petition, counsel for the Estate filed four exhibits containing: (i) correspondence between counsel for the parties to the Arbitration and AAA manager of ADR Services, Michele Gomez; (ii) a letter from the Estate's counsel to the Panel; (iii) rulings by the Panel regarding depositions; and (iv) the Panel's April 17, 2018 Decision and Order granting Ms. Tantaros' application to join the Estate. (*See* Ex. 1). Although all of these documents are confidential, the Estate appears to have made no attempt to file them under seal, and thus they are now publicly accessible.

The public filing of these confidential documents by the Estate was in blatant violation of: (i) AAA Employment Arbitration Rule 23, which expressly contemplates the confidentiality of these proceedings; (ii) the Confidentiality

October 2, 2018                                    VIA E-MAIL
Page 2

Stipulation and Order in this case, which prohibits public disclosure of "all
documents, information or things . . . produced or created in connection with this
action . . . ."; and (iii) paragraph 8 of Exhibit A to Ms. Tantaros's September 12,
2014 employment agreement, which provides that the "[A]rbitration, all filings,
evidence and testimony connected with the [A]rbitration, and all relevant
allegations and events leading up to the [A]rbitration, shall be held in strict
confidence."

　　　　According to a June 20, 2018 letter filed in the Stay Action, the Estate intends
to move for summary judgment in that case. Ms. Tantaros thus respectfully
requests that the Panel remind the Estate of its confidentiality obligations and
direct it to make any future filings of documents relating to this Arbitration in the
Stay Action or in any other proceeding under seal.

　　　　　　　　　　　　　　　　Sincerely,


　　　　　　　　　　　　　　　　Craig Weiner

cc:　　Peter Calamari, Esq. (petercalamari@quinnemanuel.com)
　　　　Linda C. Goldstein, Esq. (Linda.Goldstein@dechert.com)
　　　　Marion Bachrach, Esq. (marion.bachrach@tklaw.com)

# DOCUMENT 8

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ANDREA TANTAROS

       *Petitioner.*

vs.

Index No. 156936/2019

FOX NEWS CHANNEL, LLC.. THE ESTATE OF ROGER
AILES, WILLIAM SHINE, SUZANNE SCOTT, DIANNE
BRANDI, IRENA BRIGANTI

       *Respondents.*

**EMEGENCY AFFIDAVIT OF
BRUCE FEIN IN SUPPORT OF
PETITION'S ORDER TO SHOW
CAUSE FOR A TEMPORARY
RESTRAINING ORDER AND
PRELIMINARY INJUNCTION TO
STAY ARBITRATION OF
PETITIONER'S SEXUAL
HARRASSMENT ALLEGATIONS
AND CLAIMS IN AAA
EMPLOYMENT ARBITRATION
CASE # 01-16-001-7288**

**BRUCE FEIN,** an attorney duly admitted to practice law in the District of Columbia and admitted pro

hac vice in the above-captioned case to practice in New York, being sworn, hereby says and deposes as

follows based on personal knowledge.

1.    I represent Petitioner in AAA Arbitration Case # 01-16-001-7288.

2.    Petitioner is entitled under new section 7515 of the CPLR to have her sexual harassment

allegations and claims pending before the arbitration Panel adjudicated in this Court.

3.    The Panel has exhibited extreme incompetence and bias against Petitioner that is continuing

to cause her staggering immediate financial and professional harm.

4.    The arbitration has passed its third anniversary with no light at the end of the tunnel for

Petitioner.

5.  At present, Respondents are seeking dismissal of Petitioner's sexual harassment allegations and claims and personal sanctions before the arbitration Panel.

6.  Pursuant to new section 7515 of the CPLR, the arbitration must be discontinued in favor of an adjudication in this Court of her sexual harassment allegations and claims against Respondents.

7.  Petitioner seeks a temporary restraining order and preliminary injunction against Respondents precluding them from further arbitration of the above-captioned proceeding.

