UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREA TANTAROS,<br><br>           Petitioner,<br><br>     -against-<br><br>FOX NEWS NETWORK, LLC., THE ESTATE<br>OF ROGER AILES, WILLIAM SHINE,<br>SUZANNE SCOTT, DIANNE BRANDI, and<br>IRENA BRIGANTI,<br><br>           Respondents. | **Case No. 1:19-cv-07131-ALC-RWL**<br><br>New York County Supreme Court<br>Index No. 156936/2019 |

**MEMORANDUM OF LAW OF FOX NEWS NETWORK, LLC, SUZANNE SCOTT, DIANNE BRANDI, AND IRENA BRIGANTI IN OPPOSITION TO MOTION TO REMAND OF PETITIONER ANDREA TANTAROS**

JONES DAY
250 Vesey Street
New York, 10281-1047
Tel: 212.326.3939

*Attorneys for Respondents*
*Fox News Network, LLC,*
*Suzanne Scott, Dianne Brandi,*
*and Irena Briganti*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.      REMOVAL IS PROPER BECAUSE THIS CASE NECESSARILY RAISES A
        SUBSTANTIAL, DISPUTED FEDERAL ISSUE ............................................................ 2

        A.      THE PETITION NECESSARILY RAISES A FEDERAL ISSUE ...................... 3

        B.      THE FEDERAL ISSUE IS ACTUALLY DISPUTED ........................................ 6

        C.      THERE IS A SUBSTANTIAL FEDERAL INTEREST IN RESOLVING
                THE ISSUE OF WHETHER THE FAA IS INCONSISTENT WITH
                SECTION 7515 .................................................................................................. 7

        D.      ACCEPTING FEDERAL JURISDICTION DOES NOT DISRUPT THE
                CONGRESSIONALLY APPROVED BALANCE BETWEEN FEDERAL
                AND STATE COURTS ..................................................................................... 11

II.     THE PRESENCE OF ARGUABLY STATE LAW ISSUES DOES NOT
        JUSTIFY REMAND ....................................................................................................... 13

        A.      THE COURT IS UNLIKELY TO REACH A PURE ISSUE OF STATE
                LAW .................................................................................................................. 13

        B.      THE DOCTRINE OF CONSTITUTIONAL AVOIDANCE IS
                INAPPLICABLE ............................................................................................... 15

        C.      ABSTENTION PROVIDES NO BASIS FOR REMAND AND IS NOT
                APPLICABLE HERE ........................................................................................ 16

III.    REMAND IS NOT EFFICIENT .................................................................................... 20

IV.     IN THE EVENT OF REMAND, PETITIONER IS NOT ENTITLED TO FEES
        OR COSTS ...................................................................................................................... 21

CONCLUSION .................................................................................................................... 22

## TABLE OF AUTHORITIES

Page

CASES

*Aguaiza v. Vantage Properties, LLC*, 893 N.Y.S.2d 19, 20-21 (N.Y. App. Div. 1st
Dep't 2010) ................................................................................................................18

*Berman Enterprises, Inc. v. Jorling*,
793 F. Supp. 408 (E.D.N.Y. 1992), *aff'd*, 3 F.3d 602 (2d Cir. 1993), *cert.
denied*, 510 U.S. 1073 (1994) .........................................................................19, 20

*Bethphage Lutheran Serv., Inc. v. Weicker*,
777 F. Supp. 1093 (D. Conn. 1991) ..........................................................................20

*Broder v. Cablevision Sys. Corp.*,
329 F. Supp. 2d 551 (S.D.N.Y. 2004), *aff'd*, 418 F.3d 187 (2d Cir. 2005) ......................14, 15

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943)....................................................................................................17, 19

*City of Philadelphia v. New Jersey*,
430 U.S. 141 (1977)....................................................................................................15, 16

*Clark v. Bay Park Ctr. For Nursing and Rehabilitation*,
2019 WL 3852430 (S.D.N.Y. Aug. 16, 2019)..........................................................22

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976)....................................................................................................17

*DIRECTV, Inc. v. Imburgia*,
136 S. Ct. 463 (2016)..................................................................................................7

*Domnister v. Exclusive Ambulette, Inc.*,
607 F.3d 84 (2d Cir. 2010)..........................................................................................5

*Dorfman v. Leidner*,
76 N.Y.2d 956 (1990) .................................................................................................18

*Douglas v. Seacoast Prods., Inc.*,
431 U.S. 265 (1977)....................................................................................................15

## TABLE OF AUTHORITIES

### (cont'd)

Page

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002).............................................................................................10

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)..............................................................................................12

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005)...................................................................................... *passim*

*Gunn v. Minton*,
  568 U.S. 251 (2013)......................................................................................2, 6, 10

*In re Otter Tail Power Co.*,
  116 F.3d 1207 (8th Cir. 1997) ...........................................................................16

*Kimmel v. State*,
  80 N.E.3d 370 (N.Y. 2017)...................................................................................5

*Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*,
  137 S. Ct. 1421 (2017)..........................................................................................7

*Landgraf v. USI Film Prod.*,
  511 U.S. 244 (1994).............................................................................................18

*Latif v. Morgan Stanley & Co. LLC*,
  No. 18-cv-11528, 2019 WL 2610985 (S.D.N.Y. June 26, 2019) .................... *passim*

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.*,
  96 N.E.2d 978 (N.Y. 1998)..................................................................................18

*Marmet Health Care Ctr., Inc. v. Brown*,
  565 U.S. 530 (2012)........................................................................................7, 20

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005).............................................................................................21

*Miller Brewing Co. v. ACE U.S. Holdings, Inc.*,
  391 F. Supp. 2d 735 (E.D. Wis. 2005)................................................................16

iii

# TABLE OF AUTHORITIES

## (cont'd)

Page

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985).............................................................................................7, 20

*MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*,
  No. 15-cv-3997, 2015 WL 6685523 (S.D.N.Y. Oct. 29, 2015).............................14

*NASDAQ OMX Grp., Inc. v. UBS Sec., Inc.*,
  770 F.3d 1010 (2d Cir. 2014).........................................................................2, 3, 8, 9

*New Orleans Pub. Serv., Inc. v. City of New Orleans*,
  798 F.2d 858 (5th Cir. 1986) ...................................................................................19

*New York City Health & Hosps. Corp. v. WellCare of New York, Inc.*,
  769 F. Supp. 2d 250 (S.D.N.Y. 2011).......................................................................14

