J85ATANCps

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

ANDREA TANTAROS,

                    Petitioner,

          v.                            19-cv-7131 (ALC)

FOX NEWS NETWORK, LLC, WILLIAM SHINE,
THE ESTATE OF ROGER AILES,
SUZANNE SCOTT, IRENA BRIGANTI, and
DIANE BRANDI,

                    Respondents.            Conference

------------------------------------x

                                        New York, N.Y.
                                        August 5, 2019
                                        1:10 p.m.

Before:

                    HON.ANDREW L. CARTER, JR.

                                        District Judge

                         APPEARANCES
                        (via telephone)

WOLF HALDENSTEIN ADLER FREEMAN & HERZ
        Attorneys for Petitioner
BY:  DEMET BASAR, ESQ.
        DANIEL TEPPER, ESQ.
        -and-
FEIN & DELVALLE, PLLC
        Attorneys for Petitioner
BY:  BRUCE FEIN, ESQ.

THOMPSON & KNIGHT, LLP
        Attorneys for Respondent Shine
BY:  MARION J. BACHRACH, ESQ.
        EVELYN H. SEELER, ESQ.

J85ATANCps

1    APPEARANCES (Cont'd)

2    JONES DAY
          Attorneys for Respondents Fox Network LLC,
3         Irena Briganti, Diane Brandi, and Suzanne Scott
     BY:  MATTHEW W. LAMPE, ESQ.
4         KRISTINA A. YOST, ESQ.

5    QUINN EMANUEL URQUHART & SULLIVAN
          Attorneys for the Estate of Roger Ailes
6    BY:  BRENDAN CARROLL, ESQ.
          KIMBERLY CARSON, ESQ.
7         PETER CALAMARI, ESQ.

8

9              (Case called)

10             THE CLERK:  Counsel, please state your appearance for

11   the petitioner.

12             MS. BASAR:  Demet Basar and Dan Tepper from Wolf

13   Haldenstein in New York.  We've filed our notices of

14   appearance –– good morning –– and filed plaintiff's motion for

15   a remand.  We are in the process of preparing ––

16             THE CLERK:  Hello.  Excuse me.  I just want to let

17   everyone note their appearance first.  Thank you.

18             And for the respondent.

19             MR. FEIN:  Excuse me.  Could I also –– I am Bruce Fein

20   for the petitioner Tantaros.  I am pro hac vice pending

21   motions.  And Ms. Basar will make an oral motion to have me

22   admitted for this conference call.

23             THE CLERK:  Thank you.

24             And for the respondents?

25             MR. LAMPE:  This is Matt Lampe of Jones Day, along

J85ATANCps

1   with Kristina Yost of Jones Day.  We represent four of the

2   respondents: Fox Network LLC, Irena Briganti, Diane Brandi, and

3   Suzanne Scott.

4          MR. CARROLL:  Hi.  Carroll here from Quinn Emanuel

5   Urquhart & Sullivan.  Peter Calamari is on the phone as well.

6   We represent the Estate of Roger Ailes.  Kimberly Carson is on

7   the line as well.

8          MS. BACHRACH:  And this is Marion Bachrach from

9   Thompson & Knight representing respondent William Shine,

10  S-h-i-n-e, and Eve Seeler, also on the phone.

11         THE COURT:  OK.  Good afternoon, everyone.

12         So plaintiff's counsel was starting to say something.

13  What is it you were going to say, counsel?

14         MS. BASAR:  Good afternoon, your Honor.  Demet Basar

15  here from wolf Haldenstein for petitioner.

16         This morning, we filed notices of appearance for

17  myself and for my partner, Dan Tepper, who is also on the line.

18  And we also filed a motion for remand on behalf of petitioner

19  Andrea Tantaros.  Petitioner is represented by Bruce Fein, who

20  is on the line, who is a member of the D.C. bar.  And we are in

21  the process of preparing his pro hac application.  And we would

22  like to orally move for Mr. Fein's admission pro hac vice

23  today, so he can formally appear before you.

24         THE COURT:  Any objection to that from defendants,

25  respondents?

4

J85ATANCps

1        All right.  So you are admitted for today's purposes.

2        Go ahead, counsel.  You indicated that you were filing

3   a motion or that you have filed a motion for remand?

