**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/17/19

ANDREA TANTAROS,

               Petitioner,

    -against-

FOX NEWS CHANNEL, LLC, ET AL.,

               Respondents.

**19-cv-7131 (ALC)**

<u>**OPINION & ORDER**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

Petitioner Andrea Tantaros commenced a state action against Respondents Fox News, LLC, The Estate of Roger Ailes, William Shine, Irena Briganti, Suzanne Scott, and Dianne Brandi, asking for a temporary restraining order, a preliminary and permanent injunction, and declaratory relief. *Andrea Tantaros v. Fox News Channel, LLC., The Estate of Roger Ailes, William Shine, Suzanne Scott, Dianne Brandi, and Irena Briganti*, Index No. 156936/2019 (N.Y. Sup. Ct., Count of New York, July 15, 2019). Respondents removed this action to federal court pursuant to 28 U.S.C. § 1441. Petitioner filed a motion to remand to state court. For the reasons set forth below, Petitioner's motion to remand is hereby **DENIED**.

## INTRODUCTION

Petitioner alleges serious, troubling claims of sexual harassment, retaliation, and hostile workplace while employed at the Fox News Channel. Federal courts have jurisdiction over civil actions brought in state court if federal law created the cause of action asserted, or if state-law claims necessarily depend on the resolution of a substantial question of federal law. Here, Petitioner's state action necessarily raises a disputed and substantial federal issue: whether a New York State law prohibiting mandatory arbitration clauses for sexual harassment claims is

inconsistent with the Federal Arbitration Act ("FAA"). Accordingly, the state action falls within this Court's original jurisdiction, and Petitioner's motion to remand must be denied.

## BACKGROUND

On May 11, 2016, Fox News initiated American Arbitration Association ("AAA") Case No. 01-16-0001-7288 against Petitioner for breach of her Employment Agreement entered in September 2014. The Agreement provided that: "Any controversy, claim or dispute arising out of or relating to this Agreement or your employment shall be brought before a mutually selected three-member arbitration panel and held in New York City in accordance with the rules of the American Arbitration Association then in effect." Notice of Removal (ECF No. 1) ¶6. This mandatory arbitration clause covered Petitioner's allegations of sexual harassment, retaliation, and hostile workplace.

On August 22, 2016, Petitioner filed a complaint in the Supreme Court of New York against Respondents alleging sexual harassment, retaliation, and hostile workplace. On August 29, 2016, Fox News moved to compel arbitration. *Id.* at ¶ 8. The New York Supreme Court granted Fox News' motion to compel arbitration on February 15, 2017. *Id.* at ¶9. Thus, arbitration resumed before a three-member panel of the AAA.

The New York State legislature enacted Section 7515 of the New York Civil Practice Law and Rules ("§7515") on April 12, 2018 and it took effect on July 11, 2018. This section provided that employment agreements and other contracts in New York can no longer include mandatory arbitration provisions for "any allegations or claim of an unlawful discriminatory practice of sexual harassment." CPLR § 7515(a)(3).[1] In relevant part, the statute provides that: "Except where

---

[1] The statute was amended effective October 11, 2019 to expand the prohibition on arbitration to all forms of unlawful discrimination. The Court's analysis regarding subject matter jurisdiction is unaltered by the change in the scope of CPLR § 7515.

inconsistent with federal law, no written contract, entered into on or after the effective date of this section shall contain a prohibited clause," *id.* at §7515(b)(i); and that "[e]xcept where inconsistent with federal law, the provisions of such prohibited clause . . . shall be null and void," *id* at §7515(b)(iii). This law was one of a set of laws (Part KK, Subpart B of the 2018–2019 New York budget bill) aimed at addressing sexual harassment.

