# Appendix

# SUPREME COURT OF THE STATE OF NEW YORK - NEW YORK COUNTY

**PRESENT:**    COHEN, DAVID BENJAMIN                         **PART**    58

                                    *Justice*

                                                    Amended Order

TANTAROS, ANDREA

                                        **INDEX NO.**        157054/2016

                                        **MOTION DATE**

                - v -

FOX NEWS NETWORK, LLC                   **MOTION SEQ. NO.**       003

The following papers, numbered 1 to _____ , were read on this application to/for

| | |
|---|---|
| Notice of Motion/ Petition/ OSC - Affidavits - Exhibits | No(s)    1 |
| Answering Affidavits - Exhibits | No(s)    2 |
| Replying | No(s)    3 |

**Upon the foregoing papers, it is**

Motion granted for the reasons stated on the record. Matter disposed and may be restored as permitted per CPLR 7503(a).

**DATE :**    **2/15/2017**

                                        COHEN, DAVID BENJAMIN, JSC

**DATE :**    **3/20/2017**

                                        COHEN, DAVID BENJAMIN  , JSC

| | | | |
|---|---|---|---|
| **1. CHECK ONE** | : | [X] CASE DISPOSED | [ ] NON-FINAL DISPOSITION |
| **2. APPLICATION** | : | [X] GRANTED   [ ] DENIED | [ ] GRANTED IN PART   [ ] OTHER |
| **3. CHECK IF APPROPRIATE :** | | [ ] SETTLE ORDER | [ ] SUBMIT ORDER |
| | | [ ] DO NOT POST | [ ] FIDUCIARY APPOINTMENT   [ ] REFERENCE |

157054/2016   TANTAROS, ANDREA VS. FOX NEWS NETWORK, LLC     Motion No. 004

1

1  SUPREME COURT OF THE STATE OF NEW YORK
   COUNTY OF NEW YORK : CIVIL TERM  PART 58
2  ---------------------------------------------X
   ANDREA TANTAROS,
3                                Plaintiff,

4                - against -

5  FOX NEWS NETWORK, LLC, ROGER AILES,
   WILLIAM SHINE, DIANNE BRANDI, IRENA
6  BRIGANTI, and SUZANNE SCOTT,
                                Defendants.
7  ---------------------------------------------X
   INDEX NO. 157054/16         111 Centre Street
8                              New York, New York
                              February 15, 2017
9  BEFORE:

10         THE HON. DAVID B. COHEN, J.S.C.

11

12  APPEARANCES:

13  FOR THE PLAINTIFF:

14  JUDD BURSTEIN, P.C.
    5 Columbus Circle
15  New York, New York  10019

16  FOR THE DEFENDANTS:

17  DECHERT LLP
    1095 Avenue of the Americas
18  New York, New York  10036
    BY: ANDREW J. LEVANDER, ESQ.
19      LINDA C. GOLDSTEIN, ESQ.

20  QUINN EMANUEL URQUHART & SULLIVAN, LLP
    51 Madison Avenue, 22nd floor
21  New York, New York  10010
    BY: PETER CALAMARI, ESQ.

22

23

24                          JACK L. MORELLI
                            Senior Court Reporter

25

PROCEEDINGS

1          THE COURT:  Good afternoon.  This is Andrea

2    Tantaros against Fox News Network, LLC, Roger Ailes,

3    William Shine, Dianne Brandi, Irena Briganti and Suzanne

4    Scott, under Supreme Court index 157054 of 2016.  Starting

5    with plaintiff's counsel, put your appearance on the

6    record.

7          MR. BURSTEIN:  Good afternoon, Your Honor.  Judd

8    Burstein, of Judd Burstein, P.C., for the plaintiff.

9          MR. LEVANDER:  Your Honor, good afternoon.

10   Andrew Levander with Linda Goldstein, from Dechert.  We

11   represent Fox and the other individuals except for Roger

12   Ailes.

13         MR. CALAMARI:  Peter Calamari, and sitting in

14   the box is Joseph Sarles, from Quinn Emanuel, and we

15   represent Roger Ailes.

16         THE COURT:  Did you want to put your additional

17   members or associates on the record as well or at least

18   their names?

19         MR. LEVANDER:  I think that's fine, Your Honor.

20         THE COURT:  Okay.  I read the papers, I'm ready

21   for argument.  At this time who is arguing for Fox, Mr.

22   Levander?

23         MR. LEVANDER:  Yes, Your Honor.

24         THE COURT:  You may procedure.

25         MR. LEVANDER:  Thank you, Your Honor.  May it

- J L M -

3

PROCEEDINGS

1    please the Court, the motion before the Court, as the

2    Court undoubtedly is aware, concerns a broad arbitration

3    clause in an employment contract.  Ms. Tantaros was very

4    sophisticated, she signed that employment contract with

5    Fox containing that express broad arbitration clause not

6    once but twice, and she was represented by a sophisticated

7    talent agency.

8              THE COURT:  By broad you mean it doesn't

9    reference any specific types of claims in it?

10              MR. LEVANDER:  Correct.

11              THE COURT:  That's one of the plaintiff's

12    arguments, isn't it, that that is the failing of this

13    cause?

14              MR. LEVANDER:  Yes, but that's not the law.  But

15    if you want me to get to that right now I can, but I was

16    going to build my way there.  But I'm happy to fire away.

17              THE COURT:  As you wish, counsel, we'll get to

18    it.

19              MR. LEVANDER:  The broad clause does say, any

20    controversy, claim or dispute arising out of or relating

21    not only to the agreement but her employment, and any such

22    claim has to be arbitrated.  Under both federal and state

23    law that provision needs to be enforced.  Indeed there is

24    a strong policy in favor of arbitration reflected in the

25    CPLR, Federal Arbitration Act and a plethora of cases over

- J L M -

PROCEEDINGS

1      the last 50 year or more, including the New York Court of

2      Appeals case in Smith Barney versus Luckie, which the New

3      York Court of Appeals directed the lower courts to

4      "rigorous judicial enforcement of arbitration agreements."

5      The Westinghouse case, New York Court of Appeals did the

6      same, and the Supreme Court of the United States has also

7      issued its opinions.  I'm talking about the strong policy

8      in favor of arbitration.

9              THE COURT:  Is that the Hirschfeld case you're

10     referring to?

11             MR. LEVANDER:  That's the New York Court of

12     Appeals case.  Supreme Court of the United States would be

13     Moses Cone Memorial Hospital, it would be

14     Shearson/American Express versus McMahon.  There is a

15     plethora of cases, Your Honor.  Indeed the 2nd Circuit has

16     observed in Arciniaga versus General Motors, 460 F.3d at

17     page 234, "It is difficult to overstate the strong federal

18     policy in favor of arbitration."  And that's the law in

19     New York as well.

20             Based on those cases, those principles and the

21     authority on point that I will now discuss, we believe

22     that the motion to compel arbitration should be plainly

23     granted.  Indeed, Your Honor, plaintiff has flouted the

24     terms of her contract, including the arbitration clause,

25     in bringing this case, in the various publicity stunts she

- J L M -

PROCEEDINGS

1      has engaged in.

2              The argument that they make, however, ignores

3      overwhelming precedent.  I will focus on the three issues

4      that counsel raises, as I understand them, as to why she

5      should be allowed out of her arbitration clause and to be

6      able to litigate in court.

7              As I understand it, her first argument is,

8      although I'm compelled to arbitrate certain claims, I

9      don't have to arbitrate sexual harassment claims.  And

10     that's because the words sexual harassment don't appear in

11     the broad clause, as Your Honor referenced a few moments

12     ago.  That is simply not the law.  Plaintiff does not cite

13     a single case in which a Court has held that a broad

14     employment arbitration clause in an employment agreement

15     that encompasses any claim relating to her employment,

16     does not encompass sexual harassment, whether or not the

17     arbitration clause contains the words sexual harassment,

18     it's just not a requirement of the law to the contrary.

19             She cites a couple of cases in which the Court

20     has noted the full term of the language that the

21     arbitration clause, and some arbitration clause do have.

22     Things like any claim including but not limited to.  But,

23     for example, in Cicchetti versus Davis, which is a

24     Southern District case in 2003, but the --

25             THE COURT:  Isn't it sufficient if a clause says

                          - J L M -

6

PROCEEDINGS

1    essentially the same thing as her clause, if it says any

2    claim and specifies a few, isn't that essentially the

3    same?

4           MR. LEVANDER:  In our view it's exactly the same

5    whether it says including but not limited to or it doesn't

6    have the including but not limited to, any claim means any

7    claim and that's what we have here.

8           Indeed, in Cicchetti, one of the cases she

9    relied on, while it drops a footnote that says, "The

10   language has the including but not limited to sexual

11   harassment."  The analysis of the Court was that it was

12   because the arbitration clause related to "all her

13   employment."  Precisely what the arbitration clause in

14   this case does.

15          As I said, Mr. Burstein has not cited a single

16   case in which a Court has said, okay, you have a broad

17   thing that says any claim relating to employment.  But you

18   didn't put in the words sexual harassment and therefore,

19   we're not going to allow arbitration of the sexual

20   harassment claim; not a single one.

21          Indeed, in Tong versus S.A.C. Capital

22   Management, which is a 1st Department case from 2008 which

23   you cited in approval in your Siroy, decision recently,

24   "The clause that was held to encompass claims under both

25   the New York State and the New York City Human Rights

- J L M -

7

PROCEEDINGS

1    Laws," exactly the claims that are in this case, "was

2    exactly the same as the clause in our case relating to

3    anything under your employment agreement."  No reference

4    to sexual harassment.  Nonetheless, the 1st Department

5    ordered, compelled arbitration.

6            THE COURT:  But how does the contract alleged

7    fall within the scope of employment?

8            MR. LEVANDER:  That's simple, Your Honor, if you

9    just read the complaint.  And the complaint, I will

10   particularly refer you to, and that's the whole thing, but

11   if you look at paragraphs 14 through 18 --

12           THE COURT:  I've read the complaint, counsel.

13           MR. LEVANDER:  It says, "Every act that occurred

14   here occurred on the premises."

15           THE COURT:  In New York.

16           MR. LEVANDER:  Of Fox in New York.

17           THE COURT:  I know.

18           MR. LEVANDER:  And the claims are all based on

19   our status as an employer.  So this is quintessentially an

20   employment place claim.  This is not -- you know, he cites

21   as an exception the case, for example, where an employee

22   is off premises and there is a social interaction not part

23   of business and a sexual assault is alleged.  That's not

24   what this case is about.  What this case is about is,

25   allegedly systematic conduct at Fox, at the news station,

- J L M -

PROCEEDINGS

1    that sexual harassment.  And if it wasn't related to --

2              THE COURT:  Are you contending that if the

3    sexual assault took place in Fox's premises that that

4    would fall within the scope of employment?

5              MR. LEVANDER:  I actually think it would.  But

6    we don't have to cross that bridge in this case.  The case

7    here is, the only way we're liable is as an employer.

8    This is quintessentially an employment case, therefore it

9    is encompassed.  And even Mr. Burstein doesn't make that

10   argument -- but if he did make the argument that it was

11   unrelated to employment, he would automatically lose his

12   New York State, New York City Human Rights Law claims

13   because they are only bringable [sic] against an employer.

14             So, the same is true in the 2nd Circuit's case

15   called Oldroyd, 134 F.3d 72.  And there the holding was a

16   federal statutory whistleblower claim is encompassed by an

17   arbitration clause that says, "Any claim arising under the

18   employment agreement."  No reference to harassment.  No

19   reference to whistleblower.  No reference to anything

20   else, just a broad clause; exactly as we have here.

21             We've cited to Your Honor a host of other cases

22   which uniformly hold the same thing.  There is a Fox case,

23   there is a Gateson case, there is a Valdes case, all in

24   the Southern District, in which arbitration has been

25   compelled in harassment cases based on a clause that is

                        - J L M -

9

PROCEEDINGS

1    identical or indistinguishable from the clause in our case

2    which is, "Any claim, controversy or dispute relating to

3    your employment agreement or your employment."

4         The cases apply this principle uniformly.  For

5    example, Mr. Burstein cites the Coors case in the 10th

6    Circuit.  But the Coors case is exactly on point.  It's

7    not a harassment case, it's an antitrust case.  There it

8    says, any claim relating to the contract.  The Court says,

9    well, you're compelled to.  In the antitrust case cited in

10   the Supreme Court case in Mitsubishi, Supreme Court of the

11   United States saying, you've got -- it doesn't matter that

12   it doesn't say antitrust, it's related to the contract.

