1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   ANDREA TANTAROS,
3
                Petitioner,
4
                v.                        19 Cv. 7131 (ALC)
5
   FOX NEWS CHANNEL, LLC, et al.,
6
                Respondents.
7  ------------------------------x
                                          New York, N.Y.
8                                         November 19, 2019
                                          3:00 p.m.
9
   Before:
10                 HON. ANDREW L. CARTER, JR.,

11                                        District Judge

12                      APPEARANCES

13 FEIN & DELVALLE PLLC
        Attorneys for Petitioner
14 BY:  BRUCE FEIN
             -and-
15 WOLF HALDENSTEIN ADLER FREEMAN & HERZ
   BY:  DEMET BASAR
16      DANIEL TEPPER

17 JONES DAY
        Attorneys for Respondents Fox News, Suzanne Scott,
18       Irena Briganti and Dianne Brandi
   BY:  MATTHEW W. LAMPE
19      KRISTINA A. YOST
        STEFAN McDANIEL
20
   QUINN EMANUEL URQUHART & SULLIVAN LLP
21      Attorneys for Respondent The Estate of Roger Ailes
   BY:  KIMBERLY E. CARSON
22      BRENDAN T. CARROLL

23 THOMPSON & KNIGHT LLP
        Attorneys for Respondent William Shine
24 BY:  MARION J. BACHRACH

25

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your

3     appearance.

4          For the petitioner.

5          MR. FEIN:  Good afternoon, your Honor.  Bruce Fein.  I

6     am representing petitioner, Andrea Tantaros.  She is in the

7     first row in the gallery.

8          MS. BASAR:  Your Honor, good afternoon.  Demet Basar,

9     from Wolf Haldenstein, local counsel for petitioner.

10          MR. TEPPER:  Good afternoon, your Honor Daniel Tepper,

11     from Wolf Haldenstein, local counsel for petitioner.

12          THE DEPUTY CLERK:  For the respondents.

13          MR. LAMPE:  Good afternoon, your Honor.  Matt Lampe,

14     from Jones Day, for respondents Fox News Network, Suzanne

15     Scott, Dianne Brandi, and Irena Briganti.

16          MS. YOST:  Good afternoon, your Honor.  Kristina Yost,

17     also with Jones Day, for respondents Fox News Network LLC,

18     Dianne Brandi, Irena Briganti, and Suzanne Scott.

19          MS. BACHRACH:  Good afternoon, your Honor.  Marion

20     Bachrach for counterclaim respondent William Shine.

21          MS. CARSON:  Good afternoon, your Honor.  Kimberly

22     Carson, Quinn Emanuel, for respondent The Estate of Roger

23     Ailes.  Also with me in the courtroom is my colleague Brendan

24     Carroll.

25          THE COURT:  OK.  In my order I have instructed the

1  parties that I would give them certain time limits for oral

2  argument, 15 minutes for the opening argument and seven minutes

3  for rebuttal.  Since this is a motion to remand, we will start

4  with the plaintiffs and then we will move on to the defendants.

5          Go ahead, counsel.

6          MR. FEIN:  Would you like me to speak from the podium?

7          THE COURT:  As long as you use a microphone it doesn't

8  matter to me.  You can sit there or use the podium.  The

9  acoustics here aren't great so make sure you use the mic.

10         MR. FEIN:  Your Honor, we begin, I believe, with a

11 very heavy burden on the respondents to demonstrate that this

12 particular case is one of those extremely rare cases, whereby

13 the plaintiff's well-pleaded complaint arising under state law

14 is treated as a federal question nonetheless.  And extremely

15 rare, your Honor, were the words used by Chief Justice John

16 Roberts in *Gunn v. Minton*, a decision unanimously subscribed to

17 by the United States Supreme Court.

18         You asked us to address first the four criteria of

19 *Gunn v. Minton* that the chief justice set forth for departing

20 from the well-pleaded complaint rule.  We submit that three of

21 the four criteria are clearly not met.

22         The first criteria is that a federal issue is

23 necessarily implicated in the state cause of action alleged by

24 the plaintiff.  We alleged a claim arising exclusively under

25 state law, Section 7515, that prohibits mandatory arbitration

1   for sexual harassment claims and allegations.  Then, moreover,

2   the underlying claims and allegations arise exclusively under

3   state law as well, state human rights laws prohibiting sexual

4   harassment, sexual abuse and retaliation in the workplace.

5        And there is no reason, given the canon of statutory

6   construction, that exceptions to a rule are to be pleaded and

7   argued and proved by the defendant; they are not part of the

8   plaintiff's case.  That is a standard of statutory construction

9   that the Supreme Court has repeatedly embraced.  And in this

10  case, the statutory language is, except when inconsistent with

11  the federal law, then the rule applies.  And reading that

12  statutory language it means the defendant has to allege a

13  defense under federal law.

14       It would be impractical to have the rule otherwise,

15  your Honor.  A plaintiff cannot know all the federal corpus of

16  laws, regulations, rules, every court decision, and say, well,

17  I know my state law claim is not inconsistent with any of those

18  kind of claims.  The complaint would be hundreds of pages long.

19  Moreover, to think that the New York Legislature enacted this

20  statute as a remedial measure, it would be odd to interpret it

21  to impose this very, very heavy burden on the plaintiff to

22  allege, I suppose on information and belief, there is no

23  federal law anywhere that's inconsistent with my 7515 claim.

24       So we believe that there is no argument that there can

25  be a federal issue implicated in the plaintiff's well-pleaded

1  complaint which arises exclusively under state law.  The

2  federal issue arises only as a defense, a defense of

3  preemption, and the law is quite clear, a federal preemption

4  defense does not make a state law claim a federal question for

5  jurisdictional purposes.

