UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREA TANTAROS,<br><br>             Petitioner,<br><br> -against-<br><br>FOX NEWS NETWORK, LLC., WILLIAM SHINE, THE ESTATE OF ROGER AILES, SUZANNE SCOTT, IRENA BRIGANTI, AND DIANNE BRANDI,<br><br>             Respondents. | Case No. 1:19-cv-07131-ALC-RWL |

**MEMORANDUM OF LAW OF FOX NEWS NETWORK, LLC,
SUZANNE SCOTT, DIANNE BRANDI AND IRENA BRIGANTI
IN SUPPORT OF MOTION TO DISMISS PETITION FOR INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT**

JONES DAY
250 Vesey Street
New York, 10281-1047
Tel: 212.326.3939

*Attorneys for Respondents
Fox News Network, LLC,
Suzanne Scott, Dianne Brandi,
and Irena Briganti*

**TABLE OF CONTENTS**

Page

I. LEGAL STANDARD ........................................................................................................ 3

II. TANTAROS' PETITION MUST BE DISMISSED BECAUSE SECTION 7515 IS INCONSISTENT WITH FEDERAL LAW AND CANNOT BE ENFORCED .......... 3

    A. Section 7515 is Inconsistent with the FAA and Therefore Cannot be Enforced .................................................................................................................. 3

    B. Tantaros' Arguments for the Applicability of Section 7515 Are Without Merit ..................................................................................................................... 5

III. THE PETITION SHOULD BE DISMISSED BECAUSE SECTION 7515 DOES NOT APPLY TO ARBITRATION CONTRACTS ENTERED INTO BEFORE 2018 ....................................................................................................................................... 8

    A. Section 7515 Does Not Apply to Tantaros' Arbitration Clause ........................... 8

    B. A Prospective Reading Does Not Render Section 7515 (b)(iii) Redundant ........ 12

IV. THE PETITION SHOULD BE DISMISSED BECAUSE TANTAROS HAS WAIVED ANY RIGHT TO BE RELEASED FROM ARBITRATION ......................... 14

## **TABLE OF AUTHORITIES**

                                                                                 **Page**

**CASES**

*Abdullayeva v. Attending Homecare Servs. LLC*,
    928 F.3d 218 (2d Cir. 2019)......................................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................................3

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)........................................................................................................4, 5, 6, 7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................................2

*Chen-Oster v. Goldman, Sachs & Co.*,
    2020 WL 1467182 (S.D.N.Y. Mar. 26, 2020) ...........................................................................8

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*,
    897 F.3d 75 (2d Cir. 2018).........................................................................................................3

*Conopco, Inc. v. Roll Int'l*,
    231 F.3d 82 (2d Cir. 2000) ........................................................................................................3

*Daly v. Citigroup Inc.*,
    939 F.3d 415 (2d Cir. 2019),
    *cert. denied*, 140 S. Ct. 1117 (2020)........................................................................................8

*Dowe v. Leeds Brown Law, P.C.*,
    419 F. Supp. 3d 748 (S.D.N.Y. 2019)........................................................................................8

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ..............................................................................................................7

*Gilbert v. Dell Techs., Inc.*,
    415 F. Supp. 3d 389 (S.D.N.Y. 2019)........................................................................................8

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)....................................................................................................................7

*I.N.S. v. St. Cyr*,
    533 U.S. 289 (2001) ...................................................................................................... 10

*In re Currency Conversion Fee Antitrust Litig.*,
    361 F. Supp. 2d 237 (S.D.N.Y. 2005) ............................................................................ 11

*In re Oxford Med. Grp., P.C. v. Vossoughian*,
    162 F. Supp. 2d 234 (S.D.N.Y. 2001) ............................................................................ 14

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994) ................................................................................................. 10,11

*Latif v. Morgan Stanley & Co. LLC,*
    2019 WL 2610985(June 26, 2019) ........................................................................ passim

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.*,
    91 N.Y.2d 577 (1998) .................................................................................................... 10

*Matter of Deutsch v. Catherwood*,
    31 N.Y.2d 487 (1973) .................................................................................................... 10

*Matter of Town of Greece (Uniformed Patrolmen's Ass'n of Greece Police
    Dep't)*,
    147 A.D.3d 1382, 48 N.Y.S.3d 560 (N.Y. App. Div. 2017) .................................... 11, 12