8.  No previous application for relief has been made.

Bruce Fein

District of Columbia: SS

This instrument was acknowledged before me on ___ day of ___, 20___, by ___

Notary Public's Signature
My Commission Expires November 16, 2021

## CPLR 2309(c) CERTIFICATE OF CONFORMITY

The undersigned does hereby certify that he is an attorney at law duly admitted to

practice in the District of Columbia and is a resident of the State of Maryland; that he makes this

affidavit in accordance with the requirements of New York State Law CPLR 2309(c) and the

Clerk of the County of New York, NY pertaining to the acknowledgement of the proof of the

July 17, 2019, Emergency Affidavit of Bruce Fein, Esquire in Support of Order to Show Cause,

attached hereto and to be filed in New York Supreme Court, County of New York; that the

foregoing acknowledgment of Bruce Fein, Esquire named in the foregoing instrument taken

before Christopher Tate, a Notary in the District of Columbia, being the state in which it was

taken, and based upon my review thereof, appears to conform with the law of the District of

Columbia as to the purpose for which it is submitted and filed.

**FURTHER AFFIANT SAYETH NOT.**

_____
W. Bruce DelValle
D.C. Bar No. 1520906

**DISTRICT OF COLUMBIA          )**

This instrument was signed and sworn to before me on this ___*17th*___ day of July, 2019,

by W. Bruce DelValle.

[Seal]

_____
**Signature of Notarial Officer**

_____
**Title**

**My Commission Expires:** ___11/16/21___

District of Columbia: SS

This instrument was acknowledged before me
on _1_ day of _____, 20_19_ by _____

_____
Notary Public's Signature
My Commission Expires November 16, 2021

**Page 1 of 1**

# DOCUMENT 9

**SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK**

_____

ANDREA TANTAROS

              _Petitioner,_

vs.

             Index No. _____

             **NOTICE OF APPEARANCE**

             Petitioner Andrea Tantaros

FOX NEWS CHANNEL, LLC., THE ESTATE OF ROGER AILES, WILLIAM SHINE, SUZANNE SCOTT, DIANNE BRANDI, AND IRENA BRIGANTI,

              _Respondents._

             **PETITION TO STAY ARBITRATION OF PETITIONER'S SEXUAL HARRASSMENT ALLEGATIONS AND CLAIMS IN EMPLOYMENT ARBITRATION CASE # 01-16-001-7288 AND DECLARATORY JUDGMENT**

_____

**PLEASE TAKE NOTICE,** that Jonathan Askin has been retained as counsel for Petitioner Andrea Tantaros,

and requests that a copy of all papers in this action be served upon Jonathan Askin at 250 Joralemon

Street, Brooklyn, NY 11201, in hard copy and via the Court's e-filing system.

Dated:  July 15, 2019

  __/s/_____

Jonathan Askin
Counsel for Respondent Andrea Tantaros

Jonathan Askin
NY Bar Registration Number: 2473437
250 Joralemon St.
Brooklyn, NY 11201-3700
(718) 780-0622
Email:  jonathan.askin@brooklaw.edu

# DOCUMENT 10

SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK

------------------------------------------------------------------------------------

ANDREA TANTAROS

        *Petitioner,*

vs.

FOX NEWS CHANNEL, LLC., THE ESTATE OF ROGER
AILES, WILLIAM SHINE, SUZANNE SCOTT, DIANNE
BRANDI, IRENA BRIGANTI

        *Respondents.*

Index No.

**AFFIDAVIT OF BRUCE FEIN IN
SUPPORT OF ORDER FOR
ADMISSION PRO HAC VICE**

**PETITION TO STAY
ARBITRATION OF PETITIONER'S
SEXUAL HARRASSMENT
ALLEGATIONS AND CLAIMS IN
EMPLOYMENT ARBITRATION
CASE # 01-16-001-7288 AND
DECLARATORY JUDGMENT**

I, BRUCE E. FEIN, being duly sworn, deposes and says, pursuant to section 520.11 of the Rules of the Court

of Appeals and section 602.2 (a) of the Rules of the Appellate Division, First Department, as follows:

1.  I am a member of the law firm of Fein & DelValle, PLLC, located at 300 New Jersey Avenue,

    N.W., Suite 900, Washington, D.C. 20001, counsel for Andrea Tantaros in the above-

    captioned matter. I am fully familiar with the facts and proceedings of this case.