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank*, N.A., 824 F.3d 308, 317
  (2d Cir. 2016) .............................................................................................................3

*Paradise Motors, Inc. v. Murphy*,
  892 F. Supp. 703 (D.V.I. 1994) ...............................................................................16

*Perry v. Thomas*,
  482 U.S. 483 (1987).............................................................................................7, 20

*Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*,
  60 F.3d 122 (2d Cir. 1995).........................................................................17, 18, 19

*Preston v. Ferrer*,
  552 U.S. 346 (2008).............................................................................................7, 20

*Railroad Commission of Texas v. Pullman Co.*,
  312 U.S. 496 (1941)........................................................................................ *passim*

*Rhode Island Fishermen's Alliance., Inc. v. Rhode Island Department of Envtl.
  Mgmt.*,
  585 F.3d 42 (1st Cir. 2009)...................................................................................3, 4

*Schaeffer v. Cavallero*,
  29 F. Supp. 2d 184 (S.D.N.Y. 1998)..........................................................................3

# TABLE OF AUTHORITIES

## (cont'd)

Page

*Southland Corp. v. Keating*,
465 U.S. 1 (1984)............................................................................7, 20

*Sprint Commc'ns Inc. v. Jacobs*,
571 U.S. 69 (2013)................................................................................17

*Swift & Co. v. Wickham*,
382 U.S. 111 (1965)..............................................................................16

**STATUTES**

28 U.S.C. § 1331 ......................................................................................2

28 U.S.C § 1441(a) ..............................................................................1, 2

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ................................. *passim*

Md. Code Ann., Lab. & Empl. § 3-715 (West 2019) ................................9

N.J. Stat. Ann. § 10:5-12.7 (West 2019)..................................................9

N.Y. C.P.L.R. § 7515.......................................................................*passim*

Vt. Stat. Ann. Title 21, § 495h (West 2019) ............................................9

Wash. Rev. Code Ann. § 49.44.085 (West 2019)....................................9

**OTHER AUTHORITIES**

2018 S. Reg. Sess. (N.Y. 2018) ...............................................................8

Alexander J.S. Colvin, *The Growing Use of Mandatory Arbitration*, ECONOMIC
POLICY INSTITUTE (Apr. 6, 2018).....................................................10

Paul Weiss*, New Anti-Sexual Harassment Measures in New York State and New
York City*, PAUL WEISS EMPLOYMENT LAW PUBLICATIONS (May 10,
2018) ....................................................................................................8

## TABLE OF AUTHORITIES

### (cont'd)

Page

Robert S. Whitman, *New York's Ban on Arbitration of Sexual Harassment Claims: Can It Survive Federal Preemption?* SEYFARTH SHAW PUBLICATIONS (Oct. 25, 2018) ................................................................................8

Sanford Heisler Sharp, LLP, *New York Prohibits Mandatory Arbitration of Sexual Harassment Claims*, WORKING FOR JUSTICE BLOG (July 20, 2018) ................................8

U.S. Constitution.................................................................................................... *passim*

## INTRODUCTION

Just two months ago, this Court correctly decided the dispositive issue in this case.  In *Latif v. Morgan Stanley & Co.  LLC*, No. 18-cv-11528, 2019 WL 2610985, at * 3-4 (S.D.N.Y. June 26, 2019), the Court held that N.Y. C.P.L.R. § 7515 ("§ 7515"), which prohibits mandatory arbitration clauses for sexual harassment claims "[e]xcept where inconsistent with federal law," is indeed inconsistent with federal law, specifically the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), and thus inapplicable by its own terms.  By simply applying *Latif* to the same substantial and disputed federal question of law in this case the Court can immediately end this action and allow the pending arbitration to proceed.  Against this backdrop, there is no reason for the Court to abstain in this case.  Just like in *Latif*, the Court can rule that § 7515 is inconsistent with federal law and thus does not apply, all without ever deciding an issue of state law.[1]  The exercise of jurisdiction will also discourage further wasteful litigation seeking to invoke the inapplicable § 7515, thus preserving both state and federal judicial resources and protecting the strong pro-arbitration policy of the federal government.

Apparently fearing *Latif*'s precedential value, Petitioner never even addresses the ruling in her Motion for Remand, instead firing off scattershot, meritless arguments in support of her motion.  Contrary to Petitioner's claims, Fox News Network, LLC ("Fox"), Dianne Brandi, Irena Briganti and Suzanne Scott (together with Fox, the "Fox Parties") properly removed this case pursuant to 28 U.S.C §1441(a), because the Petition squarely raises a threshold issue that cannot be sidestepped: namely, whether § 7515 is inconsistent with the FAA.  The issue is not simply whether preemption is a defense to Petitioner's arguments; rather, the Petition necessarily raises

---

[1] For the reasons discussed further in Section II, neither the presence of state law issues nor abstention doctrines provide any basis for remand.

a substantial federal question because Petitioner has to prove that application of § 7515 is not inconsistent with federal law as an *essential element* of proving that her agreement to arbitrate her sexual harassment claims is void.  Because this question requires examination of federal law, and makes the meaning and scope of the FAA an integral element of Petitioner's case, the Fox Parties correctly and respectfully request that the Court deny Petitioner's Motion for Remand and her request for costs and expenses.

## **ARGUMENT**

### I.  **REMOVAL IS PROPER BECAUSE THIS CASE NECESSARILY RAISES A SUBSTANTIAL, DISPUTED FEDERAL ISSUE.**

Under the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Absent diversity of citizenship, removal is appropriate if the case falls within the district court's original "federal question" jurisdiction:  "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; *see* 28 U.S.C. § 1441(a).  State-law claims fall within the federal courts' "arising under" federal question jurisdiction when they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)); *see NASDAQ OMX Grp., Inc. v. UBS Sec., Inc.*, 770 F.3d 1010, 1020 (2d Cir. 2014) (quoting *Gunn*, 568 U.S. at 258).

Here, the Petition necessarily raises a disputed and substantial federal issue – namely, whether § 7515's prohibition on mandatory arbitration clauses for sexual harassment claims is

inconsistent with the FAA, and therefore inapplicable on its face.  Because the meaning and scope of a federal law is integrated into Petitioner's claim, this Court has federal jurisdiction over this matter and should deny Petitioner's Motion for Remand.