4        MR. FEIN:  Yes.

5        MS. BASAR:  Bruce --

6        MR. FEIN:  OK.  This is Bruce Fein speaking.  Yes.

7   There was a motion filed based on the theory that three of the

8   four criteria that Chief Justice John Roberts articulated in

9   the *Gunn v. Minton* case for establishing federal question

10  jurisdiction when the cause of action does not arise under

11  federal law have not been met and the case should be returned

12  to the New York State court.

13       THE COURT:  OK.  What is respondents' view on this?

14  What is respondents' view on all of this?

15       MR. LAMPE:  Your Honor, this is Matt Lampe on behalf

16  of the four respondents identified earlier.

17       We will oppose that motion.  Our position is that all

18  four of the prongs outlined in the *Gunn* case, *Grable* case, are

19  in fact satisfied here.  And this case does raise a serious

20  federal interest.  And it's an interest in insuring the uniform

21  and proper application of FAA law.  And we will argue in our

22  opposition brief that the case was properly removed under that

23  *Gunn/Grable* doctrine.

24       THE COURT:  OK.  I haven't seen the motion yet.  But

25  let me just state some of the other concerns that I have and

J85ATANCps

make sure that these get addressed in the motion and in the

responses.

I want to just, first of all, get some things clear to

make sure we're all on the same page procedurally.  The

arbitration has currently been stayed.  Is that correct?

MR. FEIN:  This is Bruce Fein.  Your Honor, it has

been stayed de facto.  I think the parties have represented to

the panel that until this issue of 7515 is decided, either by

the New York court or your court, that the panel should refrain

from any further rulings.

THE COURT:  OK.  The other concern that I have -- and

I'm not sure if it is addressed in the motion to remand -- is,

it seems to me that New York courts have not had an opportunity

yet to decide in the first instance whether or not CPLR 7515

runs retroactively.  Am I correct there?  Has the court made a

ruling on that, to counsel's understanding, at this point?

From either side?

MR. FEIN:  This again is Bruce Fein, speaking for the

petitioner.  We could not find anything with regard to a state

court decision.  There was a federal court decision that's

referenced in the papers, the *Lati* case, that was decided in

the Southern District of New York.  But that court decision

does not address the retroactivity issue that you have flagged.

It simply jumped over it, and is a decision based upon a

different theory.

J85ATANCps

| | |
|---|---|
| 1 | THE COURT:  It seems to me that one thing that the |
| 2 | parties should address is whether or not I have jurisdiction to |
| 3 | here these arguments and whether or not there are some |
| 4 | arguments that I have jurisdiction to hear and others that I |
| 5 | don't, and whether or not, even if I have jurisdiction, I |
| 6 | should abstain from exercising that jurisdiction.  In |
| 7 | particular, it seems to me that there is an argument, there is |
| 8 | an issue regarding whether or not this statute runs |
| 9 | retroactively.  It seems to me from the face of the petition |
| 10 | and the removal petition as well as the underlying complaint |
| 11 | that the contracts were entered into well in advance of the |
| 12 | amendment to CPLR 7515.  It seems to me that New York State |
| 13 | should be the ones to decide whether or not that runs |
| 14 | retroactively and that I should not be deciding that issue. |
| 15 | And I'd like the parties to address that in their motions, as |
| 16 | to whether or not I should be addressing that issue at all. |
| 17 | It does seem to me that if New York had determined, |
| 18 | although that's not the case, if New York had determined that |
| 19 | this statute did not run retroactively, then it would seem to |
| 20 | me that there would be a stronger argument that I don't have |
| 21 | any jurisdiction over this matter.  There would be no need at |
| 22 | all for me to get into issues of the FAA and whether or not |
| 23 | that preempts the CPLR provision.  But let me get counsel's |
| 24 | initial thoughts on that if you have any.  But it does seem to |
| 25 | me that that's something that should be addressed.  Let me hear |

J85ATANCps

1    from plaintiff on that briefly.

2            MR. FEIN:  Your Honor, the notice of removal makes no

3    allusion -- I mean, it doesn't raise that issue as something

4    that should be decided by the federal court.  It simply rests

5    completely on interpreting the Federal Arbitration Act as

6    preempting 7515.  As a consequence, in the motion to remand

7    that we have filed, we did raise issues that weren't raised

8    specifically in the notice of removal.  But we're certainly

9    prepared to file a supplemental memorandum of law that

10   addresses that particular issue.  But we adopt what the notice

11   of removal stated as its justification.