On July 15, 2019, Petitioner filed a motion to stay arbitration in state court and sought (1) a temporary restraining order against Respondents from proceeding with arbitration while the court resolved the motion to stay arbitration; (2) a preliminary and permanent injunction against arbitration of Petitioner's sexual harassment allegations; and (3) a declaratory judgment that Petitioner cannot be compelled under §7515 to continue to arbitrate her sexual harassment allegations. *See Andrea Tantaros v. Fox News Channel, LLC., The Estate of Roger Ailes, William Shine, Suzanne Scott, Dianne Brandi, and Irena Briganti*, Index No. 156936/2019 (N.Y. Sup. Ct., Count of New York, July 15, 2019). On July 30, 2019, Respondents filed a notice of removal under 28 U.S.C. § 1441. ECF No. 1. On August 5, 2019, Petitioner filed the instant motion to remand. ECF No. 10. Respondents filed their opposition on September 3, 2019 and Petitioner replied on September 6, 2019. ECF Nos. 19, 22. The Court heard oral argument in this matter on November 19, 2019.

## STANDARD OF REVIEW

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Removal may be based on diversity of citizenship or the federal nature of the claims. *See* 28 U.S.C. §§ 1441(b)–(c).

Federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case can arise under federal law in two ways. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006). First, a federal law can create the cause of action asserted. *Id.* Second, state-law claims can "necessarily depend[] on resolution of a substantial question of federal law." *Id.* Finding federal question jurisdiction in this latter category is "rare," *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005), and is confined to a "'special and small category' of cases," *Gunn v. Minton*, 568 U.S. 257, 258 (2013) (quoting *Empire Healthchoice*, 547 U.S. at 699). Additionally, in the context of a motion to remand, federal courts "must resolve any doubts against removability," *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007), and the removing defendant has the burden of establishing that removal was proper. *See United Food & Commercial Workers Union Local 919 v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).

Under this second category of cases, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Rather, the Supreme Court has "confined federal-question jurisdiction over state-law claims to those that really and substantially involve a dispute or controversy respecting the validity, construction or effect of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng.'g & Mfg.*, 545 U.S. 308, 313 (2005) (internal quotation marks and brackets omitted). Although the existence of federal question jurisdiction must be "determined by reference to the well-pleaded complaint," *Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808 (1986), if federal law "is a necessary element" of a well-pleaded, state-law claim, then that claim

4

may be removed to federal court. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988).

There is a four-factor test to determine when state-law claims arise under federal law: "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal question jurisdiction is appropriate when these four requirements are met, because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. 308, 313 (2005)).

"The first two elements of the *Grable-Gunn* test are relatively straightforward. A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law . . . . As to the second element, although there could be a case in which the court would need to fathom whether a purported dispute is genuine, there can be no doubt that the 'actually disputed' factor of the test is satisfied when the federal issue is 'the only' or 'central' point in dispute." *New York ex rel. Jacobson v. Wells Fargo National Bank, N.A.*, 824 F.3d 308, 315–316 (2016) (quoting *Grable*, 545 U.S. at 314–315). As to the third element, "[t]he substantiality inquiry under *Grable* looks [] to the importance of the issue to the federal system as a whole" as opposed to only the parties. *Gunn*, 568 U.S. at 260. Finally, the fourth element "focuses principally on the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected. Absent a special state interest in a category of litigation, or an express congressional preference to avoid federal adjudication, federal questions that implicate substantial

federal interests will often be appropriately resolved in federal rather than state court." *Wells Fargo National Bank*, 824 F.3d 308, 316 (2d Cir. 2016).

## DISCUSSION

Petitioner's state action necessarily raises a disputed and substantial federal issue: whether § 7515's prohibition on mandatory arbitration clauses for sexual harassment claims conflicts with the FAA. The parties agree that the second element of the *Grable-Gunn* jurisdiction test (i.e., that the federal issue is "actually disputed") is met. Elements one, three, and four are discussed below.[2]

### I.  *Grable-Gunn* Jurisdiction

#### A.  "Necessarily Raised"

The first element of *Grable-Gunn* jurisdiction is that the federal issue must be "necessarily raised" in the state law claim. It is not enough that "federal law becomes relevant only by way of a defense to an obligation created entirely by state law." *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 13 (1983). Instead, a federal issue is necessarily raised when the "very success [of the state claim] depends on giving effect to a federal requirement," *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1570 (2016), and the federal issue is "an essential element of [the state law] claim." *Grable*, 545 U.S. at 315.