13   End of story, you go arbitrate.  That is the federal

14   policy that's involved here.  Indeed, Your Honor, your

15   Siroy decision, I believe --

16        THE COURT:  Which you smattered through the

17   brief at every opportunity.

18        MR. LEVANDER:  I may not have done it enough but

19   I tried.  But I think that it's pretty on point.  In Siroy

20   there was a forum selection clause which is similar to

21   a --

22        THE COURT:  But not the same.

23        MR. LEVANDER:  Not the same.  But you cited a

24   bunch of the arbitration cases that are on point.

25        THE COURT:  But there aren't a lot of forum

- J L M -

PROCEEDINGS

1   selection clauses.

2           MR. LEVANDER:  But the principle was that was a

3   forum selection clause which said any claim.  It didn't

4   include the sexual harassment claim.  But you said

5   nonetheless, this case gets shipped to New Jersey, I

6   believe it was.  And you cited, even though there was no

7   reference to sexual harassment in the clause, and you

8   cited Tong, the 1st Department case I mentioned a moment

9   ago which is right on point and I think controlling here.

10  The petition of Levitt, another arbitration case in which

11  the same principle applied and you cited those two cases

12  with approval as compelling your decision.

13          Now, there is also a suggestion in his brief

14  that somehow because it's sexual harassment that deserves

15  to be in a courtroom notwithstanding the arbitration

16  clause, and that doesn't fly.  In fact, the Supreme Court

17  in 1991 in the Gilmore case specifically threw that

18  principle out, rejected it and says, "Harassment claims by

19  any other claims, discrimination claims, should be heard

20  pursuant to arbitration if that's what the clause covers."

21  And the New York Court of Appeals followed Gilmore shortly

22  thereafter in Fletcher versus Kidder Peabody, a 1993

23  decision which, again, ironically, Mr. Burstein cites in

24  his brief with approval.

25          Indeed, in Guyden versus Aetna, 544 F.3d in the

- J L M -

PROCEEDINGS

1    2nd Circuit 2008, the Court specifically held, "That the

2    inability of an employee to publicly air their

3    whistleblower claim under statute does not give rise to

4    vitiating an arbitration clause."  Right on point.

5        Second argument that he makes, as I understand

6    it, even he describes it is unprecedented, I would

7    describe it as frivolous, the notion that after the

8    arbitration clause was signed, two years later after there

9    is a torrent of public stunts and public appearances by

10   plaintiff and her lawyer, in which even Mr. Burstein

11   acknowledged that he would probably be violating the

12   contract of his client, that the Fox News issued a

13   statement that said, "We've already filed an arbitration

14   claim against Ms. Tantaros."

15       THE COURT:  Now, did that claim make it into the

16   news?  It seemed like it may not have, right?

17       MR. LEVANDER:  If it was -- it did not.

18       THE COURT:  Did that get reported in the end?

19       MR. LEVANDER:  I never saw it.

20       THE COURT:  Okay.

21       MR. LEVANDER:  Whatever one's view of whether or

22   not that anodyne statement is a violation of the

23   confidentiality agreement in a contract, that's a contract

24   claim that must be arbitrated, not a basis to vitiate an

25   arbitration clause.

- J L M -

12

PROCEEDINGS

1       THE COURT:  So, you send to arbitration a claim

2   as to whether or not arbitration was vitiated by some

3   waiver?

4       MR. LEVANDER:  No, we've made an arbitration

5   claim based on the fact that she published a book without

6   getting preapproval and said that violated her contract.

7   That's our pending arbitration claim.  They then brought

8   this case and in response to we issued -- after they were

9   on TV, radio, newspaper --

10      THE COURT:  Then you brought this motion?

11      MR. LEVANDER:  And then we brought this motion.

12  We never litigated anything about the defense of this

13  case.  We've never done anything but immediately bring an

14  action to compel arbitration.  The only way --

15      THE COURT:  But how do you respond to

16  plaintiff's argument that you waived your right to compel

17  arbitration under the arbitration clause by violating the

18  confidentiality of the arbitration?

19      MR. LEVANDER:  Because the case law is

20  overwhelming.  Waiver only occurs when you litigate, okay?

21  Making a statement is not litigation.  Actually litigate,

22  protracted litigation is the standard which actually

23  prejudices the other party.  I can cite, those are the

24  exact words of the PPG Industries versus Webster case in

25  the 2nd Circuit, Thyssen versus Calypso Shipping in the

- J L M -

13

PROCEEDINGS

1    2nd Circuit, and the New York Court of Appeals decision in

2    Cusimano versus Schnurr.  In fact, in Cusimano the New

3    York Court of Appeals emphasized that the waiver turned on

4    the protracted use of the courts.  A statement

5    out-of-court is not the use of the courts to the actual

6    prejudice of the other party.  That's the standard and

7    that didn't occur here.  Nothing was prejudicial.

8            THE COURT:  Counsel, two more minutes and I

9    think that you probably want to get to the claim as to the

10   individuals.

11           MR. LEVANDER:  Yes, I do.

12           THE COURT:  Because you have several of them as

13   well.

14           MR. LEVANDER:  Yes.  So, I also just want to

15   point out before I do though, that there are at least two

16   very good cases to read about that, "All acts of the

17   parties subsequent to the making of the contract which

18   raised issues of facts or law lie exclusively with the

19   arbitrator."  Here you have a post-contract statement, in

20   fact, a post-arbitration statement.  That's their basis,

21   it goes to the arbitrator.  We violated the contract, the

22   arbitrator can find that.  Finally, you can't avoid an

23   arbitration clause by suing your employer, that's Black

24   Letter Law also.

25           In Hirschfeld Products, which Your Honor

- J L M -

PROCEEDINGS

1    referred to earlier, against Mirvish, the 1st Department

2    which was subsequently affirmed by the Court of Appeals

3    explained there, "The attempt to distinguish officers and

4    directors from the corporation they represent for the

5    purposes of evading an arbitration provision is contrary

6    to the established policy of this state."  Subsequently in

7    the Court of Appeals, the Court of Appeals affirmed that

8    holding and said, that under New York and federal law the

9    arbitration clause of the employer extends to quote, "Any

10   agent of the employer."  88 NY2d at 156.

11        More recently still in DiBello versus Salkowitz

12   in the 1st Department, the Court held, "The enforceability

13   of the arbitration agreement is not affected by the

14   statutory nature of the discrimination claims.  And given

15   the employment related nature of the claims, the

16   individual employee defendant as an agent of the employer

17   is entitled to demand arbitration of the claims against

18   him, no less than the employer is entitled to demand

19   arbitration of the claims against it.  That is the 1st

20   Department's holding in DiBello.

21        The 2nd Circuit has numerous cases holding to

22   the same effect, including Ragone and Powers.  Indeed, in

23   the 2nd Circuit in Roby versus Lloyd's, which is one of

24   the cases you cited with approval in Siroy, the Court

25   stated, 2nd Circuit stated, "In this and other circuits

- J L M -

15

PROCEEDINGS

1     consistently have held that employees of any entity,

2     employee of any entity that is party to an arbitration

3     agreement are protected by that agreement."

4          The 2nd Circuit has also emphasized that when

5     you're moving to compel arbitration the standard is even

6     easier if the party that you were moving to compel against

7     is the one that signed.  So here she signed, she agreed to

8     arbitration.  Any claim to avoid arbitration is less

9     strong under those circumstances.

10         THE COURT:  You may conclude, counsel.

11         MR. LEVANDER:  I'm going to hold the rest of my

12    time for rebuttal.  Thank you.

13         THE COURT:  You may be seated.

14         Mr. Calamari.

15         MR. CALAMARI:  Yes, Your Honor, I'll be very

16    brief.  I just join in the arguments of Mr. Levander.  The

17    cases are absolutely clear here.  There is just no law to

18    support the position of plaintiff's counsel.  And I'll, if

19    I may, reserve my time for rebuttal.

20         THE COURT:  I believe we reserved three minutes

21    for rebuttal on the defense side.

22         MR. LEVANDER:  Thank you, Your Honor.

23         THE COURT:  Okay.  I think that you probably

24    were a minute under, so I'll give you that additional

25    minute if you need it, okay?

- J L M -

16

PROCEEDINGS

1           Mr. Burstein, you're up.

2           MR. BURSTEIN:  I'll try and talk quickly and try

3       and work backwards.  I don't dispute that there is a

4       presumption in favor of arbitration.  But I also I don't

5       think that the other side can dispute that one shouldn't

6       have to arbitrate if you haven't agreed to arbitrate.

7       Although there are many cases that say that an employer,

8       an employee can be required to arbitrate against other

9       executives, for example, when there is a broad arbitration

10      clause; this case is different.  Everybody is pointing to

11      Siroy but let me tell you why Siroy is actually helpful to

12      me.  In Siroy you pointed out three different situations

13      where admittedly in a forum selection clause where another

14      nonparty to the agreement might be entitled to

15      arbitration.  The two that are sort of relevant is

16      third-party beneficiary and the third which is so close

17      that it's all interrelated.  One could argue under normal

18      circumstances that we might fall within the third

19      category, but this case is different.  I don't know if

20      you've seen the entire agreement, Your Honor, and I have a

21      copy.

22          THE COURT:  I've seen all portions of the

23      agreement that were in the papers, so I have everything

24      that's in the record.

25          MR. BURSTEIN:  Okay, well, what's in the record

                          - J L M -

PROCEEDINGS

1     then in our opposition papers is 15.1 of Ms. Tantaros'

2     agreement.  It's one of the exhibits to my affidavit.

3     There are so many papers here.

4          THE COURT:  Is it you're saying 15.1, "This

5     agreement is non-assignable by performer"?

6          MR. BURSTEIN:  Yes.

7          THE COURT:  I'm looking at it.

8          MR. BURSTEIN:  So what 15.1 says is, "That this

9     agreement shall inure to the benefit of Fox's successors,

10    assignees, affiliates."  It says, "As used in this

11    agreement the term 'affiliate' shall mean any company

12    controlling, controlled by or under common control with

13    Fox."

14         THE COURT:  So what that would mean if Fox was

15    acquired, right, and Fox's employees were covered, then

16    the acquiring entity employees would be covered as well,

17    right?

18         MR. BURSTEIN:  No.  Respectfully, I think that

19    if, in fact, there were another provision in this

20    agreement that protected employees, perhaps.  But this

21    provision can only be read one way, that this is an

22    agreement, as some parties do, they have an agreement

23    where they say there are no third-party beneficiaries and

24    this agreement is only for the benefit of certain people.

25    There is no definition of Fox in the agreement to include

- J L M -

PROCEEDINGS

1    employees or anyone else.  That's why this case is

2    fundamentally different than any other case, because --

3              THE COURT:  But doesn't this provision deal with

4    issues if Fox is acquired or merges or something else like

5    that?  How does that exclude employees?

6              MR. BURSTEIN:  It does, because it's made a part

7    of the agreement.  And the part of the agreement that it's

8    made a part of are standard conditions of employment.

9    This is an agreement between Fox News and Andrea Tantaros.

10   The agreement includes not only the part that is specific

11   to Ms. Tantaros, but says the standard conditions of

12   employment also apply.  There are all sorts of provisions

13   in here that are not talking about, you know, mergers,

14   they are talking about when a performer can perform

15   services.  What rights the performer has.

16   Indemnification, commissions, Internet restrictions,

17   promotions, injunctive relief.  This is all specific to

18   the employee.  And if an employer --

19             THE COURT:  I think a lot of that stuff is

20   blacked out in the papers.

21             MR. BURSTEIN:  I can give you a full set.

22             THE COURT:  It was redacted for a reason and it

23   wasn't in the papers, so.

24             MR. BURSTEIN:  But it's a public -- I wanted to

25   be careful as to the other side since it's theoretically a

- J L M -

19

PROCEEDINGS

1    confidential agreement, I didn't want to put in anything

2    other than what was absolutely necessary. But I think

3    that Mr. Levander will agree, that this is not some single

4    part of the agreement. I think it would be helpful to

5    allow me to supplement the record with a copy of the

6    entire agreement. Because you will see that it -- when

7    two parties enter into a contract and they say this is

8    only for the benefit of the two parties, and with respect

9    to Fox it's only with respect to Fox and its affiliates

10   and this is how we define Fox and affiliates, and there is

11   no definition of Fox News. If you look at the first --

12   well, you don't have it but there is no definition of Fox

13   as Fox including its employees.