6          The second issue we believe that cannot be satisfied

7  by the respondents is the requirement that the federal issue be

8  substantial, namely, that it would have a huge system-wide

9  impact on the administration of the Federal Aviation Act.  The

10  respondents themselves characterize this particular removal as

11  very unique, virtually never happens.  Moreover, the 7515

12  statute applies only to a microscopic portion of all claims

13  that may be arbitrable under the FAA.

14          THE COURT:  I am sorry to interrupt you.  Just to be

15  clear for the record, I think you may have misspoken when you

16  mentioned the other FAA instead of the FAA here.

17          MR. FEIN:  The Federal Arbitration Act.  Excuse me.

18          The Federal Arbitration Act applies to the full

19  universe of any issue that could arise as an issue raised in

20  arbitration, for some violation of a duty to employees, it

21  could be torts, it could be violations of statutes, or

22  otherwise.  The 7515 statute at issue here is very narrow.

23  It's a microscopic portion of all arbitration claims.  It

24  applies only to sexual harassment and sexual retaliation

25  claims.  Therefore, a decision on this particular 7515 claim

1    does not implicate system-wide impact on the administration of

2    the Federal Arbitration Act.

3            And insofar as there is a worry about the uniform

4    interpretation of the Federal Arbitration Act, we know from

5    experience that that problem, if it exists, is readily remedied

6    by the United States Supreme Court repeatedly taking certiorari

7    jurisdiction to reverse decisions by state courts, oftentimes

8    state supreme courts, where the U.S. Supreme Court thought its

9    interpretation of the arbitration act was wrong.  The Supreme

10   Court, unlike years ago, has room on its docket to hear these

11   kinds of cases.  It's got 75 opinions as opposed to 175 years

12   ago.  It doesn't even have all of its oral argument calendar

13   completed.  So there isn't any threat to a uniform

14   interpretation of the Federal Arbitration Act when the Supreme

15   Court is there to correct any incorrect state interpretation.

16           The third element that comes into play here, we

17   believe the respondents have failed to satisfy, is altering the

18   federal-state balance that Congress has struck in this area.

19           Your Honor, Congress chose, in enacting Title VII of

20   the Civil Rights Act, not to preempt companion state claims,

21   local claims, protecting against sexual harassment and sexual

22   retaliation in the workplace.  That's why we have state human

23   rights laws, including those in New York.  Congress did not try

24   to preempt the field.  Moreover, Congress did not try to

25   preempt the field of enforcing civil rights laws of this sort

1  in state courts as it has in other areas.  For example, patent

2  laws or antitrust laws can only be enforced in federal court.

3  So the decision that Congress made was that we will permit

4  victims of sexual harassment under state law to file their

5  claims in state court.  We are not going to try to preempt that

6  decision.  We are not going to disturb the choice of forum that

7  is ordinarily respected in federal-state relations.

8         What the respondents would have this Court do is upset

9  that congressional balance by permitting the defendants to say,

10 no, we want your state law claims to be adjudicated in a

11 federal court.  What the respondents are asking you to do,

12 Judge Carter, is they want you ultimately to decide the state

13 law claims raised by Ms. Tantaros as opposed to having the

14 state court decide those particular questions.

15        There is nothing, your Honor, that the respondents

16 have argued that they could not have presented to Judge Cohen

17 before they raced to this particular court.  And why they are

18 here is somewhat of a puzzle.  They state in their papers they

19 are fully confident in Judge Cohen's ability to interpret the

20 Federal Arbitration Act, he is impartial, he can do justice,

21 yet at the same time they are running out of the courtroom and

22 they are here before you.  It is probably true that if they

23 kept the case and responded to our claim in Judge Cohen's

24 courtroom, he would have already decided their defenses, which

25 they are entitled to present to him.  So this is not a way to

1    have an expeditious resolution of law in a proper fashion.

2             The second issue that you asked us to address was

3    whether or not there was so-called complete preemption.  We

4    think the answer is clearly no for two reasons.

5             First of all, the underlying claims here, based upon

6    sexual harassment and sexual retaliation, are not prohibited by

7    federal law.  Federal law under Title VII does not displace

8    state causes of action for similar comparable misbehavior in

9    the workplace.  So there isn't any complete preemption under

10   the *Bankers* case, *Lincoln Mills* on 301 of the Labor Management

11   Relations Act.  There the federal claims clearly ousted any

12   authority for states to have any claims whatsoever.  That's not

13   true with regard to Title VII.

14            Secondly, with regard to the Federal Arbitration Act

15   itself, it acknowledges that it isn't trying to displace

16   decisions that states may have with regard to prohibiting

17   arbitration of certain claims, because it specifically uses the

18   term that arbitration is favored except upon such conditions in

19   law and in equity that would justify revocation of any

20   contract.  So that discredits any idea that this was full

21   preemption, and, therefore, that would not transform what would

22   otherwise be a state law claim into a federal claim.

23            The last point you asked us to address was the *Pullman*

24   abstention doctrine.  We think that you are correct, your

25   Honor, that the policy behind *Pullman* abstention applies

1    completely here.  The general rule is that, if there is an

2    ambiguous aspect of state law that could make moot the

3    resolution of a difficult federal question, then the federal

4    court should stay its hand and let the state tribunals decide

5    that issue first.  That's what Justice Frankfurter lectured in

6    the *Pullman* case.  And we think that's true here.