*Olde Discount Corp. v. Tupman*,
    1 F.3d 202 (3d Cir. 1993) .............................................................................................. 11

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*,
    763 F.3d 198 (2d Cir. 2014) ............................................................................................ 3

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010) ............................................................................................ 8

*Rodriguez v. Perez*,
    2020 WL 888485 (N.Y. Sup. Ct. Feb. 19, 2020) ............................................................. 9

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) ........................................................................................................... 11

**STATUTES**

9 U.S.C. § 2 ............................................................................................................................ 4, 5

N.Y. C.P.L.R. § 7503 *et seq* ...................................................................................................1, 14

N.Y. C.P.L.R. § 7515 *et seq* ................................................................................................ *passim*

**OTHER AUTHORITIES**

2018 Sess. Law News of N.Y. Ch. 57 (S.7507-C) (McKinney's)..................................................11

2019 Sess. Law News of N.Y. Ch. 160 (A.8421) (McKinney's) .............................................4, 10

*Combating Sexual Harassment: Frequently Asked Questions*,
    https://www.ny.gov/combating-sexual-harassment-workplace/combating-
    sexual-harassment-frequently-asked-questions (last visited 05/04/2020) ...............................10

## **INTRODUCTION**

After aggressively arbitrating her claims against Respondents for over two years – including a full year after passage of the statute on which her Petition is based – Petitioner Andrea Tantaros ("Petitioner" or "Tantaros") now asks the Court to find that her arbitration agreement is unenforceable.  But in her quest to change the arc of the proceedings by seeking a new forum, Tantaros asks this Court to do precisely what the Federal Arbitration Act ("FAA") forbids – apply a state law so as to invalidate an agreement to arbitrate a particular type of claim.

Not only would this blatantly violate the FAA and decades of United States Supreme Court precedent, it would also be an affront, in multiple ways, to the very state statute on which she relies, New York Civil Practice Law and Rules § 7515 ("Section 7515"). *First*, recognizing that many arbitration agreements are shielded by the FAA from state law encroachment, New York's legislature expressly stated – twice – that Section 7515 should not be applied where it would be "inconsistent with federal law."  To apply Section 7515 to invalidate Petitioner's agreement to arbitrate her claims here would clearly be inconsistent with federal law.  *Second*, the statute also on its face applies only to contracts entered into after July 11, 2018.  Petitioner's arbitration agreement here was entered into years before that – in 2014. Applying Section 7515 here would similarly contradict the plain language of the legislature's edict that its law only apply prospectively.  *Third*, the state legislature also enacted very specific timelines for objecting to arbitration – namely within twenty days after the grounds for invalidity arise.  Exhibiting the type of gamesmanship that state law forbids, Tantaros sat on her ill-conceived escape strategy for more than a year after Section 7515's passage and springs it only now when she perceives that the arbitration is not proceeding to her advantage.  The consequence of this cynical ploy, under the terms of New York Civil Practice Law and Rules § Section 7503, is that she has waived any objection to proceeding in arbitration (even assuming that she has a valid objection, which she

does not). Accordingly, the Petition fails in three separate and independently sufficient ways to state a plausible claim for relief and must be dismissed with prejudice.

## FACTUAL AND PROCEDURAL HISTORY

In September 2014, Petitioner, an employee of Fox News Network, LLC ("Fox News") signed an agreement to arbitrate any claims arising out of her employment with Fox News. *See* Pet., ECF No. 1, Ex. B, Doc. 1 (the "Arbitration Clause") (providing for mandatory arbitration of "[a]ny controversy, claim or dispute arising out of or relating to [the Employment Agreement] or [Petitioner's] employment."). Accordingly, Petitioner's sexual harassment and retaliation claims against Fox News and the other Respondents proceeded in arbitration, where she vigorously pursued them for over two years. On July 11, 2018, Section 7515, which prohibits mandatory arbitration clauses covering sexual harassment claims except "where inconsistent with federal law," became effective. CPLR § 7515(b)(iii).