2.  This affidavit is submitted in support of the Motion for Admission, *Pro Hac Vice,* of Bruce E.

    Fein to act as counsel for Andrea Tantaros for the purpose of appearing and participating in

    the above-captioned action.

3. I am a reputable attorney in good standing with the District of Columbia Bar, Bar Number

   446615. I have been practicing law in the District of Columbia since 1996. I hereby request

   this Court's admission to participate in the proceedings in the above-captioned case.

4. If granted admission to participate in the above-captioned litigation, I, Bruce E. Fein, will be

   associated in these proceedings with the following local counsel:

   Jonathan Askin
   NY Bar Registration Number 2473437
   250 Joralemon Street
   Brooklyn, NY 11201-3700
   Phone: 718-780-0622
   Email: Jonathan.askin@brooklaw.edu

5. I, Bruce E. Fein, have not been subject to disciplinary action by the Bar of the District of

Columbia of the courts of any jurisdiction in which I have been licensed.

6. I, Bruce E. Fein, within the past five years, have not been denied admission to the courts of

any state or to any federal court.

7. I, Bruce E. Fein, have not been admitted in a New York State Court.

8. I, Bruce E. Fein, am familiar with the standards of professional conduct required of

members of the New York Bar, including the Rules of Court governing conduct of attorneys and the

Disciplinary Rules of the Code of Professional Responsibility.

WHEREFORE, PREMISES CONSIDERED, Bruce E. Fein prays for entry of an Order of Admission *Pro*

*Hac Vice* to participate in the above-captioned action.

I state under penalty of perjury under the laws of the District of Columbia that the foregoing is

true and correct. Executed this ____ day of July, 2019, in the District of Columbia.



_____

Bruce E. Fein

District of Columbia: SS

Sworn to and subscribed before me on
the 15th day of July, 2019

_____
Notary Public's Signature
My Commission Expires 5/14/21

# DOCUMENT 11

**SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK**
_____

PROPOSED ORDER FOR PRO HAC VICE APPLICATION

INDEX NO.

ANDREA TANTAROS

                *Petitioner,*                         Index No. _____

vs.


FOX NEWS CHANNEL, LLC., THE ESTATE OF ROGER
AILES, WILLIAM SHINE, SUZANNE SCOTT, DIANNE
BRANDI, IRENA BRIGANTI,

                *Respondents.*               **PETITION TO STAY
ARBITRATION OF PETITIONER'S
SEXUAL HARRASSMENT
ALLEGATIONS AND CLAIMS IN
EMPLOYMENT ARBITRATION
CASE # 01-16-001-7288 AND
DECLARATORY JUDGMENT**


_____


ORDER OF ADMISSION PRO HAC VICE

Bruce E. Fein, having applied to this Court for admission pro hac vice to represent Petitioner Andrea
Tantaros in this action, and said applicant having submitted a satisfactory Affidavit in Support, it is now
therefore

ORDERED that the application is granted and Bruce E. Fein is permitted to appear and participate in this
action on behalf of Andrea Tantaros; and it is further

ORDERED that he shall at all times be associated herein with counsel who is a member in good standing
of the Bar of the State of New York and is attorney of record for the party in question and all pleadings,
briefs and other papers filed with the court shall be signed by the attorney of record, who shall be held
responsible for such papers and for the conduct of this action; and it is further

ORDERED that, pursuant to Section 520.11 of the Rules of the Court of Appeals and Section 602.2 of the
Rules of the Appellate Division, First Department, the attorney hereby admitted pro hac vice shall abide

by the standards of professional conduct imposed upon members of the New York Bar, including the Rules of Court governing the conduct of attorneys and the Disciplinary Rules of the Code of Professional Responsibility; and it is further

ORDERED that he shall be subject to the jurisdiction of the courts of the State of New York with respect to any acts occurring during the course of his participation in this matter; and it is further

ORDERED that said counsel shall notify the court immediately of any matter or event in this or any other jurisdiction which affects his standing as a member of the Bar.

ENTER:


_____

Hon. David Cohen
Justice of the Supreme Court

# DOCUMENT 12

At Commercial Division Part ____
of the Supreme Court of the State of
New York, held in and for the County of
New York, at the Courthouse located at
60 Centre Street, New York, New York,
on the ____ day of July, 2019.