### A.    THE PETITION NECESSARILY RAISES A FEDERAL ISSUE.

This case necessarily raises a federal issue because an essential element of § 7515 is whether its application is inconsistent with federal law (namely, the FAA).  Courts have found that removal under the *Grable/Gunn* doctrine is appropriate where a plaintiff has to prove a disputed issue of federal law in order to obtain relief under a state statute.  *See, e.g.*, *Grable*, 545 U.S. at 314-15 (holding federal issue necessarily raised in action removed under 1441(a) where plaintiff had to prove disputed proposition of federal law as an "essential element" of his quiet title claim); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank*, N.A., 824 F.3d 308, 317 (2d Cir. 2016) (holding federal issue necessarily raised in action removed under 1441(a) where plaintiff had to prove disputed proposition of federal law to establish essential element of  New York False Claims Act claim); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1023 (holding federal issue necessarily raised in action brought under 1331 where plaintiff had to prove "multiple disputed issues of federal law" in order to establish "essential element" of New York negligence claim); *Schaeffer v. Cavallero*, 29 F. Supp. 2d 184, 186 (S.D.N.Y. 1998) (declining to remand case removed on basis of federal-question jurisdiction where airline-friendly provision of the Federal Aviation Act had been treated by courts as "an essential element of any New York state law claim arising from an airline's refusal to transport a passenger" and federal courts had "authoritatively interpreted" the federal issue determining the meaning of state law).

This case closely resembles *Rhode Island Fishermen's Alliance., Inc. v. Rhode Island Department of Envtl. Mgmt.*, 585 F.3d 42 (1st Cir. 2009).  In *Rhode Island*, the court upheld a district court's claim to subject-matter jurisdiction over a state law-based challenge to a state

fisheries regulation.  585 F.3d at 52.  The state statute provided that "retroactive control dates [i.e. cutoff dates used to determine eligibility criteria for access to fisheries] are prohibited and shall not be used or implemented, unless expressly required by federal law, regulation or court decision."  *Id.* at 49.  The court found that this statutory language required plaintiff to prove two elements of a cause of action: "(i) that the [regulator] mandated retroactive control dates," and "(ii) that retroactive control dates were not compulsory under federal law."  *Id.*  Relying on *Grable*, the court found that the district court had properly asserted federal-question jurisdiction over the case because it was logically impossible for the plaintiffs to prevail without affirmatively answering the embedded federal question—i.e. whether retroactive control dates were compulsory under federal law.  *Id.* at 52.

Here, just like in *Rhode Island*, Petitioner cannot prevail without proving that § 7515 is consistent with federal law – which necessarily raises a federal question.  Petitioner seeks "a declaratory judgment that section 7515 prohibits AAA Case No. 01-16-0001-7288 from continuing to arbitrate Petitioner's sexual harassment allegations and claims."  (Petition ¶ 18).  To obtain her requested declaratory relief, Petitioner must *first* prove that her arbitration clause is void under § 7515.  By its terms, § 7515 only prohibits arbitration when doing so would not be "inconsistent with federal law."  *See* N.Y. C.P.L.R.§ 7515(b)(iii) (emphasis added) ("*Except where inconsistent with federal law*, the provisions of such [mandatory arbitration clause including sexual harassment claims] shall be null and void").  Accordingly, the threshold question for this Court is whether § 7515 as applied here is "inconsistent with federal law," specifically the FAA, as a matter of law.  Indeed, Petitioner herself recognizes this fact, by arguing extensively that § 7515 is not preempted to explain why she should win on the merits. (ECF No. 1-2, p. 32-33.)  Since Petitioner cannot satisfy the elements of her claim and obtain her

requested relief absent a showing that her interpretation of § 7515 is consistent with the FAA, a federal issue is "necessarily raised" in this case, just like in *Rhode Island*.

In support of her argument that a federal issue is not necessarily raised in this case, Petitioner claims that § 7515's "except where inconsistent with federal law" language is merely "superfluous" and that Respondents "magnify a flea" (actually, the text of a statute) "into an elephant" (actually, the dispositive statutory interpretation). (*See* Remand Br. at 4.) This is wishful thinking wrapped up in a lot of unfortunate rhetoric: It is a basic principle of statutory interpretation that a "statute should be construed to avoid rendering any of its provisions superfluous." *Kimmel v. State*, 80 N.E.3d 370, 374 (N.Y. 2017) (citation omitted). As Petitioner correctly asserts, preemption is a *defense*. *See, e.g.*, *Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 88 (2d Cir. 2010). But that assertion is irrelevant in this case because § 7515, by its terms, makes the absence of an inconsistency between state and federal law an *essential element of Petitioner's claim.* Elements of a claim and defenses are fundamentally different not only in terms of burdens but also for purposes of federal jurisdiction: the incorporation of federal law into a state law claim means that Petitioner's claim under state law necessarily raises a federal issue. Thus, § 7515's incorporation of the "except where inconsistent with federal law" language is far from superfluous; instead, it transforms preemption from a defense into an element of a claim under that statute. Indeed, the only interpretation of § 7515 that "avoid[s] rendering," *Kimmel*, 80 N.E.3d at 374, superfluous the phrase "except where inconsistent with federal law," is that it requires a *plaintiff to* establish that the application of § 7515 is not inconsistent with federal law. To obtain relief from a mandatory arbitration clause barring sexual harassment, a plaintiff must prove that voiding his or her arbitration clause does *not* interfere with the FAA, making federal law a necessary element of a plaintiff's claim.

This Court's *Latif* decision demonstrates the point. There, the Court first noted that "[a] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be . . . invalid." *Latif*, 2019 WL 2610985, at *2 (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)) (alteration in original). The Court then went on to reject plaintiff's argument that "Section 7515 . . . invalidate[d] the parties' agreement to arbitrate Latif's claims" because the statute's express condition of applicability was not satisfied:

> Section 7515 renders agreements to arbitrate sexual harassment claims null and void "[e]xcept where inconsistent with federal law." Here, application of Section 7515 to invalidate the parties' agreement to arbitrate Latif's claims would be inconsistent with the FAA.

*Id.* at *3 (quoting N.Y. C.P.L.R. § 7515(b)(iii)). The Court further rejected multiple arguments by the plaintiff that § 7515 "overcome[s] the FAA's command that the parties' Arbitration Agreement be enforced." *Id.* at *4; *see also id.* (finding "unavailing" plaintiff's arguments that § 7515 "is not inconsistent with the FAA"). As is thus clear, this Court found that the *plaintiff* there failed to establish that application of § 7515 was not inconsistent with federal law, underscoring that federal law is a necessary element of a plaintiff's claim.