12           THE COURT:  OK.  Let me hear from the defendants on

13   this.

14           MR. LAMPE:  Your Honor, Matt Lampe.  Our position is

15   that the statute does not apply to the contract at issue here.

16   However, based on the face of the petition as it was filed, the

17   petition does raise the substantial federal question of whether

18   or not the CPLR 7515 is preempted by the FAA.  On that basis we

19   removed.  If the Court denies the motion to remand and

20   determines that it has jurisdiction over the case, we would

21   expect that the next thing for the Court to decide is a motion

22   to dismiss.  Certainly in that motion to dismiss we would

23   assert preemption.  We would also assert other defenses that

24   are available on the face of the complaint.  One of them would

25   be that the statute does not apply retroactively here.  I could

J85ATANCps

1    understand the Court not deciding the second question depending

2    on how it decides the first question.  But on the face of the

3    petition as it was filed, the basis for removal that we have

4    invoked in our removal petition is valid.

5         MR. FEIN:  Your Honor, Mr. Fein again responding.  I

6    don't think that makes much sense.  The fact is, the first

7    issue that they're saying that they want to press is whether

8    the statute 7515 is retroactive.  If it's not retroactive, then

9    the Federal Arbitration Act doesn't enter into the equation at

10   all.  So it couldn't possibly be an argument that is addressing

11   federal law, simply that the New York law doesn't apply here.

12   That isn't a federal question.  That's interpretation of state

13   law.  So they can't have it both ways, stating on one hand they

14   want state law to control for purposes of the merits and on the

15   other hand for jurisdictional purposes you are to blind

16   yourself to the state law and jump to the Federal Arbitration

17   Act, which doesn't come into play until you've decided the

18   retroactivity.

19        THE COURT:  OK.  Let's just do this.  Let me just find

20   out, I haven't had a chance to look at the motion to remand.

21   It sounds as if the plaintiffs did not specifically deal with

22   this issue in the motion to remand.  Is that correct?

23        MR. FEIN:  That's correct, because it wasn't raised in

24   the notice of removal.

25        THE COURT:  OK.  It seems to me that it certainly

J85ATANCps

1    might be something that's necessary for me to at least think

2    about, in terms of whether or not I have jurisdiction.  It

3    seems to me that that's a component of me determining whether

4    or not I have jurisdiction as to how substantial the federal

5    issue is, how necessary it is.  Obviously "necessary" under

6    federal law doesn't mean it's absolutely positively necessary,

7    but it does seem to me that it's something that I should be

8    considering.  And it certainly is something that seems relevant

9    to any notions of abstention, if that's appropriate in this

10   case, as well.

11           So let me go ahead and give the plaintiffs an

12   opportunity to supplement their motion to remand and deal with

13   that issue, and let's go ahead and set a schedule for the

14   defendants to oppose the motion to remand, if that makes sense

15   procedurally.  Does that make sense to everyone procedurally?

16           MR. FEIN:  It does for the petitioner, your Honor.

17           MR. LAMPE:  For respondents, your Honor, that makes

18   sense.  On the answer date we have a deadline of August 19.

19   Assuming that the purpose has been effectuated, our deadline

20   for answering and/or moving to dismiss, which I understand

21   under your Honor's individual practice would be a pre-motion

22   letter, but that deadline is the 19th of August.  So your Honor

23   may give us some guidance whether or not that deadline will be

24   stayed or, if not, whether we should just, simultaneously with

25   this motion to remand briefing, submit our pre-motion letter

J85ATANCps

1    related to the forthcoming motion to dismiss on the deadline.

2              THE COURT:  It seems to me to make sense to stay any

3    deadline to answer or file any motion to dismiss.  I first need

4    to deal with the issue of jurisdiction.  But let's go ahead and

5    give some deadlines.  Let's have the plaintiffs/petitioners

6    file their supplemental brief by, let's get that in in a week.

7    Is that enough time for counsel?

8              MR. FEIN:  Yes.  This is Mr. Fein for the petitioner.

9    Yes, we will call this a supplemental memorandum of law in

10   support of the motion to dismiss.  And we'll file that August

11   12th.

12             THE COURT:  All right.  So let's get that supplemental

13   memo of law regarding the motion to remand August 12th.  Let's

14   have the respondents respond to that by September the 3rd.  And

15   if there is a need for a reply, then let's have a date for the

16   reply of September the 6th.