---

[2] Petitioner also claims that the Court should remand this case because it may have to decide "pure[] issues of state law." Petitioner's Supplemental Memorandum of Law in Further Support of Motion to Remand (ECF No. 15) at 2. However, since proving consistency with federal law is an essential element of Petitioner's state law claim, this question must be decided by either the federal or state court. There are indeed state law issues regarding § 7515 that remain unresolved, including whether the statute applies retroactively and whether it is possible to waive the rights protected under the statute by engaging in arbitration. Even assuming that these issues are *purely* state law issues (and that retroactivity and waiver do not, in this case, implicate constitutional guarantees), the Court should still exercise jurisdiction over these claims. The threshold question of whether §7515 conflicts with the FAA can and should be decided by this Court, and this federal question jurisdiction is not disrupted by the potential for state-law avenues for relief. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("It would be unusual for a state-law claim that raised a federal issue not to be subject to *some* conceivable state-law defense, whether based on the statute of limitations, equitable principles such as laches and unclean hands, or some other potential defect analytically prior to the federal issue at the hear of the claim.").

§7515 prohibits mandatory arbitration clauses for sexual harassment claims "[e]xcept where inconsistent with federal law." CPLR §7515(b)(i). In order for Petitioner to succeed on her claims, she must prove that the claims are not "inconsistent with federal law." This requirement lurks in the background of all state statutes—that is, any state law that is "inconsistent with federal law" is necessarily invalid per the Supremacy Clause. *See* U.S. Const. Art. VI, cl. 2. If §7515 was silent on this issue, perhaps this would be a different case. However, the statute twice, explicitly provides: "Except where inconsistent with federal law . . . ." CPLR §§ 7515(b)(i), 7515(iii). Thus, Petitioner must affirmatively demonstrate that her claim is not inconsistent with (i.e., that it is consistent with) federal law. This makes consistency with federal law a "necessary element of one of the well-pleaded state claims," for if Petitioner cannot prove consistency, then her claim must fail. *Franchise Tax Bd.*, 463 U.S. at 13. Thus, the federal issue—whether §7515 is inconsistent with the FAA—is "necessarily raised."

Petitioner argues that "CPLR 7515 stated the obvious without legal significance." Petitioner's Memorandum of Law in Support of Motion to Remand (ECF No. 11), at 4 ("Petitioner's Memo"). If the Court were to take the text of the statute seriously, Petitioner asserts, then every state statute would fall within the federal courts' jurisdiction because of the Supremacy Clause. Respondents claim, on the other hand, that the "except where inconsistent with federal law" language in §7515 "transforms preemption from a defense into an element of a claim under that statue." Memorandum of Law in Opposition to Motion to Remand (ECF No. 19), at 5. The Court finds Respondents' argument more persuasive, as it better comports with the text of the statute and avoids rendering parts of the statute superfluous. *See, e.g.*, *United States v. Harris*, 838 F.3d 98, 106 (2d Cir. 2016) ("[C]ourts must give effect to all of a statute's provisions 'so that no

part will be inoperative or superfluous, void or insignificant.'") (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotation marks omitted)).

## B. "Substantial"

The third element of *Grable-Gunn* jurisdiction is that the federal issue must be "substantial" to "the federal system as a whole." *Gunn*, 568 U.S. at 260. In this case, the federal interest is ensuring proper and uniform enforcement of the FAA. Congress (in passing the FAA) and the Supreme Court (in interpreting the FAA) have repeatedly underscored the importance of uniform enforcement of the FAA.