14        THE COURT: I know you're trying to convince me

15   that this agreement somehow excludes the employees. But

16   it says this agreement is nonassignable by performer.

17   Which means your client can't assign it but Fox can. But

18   it doesn't say anything about whether employees are or are

19   not considered. This deals with the assignment of the

20   agreement to any future entity, which hasn't happened in

21   this case. But it doesn't exclude -- show me how it

22   excludes employees at this time.

23        MR. BURSTEIN: Well, there is one thing where it

24   says it has the right to freely assign. I'm not relying

25   on that language. I'm relying on the language which says,

- J L M -

PROCEEDINGS

1    "This agreement shall inure to the benefit of Fox's

2    successors, assignees and affiliates."  Affiliates is

3    important, it's not just about selling the company.  It's

4    about, for example, I guess, 21st Century Fox or Fox

5    Business News.  They could have added "and employee."

6    They could have defined and -- it's interesting, their

7    reply papers are silent on this issue.  You can't find

8    anything on it.

9        So it seems to me that the plain language of

10    this agreement, and you see this all the time in

11    agreements when they want to exclude third-party

12    beneficiaries, they want to keep people -- they want to

13    make sure that this is only going to be for the benefit of

14    the parties to agreement, not give third parties rights.

15    That is precisely what happened.  And it's not remotely

16    found in their reply.  They've never addressed this issue.

17    So, the record stands with my argument.  The reason they

18    haven't addressed this issue is, they know it would be

19    frivolous to address it because that's what the agreement

20    says.

21        Now, there is another important point here, this

22    case, although it was given short shrift of the arguments

23    of mine that were characterized, I didn't quite recognize.

24    But one of the arguments --

25        THE COURT:  That's why you get a chance to talk,

- J L M -

PROCEEDINGS                            21

1        counsel.

2                MR. BURSTEIN:  But one of the arguments that I

3        do think is a question of first impression and is very

4        important is the arbitration clause itself.  Now, this is

5        a situation --

6                THE COURT:  This is the waiver claim?

7                MR. BURSTEIN:  It's not a waiver claim.

8                THE COURT:  It's not?

9                MR. BURSTEIN:  It's a breach claim for the

10       following reason.  I mean --

11               THE COURT:  But the breach has to result in a

12       waiver, right?

13               MR. BURSTEIN:  Yes.  Well, excuse of

14       performance.

15               THE COURT:  Let's get to breach.

16               MR. BURSTEIN:  You have, unlike any other kind

17       of agreement I've ever seen, an arbitration clause that

18       has an arbitration clause that has a strict

19       confidentiality provision and says, "The violation of this

20       clause will be a material breach of the agreement."  Now,

21       you'll never see that.  And this is why it's important.

22       The law, if you take the law generally, what do you have?

23       You have a situation where a party claims a contract has

24       been breached or he or she has been defrauded into

25       agreeing to the contract.  The law is very clear, that

- J L M -

PROCEEDINGS

1    doesn't do you any good in terms of getting out of an

2    arbitration agreement unless you can show that the

3    arbitration agreement itself was procured by fraud.

4           THE COURT:  Let's talk about who is in breach

5    here, counsel, because the other side says that you're in

6    breach.  When I say "you," I mean not just your client,

7    your individual involvement in breaching that

8    confidentiality.  Typically in contract claims situations

9    the focus is on who breached first, right?  Who made the

10   initial breach.  Because that often excuses the other

11   party from their breach, doesn't it?

12          MR. BURSTEIN:  Yes, but the complaint --

13          THE COURT:  How does that not apply here?

14          MR. BURSTEIN:  For two reasons.  One, the

15   complaint alleges, and I can give you the paragraph, a

16   prior breach which was the failure to provide a personal

17   assistant over the three years.  And that is --

18          THE COURT:  But that's not a breach of the

19   confidentiality provision or the arbitration clause,

20   right?  That would be subject to arbitration under this

21   agreement.  You agree to that?

22          MR. BURSTEIN:  I agree that would be.

23          THE COURT:  So, if your client wants to bring a

24   claim that she wasn't given her assistant over that period

25   of time, that's subject to arbitration.

- J L M -

23

PROCEEDINGS

1      MR. BURSTEIN:  Yes, but my point is this, a

2  general breach of confidentiality -- there is no breach of

3  the confidentiality requirements of agreement and

4  certainly not of that paragraph.  It might give rise to

5  some other kind of breach excusing performance or giving

6  rise to damages.  But when you have an arbitration clause

7  which says that this is a material breach specifically of

8  this arbitration clause, it relates solely to this

9  arbitration clause, that is different.  That's the

10  equivalent of the sort of the converse where you say,

11  okay, parties have disputes.  But you can't get out of

12  arbitration unless you can show fraud in the securing of

13  the arbitration agreement.  Similarly it's the same

14  concept.

15      THE COURT:  But doesn't your client's breach

16  excuse any breach after that?

17      MR. BURSTEIN:  No.  For a number of reasons.

18      THE COURT:  Isn't that Contracts 101?

19      MR. BURSTEIN:  No -- I mean, yes, of course it's

20  Contracts 101.  But you have to look at the allegations.

21  Again, this is not an issue for the arbitrator.  This is

22  an issue as to what this clause means, as to whether or

23  not we're to be forced into arbitration.  And the things

24  they say that we said are not breaches of the

25  confidentiality provision in the contract.  And they --

- J L M -

24

PROCEEDINGS

1          THE COURT:  Are you disputing that if the

2     confidentiality provision is valid and they sought

3     arbitration, that your conduct and the conduct of your

4     client didn't breach that?

5          MR. BURSTEIN:  Yes.

6          THE COURT:  How?

7          MR. BURSTEIN:  Because the confidentiality

8     agreement is very limited.  The confidentiality agreement

9     says, "That the performer shall not directly or indirectly

10    disclose, divulge, render or offer any knowledge or

11    information to any other person or party concerning

12    matters relating to any program or Fox affairs and plans."

13         Now, unless they're using the word affairs in

14    the way that Roger Ailes had affairs, this does not relate

15    to their Fox's affairs.  That's one confidentiality

16    provision.  There is nothing in the record to suggest that

17    Ms. Tantaros or I breached that provision.  Then the other

18    one is, "Ms. Tantaros shall not issue any statements or

19    grant any interview concerning performances, services

20    hereunder."  No suggestion here that that was breached.

21    Those are the only confidentiality provisions in the

22    agreement.

23         So there is no breach of any confidentiality.

24    The only breach of confidentiality is their admitted

25    breach of trying to rebut legitimate statements that Ms.

- J L M -

PROCEEDINGS

1    Tantaros or I on her behalf, could make with divulging the

2    existence of the arbitration and the terms.

3          How much time do I have so I make sure --

4          THE COURT:  You have eight more minutes.

5          MR. BURSTEIN:  So let me move on.  If you want

6    to talk about sort of the general principle.  If you take

7    their argument to a logical end, let's say Bill Shine or

8    one of the other defendants could have raped Ms. Tantaros

9    in the Fox building and that would be subject to

10   arbitration because she was in the building.

11         THE COURT:  Wait, that's an intentional tort and

12   that's an assault, right?  That's an assault.  And there

13   is lots of case law cited in both your briefs that takes

14   assault out of the context of the typical arbitration

15   clause.

16         MR. BURSTEIN:  I'll give another one.

17         THE COURT:  Is there any assault alleged in this

18   case?

19         MR. BURSTEIN:  No.

20         THE COURT:  Any physical assault?

21         MR. BURSTEIN:  No physical.  She trips and falls

22   coming out of the elevator because they didn't

23   adequately -- they were negligent in some way.  She

24   wouldn't have tripped and fallen if she hadn't been an

25   employee on their theory.  That's arbitrable.  Now, here

                          - J L M -

PROCEEDINGS

1   is what the case law says, everybody cites and of course

2   Your Honor cites to the Tong case.  That's really the

3   major case here because it's 1st Department.  But nobody,

4   my adversaries haven't bothered to look at Justice Freed's

5   underlying decision, what the Appellate Division affirmed.

6   And there they had an arbitration agreement, any dispute

7   arising out of this agreement will be subject to

8   arbitration.  But as Justice Freed wrote, "Among the

9   conditions the agreement provides that Tong would not

10  disclose any of S.A.C.'s confidential information during

11  or after his employment."  This information was defined to

12  include any information relating to the business and

13  personal affairs of any of the principals.

14          Nobody seems to have paid attention to what was

15  actually being affirmed.  There was an affirmation of a

16  decision by Justice Freed saying that the broad language

17  of the arbitration agreement applying to breaches of the

18  contract was covered.  But the arbitration agreement in

19  that case was radically -- I mean the underlying contract

20  was radically different.  So if you read Justice Freed's

21  opinion, you will see something that is just quite

22  extraordinary and that makes all the difference in the

23  world.

24          The other cases they have cited, like Oldroyd

25  and Powers, they have a number of them, they are all

- J L M -

PROCEEDINGS

1    termination of employment cases.  This is a different kind

2    of case.  We also have the tortious interference claim

3    which is something different which is a tort claim, not a

4    contract claim.  It involves them going out and

5    interfering with the sale of her book.

6            THE COURT:  How is retaliation different than

7    termination?  Aren't those two sides of the same coin?

8            MR. BURSTEIN:  Except that all the cases that

9    they cite are termination clauses and all of those are

10   essentially breach of employment agreements as opposed to

11   here where there is no breach of contract claim.

12           Then, again, the other thing I want to say in my

13   last few minutes is, that if Your Honor is inclined --

14           THE COURT:  Speaking of that, five more minutes.

15           MR. BURSTEIN:  If Your Honor is inclined to send

16   us to arbitration, I would like the opportunity to amend

17   based upon new information.  I learned very recently, just

18   two nights ago, that another one of my clients, who shall

19   remain nameless, was subpoenaed.  And I was told by the

20   United States Attorney's office that there is an ongoing

21   criminal investigation of Fox relating to all of these

22   allegations, not just Ms. Tantaros' but all of the sexual

23   harassment allegations.  And I have a subpoena, it's

24   ongoing relating to another client, although I suspect

25   that Ms. Tantaros will be subpoenaed.  But here is the

- J L M -

28

PROCEEDINGS

1   point, based upon my discussions with the prosecutors, and

2   they didn't tell me what exactly what it was, but once I

3   saw that it was the securities prosecutors I understood

4   immediately what was going on here, which is that what Fox

5   has done is enter into agreement, after agreement, after

6   agreement, with victims of sexual harassment, not reported

7   them in any of their SEC filings.  Because what they do,

8   as they offered Ms. Tantaros when they tried to settle the

9   case, they keep them as employees, per se, so nothing ever

10   gets reported.

11          Now, that's not what the U.S. Attorney says but

12   that's what I think is going on.  I now believe -- that

13   not -- that I'm not saying it's necessarily not subject to

14   arbitration, I believe I have a racketeering case here

15   based upon that and the extortions of my client.  There is

16   a very strong case law that suggests in this case you will

17   lose your job if you report sexual harassment, gives rise

18   to a pattern of racketeering activity which this Court can

19   look at, and then there are other claims.  I have

20   compelling evidence through confidential sources that Fox

21   was involved in electronic surveillance of my client on

22   her private communications in violation of 18 U.S.C. 2510,

23   which has a private right of action.  They have been --

24   just today The Times reported that they maintain fake news

25   sites and also what are known as sock puppet accounts,

- J L M -

PROCEEDINGS

1      fraudulent Twitter accounts.

2            THE COURT:  You made reference to that in your

3      papers and the complaint extensively.

4            MR. BURSTEIN:  Yes, but I have more information

5      about that.  I also have the fact that we allege that Fox

6      has subsequently, and this is important, post-employment,

7      has tortiously interfered with Ms. Tantaros' agreement

8      with her speaking agency, who represents numerous other

9      Fox talents and can only represent them with Fox's

10     permission.  That they have tortiously interfered with her

11     ability to get speaking engagements.