7            One of the issues that surely will be raised at some

8    point in this litigation is whether or not 7515 is retroactive,

9    whether it applies to contracts that were made before the

10   enactment of the law, and if so, one of the things you could

11   argue is violation of the obligation of contracts clause in the

12   United States Constitution or otherwise.  But that issue is

13   something that the policy of *Pullman* dictates should be sent

14   back to Judge Cohen and he should decide that particular

15   question of retroactivity or not.  It is not something that

16   this Court should reach out and decide at this particular time.

17           We think also that if this Court would sustain the

18   theory of the respondents -- namely, if any time there is the

19   possibility of a federal preemption defense, it's the burden on

20   the plaintiff to allege the non-inconsistency of the state

21   cause of action, with a possibility of a federal preemption --

22   it would transform removal into being the norm rather than the

23   extremely rare exception that Chief Justice Roberts identified

24   in *Gunn v. Minton*.

25           The last point I would like to make, your Honor, is

1 with regard to the underlying policy of New York in enacting

2 7515 in trying to give greater protection to workplace women,

3 primarily, from sexual harassment and sexual retaliation. That

4 is a strong state law policy that ought to be implemented

5 through state court adjudications, and it would not be I think

6 consistent with the ordinary deference that the Supreme Court

7 and Chief Justice Roberts said should be given, specifically in

8 *Gunn*, to the state's ability to regulate workplace environment

9 concerning sexual harassment for having the federal court

10 somehow intercede.

11 That addresses the questions I believe you raised,

12 your Honor. I am eager to answer any questions you may have.

13 THE COURT: OK. Thank you.

14 I will hear from defendants.

15 MR. LAMPE: Thank you, your Honor.

16 I will also address the questions that the Court asked

17 us to focus on. I believe with respect to the *Gunn/Grable*

18 factors, your Honor asked us to focus on the first prong, the

19 "necessarily arising" prong. So I will start with that.

20 The *Gunn/Grable* doctrine is a doctrine that focuses on

21 whether there is federal question jurisdiction when the cause

22 of action arises under state law. So the fact that there is a

23 state law cause of action here is by no means an obstacle to

24 the *Gunn/Grable* doctrine applying. That's the very context in

25 which the doctrine is supposed to apply.

1          The issue is whether or not there is an embedded

2    federal question that would give rise to the federal court

3    jurisdiction.  And here plaintiff's sole cause of action is

4    brought under CPLR 7515.  And that law, both parties have

5    recounted, specifies that, except where inconsistent with

6    federal law, certain arbitration clauses are unenforceable and

7    deemed void.  Because there is a federal issue embedded on the

8    face of the state statute -- namely, whether or not the

9    prohibition of certain arbitration clauses is inconsistent with

10   federal law -- that cause of action gives rise to federal court

11   jurisdiction.

12          Now, I would urge the Court to focus in particular on

13   the *Rhode Island* case, the First Circuit case in *Rhode Island*.

14   Of all of the cases that any of the parties have cited, that is

15   the case that is most squarely on point.  That dealt with the

16   statute that dealt with retroactive control dates having to do

17   with the lobster fishing industry, but the statute provided

18   that retroactive control dates were prohibited unless required

19   by federal law.  And the First Circuit reasoned that the

20   plaintiff could not prevail in that case without showing that

21   the retroactive control dates were not required by federal law.

22          The First Circuit pointed out that there may very well

23   be a preemption defense, to use the court's term, lurking in

24   the wings.  But the First Circuit said that "the federal

25   question here" -- I am quoting -- "the federal question here is

1  inherent in the state law question itself because the state

2  statute expressly references federal law."  That is exactly

3  what we have here.  We have a state statute that expressly

4  references federal law and the plaintiff has to show that the

5  prohibition would not be inconsistent with federal law in order

6  to state the cause of action.

7         Let me turn to this issue of exceptions, and Mr. Fein

8  indicated that the defendant has the burden to prove that an

9  exception exists and it's not the plaintiff's burden.  This is

10 an argument he raised in his reply brief and it's a very

11 important argument.  There is very long-standing law in the

12 state of New York on this very issue, and it breaks in favor of

13 the Fox parties, not in favor of the plaintiff.

14        In New York law, I cite the *Rowell v. Janvrin* case,

15 which is 151 N.Y.60, New York Court of Appeals.  This is the

16 seminal case.  It's been cited many, many times over the years.

17 It draws a distinction between an exception on the one hand and

18 a proviso on the other hand.  And an exception exempts

19 something absolutely from the operation of the statute, and it

20 is contained in the enacting clause of the statute.  Exceptions

21 have to be proven by the plaintiff; it's the plaintiff's burden

22 to plead and prove an exception.  A proviso is very different.

23 That is something that occurs later on in the statute.  And if

24 a proviso avoids something in the statute, by way of an excuse,

25 provisos are the burden of the defendant.  That's accurate.

1   The *Meacham* case, which plaintiff cited, deals with the

2   proviso.  But the law we are talking about 7515, the federal

3   question that is embedded is embedded in the enacting clause,

4   except where inconsistent with federal law.  That's clearly,

5   under New York law, the burden of the plaintiff to plead and to

6   prove.

7          One other reference that I will give to the Court,

8   which is a treatise that summarizes all of the law in this

9   case, the New York treatise Carmody-Wait.  So Carmody-Wait, 2d

10  27:21.  So plaintiff cannot prove her cause of action under

11  7515 unless she proves that the prohibition is not inconsistent

12  with federal law.  That's her burden and that is that embedded

13  federal question the plaintiff has to prove to prevail on her

14  cause of action which gives rise to the federal court

15  jurisdiction, in particular, satisfies the "necessarily

16  arising" factor in the *Gunn/Grable* test.