On July 15, 2019, after continuing to arbitrate her case for over a year after Section 7515 went into effect, Petitioner suddenly changed course and filed the instant Petition, in which she seeks (i) a preliminary and permanent injunction against arbitration of her sexual harassment claims, allegedly "shielded from mandatory arbitration under [Section 7515]" and (ii) a declaratory judgment that "she cannot be compelled under [S]ection 7515 to continue to arbitrate her sexual harassment allegations, claims, and defense[s]." For each of the multiple reasons described in further detail below, the Petition fails to state a plausible claim for relief and should be dismissed with prejudice.

# ARGUMENT

## I. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. *Id*. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).[1]

## II. TANTAROS' PETITION MUST BE DISMISSED BECAUSE SECTION 7515 IS INCONSISTENT WITH FEDERAL LAW AND CANNOT BE ENFORCED

### A. Section 7515 is Inconsistent with the FAA and Therefore Cannot be Enforced

Tantaros' Petition does not state a plausible claim for relief. It seeks a declaratory judgment that the Arbitration Clause is void as to her claims of sexual harassment based on Section 7515. Under precedent from this very district, however, Section 7515 does not void Tantaros' agreement because enforcing Section 7515 would be "inconsistent with federal law," namely the Federal Arbitration Act ("FAA"). *Latif v. Morgan Stanley & Co. LLC,* 2019 WL 2610985 (S.D.N.Y. June 26, 2019), at *3 ("Here, application of Section 7515 to invalidate the parties' agreement to arbitrate Latif's claims would be inconsistent with the FAA. The FAA sets

---

[1] A complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (internal citations omitted).

forth a strong presumption that arbitration agreements are enforceable and this presumption is not displaced by § 7515.") (Cote, J.).

Section 7515 twice makes clear that its proscription against contractual clauses requiring mandatory arbitration of "any allegation or claim of discrimination," does not apply "where inconsistent with federal law." 2019 Sess. Law News of N.Y. Ch. 160 (A. 8421), § 8(2).  Here, Section 7515 is clearly inconsistent with Section 2 of the FAA, and therefore cannot be enforced to void Tantaros' Arbitration Clause.

Pursuant to the "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), Section 2 of the FAA states that covered agreements to arbitrate, such as the one here at issue, can be invalidated only "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  No such grounds exist here.

It is well settled that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Concepcion*, 563 U.S. at 341. On its face, Section 7515 "prohibits outright the arbitration of a particular type of claim"—namely claims alleging discrimination.  The necessary conclusion, then, is that Section 7515 must be "displaced by the FAA" because it is "inconsistent with" the FAA.

In *Latif*, Judge Cote considered this exact issue and concluded that under *Concepcion* Section 7515 is inconsistent with the FAA and therefore inapplicable by its own terms.  The plaintiff in *Latif* filed employment discrimination claims (including claims of sexual harassment) against his former employers and several of his former coworkers.  It was undisputed that the plaintiff, by signing his written offer of employment, had previously agreed to resolve such employment claims by arbitration.  Defendants moved to compel arbitration on the basis of the

arbitration agreement. Plaintiff opposed on the theory that Section 7515 rendered his agreement to arbitrate null and void. Judge Cote granted Defendants' motion, using the same simple and conclusive analysis provided above:

> Under the terms of [the plaintiff's arbitration agreement], Latif's sexual harassment claims are subject to mandatory arbitration. Section 7515 renders agreements to arbitrate sexual harassment claims null and void "[e]xcept where inconsistent with federal law." N.Y. C.P.L.R. 7515(b)(iii). Here, application of Section 7515 to invalidate the parties' agreement to arbitrate Latif's claims would be inconsistent with the FAA. … [Section 7515 is] not a "ground[ ] as exist[s] at law or in equity for the revocation of any contract," 9 U.S.C. § 2, but rather a "state law prohibit[ing] outright the arbitration of a particular type of claim," which, as described by the Supreme Court, is "displaced by the FAA." *Concepcion*, 563 U.S. at 341.

2019 WL 2610985, at * 3. Nothing has changed since Judge Cote decided *Latif* less than a year ago. And nothing warrants departing from Judge Cote's reasoning.[2] The Court should therefore adhere to its own sound and squarely-applicable precedent and dismiss Tantaros' Petition for failure to state a claim that Section 7515 voids her Arbitration Clause.