PRESENT:

_____, J.S.C.
_____x

ANDREA K. TANTAROS

                         Petitioner,

     -against-                                      Index No. <u>156936/2019</u>

                                                   **ORDER TO SHOW CAUSE
FOR A RESTRAINING
ORDER AND
PRELIMINARY
INJUNCTION**

FOX NEWS CHANNEL, LLC., THE ESTATE OF
ROGER AILES, WILLIAM SHINE, SUZANNE SCOTT,        **Oral Argument Requested**
IRENA BRIGANTI, DIANNE BRANDI.

                        Respondent.
_____x

Upon the accompanying Petition dated July ___, 2019, in Support of this Order to Show Cause, dated July

___, 2019, and exhibits thereto, and the Memorandum of Law in Support of this Order to Show Cause,

dated July ___, 2019; and good cause having been shown it is hereby:

**ORDERED** that Respondents Fox News Channel, LLC., The Estate of Roger Ailes, William Shine,

Dianne Brandi and Irena Briganti show cause before this Court, Commercial Division Part ___, at the

New York County Courthouse, Room ____ 60 Centre Street, New York, New York on July ___2019, at

___ o'clock in the _____, or as soon thereafter as counsel can be heard, why an order should not be

entered in this action (i) temporarily restraining the Respondents from continuing proceeding against

Petitioner Andrea Tantaros in an arbitration pending before the American Arbitration Association, Case

No: 01-16-0001-7288 ("The Arbitration") pending resolution of Petitioner's application (ii)granting her

request for a preliminary and permanent injunction staying the arbitration and (iii) declaring that under

CPLR section 7515 the Arbitration Panel ("The Panel") has no further jurisdiction over Petitioner's

sexual harassment allegations and claims, including Respondent's claim that Petitioner violated Fox New

Channel's book guidelines which constitutes retaliation against Petitioner's sexual harassment allegations

or claims; and it is further

**ORDERED** that sufficient reason having been shown therefore, pending the hearing and determination of

this application, Respondents shall be temporarily restrained, and it is further

**ORDERED** that service on Respondents by made by overnight mail to the following addresses:


Fox News Channel, LLC.
Suzanne Scott
Irena Briganti
Dianne Brandi
c/o Kristina Yost
Jones Day
250 Vesey Street
New York, NY

William Shine
c/o Marion Bachrach
Thompson and Knight, LLP

900 Third Avenue
20th Floor
New York, NY 10022

The Estate of Roger Ailes
Elizabeth Ailes
c/o Peter Calamari
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue

**ORDERED** that oral argument is requested on the return date of this motion.


ENTER


_____
      J.S.C.

# DOCUMENT 13

# REQUEST FOR JUDICIAL INTERVENTION

**UCS-840 (7/2012)**

| For Court Clerk Use Only: |
|---|
| IAS Entry Date |
| |
| Judge Assigned |
| |
| RJI Date |
| |

SUPREME **COURT, COUNTY OF** NEW YORK

**Index No:** _____ **Date Index Issued:** _____/_____/_____

**CAPTION:** Enter the complete case caption. Do not use et al or et ano. If more space is required, attach a caption rider sheet.

ANDREA TANTAROS

**Plaintiff(s)/Petitioner(s)**

-against-

FOX NEWS, LLC, THE ESTATE OF ROGER AILES, WILLIAM SHINE, SUZANNE SCOTT, DIANNE BRANDI, IRENA BRIGANTI.