## B.    THE FEDERAL ISSUE IS ACTUALLY DISPUTED.

Petitioner appears to concede that the federal issue – i.e. whether the FAA is inconsistent with Section 7515's ban on mandatory arbitration clauses for sexual harassment claims – is disputed. Indeed, as Petitioner's Petition Brief makes clear (*see* ECF No. 1-2, p. 32-33), it is the "central point of dispute" between the parties. *Gunn*, 568 U.S. at 259. Accordingly, the federal issue here is actually disputed.

**C.     THERE IS A SUBSTANTIAL FEDERAL INTEREST IN RESOLVING THE ISSUE OF WHETHER THE FAA IS INCONSISTENT WITH SECTION 7515.**

Without question, the parties' dispute regarding the FAA is substantial.  There is a significant federal interest in ensuring a uniform application of the FAA.  A federal issue is "substantial" where there is a "serious federal interest" in the benefits "inherent in a federal forum."  *Grable*, 545 U.S. at 313 (citation omitted).  This substantial federal interest is grounded in the FAA's savings clause, which commands that "[a]n agreement to arbitrate is valid, irrevocable, and enforceable as a matter of federal law . . . 'save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (emphases in original) (citations omitted).  Relying on this provision, time and time again, the Supreme Court steadfastly rejected multiple attempts by States to declare particular types of claims off-limits to arbitration.  *See, e.g.*, *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533-34 (2012) (per curiam); *Preston v. Ferrer*, 552 U.S. 346, 359 (2008); *Perry*, 482 U.S. at 487; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 623 n.10 (1985) (citations omitted); *Southland Corp. v. Keating*, 465 U.S. 1, 10-14 (1984).  Indeed, the Supreme Court itself has demonstrated the importance of this federal interest by repeatedly granting certiorari to review cases in which state law conflicts with the FAA—even in the absence of a circuit split.  *See, e.g.*, *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct. 1421, 1429 (2017); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 471 (2016); *Marmet Health Care Ctr., Inc.*, 565 U.S. at 533-34.

Here, the federal interest in uniform enforcement of the FAA is so clear and substantial that the *state legislature itself* saw fit to affirmatively protect that interest by making consistency with federal law an essential element of the state statute at issue.  The New York legislature made § 7515 applicable "[e]xcept where inconsistent with federal law" because it recognized

- 7 -

that § 7515 might otherwise run afoul of the strong federal policy in favor of arbitration embodied in the FAA.  Indeed, § 7515's legislative history betrays the New York legislature's belief that the provision was in conflict with this well-established body of law protecting arbitration under the FAA.[2]  For precisely this reason, New York expressly incorporated federal law into the statute in order to protect the federal interests represented by the FAA while voiding specified clauses to the extent permitted by federal law, presumably at the time of § 7515's enactment or in the future.  Thus, taking into account the significant federal interest in ensuring a "uniform body" of FAA law, as well as the state legislature's own incorporation of this significant federal interest into the statute, it is clear that this case is significant not just for the present litigants, but for "the federal system as a whole."  *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1024.

---

[2] The only federal law discussed in § 7515's legislative history was the FAA:  "SENATOR KRUEGER: So my understanding is that the Federal Arbitration Act generally preempts state law that treats arbitration less favorably than other arrangements.  Is that the sponsor's  understanding as well?  SENATOR YOUNG: Yes, federal law  preempts . . . SENATOR KRUEGER: So given our agreement on that underlying preemption, what protection does this section of law actually provide? SENATOR YOUNG:  . . . We just want to acknowledge, through this legislation, that there may be some extra protections that would apply.  So we wanted to make sure that that was part of the legislation."  S07507C, 2018 S. Reg. Sess. at 1851:1-25 (N.Y. 2018).  Moreover, numerous articles published about Section 7515 discussed the likelihood that Section 7515 was inconsistent with the FAA.  *See, e.g.*, Sanford Heisler Sharp, LLP, *New York Prohibits Mandatory Arbitration of Sexual Harassment Claims*, WORKING FOR JUSTICE BLOG (July 20, 2018), https://sanfordheisler.com/new-york-prohibits-mandatory-arbitration-of-sexual-harassment-claims (last visited Sept. 2, 2019) (quoting N.Y. C.P.L.R. § 7515(a)(4)(b)(i)) ("One question that looms over such state laws is whether they are preempted, and thus nullified, by the Federal Arbitration Act (FAA). In a nod to this possibility, the New York statute states that it applies 'except where inconsistent with federal law.'"); Paul Weiss, *New Anti-Sexual Harassment Measures in New York State and New York City*, PAUL WEISS EMPLOYMENT LAW PUBLICATIONS (May 10, 2018), https://www.paulweiss.com/practices/litigation/employment/publications/new-anti-sexual-harassment-measures-in-new-york-state-and-new-york-city?id=26408 (last visited Sept. 2, 2019) (quoting *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017)) (alterations in original) ("It is worth noting that this prohibition [on mandatory arbitration clauses] may be challenged in court, given the U.S. Supreme Court's recent holding that the Federal Arbitration Act preempts 'any state rule discriminating on its face against arbitration—for example, a law prohibiting outright the arbitration of a particular type of claim . . . [and] any rule that covertly accomplishes the same objective by disfavoring contracts that . . . have the defining features of arbitration agreements.'"); Robert S. Whitman, *New York's Ban on Arbitration of Sexual Harassment Claims: Can It Survive Federal Preemption?*, SEYFARTH SHAW PUBLICATIONS (Oct. 25, 2018), https://www.seyfarth.com/publications/MA102518-LE (last visited Sept. 2, 2019) ("The key phrase in the law is not the prohibition itself but the preface:  'except where inconsistent with federal law.'  With that language, the Legislature recognized that the prohibition of arbitration of harassment claims was potentially superseded by the Federal Arbitration Act [] and might not withstand a court challenge").

It is now more important than ever to ensure a uniform application of the FAA because statutes like § 7515 are proliferating and, if not interpreted consistently with the well-established body of federal FAA law, threaten to undermine federal policy on arbitration.  Just recently, New York amended § 7515 to prohibit arbitration clauses for *all* discrimination claims.  New York, indeed, is taking the lead in what appears to be a nationwide trend toward testing the well-established dictates of the FAA by passing statutes that prohibit mandatory arbitration of sexual harassment claims.[3]  In light of this growing body of state law that could threaten the FAA and U.S. Supreme Court precedent, there is a significant federal interest in preventing a wholesale disregard (or deliberately warped interpretation) of a federal statute and binding precedent.