17             It also seems to me procedurally that it -- well, I'm

18   not sure it makes any sense for me to issue any orders staying

19   arbitration until I'm certain that I have jurisdiction over

20   this matter.  And since the arbitration has been stayed de

21   facto, perhaps that's just totally a moot point.  Do counsel

22   have any thoughts on that?

23             MR. FEIN:  This is Mr. Fein.  I think until you

24   establish subject matter jurisdiction, the better course of

25   action is to refrain from issuing any ruling.  That comes

J85ATANCps

```
1   first.  And I'm confident that, with the consensus of all
2   respondents and petitioners, that the panel should refrain --
3   and the panel has not indicated that it's going to ignore a
4   consensus -- that it's superfluous for you to issue any order
5   right now on the panel.
6           THE COURT:  OK.  Anything from respondents on this?
7           MR. LAMPE:  This is Matt Lampe.  I agree with
8   Mr. Fein's assessment.
9           THE COURT:  All right.  So we have those deadlines.
10  Let me just ask a question regarding efficiency here.  How far
11  has the arbitration progressed at this point?  I understand at
12  this point there are some issues regarding discovery.  But is
13  the arbitration, or was it, close to being finished?
14          MR. LAMPE:  Your Honor, this is Matt Lampe for the
15  respondents, for the four respondents.  The arbitration has
16  been pending for three years.  After this CPLR 7515 statute
17  went into effect, the petitioner Tantaros continued to
18  prosecute her claims in that arbitration, seeking relief from
19  the arbitration panel and obtaining some relief from that
20  arbitration panel.  The respondent also sought and obtained
21  relief from that arbitration panel.  There is suggestion in
22  plaintiff's petition there has been delay on the responsibility
23  of respondent.  Our position is exactly the opposite, that the
24  delay is on the account of Ms. Tantaros's refusal to
25  participate in discovery.  So what's currently in the
```

J85ATANCps

1    arbitration right now is respondents' motion to dismiss

2    Ms. Tantaros' claims because of failure to participate in the

3    discovery process.  And the day that we filed our reply in

4    support of that motion to dismiss was the day that Ms. Tantaros

5    filed her petition in state court.  A year after the statute

6    went into effect, to all of a sudden determine that she was no

7    longer required, in fact respondents were prohibited from

8    litigating the matter in an arbitration process -- so to answer

9    your question succinctly, the arbitration has been pending for

10   a very long time.  It has not gotten very far.  There is a

11   dispute as to whose fault that is.

12           MR. FEIN:  Yes.  Obviously -- this is Mr. Fein

13   speaking for the petitioner -- we would ask for an assessment

14   of what transpired before the panel.  But I don't think this is

15   the occasion to raise it, I think is the bottom line, since the

16   panel is not close, I think, to coming to any final judgment on

17   the merits.

18           THE COURT:  Thank you.

19           MS. BACHRACH:  If I may, your Honor, this is Marion

20   Bachrach for William Shine.  I just think there's one more

21   point of which the Court should be aware on the question of

22   efficiency, as the Court has asked, which is that one reason

23   for the delay is that Ms. Tantaros has had now seven different

24   lawyers.  With the appearance of new counsel on this matter

25   today, that would be eight counsel.  So that is the occasion

J85ATANCps

1    for much delay, with going through all those different counsel.

2            THE COURT:  OK.  Let's do this, if counsel are OK with

3    this.  Let's just go off the record for a second.  Let's have a

4    quick conversation about potential settling of this case, if

5    that's OK.  Are counsel all right with that?

6            MR. FEIN:  Yes.  Mr. Fein.

7            MR. LAMPE:  Yes, as long as we go back on the record,

8    because we would like the Court to give us a specific deadline

9    for the date to respond to the petition or answer or motion to

10   dismiss so that there's no argument that we're in default when

11   the 19th of August comes and goes.

12           THE COURT:  All right.  Let's go off the record.

13           (Discussion held off the record)

14           THE COURT:  All right.  Let's go back on the record

15   then.

16           OK.  We're back on the record.  We had an

17   off-the-record discussion about trying to resolve these issues

18   efficiently.  I have encourage counsel to continue to think

19   about that.