The FAA reflects "a liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Although §7515 only applies to a small subset of arbitration agreements,[3] the federal interest lies in the uniform enforcement of the FAA generally, and in preventing states from passing laws that directly conflict with the mandate of the FAA. The Supreme Court has granted certiorari in a number of cases to protect this substantial federal interest. *See, e.g., Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1425 (2017) ("Because that rule singles out arbitration agreements for disfavored treatment, we hold that it violates the FAA."); *Concepcion*, 563 U.S. 333 at 341 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) ("[S]tate law is preempted to the extent it stands as an obstacle to the accomplishment and execution of the full

---

[3] Since the Notice of Removal was filed, § 7515 has been amended to expand the prohibition on arbitration to all forms of unlawful discrimination. Moreover, states have followed New York's lead by passing similar statues that restrict mandatory arbitration clauses as they apply to sexual harassment claims. *See, e.g.*, Md. Code Ann., Lab. & Empl. § 3-715 (West 2019) ("Except as prohibited by federal law, a provision in an employment contract, policy, or agreement that waives any substantive or procedural right or remedy to a claim that accrues in the future of sexual harassment or retaliation for reporting or asserting a right or remedy based on sexual harassment is null and void as being against the public policy of the State."). Accordingly, the number of cases subject to §7515 (and similar statutes in states across the country) has increased dramatically.

purposes and objectives of the FAA.") (citation omitted). Finally, the question of whether §7515 is inconsistent with the FAA is a pure question of law that will affect the scope of any and all mandatory arbitration agreements in New York State, further indicating that the federal issue is substantial. *See Fracasse v. People's United Bank*, 747 F.3d 141, 145 (2d Cir. 2014) ("First, a pure question of law is more likely to be a substantial federal question. Second, a question that will control many other cases is more likely to be a substantial federal question.") (quoting *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833, 842 (11th Cir. 2013)).

## C. "Federal-State Balance"

The fourth element of *Grable-Gunn* jurisdiction is that the federal interest is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. This inquiry "focuses principally on the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected." *Wells Fargo National Bank*, 824 F.3d 308, 316 (2d Cir. 2016). "Federal questions that implicate substantial federal interests will often be appropriately resolved in federal rather than state court." *Id.*[4]

Given the scope of §7515 and the nature of the underlying state-law claims, these claims will not be substantively decided by this Court, nor will the federal courts be flooded with state-law sexual harassment claims. Instead, the only jurisdictional hook for removal in this case is the substantial federal question. The underlying state-law claims—which include troubling allegations of sexual harassment and discrimination—will be resolved by either the state court (if §7515 does not conflict with the FAA) or by arbitrators (if §7515 does conflict with the FAA). Thus, in

---

[4] Notably, the FAA does not create any independent federal-question jurisdiction. *Southland Corp. v. Keating*, 465 U.S. 1, 16 n.9 (1984) ("While the Federal Arbitration Act creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976) or otherwise."). An express jurisdictional grant can indicate that a court exercising *Grable-Gunn* jurisdiction "will not upset the appropriate balance of federal and state judicial responsibilities," but the lack of a grant is not dispositive of the issue. *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 110, 1028 (2d Cir. 2014).

exercising jurisdiction, this Court is not disrupting the federal-state balance approved by Congress. And the federal issue in this case, which involves the proper and uniform enforcement of one of the most significant statutes Congress has passed, can and should be decided by a federal, rather than a state, court.

## CONCLUSION

Petitioner brings serious and troubling allegations against Respondents that warrant careful consideration by whichever court or arbitrator considers her claims. Whether her claims can be heard in court or by an arbitrator rests on a disputed, substantial federal issue. That federal issue gives this Court jurisdiction over Petitioner's claim. Accordingly, Petitioner's motion to remand is hereby **DENIED**.

**SO ORDERED.**

Dated:      December 17, 2019
              New York, New York

                                    **ANDREW L. CARTER, JR.**
                                       **United States District Judge**