12            I think that all of this information is very

13     significant.  I only need two weeks to amend.  I think

14     that if I can allege -- Your Honor, just said it,

15     intentional torts don't fall within an arbitration clause.

16     I didn't bring a RICO case before because I didn't think

17     that I could establish a pattern of racketeering activity.

18     Now that I know that the U.S. Attorney's office is issuing

19     subpoenas and undergoing, according to the subpoena,

20     investigating alleged violations of federal criminal law

21     by Fox, and I figured out exactly what's going on, I can

22     make a RICO case.  I can make the argument that the

23     conduct by Mr. Shine and others was an extortion under the

24     Hobbs Act.

25            THE COURT:  Two minutes.

- J L M -

PROCEEDINGS

1    MR. BURSTEIN:  I got in under the bell.  Unless

2  Your Honor has any questions.

3    THE COURT:  Not at this time.

4    Rebuttal.

5    MR. LEVANDER:  Indeed, Your Honor.

6    May it please the Court, Mr. Burstein has gone

7  way outside the record.  I would note that the courts have

8  held that RICO claims, if you could make one, which he

9  can't, would be arbitrable as well.

10    THE COURT:  I didn't have any briefing on that

11  so I don't know the answer.

12    MR. LEVANDER:  I'll represent that to you.  And

13  the antitrust cases follow RICO cases.  First of all, we

14  did address the question, he said it was not addressed, I

15  suggest you look at page 22 of our brief when you have a

16  chance, Your Honor.  I would like to focus on Siroy and --

17    THE COURT:  That's the reply brief you're

18  referring to, counsel?

19    MR. LEVANDER:  Yes, exactly.  So, it doesn't

20  say, as Mr. Burstein represented to Your Honor a moment

21  ago, that the confidentiality issue, even if you ignore

22  Contracts 101 and you ignore his outrageous behavior and

23  all of that is a breach of the arbitration agreement, it's

24  a breach of the agreement.  So, therefore, it is a --

25    THE COURT:  Wait.  But it's in the arbitration

- J L M -

31

PROCEEDINGS

 1    clause of the agreement.

 2         MR. LEVANDER:  But it's an agreement of a

 3    breach, breach of the agreement.  And the courts have said

 4    over and over again, and I read to you the --

 5         THE COURT:  The nuance you're claiming, it's a

 6    breach of the agreement but not specifically a voiding of

 7    the arbitration clause?

 8         MR. LEVANDER:  Correct.  It also doesn't void

 9    the arbitration clause.  Only thing that voids an

10    arbitration clause is if you are unconscionable in the way

11    that you created the arbitration clause.  Here, as I said,

12    cited to you both federal and state cases, any

13    post-contract conduct that you think is actionable is to

14    be arbitrated.  That is what the law is.

15         Indeed, Your Honor, Tong is right on point.  It

16    has nothing about harassment in it.  It's a harassment

17    case and the Court ordered, the 1st Department ordered the

18    arbitration to occur.  This is what you said about Tong in

19    your Siroy opinion.  First of all, you're talking about in

20    the Siroy case, it's a harassment, discrimination case and

21    you say, the language in Section 13, that's 13 of the

22    contract, specifically encompasses "all claims," just like

23    it does here, "arising out of or relating to the

24    employment agreement."  Exactly what we have here.

25    Nothing about harassment.

                          - J L M -

PROCEEDINGS

```
 1          Plaintiff's claims of employment discrimination,

 2     retaliation, clearly arise in and relate to her employment

 3     and are thus governed by Section 13 and covered by her

 4     employment agreement, citing Tong.  You describe Tong as

 5     holding, "That since plaintiff's claims arose out of the

 6     events that occurred in the course of his employment by

 7     defendant and supervisor, the supervisors of the

 8     defendant, they were deemed subject to the employment

 9     agreement which covered any dispute or controversy arising

10     out of or relating to the agreement."  It's exactly the

11     analysis here.  All of her claims arise out of and are

12     related to.

13          THE COURT:  What about the tortious interference

14     claim?

15          MR. LEVANDER:  He conceded that's subject to

16     arbitration in his earlier papers.  And tortious

17     interference is a tortious interference with the contract.

18     So it relates to the contract.  It's clear that everything

19     is encompassed by the --

20          THE COURT:  And it relates to particularly the

21     book provision within the contract, right?

22          MR. LEVANDER:  Right.  We are enforcing the book

23     provision and he's saying that enforcement of our

24     contractual right, which is the subject of the arbitration

25     clause, is a tortious interference with the other
```

- J L M -

Case 1:19-cv-07131-ALC   Document 48-1   Filed 02/06/20   Page 35 of 49

1     contract.

2          THE COURT:  Did you say earlier that your

3     arbitration, your arbitration claim only relates to the

4     book and not to the alleged harassment and retaliation

5     claims?

6          MR. LEVANDER:  When we first brought the

7     arbitration claims that's exactly what it related to.

8     When this goes forward, I hope in arbitration, it will be

9     expanded, no doubt, to encompass some other things.  I

10    suggest, Your Honor, Mr. Burstein said that he waffled on

11    whether or not his client violated the contract.  But in

12    Exhibit H --

13         THE COURT:  He didn't waffle, he said that she

14    didn't, but really avoided explaining how in a way that

15    was persuasive.  I might give him a chance, last chance on

16    that since you raised it.

17         MR. LEVANDER:  But Exhibit H to my reply

18    affidavit attaches Mr. Burstein's comments to the press

19    which said that she knows that she's taking a risk in

20    violating her contract's confidentiality clause in making

21    these statements.  There is no question that she violated

22    it and they knew that she was violating it when she got

23    involved.

24         Also, the confidentiality agreement that was

25    gone over by Mr. Burstein when he read it covers not only

- J L M -

34

PROCEEDINGS

1    arbitration but "All relevant allegations and events

2    leading up to the arbitration."  So it's broader than what

3    he just said, it encompasses her claims, period.

4          Finally, I would note that Mr. Burstein has

5    tried to inject into here all kinds of extraneous stuff

6    that is not in the record.  The fact that he has a male

7    client that may have received a subpoena.  Fox has not

8    received a subpoena.  Fox would clearly cooperate if there

9    were a subpoena.  But that he is trying to somehow make

10   this case not about the arbitration clause, which it is,

11   but to bring in something that has to do with another one

12   of his clients, not this client and not a sexual

13   harassment claim, is beyond the pale.

14         THE COURT:  Time.  I'm going to address Mr.

15   Burstein one more time because --

16         MR. BURSTEIN:  Could I have two minutes?

17         THE COURT:  Two minutes.  But I specifically

18   want you to address the issue of the breach by your

19   client.

20         MR. BURSTEIN:  Sure.  I want to make one thing

21   clear, I never said it was a male client, that was Mr.

22   Levander.

23         THE COURT:  No, you didn't.

24         MR. BURSTEIN:  I never said it was a male client

25   and I want that to be on record.

                    - J L M -

35

PROCEEDINGS

1              Second of all, I would ask Your Honor, although

2    neither party did it because I think that there were

3    concerns about confidentiality, I think that both parties,

4    for Your Honor to have a full record, should see the

5    entire employment agreement because it really addresses --

6              THE COURT:  Then you could have provided it to

7    me at the time that you submitted the papers or asked for

8    it to be submitted in camera and you haven't done that.

9              MR. BURSTEIN:  But they haven't --

10             THE COURT:  So explain to me how your client's

11   breach is not a breach.

12             MR. BURSTEIN:  My client's breach is not a

13   breach because there is nothing that the other side has

14   shown which makes clear, and if I could have a moment let

15   me just look at what the exhibit that they have.

16             (Pause)

17             MR. BURSTEIN:  Well, one of the problems, and

18   maybe this is -- they don't put the full agreement in, so

19   they only give you part of the agreement, they leave out

20   the other part about confidentiality.

21             THE COURT:  You did the same.

22             MR. BURSTEIN:  I understand.  But the point

23   would be, you have nothing before you to show that she

24   violated confidentiality.  They haven't submitted any

25   document.  They have statements by me, but they haven't

                          - J L M -

PROCEEDINGS

1    provided the provisions of the agreement that talk about

2    confidentiality.  So they say it's a breach but there is

3    nothing in their papers, that as far as I can tell,

4    actually identified what would be a breach of

5    confidentiality.

6         THE COURT:  Okay.  Can we take a five minute

7    break at this time and then we'll go back on the record.

8         (Short recess taken)

9         THE COURT:  On the record.  First, I would like

10   to commend counsel on extremely well-prepared,

11   well-organized and capable argument made on the record

12   today, as well as in the papers on the briefing of this

13   case.

14         At this point in time I'm going to render my

15   decision on the record.  Plaintiff's employment at Fox was

16   covered by an employment agreement that contained a valid,

17   broad and unambiguous arbitration provision requiring that

18   any controversy, claim or dispute arising out of or

19   relating to this agreement or your employment shall be

20   brought before a mutually selected three member

21   arbitration panel.  Ample case laws in both New York State

22   and the Federal Courts has held that all the claims and

23   controversies sought to be litigated by plaintiff fall

24   within the terms of the parties broad arbitration

25   provision.  Including her claims under the New York State

- J L M -

PROCEEDINGS

1   Human Rights Law and New York City Human Rights Law for

2   harassment and retaliation, as well as her claims for

3   tortious interference, since those claims arose within the

4   scope of plaintiff's employment and clearly fall within

5   that scope.

6       All of the individual defendants, though they

7   are not signatories to the arbitration agreement, can

8   invoke the arbitration clause and compel arbitration.

9   This would apply even if the claims against them were

10  severed from the claims against Fox.  The misconduct

11  alleged by plaintiff relates to these individual's

12  behavior as officers, directors and employees or agents of

13  Fox, and they necessarily relate to their alleged conduct

14  as agents of Fox News.  Further, a careful review of the

15  claims against the individual defendants shows that these

16  claims are factually intertwined with the agreement and

17  the claims against Fox News.  The claims against the

18  individual defendants involve the very same issues and

19  circumstances.  This principle applies equally to the

20  employment claims and the tortious interference claims at

21  issue in this case.  Allowing such claims to proceed in

22  court would be contrary to established public policy

23  strongly favoring arbitration of such disputes.

24       Plaintiff's claim that the defendants waived

25  arbitration by materially breaching the arbitration clause

- J L M -

38

PROCEEDINGS

1    is unsupported by any pertinent case law.  That claim is

2    without merit as the defendants have not engaged in

3    protracted litigation that prejudiced the plaintiff.  In

4    any event, it was plaintiff who first involved the news

5    media in this dispute in violation of the confidentiality

6    provisions of the parties' agreement.  Any remaining

7    claims by defendant to bring this case outside the scope

8    of arbitration have been considered by the Court and have

9    been found to be without merit.

10         Plaintiff's oral application made for the first

11   time on argument to amend the pleadings is denied.  That

12   denial is without prejudice.  Defendants' motion to compel

13   arbitration of all of plaintiff's claims against all of

14   the defendants pursuant to CPLR 7503 are granted.  Thank

15   you.  Pursuant to law, this action is stayed pending its

16   outcome of the arbitration.

17         You can order the transcript, counsel, submit it

18   to me to be so ordered.  Then, counsel, you'll have the

19   opportunity to file your notices of appeal.