17         I will comment briefly on the fourth factor about the

18  balance between state and federal courts that counsel referred

19  to.  We deal with all the other issues that counsel raised in

20  our brief.  But the Fox parties, the defendants, are not asking

21  this Court to adjudicate the underlying issue of sexual

22  harassment.  That is absolutely not what we have in mind.  What

23  the defendants have in mind is asking the Court to decide

24  whether or not the plaintiff has satisfied her burden of

25  proving that the prohibition in 7515 is not inconsistent with

1   federal law.  If we were to prevail on that question, the

2   underlying dispute goes back to arbitration, which is what we

3   seek.  So we are not asking the Court to adjudicate the

4   underlying sexual harassment claims.

5           So I would respectfully submit that the wrong balance

6   that Mr. Fein identified, or the division that he thought would

7   be an inappropriate encroachment in the state realm, he is

8   identifying the wrong division of authority.  The division of

9   responsibility that's pertinent here is who decides the

10  question of whether or not the prohibition is inconsistent with

11  the FAA, not the underlying merits.

12          Counsel also referred to the fact that our argument is

13  at bottom a preemption defense.  That is not accurate.  There

14  may be a preemption defense lurking in the wings, to cite the

15  First Circuit, but preemption arises where there is a state

16  statute that is in conflict with a federal statute.  That is

17  not what we have here.  It is very clear on the face of 7515

18  that the New York Legislature did not want there to be a

19  conflict between its statute and federal law.  It went so far

20  as to state at the very beginning in the enacting clause,

21  except where inconsistent with federal law.  So the state is

22  going to regulate in areas that the federal law does not

23  control.

24          So, for example, if there is an employment agreement

25  in the transportation industry that it has an arbitration

1   clause that will be prohibited, that is not something that is

2   controlled by federal law.  The FAA carves out in Section 4

3   certain arbitration clauses that arise in employment agreements

4   in the transportation industry.

5          So our argument is that the state is scrupulously

6   careful to avoid a conflict with federal law.  So our argument

7   that federal jurisdiction exists is certainly not based on the

8   fact that there is conflict.  Our argument is based on the fact

9   that there is a statute that, by operation of the New York

10  Legislature, was drafted in a way that requires the resolution

11  on its face of a federal issue to determine whether the statute

12  is operable.  That is exactly what we were dealing with in the

13  *Rhode Island* case that the First Circuit dealt with and that's

14  what creates the "arising from" jurisdiction.

15         Very briefly, your Honor, as to complete preemption,

16  your Honor asked us to comment on that.  We agree with

17  plaintiff.  There is no complete preemption.  We do not assert

18  that.  That does not fit here.

19         With respect to the *Pullman* abstention, this is an

20  abstention doctrine that relates to circumstances in which

21  there is a state statute that could be interpreted in such a

22  way to avoid a constitutional conflict, a conflict with the

23  federal Constitution.  There is no constitutional issue here.

24  There is no Supremacy Clause issue here.  The New York

25  Legislature was scrupulously careful to state that it is only

JBJ8TANC

1   operating in the space that is not inconsistent with federal

2   law.  So on the face of 7515 there is no conflict of any kind

3   with federal law, and there certainly is no constitutional

4   collision here such that the *Pullman* abstention doctrine would

5   be applicable.

6           I am happy to address any questions, but otherwise we

7   would rest on what is laid out in our brief.

8           THE COURT:  OK.  Here is what I would like.  I have

9   given each side seven minutes sort of in rebuttal.  But before

10  I do that -- I will give each side a little bit more time -- I

11  would like the parties to also address the third and fourth

12  *Gunn/Grable* factors, the issues regarding whether or not this

13  is a substantial issue, and also the issue regarding whether or

14  not a federal forum may entertain this issue without disturbing

15  any congressionally approved balance of federal and state

16  judicial responsibilities.

17          So I will give counsel a few minutes to collect your

18  thoughts on that, and I would like to hear from you on that.

19  And I would like to find out if counsel have any views about

20  this potential issue regarding retroactivity and if that weighs

21  in on either of those elements three and four of *Gunn/Grable*.

22          So I will step back and I will give you six minutes

23  and I will be back.

24          (Recess)

25          THE COURT:  I guess before I hear from counsel,

1   another thought that I would like counsel to address.

2           In the state court action, would the plaintiff be

3   required to demonstrate retroactivity and a lack of waiver, and

4   if so, how does that play into this element of necessary?

5   Would those things also be necessary?  And if that is true, and

6   if there are two necessary elements that the plaintiff must

7   establish that arise solely under state law, and one that is

8   necessary under federal law, how does that play?

9           So let me hear from plaintiff's counsel regarding

10  those issues, the issue that I just raised as well as the issue

11  that I raised right before the break.

12          You can sit there and use the mic.

13          MR. FEIN:  I prefer standing.  I appreciate the

14  courtesy.

15          Your Honor, let me address first the argument that the

16  statute 7515 saddles the plaintiff with this really almost

17  impossible burden of alleging, as part of the complaint under

18  7515, that the plaintiff has examined the entire corpus of

19  federal law -- all the regulations, all federal court

20  decisions, everything in the United States Code -- and alleges

21  that none of them are inconsistent with 7515's prohibition upon

22  mandatory arbitration of sexual harassment claims and

23  allegations.  That's just not feasible.  What lawyer can go

24  through the entire corpus of federal law?  It makes sense, and

25  consistent with the ordinary rule, as the Supreme Court has

1    repeatedly said, that the statutory interpretation, exceptions

2    outside the rule that's established by the law are to be pled

3    by the defendant, and proved by the defendant.  Especially in a

4    case where, as here, this is a remedial statute, trying to help

5    women in their sexual harassment claims, and then they are

6    saddled with this huge burden that is almost impossible to

7    discharge.