      **B.**      **Tantaros' Arguments for the Applicability of Section 7515 Are Without Merit**

In her Petition, Tantaros grudgingly acknowledged Judge Cote's holding in *Latif* and did not make the clearly futile attempt to try to distinguish the facts of this case. Instead, she

---

[2] Judge Cote noted that the New York legislature had then recently passed a bill which expanded the Section 7515 prohibition beyond the mandatory arbitration of sexual harassment claims to forbid the mandatory arbitration of all claims of discrimination. She explicitly stated that the intended expansion of Section 7515 coverage "would not provide a defense to the enforcement of [the *Latif* plaintiff's] Arbitration Agreement." *Latif*, 2019 WL 2610985, at *3 n.2

claimed in her state filing[3] that *Latif* was wrongly decided because mandatory arbitration clauses in employment contracts covering sexual harassment claims are "inherently procedurally and substantively unconscionable" under New York Law, which she claimed is a generally applicable contract defense under Section 2 of the FAA and therefore is a permissible basis to revoke an arbitration agreement.[4] This argument is simply wrong, and was flatly rejected in *Latif*, as explained above.

Defenses are not "generally applicable" if they "apply only to arbitration or…derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339. Here, Tantaros' Petition is not based on general principles of New York contract law, but on a *specific* New York statute: CPLR Section 7515. Section 7515 does not purport to create or codify, nor does it in any way refer or allude to, an unconscionability defense or any other *generally applicable* contract defense. *See Latif*, 2019 WL 2610985, at *4 ("The bundle of laws that make up Part KK of the 2018-19 budget bill [including Section 7515] were clearly intended to address sexual harassment; nothing in the bill suggests that the New York legislature intended to create a generally applicable contract defense.") Instead, Section 7515 simply and quite overtly does what the FAA forbids—it "prohibits outright the arbitration of a particular type of claim." *Concepcion*, 563 U.S. at 341. For this very reason, Judge Cote held in *Latif* that Section 7515 "presents no generally applicable contract defense, whether grounded in equity or otherwise, and as such cannot overcome the FAA's command that the parties' Arbitration Agreement be enforced." 2019 WL 2610985, at *4.

---

[3] Pet.'s Mem., ECF No. 1, Ex. B, Doc. 3 ("Memo"). On an August 5, 2019 conference call with the Court, Petitioner confirmed that she was no longer seeking a temporary restraining order, so the Court never addressed the arguments Tantaros raised in the Memo. She undoubtedly will raise them again here.

[4] Memo, at 11.

Moreover, Section 7515 clearly reflects an intent to disfavor arbitration, which is another reason why it is inconsistent with the FAA. The FAA savings clause "'does not save defenses that target arbitration either by name or by more subtle methods.'" *Latif*, 2019 WL 2610985, at *2 (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018)). Indeed, Section 7515 expressly targets arbitration agreements. This is evident from its glaring official title: "Mandatory arbitration clauses; prohibited."[5] Thus, the cloak of a general concept like "unconscionability" does not suffice to hide, or to cure, this very specific attack on arbitration that is impermissible under the FAA. "If [the FAA savings clause] means anything, it is that courts cannot refuse to enforce arbitration agreements because of a state public policy against arbitration, even if the policy nominally applies to 'any contract.'" *Concepcion*, 563 U.S. at 352–53 (Thomas, J. concurring). Any purportedly "general" unconscionability defense presented by Section 7515 would in fact "derive [its] meaning" in this case "from the fact that an agreement to arbitrate is at issue" and therefore be displaced by the FAA. *Id*. at 339.

Tantaros also argues (Memo, at 11) that enforcement of arbitration agreements as to claims of sexual harassment is not within the spirit of the FAA because in passing the FAA, Congress contemplated only "arbitration between commercial entities of comparable size and strength." *Id*. This argument has also been rejected by the Supreme Court. In *Concepcion*, the Court held that a limitation of application of the FAA to entities of similar size and strength "appears nowhere in the text of the FAA and has been explicitly rejected by [U.S. Supreme Court] cases." *Concepcion*, 563 U.S. at 346 n.5; *accord Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) ("[m]ere inequality in bargaining power" is not a basis for

---

[5] At the time Tantaros began this suit, the title was "Mandatory arbitration clause null and void."

declining to enforce arbitration agreements contained in employment contracts); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) ("[a]s a general matter, even to the extent that the law recognizes that employers and individual employees do not possess equal bargaining power, the FAA certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration.").