**Defendant(s)/Respondent(s)**

## NATURE OF ACTION OR PROCEEDING: Check ONE box only and specify where indicated.

| MATRIMONIAL | COMMERCIAL |
|---|---|
| ☐ Contested | ☐ Business Entity (including corporations, partnerships, LLCs, etc.) |
| **NOTE:** For all Matrimonial actions where the parties have children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum.** For Uncontested Matrimonial actions, use RJI form UD-13. | ☐ Contract |
| | ☐ Insurance (where insurer is a party, except arbitration) |
| | ☐ UCC (including sales, negotiable instruments) |
| **TORTS** | ☐ Other Commercial:_____ |
| ☐ Asbestos | (specify) |
| ☐ Breast Implant | **NOTE:** For Commercial Division assignment requests [22 NYCRR § 202.70(d)], complete and attach the **COMMERCIAL DIV RJI Addendum.** |
| ☐ Environmental:_____ | |
| (specify) | **REAL PROPERTY**: How many properties does the application include?_____ |
| ☐ Medical, Dental, or Podiatric Malpractice | ☐ Condemnation |
| ☐ Motor Vehicle | ☐ Mortgage Foreclosure (specify): ☐ Residential ☐ Commercial |
| ☐ Products Liability:_____ | Property Address:_____ |
| (specify) | **NOTE:** For Mortgage Foreclosure actions involving a one- to four-family, owner-occupied, residential property, or an owner-occupied condominium, complete and attach the **FORECLOSURE RJI Addendum.** |
| ☐ Other Negligence:_____ | |
| (specify) | |
| ☐ Other Professional Malpractice:_____ | ☐ Tax Certiorari - Section: _____ Block: _____ Lot: _____ |
| (specify) | ☐ Tax Foreclosure |
| ☐ Other Tort:_____ | ☐ Other Real Property:_____ |
| (specify) | (specify) |

| OTHER MATTERS | SPECIAL PROCEEDINGS |
|---|---|
| ☐ Certificate of Incorporation/Dissolution [see **NOTE** under Commercial] | ☒ CPLR Article 75 (Arbitration) [see **NOTE** under Commercial] |
| ☐ Emergency Medical Treatment | ☐ CPLR Article 78 (Body or Officer) |
| ☐ Habeas Corpus | ☐ Election Law |
| ☐ Local Court Appeal | ☐ MHL Article 9.60 (Kendra's Law) |
| ☐ Mechanic's Lien | ☐ MHL Article 10 (Sex Offender Confinement-Initial) |
| ☐ Name Change | ☐ MHL Article 10 (Sex Offender Confinement-Review) |
| ☐ Pistol Permit Revocation Hearing | ☐ MHL Article 81 (Guardianship) |
| ☐ Sale or Finance of Religious/Not-for-Profit Property | ☐ Other Mental Hygiene:_____ |
| ☐ Other:_____ | (specify) |
| (specify) | ☐ Other Special Proceeding:_____ |

## STATUS OF ACTION OR PROCEEDING: Answer YES or NO for EVERY question AND enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons w/notice been filed? | ☐ | ☒ | If yes, date filed: _____/_____/_____ |
| Has a summons and complaint or summons w/notice been served? | ☐ | ☒ | If yes, date served: _____/_____/_____ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____/_____/_____ |

## NATURE OF JUDICIAL INTERVENTION:
Check ONE box only AND enter additional information where indicated.

- [ ] Infant's Compromise
- [ ] Note of Issue and/or Certificate of Readiness
- [ ] Notice of Medical, Dental, or Podiatric Malpractice  Date Issue Joined: _____/_____/_____
- [ ] Notice of Motion  Relief Sought: TRO, PRELIMINARY INJUNCTION,  Return Date: _____/_____/_____
- [ ] Notice of Petition  Relief Sought: DIVESTURE OF ARBITRAL  Return Date: _____/_____/_____
- [x] Order to Show Cause  Relief Sought: JURISDICTION UNDER 7515  Return Date: _____/_____/_____
- [ ] Other Ex Parte Application  Relief Sought: _____
- [ ] Poor Person Application
- [ ] Request for Preliminary Conference
- [ ] Residential Mortgage Foreclosure Settlement Conference
- [ ] Writ of Habeas Corpus
- [ ] Other  (specify): _____

## RELATED CASES:
List any related actions.  For Matrimonial actions, include any related criminal and/or Family Court cases.
If additional space is required, complete and attach the **RJI Addendum**.  If none, leave blank.