Petitioner's arguments as to why the federal issue here is not "substantial" rely more on inartful rhetoric than on facts.  *First*, Petitioner claims that there is no "substantial" federal issue because "[Section] 7515 applies to a miniscule fraction of all arbitrations under the FAA." (Remand Br. at 5.)  But the test as to whether a federal issue is "substantial" is whether it is significant to "the federal system as a whole" rather than purely to the litigants.  *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1024 (citations omitted).  Put another way, the federal interest is not determined by some estimate of the number of cases impacted by the federal issue, but by the importance of the principle involved.  *Id.*  None other than the U.S. Supreme Court has made

---

[3]*See, e.g.*, Md. Code Ann., Lab. & Empl. § 3-715 (West 2019) (nullifying any employment contract provision that "waives any substantive or procedural right or remedy to a claim that accrues in the future of sexual harassment," "[e]xcept as prohibited by federal law."); N.J. Stat. Ann. § 10:5-12.7 (West 2019) ("A provision in any employment contract that waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable."); Vt. Stat. Ann. tit. 21, § 495h (West 2019) (voiding "except as otherwise permitted by State or federal law" any provision of an employment contract that "purports to waive a substantive or procedural right or remedy available to the employee with respect to a claim of sexual harassment."); Wash. Rev. Code Ann. § 49.44.085 (West 2019) (voiding any provision of an employment contract that "requires an employee to waive the employee's right to publicly pursue a cause of action arising under [state] or federal antidiscrimination laws or to publicly file a complaint with the appropriate state or federal agencies, or if it requires an employee to resolve claims of discrimination in a dispute resolution process that is confidential.").

crystal clear the importance to the federal system as a whole of a uniform and correct application of the FAA. (*See supra* at 7-9.) Moreover, it is preposterous to suggest that § 7515 will impact a miniscule number of arbitrations when in reliance on the federal courts' steadfast commitment to enforcement of the FAA, arbitration clauses are common throughout New York's sizeable workforce.[4] In any event, New York is leading the way with respect to arbitration prohibitions, as there is a growing body of legislation seeking to test the FAA's savings clause in the same manner as § 7515. (*Supra* at 9, n.3.) Accordingly, a significant number of cases will also be impacted by consideration of the same federal issues.

*Second*, Petitioner argues[5] that Congress has not conferred exclusive jurisdiction over cases arising under the FAA, which Petitioner suggests means that Congress had no concern for "recurring state court stumbles" regarding the FAA. (Remand Br. at 5.) This is not consistent with the FAA's legislative history or its interpretation. In enacting the FAA, Congress intended "to manifest a liberal federal policy favoring arbitration agreements." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). Again and again, the Supreme Court has granted certiorari over FAA cases in order to ensure a uniform application of the law. (*See supra* at 7.) Accordingly, contrary to Petitioner's assertions, Congress, and the courts in interpreting the FAA, have attempted to avoid federal and state court "stumbles" over the proper interpretation of the FAA.

---

[4] An estimated 55% of New York workplaces use mandatory arbitration. *See* Alexander J.S. Colvin, *The Growing Use of Mandatory Arbitration*, ECONOMIC POLICY INSTITUTE (Apr. 6, 2018), https://www.epi.org/files/pdf/144131.pdf.

[5] Referring to dicta in *Gunn*, Petitioner asserts that if the federal issue in this case *is* substantial "it will soon be resolved in the federal system in suits to compel arbitration." (Remand Br. at 5.) This speculation does not undermine the Fox Parties' position that the federal issue is in fact substantial in light of the significant body of law ensuring a uniform application of the FAA.

*Third*, Petitioner faults Respondents for supporting their substantiality argument with Supreme Court FAA cases that do not involve removal.  (Remand Br. at 6.)  But here again, Petitioner ignores the indisputable and decisive point of these cases: the Supreme Court has clearly, repeatedly and recently manifested a strong federal interest in uniform and proper application of the FAA by exercising its discretion, even in the absence of disagreement among lower courts, to correct state-law encroachments on the FAA.

### D.   ACCEPTING FEDERAL JURISDICTION DOES NOT DISRUPT THE CONGRESSIONALLY APPROVED BALANCE BETWEEN FEDERAL AND STATE COURTS.

Accepting jurisdiction here will not harm the federal-state balance approved by Congress. Just as it would be the rare quiet title action (*Grable*) or breach of contract or negligence case (*NASDAQ*) that raises a significant and disputed issue of federal law, it is the rare case in which, as Petitioner has done here, the plaintiff files a *state court* action for the sole purpose of asking the *state* judge to reject a *federal court* decision on a consequential issue of federal law.  Indeed, this Court's exercise of jurisdiction over a significant federal question will not upset the balance because it will, based on an interpretation of federal law, hasten a final decision on whether § 7515 is consistent with the FAA and thus reduce further challenges—without importing into the federal system a body of disputes traditionally the province of state courts.  The state legislature's express incorporation of federal law as an essential element of § 7515 further demonstrates that accepting jurisdiction here will not disrupt the federal and state court balance. By drafting the statute to make consistency with federal law an essential element, the state legislature acknowledged the significant federal interest in interpreting § 7515 consistently with federal law and thus the possibility that a federal court would decide this issue.

Petitioner's claim that "[e]very state law claim filed in state court with a potential Supremacy Clause defense would be removed to federal court" demonstrates that Petitioner

either fundamentally misunderstands Respondents' removal argument or prefers attacking strawmen.  (Remand Br. at 6.)  The Fox Parties do not argue that jurisdiction is triggered because they have a preemption defense.  Rather, removal here is justified by the fact that § 7515 necessarily raises a federal law issue; for it to be applicable the statute *specifically* requires that it be interpreted in a way that is consistent with federal law.  *See* N.Y. C.P.L.R. § 7515(b)(iii).  In addition, Petitioner herself, in her papers initiating this action, repeatedly argued that § 7515 was not inconsistent with federal law (ECF No. 1-2, p. 32-33), thus calling interpretation of federal law directly into question.  These facts are infrequently presented, and Petitioner cites nothing to prove that they will replicate themselves in other state law proceedings.