20           Let me go ahead and give the respondent a date to

21   respond.  It has indicated a desire to file a motion to

22   dismiss.  And let me get a sense again from counsel as to what

23   the nature of this motion to dismiss would be.

24           MR. LAMPE:  Your Honor -- this is Matt Lampe -- the

25   first argument would be that the statute is preempted.  Whether

J85ATANCps

1    we have additional arguments or not we have not thoroughly

2    thought through.  But the motion would be that the Court should

3    dismiss the petition because on its face it's clear that the

4    statute is exempted by federal law.

5         THE COURT:  OK.  Well, hold on a second.  What we have

6    here is we have the petition.  The removal petition is seeking

7    a declaratory judgment.  And we have a motion to remand that

8    has been filed by the plaintiff.  So I'll need to decide this

9    motion to remand.  If the case is not remanded, I'm not sure if

10   it's more efficient to have the respondents file a motion to

11   dismiss or simply to file your motion for declaratory judgment

12   and have the opposing motion for declaratory judgment filed by

13   the plaintiff.  It seems to me that maybe that makes more sense

14   than having a motion to dismiss the underlying complaint, if

15   we're here now in federal court on the removal petition.  But

16   let me hear from the respondents on that.

17        MR. LAMPE:  This Matt Lampe.  I think that would be

18   fine.  There is a legal issue to present, which is the

19   preemption issue.  From our perspective, it's presented

20   appropriately on the motion to dismiss.  If your Honor prefers

21   that the parties brief it on cross-motions for declaratory

22   judgment, I am not thinking of any reason why that would not

23   also be perfectly appropriate.  I think either way our position

24   would be the Court should decide that preemption issue and can

25   do so very quickly as soon as the jurisdictional question is

J85ATANCps

1    determined.

2              THE COURT:  OK.  And let me just find out from

3    respondents, was there something else you had planned on

4    including in a motion to dismiss besides the preemption issue?

5              MR. LAMPE:  No, your Honor.  There are other arguments

6    that we may consider including, one of which is the

7    retroactivity argument.  So we could say the statute is

8    preempted.  If you find that it is not preempted, then you

9    could find that it is not applicable to this case.  And there

10   could be other arguments as well.

11             But the issue, petitioner, on the face of petition,

12   raises really just one issue, and that is, is the statute

13   preempted or not.  And petitioner sought in state court

14   declaratory judgment that there is no preemption.  Our view is

15   that the federal court should decide their issue under the

16   doctrine that we invoked in our removal petition.  So that may

17   be raised in a motion to dismiss once the Court determines that

18   it has jurisdiction.  But if the Court determines that it has

19   federal question jurisdiction, that's not to say that we can

20   only raise federal questions before the federal court.

21   obviously there would be other questions that could be raised,

22   of course, if the Court has question jurisdiction.

23             THE COURT:  OK.  Plaintiffs, any thoughts on this?

24             MR. FEIN:  Yes.  This is Mr. Fein speaking for the

25   plaintiff.  The respondents, they tried to have it both ways.

J85ATANCps

They're trying to say, OK, this is a federal question case, but
argue on state law retroactivity as well.  And that would moot
any federal question, if you decided that it was not
retroactive, so the prohibition didn't come into play at all.
And generally speaking, in regard to constitutional cases, you
try addressing a federal question if you can decide it on state
law issues.  And here, there's no injunctive federal issue
first, and if you lose there, then you have the state law issue
that may belong to the federal issue.  That fails.  I just
don't see how that works.  If they lose on the federal issue, I
don't think you have the jurisdiction to consider the
retroactivity issue.  You no longer have subject matter
jurisdiction.

          And separately I believe that, as a matter of
discretion, you would send the state law issue back to state
court.

          MS. BACHRACH:  Your Honor, this is Marion Bachrach for
Mr. Shine.  I did brief the retroactivity issue as purely a
state law issue.

          THE COURT:  Hold on a second.  Counsel, hold on a
second.

          (Pause)

          MS. BACHRACH:  Good to go?

          THE COURT:  Hold on a second because sometimes they do
this twice.  Just wait a second.