20         MR. BURSTEIN:  Thank you, Your Honor.

21         THE COURT:  Thank you, counsel.

22   CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT.

23

24   ---------------------------------

25         JACK L. MORELLI, CM, CSR

                - J L M -

[

**[sic] (1)**
8:13

**A**

**ability (1)**
29:11
**able (1)**
5:6
**absolutely (2)**
15:17;19:2
**according (1)**
29:19
**accounts (2)**
28:25;29:1
**ACCURATE (1)**
38:22
**acknowledged (1)**
11:11
**acquired (2)**
17:15;18:4
**acquiring (1)**
17:16
**Act (3)**
3:25;7:13;29:24
**action (3)**
12:14;28:23;38:15
**actionable (1)**
31:13
**activity (2)**
28:18;29:17
**acts (1)**
13:16
**actual (1)**
13:5
**actually (6)**
8:5;12:21,22;
16:11;26:15;36:4
**added (1)**
20:5
**additional (2)**
2:16;15:24
**address (4)**
20:19;30:14;34:14,
18
**addressed (3)**
20:16,18;30:14
**addresses (1)**
35:5
**adequately (1)**
25:23
**admitted (1)**
24:24
**admittedly (1)**
16:13
**adversaries (1)**
26:4
**Aetna (1)**
10:25
**affairs (5)**

24:12,13,14,15;
26:13
**affected (1)**
14:13
**affidavit (2)**
17:2;33:18
**affiliate' (1)**
17:11
**affiliates (5)**
17:10;19:9,10;
20:2,2
**affirmation (1)**
26:15
**affirmed (4)**
14:2,7;26:5,15
**afternoon (3)**
2:1,7,9
**again (4)**
10:23;23:21;27:12;
31:4
**against (14)**
2:2;8:13;11:14;
14:1,17,19;15:6;
16:8;37:9,10,15,17,
17;38:13
**agency (2)**
3:7;29:8
**agent (2)**
14:10,16
**agents (2)**
37:12,14
**ago (4)**
5:12;10:9;27:18;
30:21
**agree (3)**
19:3;22:21,22
**agreed (2)**
15:7;16:6
**agreeing (1)**
21:25
**agreement (74)**
3:21;5:14;7:3;
8:18;9:3;11:23;
14:13;15:3,3;16:14,
20,23;17:2,5,9,11,20,
22,22,24,25;18:7,7,9,
10;19:1,4,6,15,16,20;
20:1,10,14,19;21:17,
20;22:2,3,21;23:3,13;
24:8,8,22;26:6,7,9,
17,18;28:5,5,6;29:7;
30:23,24;31:1,2,3,6,
24;32:4,9,10;33:24;
35:5,18,19;36:1,16,
19;37:7,16;38:6
**agreements (3)**
4:4;20:11;27:10
**Ailes (4)**
2:2,12,15;24:14
**air (1)**
11:2
**allegations (4)**
23:20;27:22,23;

34:1
**allege (2)**
29:5,14
**alleged (7)**
7:6,23;25:17;
29:20;33:4;37:11,13
**allegedly (1)**
7:25
**alleges (1)**
22:15
**allow (2)**
6:19;19:5
**allowed (1)**
5:5
**Allowing (1)**
37:21
**although (5)**
5:8;16:7;20:22;
27:24;35:1
**amend (3)**
27:16;29:13;38:11
**Among (1)**
26:8
**Ample (1)**
36:21
**analysis (2)**
6:11;32:11
**Andrea (2)**
2:1;18:9
**Andrew (1)**
2:10
**anodyne (1)**
11:22
**antitrust (4)**
9:7,9,12;30:13
**appeal (1)**
38:19
**Appeals (10)**
4:2,3,5,12;10:21;
13:1,3;14:2,7,7
**appear (1)**
5:10
**appearance (1)**
2:5
**appearances (1)**
11:9
**Appellate (1)**
26:5
**application (1)**
38:10
**applied (1)**
10:11
**applies (1)**
37:19
**apply (4)**
9:4;18:12;22:13;
37:9
**applying (1)**
26:17
**approval (3)**
6:23;10:12,24;
14:24
**arbitrable (2)**

25:25;30:9
**arbitrate (6)**
5:8;9:9;9:13;16:6,6,8
**arbitrated (3)**
3:22;11:24;31:14
**arbitration (102)**
3:2,5,24,25;4:4,8,
18,22,24;5:5,14,17,
21,21;6:12,13,19;7:5;
8:17,24;9:24;10:10,
15,20;11:4,8,13,25;
12:1,2,4,7,14,17,17,
18;13:23;14:5,9,13,
17,19;15:2,5,8,8;
16:4,9,15;21:4,17,18;
22:2,3,19,20,25;23:6,
8,9,12,13,23;24:3;
25:2,10,14;26:6,8,17,
18;27:16;28:14;
29:15;30:23,25;31:7,
9,10,11,18;32:16,24;
33:3,3,7,8;34:1,2,10;
36:17,21,24;37:7,8,8,
23,25,25;38:8,13,16
**arbitrator (4)**
13:19,21,22;23:21
**Arciniaga (1)**
4:16
**argue (1)**
16:17
**arguing (1)**
2:21
**argument (12)**
2:21;5:2,7;8:10,10;
11:5;12:16;20:17;
25:7;29:22;36:11;
38:11
**arguments (5)**
3:12;15:16;20:22,
24;21:2
**arise (1)**
32:2,11
**arising (6)**
3:20;8:17;26:7;
31:23;32:9;36:18
**arose (2)**
32:5;37:3
**assault (7)**
7:23;8:3;25:12,12,
14,17,20
**assign (2)**
19:17,24
**assignees (2)**
17:10;20:2
**assignment (1)**
19:19
**assistant (2)**
22:17,24
**associates (1)**
2:17
**attaches (1)**
33:18
**attempt (1)**

14:3
**attention (1)**
26:14
**Attorney (1)**
28:11
**Attorney's (2)**
27:20;29:18
**authority (1)**
4:21
**automatically (1)**
8:11
**avoid (2)**
13:22;15:8
**avoided (1)**
33:14
**aware (1)**
3:2
**away (1)**
3:16

**B**

**back (1)**
36:7
**backwards (1)**
16:3
**Barney (1)**
4:2
**Based (7)**
4:20;7:18;8:25;
12:5;27:17;28:1,15
**basis (2)**
11:24;13:20
**behalf (1)**
25:1
**behavior (2)**
30:22;37:12
**bell (1)**
30:1
**beneficiaries (2)**
17:23;20:12
**beneficiary (1)**
16:16
**benefit (5)**
17:9,24;19:8;20:1,
13
**beyond (1)**
34:13
**Bill (1)**
25:7
**Black (1)**
13:23
**blacked (1)**
18:20
**book (5)**
12:5;27:5;32:21,
22;33:4
**both (6)**
3:22;6:24;25:13;
31:12;35:3;36:21
**bothered (1)**
26:4
**box (1)**

FOX NEWS February 16, 2017

2:14
Brandi (1)
 2:3
breach (34)
 21:9,11,15,20;22:4,
 6,10,11,16,18;23:2,2,
 5,7,15,16;24:4,23,24,
 25;27:10,11;30:23,
 24;31:3,3,6;34:18;
 35:11,11,12,13;36:2,
 4
breached (4)
 21:24;22:9;24:17,
 20
breaches (2)
 23:24;26:17
breaching (2)
 22:7;37:25
break (1)
 36:7
bridge (1)
 8:6
brief (6)
 9:17;10:13,24;
 15:16;30:15,17
briefing (2)
 30:10;36:12
briefs (1)
 25:13
Briganti (1)
 2:3
bring (5)
 12:13;22:23;29:16;
 34:11;38:7
bringable (1)
 8:13
bringing (1)
 4:25
broad (12)
 3:2,5,8,19;5:11,13;
 6:16;8:20;16:9;
 26:16;36:17,24
broader (1)
 34:2
brought (5)
 12:7,10,11;33:6;
 36:20
build (1)
 3:16
building (2)
 25:9,10
bunch (1)
 9:24
BURSTEIN (53)
 2:7,8,8;6:15;8:9;
 9:5;10:23;11:10;
 16:1,2,25;17:6,8,18;
 18:6,21,24;19:23;
 21:2,7,9,13,16;22:12,
 14,22;23:1,17,19;
 24:5,7;25:5,16,19,21;
 27:8,15;29:4;30:1,6,
 20;33:10,25;34:4,15,

16,20,24;35:9,12,17,
22;38:20
Burstein's (1)
 33:18
business (3)
 7:23;20:5;26:12

C

CALAMARI (4)
 2:13,13;15:14,15
called (1)
 8:15
Calypso (1)
 12:25
camera (1)
 35:8
can (21)
 3:15;12:23;13:22;
 16:5,8;17:21;18:14,
 21;19:17;22:2,15;
 23:12;28:18;29:9,14,
 21,22;36:3,6;37:7;
 38:17
capable (1)
 36:11
Capital (1)
 6:21
careful (2)
 18:25;37:14
case (65)
 4:2,5,9,12,25;5:13,
 24;6:14,16,22;7:1,2,
 21,24,24;8:6,6,8,14,
 22,23,23;9:1,5,6,7,7,
 9,10;10:5,8,10,17;
 12:8,13,19,24;16:10,
 19;18:1,2;19:21;
 20:22;25:13,18;26:1,
 2,3,19;27:2;28:9,14,
 16,16;29:16,22;
 31:17,20,20;34:10;
 36:13,21;37:21;38:1,
 7
cases (21)
 3:25;4:15,20;5:19;
 6:8;8:21,25;9:4,24;
 10:11;13:16;14:21,
 24;15:17;16:7;26:24;
 27:1,8;30:13,13;
 31:12
category (1)
 16:19
cause (1)
 3:13
Century (1)
 20:4
certain (2)
 5:8;17:24
certainly (1)
 23:4
CERTIFIED (1)
 38:22

chance (4)
 20:25;30:16;33:15,
 15
characterized (1)
 20:23
Cicchetti (2)
 5:23;6:8
Circuit (9)
 4:15;9:6;11:1;
 12:25;13:1;14:21,23,
 25;15:4
circuits (1)
 14:25
Circuit's (1)
 8:14
circumstances (3)
 15:9;16:18;37:19
cite (3)
 5:12;12:23;27:9
cited (12)
 6:15,23;8:21;9:9,
 23;10:6,8,11;14:24;
 25:13;26:24;31:12
cites (6)
 5:19;7:20;9:5;
 10:23;26:1,2
citing (1)
 32:4
City (3)
 6:25;8:12;37:1
claim (39)
 3:20,22;5:15,22;
 6:2,6,7,17,20;7:20;
 8:16,17;9:2,8;10:3,4;
 11:3,14,15,24;12:1,5,
 7;13:9;15:8;21:6,7,9;
 22:24;27:2,3,4,11;
 32:14,33;34:13;
 36:18;37:24;38:1
claiming (1)
 31:5
claims (40)
 3:9;5:8,9;6:24;7:1,
 18;8:12;10:18,19,19;
 14:14,15,17,19;
 21:23;22:8;28:19;
 30:8;31:22;32:1,5,
 11;33:5,7;34:3;
 36:22,25;37:2,3,9,10,
 15,16,17,17,20,20,21;
 38:7,13
clause (54)
 3:3,5,19;4:24;5:5,
 11,14,17,21,21,25;
 6:1,12,13,24;7:2;
 8:17,20,25;9:1,20;
 10:3,7,16,20;11:4,8,
 25;12:17;13:23;14:9;
 16:10,13;21:4,17,18,
 20;22:19;23:6,8,9,22;
 25:15;29:15;31:1,7,9,
 10,11;32:25;33:20;
 34:10;37:8,25

clauses (2)
 10:1;27:9
clear (5)
 15:17;21:25;32:18;
 34:21;35:14
clearly (3)
 32:2;34:8;37:4
client (14)
 11:12;19:17;22:6,
 23;24:4;27:24;28:15,
 21;33:11;34:7,12,19,
 21,24
clients (2)
 27:18;34:12
client's (3)
 23:15;35:10,12
close (1)
 16:16
CM (1)
 38:25
coin (1)
 27:7
coming (1)
 25:22
commend (1)
 36:10
comments (1)
 33:18
commissions (1)
 18:16
common (1)
 17:12
communications (1)
 28:22
company (2)
 17:11;20:3
compel (7)
 4:22;12:14,16;
 15:5,6;37:8;38:12
compelled (4)
 5:8;7:5;8:25;9:9
compelling (2)
 10:12;28:20
complaint (6)
 7:9,9,12;22:12,15;
 29:3
conceded (1)
 32:15
concept (1)
 23:14
concerning (2)
 24:11,19
concerns (2)
 3:2;35:3
conclude (1)
 15:10
conditions (3)
 18:8,11;26:9
conduct (6)
 7:25;24:3,3;29:23;
 31:13;37:13
Cone (1)
 4:13

clauses (2)
confidential (3)
 19:1;26:10;28:20
confidentiality (24)
 11:23;12:18;21:19;
 22:8,19;23:2,3,25;
 24:2,7,8,15,21,23,24;
 30:21;33:20,24;35:3,
 20,24;36:2,5;38:5
considered (1)
 19:19;38:8
consistently (1)
 15:1
contained (1)
 36:16
containing (1)
 3:5
contains (1)
 5:17
contending (1)
 8:2
context (1)
 25:14
contract (27)
 3:3,4;4:24;7:6;9:8,
 12;11:12,23,23;12:6;
 13:17,21;19:7;21:23,
 25;22:8;23:25;26:18,
 19;27:4,11;31:22;
 32:17,18,21;33:1,11
Contracts (3)
 23:18,20;30:22
contract's (1)
 33:20
contractual (1)
 32:24
contrary (3)
 5:18;14:5;37:22
control (1)
 17:12
controlled (1)
 17:12
controlling (2)
 10:9;17:12
controversies (1)
 36:23
controversy (4)
 3:20;9:2;32:9;
 36:18
converse (1)
 23:10
convince (1)
 19:14
cooperate (1)
 34:8
Coors (2)
 9:5,6
copy (2)
 16:21;19:5
corporation (1)
 14:4
counsel (14)
 2:5;3:17;5:4;7:12;
 13:8;15:10,18;21:1;