8         THE COURT:  Let me ask you this then.  Why is it

9    outside of the law if it's specifically included in the text of

10   the statute?  I understand the point that you were raising

11   earlier in your briefs to say that it's implicit in every state

12   statute that if it's inconsistent law, or preempted by federal

13   law, that this statute or this portion of it is no good.  But

14   the fact that it's actually listed in the statute seems to me

15   that that should make a difference.  The legislature is free to

16   include what it wants to in a statute and exclude what it wants

17   to, and the fact that it's included specifically in the statute

18   seems to me that that should have more resonance than if it

19   were not included in the statute.

20        MR. FEIN:  Sometimes, your Honor, I think words that

21   are put in the statute may be redundant out of an excess of

22   caution.  You have to read the statute in terms of its spirit

23   and goal and purpose.  What you say is ordinarily maybe true,

24   but in the context in which this statute was enacted, in the

25   wake of serial epidemic workplace harassment of women, to

1    impute to the legislature an intent other than stating what is

2    customarily true, that a state law cannot survive when it's

3    contradicted by federal law, can be treated as surplusage,

4    because the consequence of not doing that is simply absurd.

5    The plaintiff can't review every single federal law, every

6    federal decision ever made by this court and other courts,

7    every federal regulation that are millions, and say none of

8    them is inconsistent here.

9         So your point is a good one, ordinarily you do give

10   independent significance to every single word in the statute.

11   But we think, reading the purpose of the statute, and sometimes

12   legislatures aren't as precise as they might be, it doesn't

13   make any sense to give the interpretation that the respondents

14   have offered.

15        THE COURT:  Let me ask you this then.  Hypothetically,

16   if the statute, instead of talking about inconsistent with

17   federal law generally, if the statute said, we are not

18   inconsistent with CPLR -- I will just make up a number -- 5000,

19   we are not inconsistent with CPLR, let's make it 11000, what

20   would your argument be then?  Wouldn't it be necessary for the

21   plaintiffs to -- and again, it gets hazy when we start talking

22   about whether this is an element that needs to be proven to a

23   jury, or is this something that just needs to be established in

24   a legal argument or some other way -- wouldn't the plaintiffs

25   be required to allege and show in order to prevail that this

 1   section was not inconsistent with CPLR Section 11000?

 2            MR. FEIN:  Well, I think you have a very strong

 3   argument, your Honor, because in part that is at least a

 4   manageable burden by a plaintiff.  You have one statute; they

 5   can examine the statute.  That's not this case.  The language

 6   is all federal law, and you have to interpret the statute in

 7   terms of -- and your common sense tells you -- what its

 8   real-life application would be.  One statute is a manageable

 9   discharge of a burden, millions of them are not.  And we

10   believe that's the difference between the hypothetical you

11   gave, when you have a specific provision, and the language of

12   this statute, which is everything under the sun under federal

13   law, including the United States Constitution, the obligation

14   of contracts clause, everything that you could think of.

15   That's the language.

16            THE COURT:  I understand why you're making that

17   argument, but is this actually every federal law?

18            MR. FEIN:  Read the text.  Federal law is not a

19   synonym with Federal Arbitration Act.

20            THE COURT:  But the statute refers specifically to

21   arbitration.  So that is certainly going to limit the universe

22   that we are talking about here.  You would agree that there is

23   nothing in this statute that seems to indicate that you would

24   need to go looking into fish and gaming statutes to figure out

25   whether or not they are inconsistent with this.

1          MR. FEIN:  One comes to mind, your Honor, that's not

2     arbitration.  It may well be that thinking about the obligation

3     of contracts clause and applying the law retroactively could

4     impair obligation of contracts under some theory.  You would

5     have to allege, no, this doesn't impair an obligation of the

6     contracts even though it applies retroactively.  I haven't been

7     given enough time to see whether there are others, but that

8     immediately shows I don't believe it's limited to only the

9     Federal Arbitration Act.  Because if that were true, why didn't

10     they just use Federal Arbitration Act?  It's a simple idea.

11     It's only three words.  It doesn't clutter up the statute.  But

12     they didn't use Federal Arbitration Act.

13          I also think, your Honor, if you look at the *Latif*

14     case that the respondents celebrate, there is no indication in

15     *Latif* that your colleague interpreted 7515 in the way that's

16     being argued, that places the burden on the plaintiff to prove

17     the absence of any inconsistency with the FAA or otherwise.

18     The issue of 7515 came up in the context of a motion to compel

19     arbitration.  There is no indication, for example, that the

20     defendant in *Latif* said, well, your Honor, you have to dismiss

21     the complaint because it doesn't allege as part of the claim

22     this is not inconsistent with X, Y and Z.

23          Now, there are somewhat cloudy facts that are

24     described in *Latif*.

25          THE COURT:  Again, it seems to me, in terms of

1    determining whether or not I have jurisdiction, I am not sure

2    how *Latif* is relevant to that at all.  It seems to me in the

3    *Latif* case there was no issue about jurisdiction, and there was

4    no issue about whether or not the judge should decide that

5    issue regarding 7515.  Here, the issue that has been raised in

6    the motion to remand is the issue that I don't have

7    jurisdiction to even get to that issue of whether or not 7515

8    applies in light of the FAA.  But let me hear from you on that.