Accordingly, courts applying the FAA routinely compel employees to arbitrate with corporate employers. Indeed, this district has enforced arbitration clauses in such cases at least three times in the past twelve months. *Chen-Oster v. Goldman, Sachs & Co.*, 2020 WL 1467182, at *41 (S.D.N.Y. Mar. 26, 2020); *Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d 748, 754 (S.D.N.Y. 2019); *Gilbert v. Dell Techs., Inc.*, 415 F. Supp. 3d 389, 401 (S.D.N.Y. 2019). *See also Daly v. Citigroup Inc.*, 939 F.3d 415, 429 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 1117 (2020) (affirming district court's grant of employer's motion to compel arbitration); *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 225 (2d Cir. 2019) (reversing district court's denial of employer's motion to compel arbitration and remanding with instructions to compel arbitration).

In sum, the reasoning in *Latif* shows the fatal flaws in Petitioner's claims and compels dismissal of the Petition because it fails to state a plausible claim for relief under Section 7515.

### III. THE PETITION SHOULD BE DISMISSED BECAUSE SECTION 7515 DOES NOT APPLY TO ARBITRATION CONTRACTS ENTERED INTO BEFORE 2018

#### A. Section 7515 Does Not Apply to Tantaros' Arbitration Clause

As has been shown above, and as *Latif* makes clear, the Petition fails to state a plausible claim for relief because Section 7515 is inconsistent with federal law and is therefore, by its own terms, inapplicable to the Arbitration Clause. But the Petition also fails to state a claim for the additional reason that Tantaros' Employment Agreement (including the Arbitration Clause) was

signed several years before the effective date of Section 7515, and therefore Section 7515 does not apply to her Arbitration Clause.

The text of Section 7515 makes clear that it applies only to contracts entered into on or after July 11, 2018. Subsection (b)(i) of Section 7515 explicitly applies to written contracts "entered into **on or after the effective date** of this section [i.e. July 11, 2018]" and specifies that no such contract "**shall** contain a prohibited clause." CPLR § 7515(b)(i) (emphasis added).

Consistent with this plain text, the only court to date to interpret subsection (b)(i) has held that Section 7515 does *not* apply to contracts entered into before July 11, 2018. *See Rodriguez v. Perez*, 2020 WL 888485, at *1 (N.Y. Sup. Ct. Feb. 19, 2020) ("The **plain reading** of [CPLR § 7515(b)(i)] is that [Section] 7515 is not to be applied retroactively.") (Emphasis added). Thus, Section 7515 cannot apply to Tantaros' Employment Agreement, which was fully executed in September 2014, *over three years* before Section 7515 became effective. Indeed, as the court in *Rodriguez* held, any argument to the contrary would be "at odds with the plain reading of [CPLR § 7515(b)(i)]." *Rodriguez*, 2020 WL 888485, at *1.

The official guidance issued by New York State on the law further bolsters this reading. The guidance states:

> Q4. When did the ban on mandatory arbitration clauses take effect?
>
> A4. The prohibition on mandatory arbitration in relation to sexual harassment claims went into effect on July 11, 2018, and **it has applied to contracts entered into on or after that date**. The prohibition on mandatory arbitration in relation to discrimination claims goes into effect on October 11, 2019 and **it applies to contracts entered into on or after that date**.

*Combating Sexual Harassment: Frequently Asked Questions*, https://www.ny.gov/combating-sexual-harassment-workplace/combating-sexual-harassment-frequently-asked-questions (last visited 05/04/2020) (emphasis added).

Moreover, it is well established under federal and state law that even where, unlike here, there is ambiguous language in a statute, any ambiguity should be resolved in favor of prospective application because there is a strong presumption against retroactivity. *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998) ("It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it."); *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 320 n.45 (2001) ("[A] statute that is ambiguous with respect to retroactive application is construed under our precedent to be unambiguously prospective"); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 272 (1994) (A court will not give legislation retroactive effect "unless compelled to do so by language so clear and positive as to leave no room to doubt that such was the intention of the legislature.")