| Case Title | Index/Case No. | Court | Judge (if assigned) | Relationship to Instant Case |
|---|---|---|---|---|
| ANDREA TANTAROS vs. FOX NEWS CHANNEL, LLC, THE ESTATE OF ROGER AILES, WILLIAM SHINE, SUZANNE SCOTT, DIANE BRANDI, IRENA BRIGANTI. | 157054/2016 | | Hon. David B. Cohen | This action seeks a TRO/injunction and nullification of jurisdiction under CPLR 7515 related to this case. |
| THE ESTATE OF ROGER AILES vs. ANDREA TANTAROS | 652130/2018 | | Hon. David B. Cohen | ESTATE SOUGHT A PRELIMINARY INJUNCTION TO BE RELIEVED IN THE ACTION, IT WAS DENIED. |
| | | | | ESTATE CURRENTLY SEEKS PERMANENT INJUNCTION. |

## PARTIES:
For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in space provided.
If additional space is required, complete and attach the **RJI Addendum**.

| Un-Rep | Parties: List parties in caption order and indicate party role(s) (e.g. defendant; 3rd-party plaintiff). | Attorneys and/or Unrepresented Litigants: Provide attorney name, firm name, business address, phone number and e-mail address of all attorneys that have appeared in the case.  For unrepresented litigants, provide address, phone number and e-mail address. | Issue Joined (Y/N): | Insurance Carrier(s): |
|---|---|---|---|---|
| [ ] | **Name:** ANDREA TANTAROS **Role(s):** PETITIONER | JONATHAN ASKIN BRUCE FEIN 250 Joralemon Street Brooklyn, NY 11201-3700 718-780-0622 Email: jonathan.askin@brooklaw.com Email: bruce@feinpoints.com | [ ] YES  [ ] NO | |
| [ ] | **Name:** FOX NEWS CHANNEL, LLC, SUZANNE SCOTT, DIANNE BRANDI, IRENA BRIGANTI **Role(s):** RESPONDENTS | KRISTINA YOST, MATTHEW LAMPE, ERIKA CAGNEY JONES DAY 250 VESEY STREET NEW YORK, NY 10281  kyost@jonesday.com 212-326-3816 | [ ] YES  [ ] NO | |
| [ ] | **Name:** WILLIAM SHINE **Role(s):** RESPONDENT | MARION BACHRACH, VIVIAN ARIAS, JACK DOHERTY THOMPSON & KNIGHT, LLP 900 THIRD AVENUE 20th FLOOR  marion.bachrach@tklaw.com NEW YORK, NY 10022  212-751-3341 | [ ] YES  [ ] NO | |
| [ ] | **Name:** THE ESTATE OF ROGER AILES ELIZABETH AILES **Role(s):** RESPONDENT | PETER CALAMARI, BRENDAN CARROLL, KIM CARSON Quinn Emanuel Urquhart & Sullivan, LLP 51 Madison Avenue New York, NY 10010  Peter.Calamari@quinnemanuel.com 212-849-7000 | [ ] YES  [ ] NO | |
| [ ] | **Name:** **Role(s):** | | [ ] YES  [ ] NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.**

Dated: 7 , 15 , 2019

_____
SIGNATURE

24 73437
**ATTORNEY REGISTRATION NUMBER**

Jonathan Askin
**PRINT OR TYPE NAME**

# DOCUMENT 15

At Commercial Division Part ___

of the Supreme Court of the State of
New York, held in and for the County of
New York, at the Courthouse located at
60 Centre Street, New York, New York,
on the ___ day of July, 2019.

PRESENT:

_____, J.S.C.
_____x

ANDREA K. TANTAROS

                              Petitioner,

    -against-                                            Index No. _____

                                                              **ORDER TO SHOW CAUSE
                                                              TO SEAL PETITION**

FOX NEWS CHANNEL, LLC., THE ESTATE OF
ROGER AILES, WILLIAM SHINE, SUZANNE SCOTT,
IRENA BRIGANTI, DIANNE BRANDI.