Petitioner also invokes New York's undisputed interest in "deterring … sexual harassment in the workplace" as purportedly supporting her theory that the state interest here outweighs the federal interest.  (Remand Br. at 6.)  However, this claim only further supports the substantiality of the federal interest here.   The idea that "[m]andatory arbitration . . . emboldens serial violators . . . to persist by hiding their vulgar and repugnant misconduct in the darkness of arbitration," (Remand Br. at 6) is the kind of crude prejudice against arbitration that courts cite in rejecting challenges to the FAA.  *See, e.g.*, *Gilmer*, 500 U.S. at 30 (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 481 (1989)) ("generalized attacks on arbitration res[t] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants,' and as such, they are 'far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes.'") (alteration in original).  Thus, these arguments do not disprove the substantial federal interest in uniform application of the FAA; they evidence it.

*Finally*, Petitioner makes the irrelevant observation that Respondents have not "presented [] . . . evidence that state courts in general or Justice Cohen in particular cannot be trusted to interpret the FAA fairly or impartially." (Remand Br. at 5.) Respondents have every confidence in Justice Cohen. The issue is not whether a state court can interpret federal law impartially or fairly. The question here concerns whether a federal question exists that confers jurisdiction upon federal courts, and here one does.

## II.    THE PRESENCE OF ARGUABLY STATE LAW ISSUES DOES NOT JUSTIFY REMAND.

### A.    THE COURT IS UNLIKELY TO REACH A PURE ISSUE OF STATE LAW.

In response to the Court's request for supplemental briefing as to whether § 7515 applies to Petitioner's arbitration clause, Petitioner has suggested that removal is inappropriate because the Court may have to decide "pure[] issues of state law," i.e., issues of state law determinable independent of any issues of federal law. (Supp. Br. at 2.) However, it is unlikely that this Court will have to decide any issues of pure state law in connection with this proceeding.

The threshold issue before the Court is whether § 7515 is consistent with the FAA. The Court can quickly and efficiently decide this question by adopting the holding in *Latif*, that § 7515 is inconsistent with the FAA and thus inapplicable by its own terms. Because this threshold question necessarily entails a determination of federal law, it "raises" a federal issues for jurisdictional purposes, and is not a pure issue of state law. Precisely because the determination of the consistency between § 7515 and the FAA is straightforward and determinative, the Court in *Latif* declined to consider the defendant's argument that § 7515 did not apply to arbitration agreements entered into prior to its enactment. *Latif*, 2019 WL 2610985, at *4 n.3. Instead, the Court moved straight to the clear and dispositive federal issue—i.e., whether the plaintiff's interpretation of § 7515 would render it impermissibly inconsistent with

federal law—and found that it would.  The Court should do the same here, and in doing so, would avoid having to decide any pure state law issues.  Contrary to Petitioner's claim, the Court could and should logically decide the substantial federal question first, as it goes to the *elements* of Petitioner's claim.

In any event, the existence of state law questions does not dictate remand here.  To the contrary, federal courts must decide issues of state law in *every* case properly removed under *Grable/Gunn*, which explicitly applies to "state-law claims that implicate significant federal issues." *Grable*, 545 U.S.  at 312 (citation omitted).  For this reason, "[i]t would be unusual for a state-law claim that raised a federal issue not to be subject to *some* conceivable state-law defense, whether based on the statute of limitations, equitable principles such as laches and unclean hands, or some other potential defect analytically prior to the federal issue at the heart of the claim." *Broder v. Cablevision Sys. Corp*., 418 F.3d 187, 196 (2d Cir. 2005) (emphasis in original).  Following this reasoning, courts routinely deny remand of cases properly removed under *Grable/Gunn* even where they require the court to decide pure issues of state law.  *See, e.g.*, *MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc*., No. 15-cv-3997, 2015 WL 6685523, at *3 (S.D.N.Y. Oct. 29, 2015) (denying remand of state breach of contract and unjust enrichment claims when only latter found to contain federal ingredient); *New York City Health & Hosps. Corp. v. WellCare of New York, Inc*., 769 F. Supp. 2d 250, 252 (S.D.N.Y. 2011) (denying remand of case with breach of contract and unjust enrichment claims when only former found to have federal ingredient); *Broder v. Cablevision Sys. Corp*., 329 F. Supp. 2d 551, 556-61 (S.D.N.Y. 2004) (resolving battery of breach of contract, common-law fraud, deceptive business practices, and unjust enrichment claims where only two claims had federal ingredients), *aff'd*,

418 F.3d 187, 196 (2d Cir. 2005) (explicitly affirming district court's claim of jurisdiction under *Grable* and decision on the merits.)

### B.     THE DOCTRINE OF CONSTITUTIONAL AVOIDANCE IS INAPPLICABLE.

In her Supplemental Brief, Petitioner claims that the "constitutional avoidance" doctrine bars the Court from considering whether the prohibition on mandatory arbitration of clauses applicable to Petitioner's sexual harassment claim here is preempted by the FAA.  (Supp. Br. at 1.)  This argument is misguided on many levels.

For starters, constitutional avoidance could only even conceivably apply if the Fox Parties were asking the Court to decide a preemption issue.  Here, the Fox Parties are asking the Court to decide, at the outset, that § 7515 is inconsistent with the FAA under the statutory language in the state law that makes a determination of the FAA's scope and meaning a necessary *element* of Petitioner's claim.  There is nothing about this analysis that requires any interpretation of the U.S. Constitution.  To be sure, an "inconsistency" analysis under § 7515 would undoubtedly lead to the same outcome as a preemption analysis here—a return to arbitration.  But the Court should decide the issue of "inconsistency" – and thus whether the statute is even applicable by its own terms – before opining on preemption.

Moreover, even if the Fox Parties' removal arguments were grounded in preemption rather than § 7515's language (which they are not), FAA preemption is "statutory" rather than "constitutional" and thus *still* does not trigger constitutional avoidance.  *See, e.g.*, *Douglas v. Seacoast Prods., Inc.*, 431 U.S. 265, 271-72 (1977) (citations omitted) ("Although [a] claim [of preemption] is basically constitutional in nature, deriving its force from the operation of the Supremacy Clause, Art. VI, cl. 2, it is treated as 'statutory' for purposes of our practice of deciding statutory claims first to avoid unnecessary constitutional adjudications."); *City of*

*Philadelphia v. New Jersey*, 430 U.S. 141, 142 (1977) ("While federal pre-emption of state statutes is, of course, ultimately a question under the Supremacy Clause . . . analysis of pre-emption issues depends primarily on statutory and not constitutional interpretation. Therefore, it is appropriate that the federal pre-emption issue be resolved before the constitutional issue of alleged discrimination against or undue burden on interstate commerce is addressed."); *Swift & Co. v. Wickham*, 382 U.S. 111, 120  (1965) ("The basic question involved in [preemption] cases . . . is never one of interpretation of the Federal Constitution but inevitably one of comparing two statutes.").  Accordingly, constitutional avoidance provides no basis for the Court to remand here.