J85ATANCps

1          OK.  Go ahead, counsel.

2          MS. BACHRACH:  Thank you.  What I was saying is that I

3   disagree that the issue regarding retroactivity is purely a

4   state law issue.  It certainly can be part of the motion to

5   dismiss.  It's a very strong issue with respect to, the face of

6   the statute alleges less history, but there is very important

7   federal Supreme Court law, and recent Supreme Court law, that

8   plaintiff, Ms. Tantaros, has quoted, and that clearly is

9   germane to the retroactivity, or I should say nonretroactive

10  issue.  So it's not purely a state court issue at all.

11         MR. FEIN:  Your Honor, this is Mr. Fein again.  I

12  simply part company.  I don't see how anything that has been

13  said shows that whether 7515 is retroactive implicates the

14  United States Constitution or the Federal Arbitration Act.  The

15  Federal Arbitration Act doesn't say anything at all about

16  whether a statute is retroactive or not.  It's purely

17  interpretation of state law.  If you were to decide 7515

18  applies retroactively, you would look exclusively at state law,

19  because that governs.  If it's retroactive, it may have

20  consequences.  But the issue of retroactivity in isolation is a

21  purely state law issue.

22         THE COURT:  OK.  Let's do this.

23         MS. BACHRACH:  Your Honor --

24         THE COURT:  Hold on.  I'm not going to make this

25  decision now.  I was trying to get a sense of where we were in

J85ATANCps

```
1    terms of efficiency, getting everything teed up for me to

2    decide.  So let's do this.  We have a motion schedule for the

3    motion to remand and an opposition for the motion to remand as

4    well as a reply schedule.  Let's set a conference date, because

5    I do need to deal with the issue of jurisdiction first.  Let's

6    set a conference date for September 19th.  Does that work for

7    everyone?  At 11 o'clock?

8              MS. BACHRACH:  No, I'm not --

9              THE COURT:  I can't hear you, counsel.

10             MR. FEIN:  Your Honor.

11             MR. LAMPE:  Your Honor, this is Matt Lampe.  That date

12   works for 11 o'clock in the morning.

13             MS. BACHRACH:  Your Honor, this is Marion Bachrach.

14   It doesn't work for me.  I teach a course on Thursday.  I can't

15   do that.  I apologize.

16             THE COURT:  All right.  How about Monday, September

17   23rd, at 11 o'clock?

18             MR. LAMPE:  This is Matt Lampe.  That works for the

19   four respondents that we represent.

20             MR. FEIN:  Your Honor, this is Bruce Fein.  I have an

21   oral argument in the U.S. Court of Appeals for the District of

22   Columbia Circuit.  You know, they have the case there.  I

23   haven't been told whether it's the first case or not.  They

24   have oral argument from 9 to noontime.  That morning, then, is

25   foreclosed.  I could do it any time in the afternoon.
```

J85ATANCps

| 1 | THE COURT:  All right.  Hold on a second. |

How about October the 2nd, then?  That's a Wednesday.
At 2 o'clock p.m.

MR. LAMPE:  That is Matt Lampe for respondent.  That
works for us.

MR. FEIN:  Bruce Fein for the petitioner.  That works
for me.  Yes.

MS. BACHRACH:  Marion Bachrach.  That works for me.
What was the time, your Honor?

THE COURT:  2 o'clock.

MS. BACHRACH:  Thank you very much.

MR. CARROLL:  And from Quinn Emanuel, on behalf of the
Estate of Roger Ailes, that works for us as well.

THE COURT:  All right.  So we will have a status
conference at 2 o'clock.  I hope to have a decision regarding
jurisdiction by then.  And at that point we will deal with
setting a schedule if necessary for a motion to dismiss or a
motion for declaratory judgment.  But I do need to deal with
the issue of jurisdiction first.  So we'll again stay any
motion to dismiss or any answer until that date.  We'll deal
with it on that date.

Anything else from plaintiff today?

MR. FEIN:  No, your Honor.  Thank you.

THE COURT:  Anything else from defendants today?

MR. LAMPE:  That is Matt Lampe.  Not for the four

J85ATANCps

1    respondents that we represent.

2             MS. BASAR:  Your Honor.  I apologize.  This is Demet

3    Basar from Wolf Haldenstein for plaintiff.  It's not clear to

4    us whether your Honor wants an in-person conference or a

5    telephonic conference.

6             THE COURT:  Let's do that one in person.

7             MS. BASAR:  Thank you, your Honor.

8             THE COURT:  Anything else from the other defendants?

9             OK.  We're adjourned.

10             COUNSEL:  Thank you, your Honor.

11             (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25