22:5;30:18;36:10;
38:17,18,21
**couple (1)**
5:19
**course (3)**
23:19;26:1;32:6
**COURT (109)**
2:1,4,16,20,24;3:1,
1,2,8,11,17;4:1,3,5,6,
9,11,12;5:6,13,19,25;
6:11,16;7:6,12,15,17;
8:2;9:8,10,10,16,22,
25;10:16,21;11:1,15,
18,20;12:1,10,15;
13:1,3,8,12;14:2,7,7,
12,24;15:10,13,20,
23;16:22;17:4,7,14;
18:3,19,22;19:14;
20:25;21:6,8,11,15;
22:4,13,18,23;23:15,
18;24:1,6;25:4,11,17,
20;27:6,14;28:18;
29:2,25;30:3,6,10,17,
25;31:5,17;32:13,20;
33:2,13;34:14,17,23;
35:6,10,21;36:6,9;
37:22;38:8,21
**courtroom (1)**
10:15
**courts (6)**
4:3;13:4,5;30:7;
31:3;36:22
**covered (6)**
17:15,16;26:18;
32:3,9;36:16
**covers (2)**
10:20;33:25
**CPLR (2)**
3:25;38:14
**created (1)**
31:11
**criminal (2)**
27:21;29:20
**cross (1)**
8:6
**CSR (1)**
38:25
**Cusimano (2)**
13:2,2

**D**

**damages (1)**
23:6
**Davis (1)**
5:23
**deal (1)**
18:3
**deals (1)**
19:19
**Dechert (1)**
2:10
**decision (8)**

6:23;9:15;10:12,
23;13:1;26:5,16;
36:15
**deemed (1)**
32:8
**defendant (4)**
14:16;32:7,8;38:7
**defendants (7)**
25:8;37:6,15,18,
24;38:2,14
**Defendants' (1)**
38:12
**defense (2)**
12:12;15:21
**define (1)**
19:10
**defined (2)**
20:6;26:11
**definition (3)**
17:25;19:11,12
**defrauded (1)**
21:24
**demand (2)**
14:17,18
**denial (1)**
38:12
**denied (1)**
38:11
**Department (7)**
6:22;7:4;10:8;14:1,
12;26:3;31:17
**Department's (1)**
14:20
**describe (2)**
11:7;32:4
**describes (1)**
11:6
**deserves (1)**
10:14
**Dianne (1)**
2:3
**DiBello (2)**
14:11,20
**difference (1)**
26:22
**different (9)**
16:10,12,19;18:2;
23:9;26:20;27:1,3,6
**difficult (1)**
4:17
**directed (1)**
4:3
**directly (1)**
24:9
**directors (2)**
14:4;37:12
**disclose (2)**
24:10;26:10
**discrimination (4)**
10:19;14:14;31:20;
32:1
**discuss (1)**
4:21

**discussions (1)**
28:1
**dispute (8)**
3:20;9:2;16:3,5;
26:6;32:9;36:18;38:5
**disputes (2)**
23:11;37:23
**disputing (1)**
24:1
**distinguish (1)**
14:3
**District (2)**
5:24;8:24
**Division (1)**
26:5
**divulge (1)**
24:10
**divulging (1)**
25:1
**document (1)**
35:25
**done (4)**
9:18;12:13;28:5;
35:8
**doubt (1)**
33:9
**drops (1)**
6:9
**during (1)**
26:10

**E**

**earlier (3)**
14:1;32:16;33:2
**easier (1)**
15:6
**effect (1)**
14:22
**eight (1)**
25:4
**electronic (1)**
28:21
**elevator (1)**
25:22
**else (3)**
8:20;18:1,4
**Emanuel (1)**
2:14
**emphasized (2)**
13:3;15:4
**employee (8)**
7:21;11:2;14:16;
15:2;16:8;18:18;
20:5;25:25
**employees (12)**
15:1;17:15,16,20;
18:1,5;19:13,15,18,
22;28:9;37:12
**employer (10)**
7:19;8:7,13;13:23;
14:9,10,16,18;16:7;
18:18

**employment (35)**
3:3,4,21;5:14,14,
15;6:13,17;7:3,7,20;
8:4,8,11,18;9:3,3;
14:15;18:8,12;26:11;
27:1,10;31:24;32:1,2,
4,6,8;35:5;36:15,16,
19;37:4,20
**encompass (3)**
5:16;6:24;33:9
**encompassed (3)**
8:9,16;32:19
**encompasses (3)**
5:15;31:22;34:3
**End (3)**
9:13;11:18;25:7
**enforceability (1)**
14:12
**enforced (1)**
3:23
**enforcement (2)**
4:4;32:23
**enforcing (1)**
32:22
**engaged (2)**
5:1;38:2
**engagements (1)**
29:11
**enough (1)**
9:18
**enter (2)**
19:7;28:5
**entire (3)**
16:20;19:6;35:5
**entitled (3)**
14:17,18;16:14
**entity (4)**
15:1,2;17:16;19:20
**equally (1)**
37:19
**equivalent (1)**
23:10
**essentially (3)**
6:1,2;27:10
**establish (1)**
29:17
**established (2)**
14:6;37:22
**evading (1)**
14:5
**even (7)**
8:9;10:6;11:6,10;
15:5;30:21;37:9
**event (1)**
38:4
**events (2)**
32:6;34:1
**Everybody (2)**
16:10;26:1
**evidence (1)**
28:20
**exact (1)**
12:24

**exactly (11)**
6:4;7:1,2;8:20;9:6;
28:2;29:21;30:19;
31:24;32:10;33:7
**example (5)**
5:23;7:21;9:5;
16:9;20:4
**except (2)**
2:11;27:8
**exception (1)**
7:21
**exclude (3)**
18:5;19:21;20:11
**excludes (2)**
19:15,22
**exclusively (1)**
13:18
**excuse (2)**
21:13;23:16
**excuses (1)**
22:10
**excusing (1)**
23:5
**executives (1)**
16:9
**Exhibit (3)**
33:12,17;35:15
**exhibits (1)**
17:2
**existence (1)**
25:2
**expanded (1)**
33:9
**explain (1)**
35:10
**explained (1)**
14:3
**explaining (1)**
33:14
**express (2)**
3:5;4:14
**extends (1)**
14:9
**extensively (1)**
29:3
**extortion (1)**
29:23
**extortions (1)**
28:15
**extraneous (1)**
34:5
**extraordinary (1)**
26:22
**extremely (1)**
36:10

**F**

**F3d (3)**
4:16;8:15;10:25
**fact (7)**
10:16;12:5;13:2,
20;17:19;29:5;34:6

facts (1)
13:18
factually (1)
37:16
failing (1)
3:12
failure (1)
22:16
fake (1)
28:24
fall (6)
7:7;8:4;16:18;
29:15;36:23;37:4
fallen (1)
25:24
falls (1)
25:21
far (1)
36:3
favor (4)
3:24;4:8,18;16:4
favoring (1)
37:23
federal (9)
3:22,25;4:17;8:16;
9:13;14:8;29:20;
31:12;36:22
few (3)
5:11;6:2;27:13
figured (1)
29:21
file (1)
38:19
filed (1)
11:13
filings (1)
28:7
Finally (2)
13:22;34:4
find (2)
13:22;20:7
fine (1)
2:19
fire (1)
3:16
first (10)
5:7;19:11;21:3;
22:9;30:13;31:19;
33:6;36:9;38:4,10
five (2)
27:14;36:6
Fletcher (1)
10:22
flouted (1)
4:23
fly (1)
10:16
focus (3)
5:3;22:9;30:16
follow (1)
30:13
followed (1)
10:21

following (1)
21:10
footnote (1)
6:9
forced (1)
23:23
forum (4)
9:20,25;10:3;16:13
forward (1)
33:8
found (2)
20:16;38:9
Fox (37)
2:2,11,21;3:5;7:16,
25;8:22;11:12;17:13,
14,25;18:4,9;19:9,9,
10,11,12,13,17;20:4,
4;24:12;25:9;27:21;
28:4,20;29:5,9,21;
34:7,8;36:15;37:10,
13,14,17
Fox's (6)
8:3;17:9,15;20:1;
24:15;29:9
fraud (2)
22:3;23:12
fraudulent (1)
29:1
Freed (2)
26:8,16
Freed's (2)
26:4,20
freely (1)
19:24
frivolous (2)
11:7;20:19
full (4)
5:20;18:21;35:4,18
fundamentally (1)
18:2
Further (1)
37:14
future (1)
19:20

G

Gateson (1)
8:23
General (3)
4:16;23:2;25:6
generally (1)
21:22
gets (2)
10:5;28:10
Gilmore (2)
10:17,21
given (3)
14:14;20:22;22:24
gives (1)
28:17
giving (1)
23:5

goes (2)
13:21;33:8
Goldstein (1)
2:10
Good (5)
2:1,7,9;13:16;22:1
governed (1)
32:3
grant (1)
24:19
granted (2)
4:23;38:14
guess (1)
20:4
Guyden (1)
10:25

H

happened (2)
19:20;20:15
happy (1)
3:16
harassment (26)
5:9,10,16,17;6:11,
18,20;7:4;8:1,18,25;
9:7;10:4,7,14,18;
27:23;28:6,17;31:16,
16,20,25;33:4;34:13;
37:2
heard (1)
10:19
held (7)
5:13;6:24;11:1;
14:12;15:1;30:8;
36:22
helpful (2)
16:11;19:4
hereunder (1)
24:20
Hirschfeld (2)
4:9;13:25
Hobbs (1)
29:24
hold (2)
8:22;15:11
holding (5)
8:15;14:8,20,21;
32:5
Honor (28)
2:7,9,19,23,25;
4:15,23;5:11;7:8;
8:21;9:14;13:25;
15:15,22;16:20;26:2;
27:13,15;29:14;30:2,
5,16,20;31:15;33:10;
35:1,4;38:20
hope (1)
33:8
Hospital (1)
4:13
host (1)
8:21

Human (4)
6:25;8:12;37:1,1

I

identical (1)
9:1
identified (1)
36:4
ignore (2)
30:21,22
ignores (1)
5:2
immediately (2)
12:13;28:4
important (5)
20:3,21;21:4,21;
29:6
impression (1)
21:3
inability (1)
11:2
inclined (2)
27:13,15
include (3)
10:4;17:25;26:12
includes (1)
18:10
including (9)
4:1,24;5:22;6:5,6,
10;14:22;19:13;
36:25
Indeed (10)
3:23;4:15,23;6:8,
21;9:14;10:25;14:22;
30:5;31:15
Indemnification (1)
18:16
index (1)
2:4
indirectly (1)
24:9
indistinguishable (1)
9:1
individual (5)
14:16;22:7;37:6,
15,18
individuals (2)
2:11;13:10
individual's (1)
37:11
Industries (1)
12:24
information (7)
24:11;26:10,11,12;
27:17;29:4,12
initial (1)
22:10
inject (1)
34:5
injunctive (1)
18:17
intentional (2)

25:11;29:15
interaction (1)
7:22
interesting (1)
20:6
interfered (2)
29:7,10
interference (7)
27:2;32:13,17,17,
25;37:3,20
interfering (1)
27:5
Internet (1)
18:16
interrelated (1)
16:17
intertwined (1)
37:16
interview (1)
24:19
into (6)
11:15;19:7;21:24;
23:23;28:5;34:5
inure (2)
17:9;20:1
investigating (1)
29:20
investigation (1)
27:21
invoke (1)
37:8
involve (1)
37:18
involved (4)
9:14;28:21;33:23;
38:4
involvement (1)
22:7
involves (1)
27:4
Irena (1)
2:3
ironically (1)
10:23
issue (9)
20:7,16,18;23:21,
22;24:18;30:21;
34:18;37:21
issued (3)
4:7;11:12;12:8
issues (4)
5:3;13:18;18:4;
37:18
issuing (1)
29:18