9             MR. FEIN:  You're right; and on that score, we are not

10   arguing otherwise.  We are just suggesting, and I don't want to

11   overstate the point, that *Latif* could have gone off on a

12   different ground if the judge said, you know, just interpreting

13   7515 on its face, the plaintiff hasn't alleged as part of the

14   7515 claim that it's not inconsistent with the Federal

15   Arbitration Act and everything else under the sun.

16            Now, the description in the facts of *Latif* aren't so

17   comprehensive, I am sure, on that score.  But that would be an

18   alternate way in which you could dismiss a 7515 claim.  If it

19   is true that you have to make these allegations of not

20   inconsistent with anything else, if it's not in the complaint,

21   then you make a 12(b)(6) motion.

22            THE COURT:  Why would it be necessary to make the

23   allegation if it's embedded within the statute?

24            MR. FEIN:  Because if you don't allege it in the

25   complaint and it's in the statute, you dismiss it for failure

1    to state a claim.

2            THE COURT:  Well, I am saying, in terms of in a

3    removal context, if you're placing the complaint on a statute

4    and the statute has as a part of the statute that language, why

5    would it be necessary for the plaintiff to have the actual

6    language -- I am not sure I am understanding -- to reallege the

7    language of the statute?

8            MR. FEIN:  I think I am inartful here.  What I am

9    saying is that, for example, before Judge Cohen, if the

10   respondents believed that the complaint under 7515 was

11   defective, because their argument is an essential element of

12   the cause of action is you have to allege this is not

13   inconsistent with federal law; they claim that's an essential

14   element.  So if you don't allege in the complaint an essential

15   element of a claim, you are going to get dismissed for failure

16   to state a claim, whether it's under state or federal court.

17   They didn't go to Judge Cohen and say, you need to dismiss this

18   because they didn't allege in the complaint -- and I drafted it

19   and I know I didn't allege -- this is not inconsistent with any

20   federal law whatsoever.  And that's how something like this

21   would be treated if it had to be part of the plaintiff's

22   complaint as opposed to a defense.

23           I want to address a couple of other issues, your

24   Honor, before I get to retroactivity and waiver.  And that is,

25   there is a suggestion that there is no way that the respondents

1    would ever ask you to interpret the sexual harassment claims

2    that arise under state and local law concerning Ms. Tantaros.

3    But the fact is, suppose you don't grant remand and you take

4    the case, and you interpret 7515 to be consistent with the

5    Federal Arbitration Act, because it's really another

6    manifestation of procedural or substantive unconscionability

7    that could be used to revoke any contract in law and equity,

8    and therefore it's valid.  If you found that it's valid, then

9    you are going to have to address the underlying claim, which

10   would be sexual harassment, the retaliation claims, that are

11   the reason for trying to get this into court as opposed to

12   arbitration.  The knot doesn't phase out of the case, because

13   if you kept the case you are going to have to address those

14   issues.

15           With regard to retroactivity and waiver, I believe

16   that those are novel questions of state law that would be

17   raised.  And the *Pullman* doctrine here, I believe, your Honor,

18   correctly points out, if you have novel questions of state law

19   that could avoid a decision -- they argue it's not a matter of

20   constitutional law -- but it avoids a decision of a federal

21   question, which is obviously interpreting the Federal

22   Arbitration Act, then the federal court should stay its hand.

23   Let's see if the state court can resolve this without even

24   getting to the federal question.

25           Before I close I want to underscore the fact that this

1    is a situation where the state courts have shown from the

2    beginning, when Congress was given this authority, they can

3    resolve interpretations of the Federal Arbitration Act.  We are

4    talking about how the state statute ought to be interpreted,

5    should it require the plaintiff to make these allegations?  Why

6    is your Honor deciding this?  It's a novel question under state

7    law.  Why isn't that an issue for Judge Cohen?  The respondents

8    say he's a great judge, he's competent, he's impartial.  Why

9    are you deciding that issue, especially if it is a hard one?

10   And Congress specifically decided it wasn't going to take these

11   kinds of cases away from state courts, it didn't try to make

12   federal jurisdiction exclusive, which I think all these issues

13   that we are arguing underscores why this case should be back in

14   Judge Cohen's courtroom, where he will apply the same law that

15   this Court would if it kept it.

16              THE COURT:  OK.  Thank you.

17              Let me hear from defendants.

18              MR. LAMPE:  Thank you, your Honor.

19              Let me address, first of all, what I will call the

20   parade of horribles argument that Mr. Fein was addressing about

21   the fact that there would be this terribly unmanageable

22   circumstance if the plaintiff had to negate inconsistency with

23   the full spectrum of federal laws.

24              We respectfully disagree with that.  It is very clear

25   what federal law is at issue here.  It's clear from the face of

1    7515 which is a statute that purports to bar certain types of

2    arbitration agreements.  It's very clear what statute is

3    implicated here, which is the FAA.  If there is any doubt at

4    all, the legislative history confirms the point.  And we cite

5    the legislative history in our brief, in footnote 2, page 8.

6    The legislative history shows that the concern here is the

7    inconsistency with federal law related specifically to the FAA.

8         Now, I will also point out once again the *Rhode Island*

9    case.  That was a case in which the embedded federal issue was

10   whether or not these retroactive control duties were -- they

11   were prohibited unless they were required by federal law.  That

12   statute did not specify which particular federal law, but the

13   First Circuit understood full well what particular federal law

14   was at issue there.  So that is, respectfully, not anything

15   that should weigh on the Court's decision-making with respect

16   to the removal question.