The presumption against retroactivity is particularly strong here because Section 7515 was enacted with a postponed effective date.[6] Postponed effective dates clearly indicate prospective application. *Matter of Deutsch v. Catherwood*, 31 N.Y.2d 487, 489 (1973) ("The postponement of the effective date of each amendment furnishes critical and clear indicia of intent. If the amendments were to have retroactive effect, there would have been no need for any postponement."). A prospective reading is all the more appropriate here, as it is clear that the same legislature that passed Section 7515 knew how to pass laws having immediate or

---

[6] The 2019 amendment also has a delayed effective date. 2019 Sess. Law News of N.Y. Ch. 160 (A. 8421), § 16(b) (McKinney's) ("[Revised Section 7515] shall take effect on the sixtieth day after it shall have become a law.")

retroactive effect. Indeed, the very package of laws to which Section 7515 originally belonged included laws having immediate effect. *See, e.g.,* 2018 Sess. Law News of N.Y. Ch. 57 (S. 7507-C), pt. KK, subpt. C § 3 (McKinney's) (providing that amendments to the Public Officers Law requiring employees of covered public entities to reimburse such entities for payments made to sexual harassment plaintiffs "shall take effect immediately").

Moreover, the law cannot be applied retroactively because it would improperly unsettle Respondents' right arbitrate, which vested upon the execution of the Employment Agreement in September 2014. "[T]he general presumption against retroactive application of statutes is ... designed ... to prevent impairment of vested rights, such as those derived from a contractual agreement." *Matter of Town of Greece (Uniformed Patrolmen's Ass'n of Greece Police Dep't)*, 147 A.D.3d 1382, 1383, 48 N.Y.S.3d 560, 561–62 (N.Y. App. Div. 2017); *see also Landgraf*, 511 U.S. at 271. ("The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance.") "It is well settled that a contractual agreement to arbitrate creates a substantive right to an arbitral forum." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 255 n.9 (S.D.N.Y. 2005) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 11–13 (1984)); *accord Olde Discount Corp. v. Tupman*, 1 F.3d 202, 213 (3d Cir. 1993) ("Therefore, in the context of arbitration, a litigant's procedural right to the agreed forum is raised to a substantive right by the FAA.").

Here, Fox News has a vested right in an arbitral forum because the Arbitration Clause in Petitioner's employment contract – which she signed in September 2014, long before the statute at issue was enacted – specifies that Petitioner's claims will be arbitrated. *See* Pet., ECF No. 1, Ex. B, Doc. 1, ¶ 8 (the "Arbitration Clause") (providing for mandatory arbitration of "[a]ny

controversy, claim or dispute arising out of or relating to [the Employment Agreement] or [Petitioner's] employment.")  In addition, Respondents also have vested rights in an arbitral forum because Petitioner has actively arbitrated her claims in that forum for over two years, including a full year after Section 7515 became effective.  Therefore this Court should read Section 7515 prospectively to avoid depriving Respondents of their vested rights.  *Matter of Town of Greece*, 147 A.D.3d at 1383 ("The new rules and regulations altered …[the] substantive contractual remedy [of respondent opposing a petition for a permanent stay of arbitration] by removing any prospect of arbitration … and are therefore presumed to have only prospective effect …") (internal citations omitted).

### B. A Prospective Reading Does Not Render Section 7515 (b)(iii) Redundant

Struggling to avoid the conclusion that Section 7515 does not apply retroactively, Tantaros has asserted that while subsection (b)(i) of Section 7515 only "prohibits and makes illegal and unenforceable any *prospective* mandatory arbitration clause covering sexual harassment or claims," subsection (b)(iii) renders null and void "mandatory arbitration clauses in pre-existing contracts." Memo, at 9. Tantaros claimed that "[i]f that were not true, [subsection b(iii)] would be superfluous… [because it would] make null and void what had already been made null and void by subsection (b)(i)." *Id.*

This argument fails because the two sections do entirely different things.  Subsection (b)(i) provides that contracts entered into after the effective date should not contain a "prohibited clause."  Contrary to Tantaros' distorted paraphrase, subsection b(i) nowhere states that it makes prohibited clauses null and void. It is subsection (b)(iii), and only subsection (b)(iii), that renders prohibited clauses null and void.  This involves no redundancy because *prohibiting* a contractual provision does not necessarily render it null and void.  For example, the New York legislature

might, if it wished, have been more lenient and rendered prohibited clauses not void, but voidable at the option of the employee, or provided that they would trigger litigation penalties such as adverse inferences or special burdens of proof or production; or it might on the other hand have been more stringent and provided that the insertion of a prohibited clause would void the contract in its entirety.