                              Respondent.
_____

Upon the accompanying Petition dated July __, 2019, in Support of this Order to Show Cause, dated July

___, 2019, and exhibits thereto, and the Memorandum of Law in Support of this Order to Show Cause,

dated July ___, 2019; and good cause having been shown it is hereby:

**ORDERED** that Respondents Fox News Channel, LLC., The Estate of Roger Ailes, William Shine,

Dianne Brandi and Irena Briganti show cause before this Court, Commercial Division Part ___, at the

New York County Courthouse, Room ____ 60 Centre Street, New York, New York on July ___2019, at

___ o'clock in the _____, or as soon thereafter as counsel can be heard, why an order should not be

entered in this action sealing the petition in accord with the confidentiality arguably required  in an

arbitration pending before the American Arbitration Association, Case No: 01-16-0001-7288; and, it is

further

**ORDERED** that pending the hearing of this Motion, the County Clerk is directed to restrict access to the

file to everyone except the parties, the attorneys of record, and authorized court personnel; and, it is

further

**ORDERED** that service on Respondents be made by overnight mail to the following addresses:


Fox News Channel, LLC.
Suzanne Scott
Irena Briganti
Dianne Brandi
c/o Kristina Yost
Jones Day
250 Vesey Street
New York, NY

William Shine
c/o Marion Bachrach
Thompson and Knight, LLP
900 Third Avenue
20th Floor
New York, NY 10022

The Estate of Roger Ailes
Elizabeth Ailes
c/o Peter Calamari
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue
New York, NY 10010


ENTER


_____
         J.S.C.

# DOCUMENT 19

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** _New York_
-----------------------------------------------------------------------x

                                    **Plaintiff/Petitioner,**

                                                        **Index No.** _156936/2019_

        **- against -**

                                    **Defendant/Respondent.**
-----------------------------------------------------------------------x

### REQUEST FOR RESTRICTED STATUS

The undersigned, having notified all parties of his or her intention to seek judicial relief
to correct the filing of NYSCEF Document(s) numbered __1 – 13__ because the
document(s):

☑ contain(s) confidential information, including but not limited to trade secrets,
information protected by a confidentiality agreement, or personal confidential
information (also known as "CPI") as defined by court rule; or

☐ was/were otherwise filed in error [Explain] _____

_____

hereby requests that the County Clerk, exercising his or her administrative discretion,
temporarily place Document(s) numbered __1 – 13__ in "restricted" status on the
NYSCEF site, to be made available for viewing by court staff and the parties but not the
general public as provided in Uniform Rule § 202.5-b(d).

I understand that I must file an application by order to show cause to correct the filing of
NYSCEF Document(s) numbered __1 – 13__ within five (5) business days of this
request and that, unless otherwise directed by the court, all document(s) that were
restricted per this request shall be returned to public view at the end of this five (5) day
period.

I further understand that if the court extends the restricted status or seals the
document(s) at issue, I will notify the County Clerk by e-filing a:

        ☑ Notification of Order Extending Restriction
                    or
        ☑ Notification of Sealing

Signature: _Bruce Fein_          Date: _7/17/19_

Name: _Bruce Fein_              Phone: _703-963-4968_

Address: _300 New Jersey Av. NW_  E-mail: _bruce@feinpoints.com_
_Suite 900 Wash. DC 20001_

                                    EF - ##   10/23/17

1 of 1

# DOCUMENT 20

## SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK

Andrea Tantaros,

      Petitioner,                                      Index No. 156936/2019

v.

Fox News Channel, LLC, The Estate of Roger          **CERTIFICATE OF SERVICE**
Ailes, William Shine, Suzanne Scott, Diane
Brandi, and Irena Briganti,

      Respondents.

---

I hereby certify that on July 29, 2019, I caused copies of Documents 1-15 in the above-captioned case to be served upon counsel for Respondents via USPS postage prepaid to the following addresses:

FOX NEWS CHANNEL, LLC, SUZANNE SCOTT, DIANNE BRANDI, IRENA BRIGANTI
C/O KRISTINA YOST
MATTHEW LAMPE
ERIKA CAGNEY
JONES DAY
250 VESEY STREET
NEW YORK, NY 10281
kyost@jonesday.com
212-326-3816

WILLIAM SHINE
C/O MARION BACHRACH
VIVIAN ARIAS
JACK DOHERTY
THOMPSON & KNIGHT, LLP
900 THIRD AVENUE
20th FLOOR
marion.bachrach@tklaw.com
NEW YORK, NY 10022
212-751-3341

THE ESTATE OF ROGER AILES
ELIZABETH AILES
C/O PETER CALAMARI
BRENDAN CARROLL

KIM CARSON
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue
New York, NY 10010 Peter.Calamari@quinnemanuel.com
212-849-7000

Bruce Fein