## C.   ABSTENTION PROVIDES NO BASIS FOR REMAND AND IS NOT APPLICABLE HERE.

Although the Court raised abstention as a possible issue, Petitioner has not asked this Court to abstain under any recognized doctrine of abstention.  Instead, she vaguely invokes the "spirit of federal-state comity" behind abstention and asserts that "*Younger* abstention discountenances" the disrespect for Judge Cohen that removal would purportedly convey. (Supp. Br. at 4.)  However, no abstention principles preclude the Court from deciding this case.

To begin with, it is doubtful whether principles of comity underlying abstention properly apply in the removal context at all.  *See, e.g.*, *In re Otter Tail Power Co.*, 116 F.3d 1207, 1213 (8th Cir. 1997) (internal citation omitted) ("Once a case is properly removed to a district court, the district court has no discretion to remand a claim that states a federal question"); *Miller Brewing Co. v. ACE U.S. Holdings, Inc.*, 391 F. Supp. 2d 735, 741 (E.D. Wis. 2005) (citing *Ryan v. State Bd. of Elections*, 661 F.2d 1130, 1131 (7th Cir. 1981)) ("[I]n the Seventh Circuit, a district court may not remand or dismiss a properly removed case based on an abstention doctrine."); *Paradise Motors, Inc. v. Murphy*, 892 F. Supp. 703, 710 (D.V.I. 1994) ("Because

removal is an outgrowth of federalism and involves the legitimate exercise of federal authority, the principle of comity is irrelevant in removal cases.  Once the defendant has complied with the procedural and jurisdictional requirements of the removal statutes, removal follows as a matter of course.").

Moreover, to the extent abstention may apply here, it could only be on the grounds outlined in *Railroad Commission of Texas v. Pullman Co*., 312 U.S. 496 (1941) or *Burford v. Sun Oil Co*., 319 U.S. 315 (1943).[6]  Courts consider abstention under *Pullman* where a case presents an issue of state law together with a federal constitutional issue and where there is some "possibility that the state courts may interpret a challenged state statute so as to eliminate, or at least to alter materially, the constitutional question presented."  *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 126 (2d Cir. 1995) (quoting *Ohio Bureau of Employment Servs. v. Hodory*, 431 U.S. 471, 477, (1977)).  *Pullman* abstention is appropriate only where three conditions are satisfied: i.e. where there is "(1) an unclear state statute or uncertain state law issue; (2) determination of the federal issue turns upon resolution of the unclear state law provision; and (3) the state law provision is susceptible to an interpretation that would avoid or modify the federal constitutional question presented."  *Planned Parenthood of Dutchess-Ulster, Inc.*, 60 F.3d at 126 (citations omitted).  Here, none of these conditions is met.

*First*, there is no unclear state statute or unclear issue of state law at issue here.  The meaning of the law under which Petitioner has brought her case, § 7515, is quite clear.  Any arguable uncertainty derives precisely from the *federal* ingredient (the criterion requiring consistency with the FAA) that is properly before this federal tribunal.  Although Petitioner

---

[6] *Younger* abstention and *Colorado River* abstention are irrelevant, as they apply only when accepting federal jurisdiction risks interference with parallel state proceedings involving all parties —which is not an issue here.  *See, e.g., Sprint Commc'ns Inc. v. Jacobs*, 571 U.S. 69, 72-78 (2013); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817-18 (1976).

correctly states that no court has decided whether § 7515 is retroactive (Supp. Br. at 2), a new statute is not rendered unclear merely because a state court has not yet construed it.  *See Planned Parenthood of Dutchess-Ulster, Inc.*, 60 F.3d at 126 (citations omitted) ("[a state law is] "no[t] rendered 'unclear' merely because no state court has yet construed [it].").  While New York courts have not specifically ruled that § 7515 is not retroactive, there is an established body of New York law, including decisions by the Court of Appeals, finding that there must be a "clear" expression of legislative intent for a statute to apply retroactively.  *See, e.g.*, *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 96 N.E.2d 978, 972 (N.Y. 1998) ("That a statute is to be applied prospectively is strongly presumed and here, we find nothing that approaches any type of 'clear' expression of legislative intent concerning retroactive application."); *Dorfman v. Leidner*, 565 N.E.2d 472, 474 (N.Y. 1990) ("Statutes are generally applied prospectively in the absence of express or necessarily implied language allowing retroactive effect."); *Aguaiza v. Vantage Properties, LLC*, 893 N.Y.S.2d 19, 20-21 (N.Y. App. Div. 1st Dep't 2010) (quoting *Jacobus v. Colgate,* 111 N.E. 837, 838 (N.Y. 1916)) ("[I]t has long been a primary rule of statutory construction that a new statute is to be applied prospectively, and will not be given retroactive construction unless an intention to make it so can be deduced from its wording.  As Judge Cardozo put it, 'It takes a clear expression of the legislative purpose to justify a retroactive application'").  This body of law makes clear that Section 7515 operates only prospectively.[7]  Thus, there is no "unclear" state statute at issue here that would justify abstention.

*Second*, the federal issue—the interpretation of the FAA—does not turn on any unclear issue of state law.  Indeed, the question of consistency between § 7515 and the FAA is a

---

[7] Furthermore, as retroactive application of a statute may implicate federal constitutional issues—*see, e.g.*, *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265-66 (1994)—this is hardly a pure question of state law in any event.

straightforward legal question answered by binding U.S. Supreme Court precedent.  As the *Latif* decision demonstrates, the Court can decide whether the FAA is inconsistent with Petitioner's interpretation of § 7515 without ever addressing the state law issue of whether the statute applies to agreements entered prior to § 7515's effective date of July 11, 2018 or its enactment date of April 12, 2018.  *Latif*, 2019 WL 2610985, at * 4 n.3.  Moreover, the Court would only have to consider the so-called "unclear" state law issues *after* determining whether Petitioner had satisfied the elements of her claim and would decide them independently of those elements.  The federal issue thus logically comes first in the decision tree.