J

JACK (1)
38:25
Jersey (1)
10:5
job (1)

28:17
**join (1)**
15:16
**Joseph (1)**
2:14
**Judd (2)**
2:7,8
**judicial (1)**
4:4
**Justice (4)**
26:4,8,16,20

**K**

**keep (2)**
20:12;28:9
**Kidder (1)**
10:22
**kind (3)**
21:16;23:5;27:1
**kinds (1)**
34:5
**knew (1)**
33:22
**knowledge (1)**
24:10
**known (1)**
28:25
**knows (1)**
33:19

**L**

**language (7)**
5:20;6:10;19:25,
25;20:9;26:16;31:21
**last (3)**
4:1;27:13;33:15
**later (1)**
11:8
**law (23)**
3:14,23;4:18;5:12,
18;8:12;12:19;13:18,
24;14:8;15:17;21:22,
22,25;25:13;26:1;
28:16;29:20;31:14;
37:1,1;38:1,15
**Laws (2)**
7:1;36:21
**lawyer (1)**
11:10
**leading (1)**
34:2
**learned (1)**
27:17
**least (2)**
2:17;13:15
**leave (1)**
35:19
**legitimate (1)**
24:25
**less (2)**
14:18;15:8

**Letter (1)**
13:24
**LEVANDER (41)**
2:9,10,19,22,23,25;
3:10,14,19;4:11;6:4;
7:8,13,16,18;8:5;
9:18,23;10:2;11:17,
19,21;12:4,11,19;
13:11,14;15:11,16,
22;19:3;30:5,12,19;
31:2,8;32:15,22;33:6,
17;34:22
**Levitt (1)**
10:10
**liable (1)**
8:7
**lie (1)**
13:18
**limited (5)**
5:22;6:5,6,10;24:8
**Linda (1)**
2:10
**litigate (3)**
5:6;12:20,21
**litigated (2)**
12:12;36:23
**litigation (3)**
12:21,22;38:3
**LLC (1)**
2:2
**Lloyd's (1)**
14:23
**logical (1)**
25:7
**look (7)**
7:11;19:11;23:20;
26:4;28:19;30:15;
35:15
**looking (1)**
17:7
**lose (2)**
8:11;28:17
**lot (2)**
9:25;18:19
**lots (1)**
25:13
**lower (1)**
4:3
**Luckie (1)**
4:2

**M**

**maintain (1)**
28:24
**major (1)**
26:3
**makes (3)**
11:5;26:22;35:14
**Making (3)**
12:21;13:17;33:20
**male (3)**
34:6,21,24

**Management (1)**
6:22
**many (2)**
16:7;17:3
**material (2)**
21:20;23:7
**materially (1)**
37:25
**matter (1)**
9:11
**matters (1)**
24:12
**may (9)**
2:24,25;9:18;
11:16;15:10,13,19;
30:6;34:7
**maybe (1)**
35:18
**McMahon (1)**
4:14
**mean (7)**
3:8;17:11,14;
21:10;22:6;23:19;
26:19
**means (3)**
6:6;19:17;23:22
**media (1)**
38:5
**member (1)**
36:20
**members (1)**
2:17
**Memorial (1)**
4:13
**mentioned (1)**
10:8
**mergers (1)**
18:13
**merges (1)**
18:4
**merit (2)**
38:2,9
**might (4)**
16:14,18;23:4;
33:15
**mine (1)**
20:23
**minute (3)**
15:24,25;36:6
**minutes (8)**
13:8;15:20;25:4;
27:13,14;29:25;
34:16,17
**Mirvish (1)**
14:1
**misconduct (1)**
37:10
**Mitsubishi (1)**
9:10
**moment (3)**
10:8;30:20;35:14
**moments (1)**
5:11

**more (7)**
4:1;13:8;14:11;
25:4;27:14;29:4;
34:15
**MORELLI (1)**
38:25
**Moses (1)**
4:13
**motion (5)**
3:1;4:22;12:10,11;
38:12
**Motors (1)**
4:16
**move (1)**
25:5
**moving (2)**
15:5,6
**much (1)**
25:3
**must (1)**
11:24
**mutually (1)**
36:20

**N**

**nameless (1)**
27:19
**names (1)**
2:18
**nature (2)**
14:14,15
**necessarily (2)**
28:13;37:13
**necessary (1)**
19:2
**need (2)**
15:25;29:13
**needs (1)**
3:23
**negligent (1)**
25:23
**neither (1)**
35:2
**Network (1)**
2:2
**New (20)**
4:1,2,5,11,19;6:25,
25;7:15,16;8:12,12;
10:5,21;13:1,2;14:8;
27:17;36:21,25;37:1
**News (11)**
2:2;7:25;11:12,16;
18:9;19:11;20:5;
28:24;37:14,17;38:4
**newspaper (1)**
12:9
**nights (1)**
27:18
**nobody (2)**
26:3,14
**nonassignable (1)**
19:16

**non-assignable (1)**
17:5
**Nonetheless (2)**
7:4;10:5
**nonparty (1)**
16:14
**normal (1)**
16:17
**note (2)**
30:7;34:4
**noted (1)**
5:20
**notices (1)**
38:19
**notion (1)**
11:7
**notwithstanding (1)**
10:15
**nuance (1)**
31:5
**number (2)**
23:17;26:25
**numerous (2)**
14:21;29:8
**NY2d (1)**
14:10

**O**

**observed (1)**
4:16
**occur (2)**
13:7;31:18
**occurred (3)**
7:13,14;32:6
**occurs (1)**
12:20
**off (1)**
7:22
**offer (1)**
24:10
**offered (1)**
28:8
**office (2)**
27:20;29:18
**officers (2)**
14:3;37:12
**often (1)**
22:10
**Oldroyd (2)**
8:15;26:24
**once (2)**
3:6;28:2
**one (23)**
3:11;6:8,20;14:23;
15:7;16:5,17;17:2,
21;19:23;20:24;21:2;
22:14;24:15,18;25:8,
16;27:18;30:8;34:11,
15,20;35:17
**one's (1)**
11:21
**ongoing (2)**

FILED: NEW YORK COUNTY CLERK 02/17/2017 05:40 PM
NYSCEF DOC. NO. 110    Case 1:19-cv-07131-ALC    Document 48-1    Filed 02/06/20    Page 46 of 49    RECEIVED NYSCEF: 02/17/2017

INDEX NO. 157054/2016

FOX NEWS                                                                              February 16, 2017

27:20,24
**only (19)**
3:21;8:7,13;12:14,
20;17:21,24;18:10;
19:8,9;20:13;24:21,
24;29:9,13;31:9;
33:3,25;35:19
**opinion (2)**
26:21;31:19
**opinions (1)**
4:7
**opportunity (3)**
9:17;27:16;38:19
**opposed (1)**
27:10
**opposition (1)**
17:1
**oral (1)**
38:10
**order (1)**
38:17
**ordered (4)**
7:5;31:17,17;38:18
**others (1)**
29:23
**out (19)**
3:20;5:5;10:18;
13:15;16:12;18:20;
22:1;23:11;25:14,22;
26:7;27:4;29:21;
31:23;32:5,10,11;
35:19;36:18
**outcome (1)**
38:16
**out-of-court (1)**
13:5
**outrageous (1)**
30:22
**outside (2)**
30:7;38:7
**over (6)**
3:25;22:17,24;
31:4,4;33:25
**overstate (1)**
4:17
**overwhelming (2)**
5:3;12:20

**P**

**page (2)**
4:17;30:15
**paid (1)**
26:14
**pale (1)**
34:13
**panel (1)**
36:21
**papers (12)**
2:20;16:23;17:1,3;
18:20,23;20:7;29:3;
32:16;35:7;36:3,12
**paragraph (2)**

22:15;23:4
**paragraphs (1)**
7:11
**part (8)**
7:22;18:6,7,8,10;
19:4;35:19,20
**particularly (2)**
7:10;32:20
**parties (9)**
13:17;17:22;19:7,
8;20:14,14;23:11;
35:3;36:24
**parties' (1)**
38:6
**party (8)**
12:23;13:6;15:2,6;
21:23;22:11;24:11;
35:2
**pattern (2)**
28:18;29:17
**Pause (1)**
35:16
**PC (1)**
2:8
**Peabody (1)**
10:22
**pending (2)**
12:7;38:15
**people (2)**
17:24;20:12
**per (1)**
28:9
**perform (1)**
18:14
**performance (2)**
21:14;23:5
**performances (1)**
24:19
**performer (5)**
17:5;18:14,15;
19:16;24:9
**perhaps (1)**
17:20
**period (2)**
22:24;34:3
**permission (1)**
29:10
**person (1)**
24:11
**personal (2)**
22:16;26:13
**persuasive (1)**
33:15
**pertinent (1)**
38:1
**Peter (1)**
2:13
**petition (1)**
10:10
**physical (2)**
25:20,21
**place (2)**
7:20;8:3

**plain (1)**
20:9
**plainly (1)**
4:22
**plaintiff (8)**
2:8;4:23;5:12;
11:10;36:23;37:11;
38:3,4
**plaintiff's (11)**
2:5;3:11;12:16;
15:18;32:1,5;36:15;
37:4,24;38:10,13
**plans (1)**
24:12
**pleadings (1)**
38:11
**please (2)**
3:1;30:6
**plethora (1)**
3:25;4:15
**point (13)**
4:21;9:6,19,24;
10:9;11:4;13:15;
20:21;23:1;28:1;
31:15;35:22;36:14
**pointed (1)**
16:12
**pointing (1)**
16:10
**policy (6)**
3:24;4:7,18;9:14;
14:6;37:22
**portions (1)**
16:22
**position (1)**
15:18
**post-arbitration (1)**
13:20
**post-contract (2)**
13:19;31:13
**post-employment (1)**
29:6
**Powers (2)**
14:22;26:25
**PPG (1)**
12:24
**preapproval (1)**
12:6
**precedent (1)**
5:3
**Precisely (2)**
6:13;20:15
**prejudice (2)**
13:6;38:12
**prejudiced (1)**
38:3
**prejudices (1)**
12:23
**prejudicial (1)**
13:7
**premises (3)**
7:14,22;8:3
**press (1)**

33:18
**presumption (1)**
16:4
**pretty (1)**
9:19
**principals (1)**
26:13
**principle (6)**
9:4;10:2,11,18;
25:6;37:19
**principles (1)**
4:20
**prior (1)**
22:16
**private (2)**
28:22,23
**probably (3)**
11:11;13:9;15:23
**problems (1)**
35:17
**procedure (1)**
2:24
**proceed (1)**
37:21
**procured (1)**
22:3
**Products (1)**
13:25
**program (1)**
24:12
**promotions (1)**
18:17
**prosecutors (2)**
28:1,3
**protected (2)**
15:3;17:20
**protracted (3)**
12:22;13:4;38:3
**provide (1)**
22:16
**provided (2)**
35:6;36:1
**provides (1)**
26:9
**provision (15)**
3:23;14:5;17:19,
21;18:3;21:19;22:19;
23:25;24:2,16,17;
32:21,23;36:17,25
**provisions (4)**
18:12;24:21;36:1;
38:6
**public (4)**
11:9,9;18:24;37:22
**publicity (1)**
4:25
**publicly (1)**
11:2
**published (1)**
12:5
**puppet (1)**
28:25
**purposes (1)**

14:5
**pursuant (3)**
10:20;38:14,15
**put (5)**
2:5,16;6:18;19:1;
35:18

**Q**

**quickly (1)**
16:2
**Quinn (1)**
2:14
**quintessentially (2)**
7:19;8:8
**quite (2)**
20:23;26:21
**quote (1)**
14:9

**R**

**racketeering (3)**
28:14,18;29:17
**radically (2)**
26:19,20
**radio (1)**
12:9
**Ragone (1)**
14:22
**raised (2)**
13:18;33:16
**raises (1)**
5:4
**raped (1)**
25:8
**read (8)**
2:20;7:9,12;13:16;
17:21;26:20;31:4;
33:25
**ready (1)**
2:20
**really (3)**
26:2;33:14;35:5
**reason (3)**
18:22;20:17;21:10
**reasons (2)**
22:14;23:17
**rebut (1)**
24:25
**rebuttal (4)**
15:12,19,21;30:4
**received (2)**
34:7,8
**recently (3)**
6:23;14:11;27:17
**recess (1)**
36:8
**recognize (1)**
20:23
**record (15)**
2:6,17;16:24,25;
19:5;20:17;24:16;