17        With respect to the third and fourth prong,

18   substantiality of interests, we have, your Honor, in recent

19   years a clash between, on the one hand, the FAA and federal

20   courts that are interpreting the FAA, and on the other hand

21   state legislatures and state courts that are seeking to chip

22   away at the protections of the FAA, and this is manifested by a

23   long line of cases, including Supreme Court cases that are

24   pushing back on the states that are encroaching on the

25   protections available under the FAA.  Specific to this

1    particular context, we also have now a proliferation of state

2    statutes very similar to 7515.  We cited several of those state

3    statutes in footnote 3 on page 9.

4         So there is a very clear federal interest in having

5    this issue resolved.  The federal courts have time and again

6    emphasized the strong federal interest in the protections of

7    the FAA and the uniform and accurate interpretation of the FAA

8    to protect arbitration agreements from state law encroachment.

9    The substantial interest is very clear.

10        With respect to respecting the division between state

11   and federal courts, I repeat my point earlier, your Honor.

12   This is not a case or an argument that would require this Court

13   to try the underlying sexual harassment claims in this case,

14   nor would the Court, accepting jurisdiction in this case,

15   create a flood of cases with underlying sexual harassment

16   claims being tried in federal court.  The sole cause of action

17   in the plaintiff's complaint is 7515.  That's the complaint

18   that we removed to federal court.  7515 does not require

19   examination or adjudication of the underlying sexual harassment

20   allegations.  That's a state law issue.

21        So there is no reason to think that the federal court

22   will be flooded with state sexual harassment claims that belong

23   in the state court.  Rather, what we are asking this Court to

24   weigh in on is an issue of peculiarly federal interest, which

25   is whether or not a purported state prohibition would be

1   inconsistent with the FAA.  That is an issue that federal

2   courts decide all the time.  And the state is very clear in the

3   statute that it respects the fact that the federal courts

4   decide that all the time, because in the statute the New York

5   Legislature specifically deferred to the federal body of law by

6   saying, except as inconsistent with federal law.  So the state

7   is inviting in federal court scrutiny of an interpretation of a

8   federal statute.  So we would respectfully submit that there is

9   no problem with disrupting the balance between federal and

10  state courts and what they respectively handle.

11          With respect to the issue that your Honor raised about

12  the fact that the cause of action may involve retroactivity

13  issues, and they involve also waiver issues, and how does that

14  impact the necessarily arising doctrine.  We respectfully

15  submit that those issues do not affect the federal court

16  jurisdiction issue at all.  In fact, the issue that your Honor

17  raises was once again decided and addressed in the *Rhode Island*

18  case.  In the *Rhode Island* case, the First Circuit discussed

19  the fact that the plaintiff had raised an argument about the

20  fact that the cause of action had arisen under state law, and

21  the First Circuit said, and I quote, this argument sets up a

22  false dichotomy.  I continue to quote, It presumes that claims

23  cannot simultaneously arise under both federal and state law.

24  That premise is faulty.  Federal jurisdiction extends to a case

25  arising under federal law regardless of whether the cause of

1   action itself has a genesis in state law.

2           In that *Rhode Island* case, the First Circuit looked to

3   see whether there is a jurisdictional hook, whether there is an

4   aspect of the cause of action that necessarily raised a federal

5   question, and the First Circuit found that that was in fact the

6   case because a federal question was embedded on the face of the

7   statute.

8           So the fact that there are also state ingredients to

9   the cause of action does not divest the Court of jurisdiction.

10  And to the extent the Court is concerned about having to decide

11  the retroactivity issue, this is where *Latif* really is

12  important.  The Court does not need to decide the retroactivity

13  issue.  Judge Cote did not decide the retroactivity issue.

14  This Court can very quickly resolve this issue, and resolve the

15  complaint and the viability of the only cause of action

16  asserted in the complaint, by determining that the purported

17  prohibition would in fact be inconsistent with federal law.  By

18  answering the question that the state legislature invited this

19  Court to answer, that answer would be dispositive of the

20  complaint with its one cause of action 7515, and the matter

21  would then go back to arbitration for adjudication of the

22  underlying sexual harassment allegations.

23          I believe that's all I have, your Honor.  If there are

24  any further questions, I am happy to answer them.

25          THE COURT:  I have a question regarding the fourth

1    *Gunn/Grable* factor.  In the *Grable* case, the full language

2    regarding the congressional judgment about the sound division

3    is:  The federal issue will ultimately qualify for a federal

4    quorum only if federal jurisdiction is consistent with

5    congressional judgment about the sound division of labor

6    between state and federal courts governing the application of

7    Section 1331.  So it is linked to Section 1331 federal question

8    jurisdiction.

9         How does the fact that the FAA in and of itself does

10    not create federal jurisdiction, how does that weigh into that

11    analysis?

12         MR. LAMPE:  Well, deciding that the fourth prong that

13    favors removal is satisfied would not divest state courts of

14    deciding this issue.  So this issue of inconsistency with the

15    FAA, or whether the FAA prohibits certain encroachments on

16    arbitration agreements, is an issue that, as Mr. Fein pointed

17    out, can be decided by state courts and can be decided by

18    federal courts.  And those issues are in fact decided by state

19    and federal courts.

20         This case is unusual, though, your Honor, because this

21    case involves a state statute which is the premise of the only

22    cause of action in the case that specifically embeds in its

23    text a federal question.  That's what makes this case different

24    from many of the other circumstances that could arise.  There

25    is not a lot of statutes like that.  And so for the federal

1   court to decide, and basically to accept the state

2   legislature's invitation to decide this issue -- an issue that

3   federal courts do routinely decide -- would not upset the

4   balance between state and federal courts in interpreting

5   whether or not the FAA prohibits certain encroachments or

6   prohibitions on an arbitration clause.