Additionally, Tantaros' argument that subsection (b)(iii) makes all mandatory arbitration clauses in "pre-existing contracts" null and void underscores the many legal, as well as practical, problems with her claim that the statute be deemed to have retroactive effect. *First*, it renders the delayed effective date inexplicable. If Tantaros' reading were correct, then the New York legislature passed a sweeping law to prevent the enforcement of all current and future mandatory arbitration clauses covering claims of sexual harassment, and yet deliberately created a three-month window between enactment and the effective date during which such clauses would be, nonetheless, legally enforceable. Tantaros suggests no policy reason for thus privileging parties who happened to get to final judgment between enactment and the effective date. By contrast, the delayed effective date harmonizes perfectly with a prospective reading of Section 7515: The legislature intended both to shield substantive rights already bargained for (by exclusively prospective application) and to give contracting parties time to adjust their settled practices and expectations to a change in law (by a delayed effective date).

*Second*, Tantaros' position, untethered as it is in the law, also has the potential to unsettle arbitral verdicts by retroactive application to completed, as well as pending, arbitrations involving a "null and void" mandatory arbitration clause.

In sum, Petitioner's claim under Section 7515 must be dismissed for the additional reason that the statute has no retroactive effect. Neither the plain wording nor the delayed effective date

of the statute supports Petitioner's claim, and her claim cannot survive analysis under applicable federal or state case law.

IV. **THE PETITION SHOULD BE DISMISSED BECAUSE TANTAROS HAS WAIVED ANY RIGHT TO BE RELEASED FROM ARBITRATION**

The Petition fails to state a plausible claim for relief for yet a third, independently sufficient reason: It is apparent from the face of the Petition that Tantaros has waived her right to object to arbitration by actively participating in the arbitration for a year after Section 7515 became effective. CPLR § 7503(b) limits the availability of a stay of arbitration to "a party who has not participated in the arbitration." CPLR 7503(c) also requires a party who disputes the validity of the agreement to arbitrate to move for a stay of arbitration within *twenty days* after being served with a Notice of Intent to Arbitrate. When the putative grounds for asserting complete or partial invalidity arise during the course of an arbitration, CPLR 7503(c) requires the party disputing validity to move for a stay of arbitration within *twenty days* to preserve their objections. *In re Oxford Med. Grp., P.C. v. Vossoughian*, 162 F. Supp. 2d 234, 234 (S.D.N.Y. 2001) ("At best [counterclaimant seeking stay of arbitration as to certain age discrimination claims] had twenty days from the March 16, 2001 filing… which is when the ADEA issues were injected into the arbitration, to [move for a stay], on the ground that the arbitration agreement was unenforceable as to the ADEA claims. He failed to meet the deadline. Therefore, he is bound to arbitrate, and neither this nor any Court can entertain his application.")

Under this standard, Tantaros is doubly disqualified under CPLR 7503. Not only does the Petition acknowledge on its face that she "participated," in the Arbitration (exchanging discovery and, as in *Vossoughian*, "affirmatively invoking the jurisdiction of the arbitrator[s]" by making and responding to motions, 162 F. Supp. 2d at 235), it further acknowledges that she did so for *over a year* after Section 7515 purportedly made her harassment claims non-arbitrable.

(Pet., ECF No. 1, Ex. B, Doc. 1, at ¶¶ 15, 17).  Accordingly, Tantaros should be deemed to have waived any Section 7515 objections to arbitration.

## CONCLUSION

For the reasons stated herein, the Fox Parties respectfully request that Tantaros' Petition be dismissed in its entirety with prejudice for failure to state a claim.

Dated:  May 22, 2020

Respectfully submitted,

*/s/ Matthew W. Lampe*
Matthew W. Lampe
Kristina A. Yost
Stefan M. McDaniel
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone:  (212) 326-3939
Facsimile:   (212) 755-7309
mwlampe@jonesday.com
kyost@jonesday.com
smmcdaniel@jonesday.com

*Attorneys for Respondents
Fox News Network, LLC,
Suzanne Scott, Dianne Brandi,
and Irena Briganti*