*Third*, Petitioner also cannot meet the third *Pullman* prong here.  There is no "federal constitutional question presented" to be "avoid[ed] or modif[ied]" based on a possible interpretation of some provision of state law.  *Planned Parenthood of Dutchess-Ulster, Inc.*, 60 F.3d at 126.  There is therefore no basis for *Pullman* abstention.

Similarly, *Burford* abstention also has no application here.  It only applies where there is risk that the court will have to (1) resolve a "difficult state law issue[]" or  (2) compromise a state's "coherent policy in an area of comprehensive regulation or administration."  *Id.* at 127 (citations omitted).  As demonstrated in the discussion of the second *Pullman* prong, *supra* at 18-19, there is no complex state law at issue here.  Nor as *Latif* shows, is there a state law issue that must be decided before resolving the threshold issue that § 7515 is inconsistent with the FAA and therefore, by its own statutory terms, is inapplicable.  Furthermore, New York's various laws touching on sexual harassment bear no resemblance to the complex regulatory schemes serving localized interests involved in cases where courts have found *Burford* abstention proper based on the second *Burford* factor.  *See, e.g.*, *New Orleans Pub. Serv., Inc. v. City of New Orleans*, 798 F.2d 858, 862-63 (5th Cir. 1986) (regulation of public utilities); *Berman Enterprises, Inc. v.*

*Jorling*, 793 F. Supp. 408, 413-14 (E.D.N.Y. 1992), *aff'd*, 3 F.3d 602 (2d Cir. 1993), *cert. denied*, 510 U.S. 1073 (1994) (regulation of pollution of New York waterways); *Bethphage Lutheran Serv., Inc. v. Weicker*, 777 F. Supp. 1093, 1098-101 (D. Conn. 1991), *aff'd*, 965 F.2d 1239, 1247 (2d Cir. 1992) (Connecticut's Medicaid administration system).

For all the reasons given above, therefore, this Court should not remand this case on the basis of principles of abstention.

## III.   REMAND IS NOT EFFICIENT.

Efficiency is not relevant to the only question that needs to be answered to determine whether remand is appropriate: whether federal question jurisdiction exists.  Nonetheless, contrary to Petitioner's assertions, it is undoubtedly more efficient for a federal court to decide a federal issue that was already decided by this Court just two months ago.   Indeed, that decision, *Latif*, provides a roadmap for the most efficient way to resolve this case, which is by deciding whether § 7515 is inconsistent with federal law and therefore inapplicable on its face.  Such a determination would rest on well-established and easy to apply principles governing the FAA. *See, e.g., Marmet*, 565 U.S. at 533-34; *Preston*, 552 U.S. at 359; *Perry*, 482 U.S. at 487; *Mitsubishi Motors Corp.*, 473 U.S. at 623 n.10; *Southland*, 465 U.S. at 10-14.  By ruling on this basis, like the court in *Latif*, this Court would avoid ever having to rule on whether the state statute applies retroactively to agreements entered into prior to July 11, 2018.  *Latif*, 2019 WL 2610985 at * 4, n.3.

In support of her argument for remand, Petitioner clams that it is more efficient for this case to be remanded to Justice Cohen because "[r]emoval would require the Court to retrace steps" Justice Cohen has already taken.  (Supp. Br. at 3.)  This is wrong.  Tantaros' Petition is wholly based on § 7515, which was passed more than a year after Justice Cohen compelled Tantaros to arbitrate on the basis of provisions in her employment agreement.  The meaning and

application of § 7515 in no way depends depend on the terms of Petitioner's employment agreement, or on any other matter with which Justice Cohen may be presumed uniquely familiar based on his prior decision compelling her to arbitrate.

Petitioner also asserts that the Fox Parties' intent to remove is somehow insincere because they did not remove Petitioner's original state court lawsuit in 2016.  (Supp. Br. at 3.) Aside from the irrelevance of this statement to the legal test for federal question jurisdiction, any basis for removal in the original state court action would be entirely different from the basis for removal here.  In the original state court action, Justice Cohen compelled Petitioner to arbitrate because of the language in her employment agreement, a pure contractual interpretation issue that in no way touched upon interpretation of the FAA.

Finally, Petitioner asserts, with no support, that removal would "further delay the proceedings and saddle Petitioner with needless additional expense."  (Supp. Br. at 4.)  Petitioner does not explain why litigation in federal court would be more expensive or dilatory than in New York state court.  Indeed, to the contrary, a federal court familiar with the FAA should be able to promptly rule on whether the FAA is inconsistent with the state law and send this case back to arbitration in short order, which would likely be a *more* efficient outcome than waiting for a state court to rule upon federal issues.

## IV.    IN THE EVENT OF REMAND, PETITIONER IS NOT ENTITLED TO FEES OR COSTS.

Petitioner ends both of her briefs in support of her Motion to Remand (Remand Br. at 7; Supp. Br. at 6) with a request for an award of costs and expenses, including attorneys' fees. In general, charging unsuccessful defendants in removal cases with their opponents costs and expenses should be limited to situations in which defendants lack an "objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Here,

the Fox Parties have presented a carefully reasoned, amply supported case for removal based squarely on the text of the law under which Petitioner has brought suit.  Therefore, even if the Court were to ultimately reject the Fox Parties arguments for federal jurisdiction, there is no basis for a finding that they lacked an objectively reasonable basis for seeking removal. Accordingly, in the unlikely event that the Court grants Petitioner's Motion for Remand, the Court should nonetheless deny her request for fees and costs, following the "general rule." *Clark v. Bay Park Ctr. For Nursing and Rehabilitation*, 2019 WL 3852430, at *3 (S.D.N.Y. Aug. 16, 2019) (quoting *Martin*, 546 U.S. at 141).

## <u>CONCLUSION</u>

For the reasons stated herein, the Fox Parties respectfully request that this Court deny Petitioner's Motion for Remand.

Dated:  September 3, 2019

Respectfully submitted,

*S/ Matthew W. Lampe*
Matthew W. Lampe
Kristina A. Yost
Stefan M. McDaniel
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone:  (212) 326-3939
Facsimile:   (212) 755-7309
mwlampe@jonesday.com
kyost@jonesday.com
smmcdaniel@jonesday.com

*Attorneys for Respondents Fox News Network, LLC, Dianne Brandi, Irena Briganti and Suzanne Scott*