30:7;34:6,25;35:4;
36:7,9,11,15
redacted (1)
18:22
refer (1)
7:10
reference (7)
3:9;7:3;8:18,19,19;
10:7;29:2
referenced (1)
5:11
referred (1)
14:1
referring (2)
4:10;30:18
reflected (1)
3:24
rejected (1)
10:18
relate (3)
24:14;32:2;37:13
related (6)
6:12;8:1;9:12;
14:15;32:12;33:7
relates (5)
23:8;32:18,20;
33:3;37:11
relating (13)
3:20;5:15;6:17;
7:2;9:2,8;24:12;
26:12;27:21,24;
31:23;32:10;36:19
relevant (2)
16:15;34:1
relied (1)
6:9
relief (1)
18:17
relying (2)
19:24,25
remain (1)
27:19
remaining (1)
38:6
remotely (1)
20:15
render (2)
24:10;36:14
reply (4)
20:7,16;30:17;
33:17
report (1)
28:17
reported (4)
11:18;28:6,10,24
represent (5)
2:11,15;14:4;29:9;
30:12
represented (2)
3:6;30:20
represents (1)
29:8
required (1)

16:8
requirement (1)
5:18
requirements (1)
23:3
requiring (1)
36:17
reserve (1)
15:19
reserved (1)
15:20
respect (2)
19:8,9
Respectfully (1)
17:18
respond (1)
12:15
response (1)
12:8
rest (1)
15:11
restrictions (1)
18:16
result (1)
21:11
retaliation (4)
27:6;32:2;33:4;
37:2
review (1)
37:14
RICO (4)
29:16,22;30:8,13
right (17)
3:15;10:9;11:4,16;
12:16;17:15,17;
19:24;21:12;22:9,20;
25:12;28:23;31:15;
32:21,22,24
Rights (6)
6:25;8:12;18:15;
20:14;37:1,1
rigorous (1)
4:4
rise (4)
11:3;23:4,6;28:17
risk (1)
33:19
Roby (1)
14:23
Roger (4)
2:2,11,15;24:14

S

SAC (1)
6:21
SAC's (1)
26:10
sale (1)
27:5
Salkowitz (1)
14:11
same (15)

4:6;6:1,3,4;7:2;
8:14,22;9:22,23;
10:11;14:22;23:13;
27:7;35:21;37:18
Sarles (1)
2:14
saw (2)
11:19;28:3
saying (5)
9:11;17:4;26:16;
28:13;32:23
Schnurr (1)
13:2
scope (5)
7:7;8:4;37:4,5;38:7
Scott (1)
2:4
se (1)
28:9
seated (1)
15:13
SEC (1)
28:7
Second (2)
11:5;35:1
Section (2)
31:21;32:3
securing (1)
23:12
securities (1)
28:3
seemed (1)
11:16
seems (2)
20:9;26:14
selected (1)
36:20
selection (4)
9:20;10:1,3;36:13
selling (1)
20:3
send (2)
12:1;27:15
services (2)
18:15;24:19
set (1)
18:21
settle (1)
28:8
several (1)
13:12
severed (1)
37:10
sexual (18)
5:9,10,16,17;6:10,
18,19;7:4,23;8:1,3;
10:4,7,14;27:22;28:6,
17;34:12
shall (7)
17:9,11;20:1;24:9,
18;27:18;36:19
Shearson/American (1)
4:14

Shine (3)
2:3;25:7;29:23
shipped (1)
10:5
Shipping (1)
12:25
short (2)
20:22;36:8
shortly (1)
10:21
show (4)
19:21;22:2;23:12;
35:23
shown (1)
35:14
shows (1)
37:15
shrift (1)
20:22
side (5)
15:21;16:5;18:25;
22:5;35:13
sides (1)
27:7
signatories (1)
37:7
signed (4)
3:4;11:8;15:7,7
significant (1)
29:13
silent (1)
20:7
similar (1)
9:20
Similarly (1)
23:13
simple (1)
7:8
simply (1)
5:12
single (4)
5:13;6:15,20;19:3
Siroy (10)
6:23;9:15,19;
14:24;16:11,11,12;
30:16;31:19,20
sites (1)
28:25
sitting (1)
2:13
situation (2)
21:5,23
situations (2)
16:12;22:8
smattered (1)
9:16
Smith (1)
4:2
social (1)
7:22
sock (1)
28:25
solely (1)

23:8
somehow (3)
10:14;19:15;34:9
sophisticated (2)
3:4,6
sort (3)
16:15;23:10;25:6
sorts (1)
18:12
sought (2)
24:2;36:23
sources (1)
28:20
Southern (2)
5:24;8:24
Speaking (3)
27:14;29:8,11
specific (3)
3:9;18:10,17
specifically (6)
10:17;11:1;23:7;
31:6,22;34:17
specifies (1)
6:2
standard (5)
12:22;13:6;15:5;
18:8,11
stands (1)
20:17
Starting (1)
2:4
state (7)
3:22;6:25;8:12;
14:6;31:12;36:21,25
stated (2)
14:25,25
statement (6)
11:13,22;12:21;
13:4,19,20
statements (4)
24:18,25;33:21;
35:25
States (4)
4:6,12;9:11;27:20
station (1)
7:25
status (1)
7:19
statute (1)
11:3
statutory (2)
8:16;14:14
stayed (1)
38:15
still (1)
14:11
story (1)
9:13
strict (1)
21:18
strong (5)
3:24;4:7,17;15:9;
28:16

strongly (1)
37:23
stuff (2)
18:19;34:5
stunts (2)
4:25;11:9
subject (8)
22:20,25;25:9;
26:7;28:13;32:8,15,
24
submit (1)
38:17
submitted (3)
35:7,8,24
subpoena (5)
27:23;29:19;34:7,
8,9
subpoenaed (2)
27:19,25
subpoenas (1)
29:19
subsequent (1)
13:17
subsequently (3)
14:2,6;29:6
successors (2)
17:9;20:2
sufficient (1)
5:25
suggest (3)
24:16;30:15;33:10
suggestion (2)
10:13;24:20
suggests (1)
28:16
suing (1)
13:23
supervisor (1)
32:7
supervisors (1)
32:7
supplement (1)
19:5
support (1)
15:18
Supreme (6)
2:4;4:6,12;9:10,10;
10:16
sure (3)
20:13;25:3;34:20
surveillance (1)
28:21
suspect (1)
27:24
Suzanne (1)
2:3
systematic (1)
7:25

**T**

talent (1)
3:7

talents (1)
29:9
talk (5)
16:2;20:25;22:4;
25:6;36:1
talking (4)
4:7;18:13,14;31:19
Tantaros (11)
2:2;3:3;11:14;18:9,
11;24:17,18;25:1,8;
27:25;28:8
Tantaros' (3)
17:1;27:22;29:7
term (2)
5:20;17:11
termination (1)
27:1,7,9
terms (4)
4:24;22:1;25:2;
36:24
theoretically (1)
18:25
theory (1)
25:25
thereafter (1)
10:22
therefore (3)
6:18;8:8;30:24
third (3)
16:16,18;20:14
third-party (3)
16:16;17:23;20:11
though (3)
10:6;13:15;37:6
three (5)
5:3;15:20;16:12;
22:17;36:20
threw (1)
10:17
thus (1)
32:3
Thyssen (1)
12:25
Times (1)
28:24
today (2)
28:24;36:12
told (1)
27:19
Tong (8)
6:21;10:8;26:2,9;
31:15,18;32:4,4
took (1)
8:3
torrent (1)
11:9
tort (2)
25:11;27:3
tortious (7)
27:2;32:13,16,17,
25;37:3,20
tortiously (2)
29:7,10

torts (1)
29:15
transcript (2)
38:17,22
tried (3)
9:19;28:8;34:5
tripped (1)
25:24
trips (1)
25:21
true (2)
8:14;38:22
try (2)
16:2,2
trying (3)
19:14;24:25;34:9
turned (1)
13:3
TV (1)
12:9
twice (1)
3:6
Twitter (1)
29:1
two (14)
10:11;11:8;13:8,
15;16:15;19:7,8;
22:14;27:7,18;29:13,
25;34:16,17
types (1)
3:9
typical (1)
25:14
Typically (1)
22:8

**U**

unambiguous (1)
36:17
unconscionable (1)
31:10
under (16)
2:4;3:22;6:24;7:3;
8:17;11:3;12:17;
14:8;15:9,24;16:17;
17:12;22:20;29:23;
30:1;36:25
undergoing (1)
29:19
underlying (2)
26:5,19
understood (1)
28:3
undoubtedly (1)
3:2
uniformly (2)
8:22;9:4
United (4)
4:6,12;9:11;27:20
unless (4)
22:2;23:12;24:13;
30:1

unlike (1)
21:16
unprecedented (1)
11:6
unrelated (1)
8:11
unsupported (1)
38:1
up (2)
16:1;34:2
upon (3)
27:17;28:1,15
USC (1)
28:22
use (2)
13:4,5
used (1)
17:10
using (1)
24:13

**V**

Valdes (1)
8:23
valid (2)
24:2;36:16
various (1)
4:25
versus (12)
4:2,14,16;5:23;
6:21;10:22,25;12:24,
25;13:2;14:11,23
victims (1)
28:6
view (2)
6:4;11:21
violated (5)
12:6;13:21;33:11,
21;35:24
violating (4)
11:11;12:17;33:20,
22
violation (4)
11:22;21:19;28:22;
38:5
violations (1)
29:20
vitiate (1)
11:24
vitiated (1)
12:2
vitiating (1)
11:4
void (1)
31:8
voiding (1)
31:6
voids (1)
31:9

**W**

waffle (1)
33:13
waffled (1)
33:10
Wait (2)
25:11;30:25
waived (1)
12:16;37:24
waiver (6)
12:3,20;13:3;21:6,
7,12
wants (1)
22:23
way (9)
3:16;8:7;12:14;
17:21;24:14;25:23;
30:7;31:10;33:14
Webster (1)
12:24
weeks (1)
29:13
well-organized (1)
36:11
well-prepared (1)
36:10
Westinghouse (1)
4:5
what's (2)
16:25;29:21
whistleblower (3)
8:16,19;11:3
whole (1)
7:10
William (1)
2:3
wish (1)
3:17
within (8)
7:7;8:4;16:18;
29:15;32:21;36:24;
37:3,4
without (4)
12:5;38:2,9,12
word (1)
24:13
words (4)
5:10,17;6:18;12:24
work (1)
16:3
world (1)
26:23
wrote (1)
26:8

**Y**

year (1)
4:1
years (2)
11:8;22:17
York (18)
4:1,3,5,11,19;6:25,
25;7:15,16;8:12,12;

FOX NEWS
February 16, 2017

10:21;13:1,3;14:8;
36:21,25;37:1

**7**

**1**

**72 (1)**
  8:15
**7503 (1)**
  38:14

**101 (3)**
  23:18,20;30:22
**10th (1)**
  9:5

**8**

**13 (3)**
  31:21,21;32:3
**88 (1)**
  14:10
**134 (1)**
  8:15
**14 (1)**
  7:11
**15.1 (3)**
  17:1,4,8
**156 (1)**
  14:10
**157054 (1)**
  2:4
**18 (2)**
  7:11;28:22
**1991 (1)**
  10:17
**1993 (1)**
  10:22
**1st (8)**
  6:22;7:4;10:8;14:1,
  12,19;26:3;31:17

**2**

**2003 (1)**
  5:24
**2008 (2)**
  6:22;11:1
**2016 (1)**
  2:4
**21st (1)**
  20:4
**22 (1)**
  30:15
**234 (1)**
  4:17
**2510 (1)**
  28:22
**2nd (9)**
  4:15;8:14;11:1;
  12:25;13:1;14:21,23,
  25;15:4

**4**

**460 (1)**
  4:16

**5**

**50 (1)**
  4:1
**544 (1)**
  10:25