7           THE COURT:  Why do you say that the state legislature

8   is inviting a federal court as opposed to a state court, or if

9   they have druthers one way or the other about who decides that,

10  why do you say that?

11          MR. LAMPE:  Because it's the reason in the First

12  Circuit, when the state legislature chooses to embed a federal

13  question in enacting a clause of a statute.

14          By the way, your Honor, that clause, the "unless

15  inconsistent with federal law," is in this short statute twice.

16  When a legislature embeds that federal question into a statute,

17  it is creating federal court jurisdiction, federal question

18  jurisdiction, because the cause of action arises under federal

19  law by virtue of that embedding of the federal question.  The

20  state could have chosen not to embed the federal question.

21          THE COURT:  But I think that that *Rhode Island* case

22  was decided, I believe, in 2009, and that case was decided

23  before the *Gunn* decision in which Judge Roberts sort of

24  clarified the fact that sometimes courts -- I think in that

25  case the Texas state supreme court -- can conflate the issues

JBJ8TANC

1    of necessary and that fourth prong.  It seems to me that the

2    First Circuit, while they have a very well-reasoned opinion, I

3    am not sure that they clearly delineated the differences

4    between that first prong and that fourth prong.  Can you tell

5    me more about that?

6              MR. LAMPE:  Well, the first prong is whether or not

7    the cause of action could be decided without deciding the

8    federal question, and the First Circuit found that it could not

9    be; it had to be decided.  With respect to the fourth prong,

10   the First Circuit talked about the fact that the issue was one

11   that there was a strong federal interest in and it was not

12   likely to arise repeatedly.  I believe the First Circuit

13   discussed the fact that the floodgates will not be opened, the

14   federal courts will not be inundated with these types of

15   claims.

16             I would submit that the same logic applies here.  We

17   have the *Latif* case.  Basically, this case challenges the *Latif*

18   case.  We would ask your Honor to adopt the reasoning of the

19   *Latif* case on the issue of inconsistency.  It is hard to

20   imagine that there will be a flood of additional challenges

21   once this Court has twice decided this issue of whether or not

22   7515 is inconsistent with the FAA.  At some point one of these

23   cases may go to the Second Circuit and that closes the door

24   completely; the issue then will be decided.

25             THE COURT:  But until then why would that close the

1    floodgates?

2         MR. LAMPE:  I think just practically speaking

3    plaintiffs are unlikely to continue to challenge this court's

4    ruling that's has been ruled on twice, or maybe a district

5    court in the Second Circuit, to repeatedly seek to get a

6    different judge from the same court to issue a different

7    ruling.  I think as a practical matter that's not likely to

8    happen.

9         THE COURT:  Well, again, without accusing either side

10   of doing any sort of forum shopping, my sense is that the

11   plaintiffs are not trying to get a different federal judge to

12   rule on that issue; the plaintiffs want this case back in state

13   court, and they want a state court judge to rule on this issue.

14        MR. LAMPE:  Well, I understand that.  Mr. Fein has

15   talked about how Justice Cohen is a good judge, and we

16   certainly don't disagree with that.  I respectfully submit

17   that's not relevant to the *Gunn/Grable* question.  The issue is

18   whether or not federal jurisdiction exists.  The issue does not

19   require us to show some infirmity with this judge and his legal

20   abilities or anything like that.  So the fact that the state

21   court judge could decide this, it's consistent with the fact

22   that this issue can be in state court, but it could also be in

23   federal court, and where the legislature chooses to embed the

24   federal question on the face of the statute, that creates

25   federal court jurisdiction where it would otherwise not exist.

1          THE COURT:  Anything else from plaintiffs?

2          MR. FEIN:  Yes, your Honor.  You have been most

3     generous with your time.  I will be short.

4          Your Honor, I think your questions hit the nail on the

5     head.  One, there is nothing in the statutory language that

6     suggests the legislature wanted 7515 claims to be ousted from

7     state courts.  It would be odd for a state legislature to be

8     distrustful of its own courts.

9          I do believe that you're correct in examining this

10    federal-state balance, as the fourth criteria is one that I

11    believe the respondents cannot hurdle.  What is the

12    federal-state balance that Congress established?  Congress

13    decided we are not going to take jurisdiction over sexual

14    harassment claims away from the state courts; we are not going

15    to preempt the field.  We are permitting states to augment

16    Title VII of the Civil Rights Act even with regard to

17    arbitration.  In passing the Federal Arbitration Act, Congress

18    did not say there is never any cases ever where a state law

19    cannot supersede and invalidate an arbitration provision.  It's

20    customary that we will uphold it, but then it has a

21    circumstance, when in law and equity a provision would be

22    revocable as a matter of contract law, then the FAA gives way.

23    And Congress struck the balance to permit the state courts to

24    adjudicate these kinds of cases.

25          The respondents would upset the balance that Congress

1   established.  Congress could create, as you well know,

2   exclusive federal jurisdiction if they wanted all these cases

3   to be in the federal court.  They chose specifically not to do

4   so, and we believe if this Court accepted a removal, it would

5   be disturbing that balance struck by Congress.

6           Thank you.

7           THE COURT:  OK.  Anything else from defendants?

8           MR. LAMPE:  No, your Honor.

9           THE COURT:  OK.  Hold on a second.

10          OK.  Thank you very much.  I will continue to think

11  about this and hopefully I will get a decision out soon.

12          We are adjourned.  Thank you.

13          (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25