# Exhibit 13

IN THE CIRCUIT COURT

OF THE 15TH JUDICIAL CIRCUIT

IN AND FOR PALM BEACH COUNTY, FLORIDA

PROBATE DIVISION

CASE NO. 50-2017-CP-003091-XXXXMB


IN RE: THE ESTATE OF

ROGER AILES,


        Deceased

_____/


                 TRANSCRIPT OF PROCEEDINGS

            DATE TAKEN:     APRIL 16, 2019
            TIME:           9:36 A.M. - 9:59 A.M.
            PLACE:          PALM BEACH COUNTY COURTHOUSE
                            205 N. DIXIE HIGHWAY
                            WEST PALM BEACH, FL 33401
            BEFORE:         HONORABLE MAXINE CHEESMAN

        This cause came to be heard at the time and
place aforesaid, when and where the following proceedings
were reported by:

        RAQUEL ROBINSON, REGISTERED PROFESSIONAL REPORTER
                FLORIDA PROFESSIONAL REPORTER
                  ROBINSON REPORTING, INC.
                       PO BOX 19248
                 WEST PALM BEACH, FL 33416

```
 1          APPEARANCES FOR THE PERSONAL REPRESENTATIVE:

 2

 3          Jami L. Huber, Esq.
            Jami L. Huber, P.A.
 4          500 S. Australian Ave, Suite 500
            West Palm Beach, Fl 33401
 5

 6
            ALSO PRESENT:
 7

 8          Andrea Tantaros, Pro Se
            154 W. 70th Street
 9          New York, NY 10023

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              THE COURT:  Okay.  Case number 2017-CP-003091.

2      In re:  Estate of Roger Ailes.

3              MS. HUBER:  Jami Huber on behalf of the estate

4      of Roger Ailes and Elizabeth Ailes, the personal

5      representative.

6              MS. TANTAROS:  Andrea Tantaros on behalf of

7      myself.

8              THE COURT:  And you are the creditor, right?

9              MS. TANTAROS:  That's correct.

10             MS. HUBER:  Basically, we're here on my motion

11     for entry of order denying the motion for rehearing

12     and final order striking claims.  Have you received a

13     copy of my petition?

14             THE COURT:  Yes.

15             MS. HUBER:  Okay.  So, basically, this hearing

16     is a matter of housekeeping.  Simply that, to clean up

17     the record in that an order was never entered by this

18     Court on Ms. Tantaros' original motion for rehearing

19     and reconsideration of the March 2018 order striking

20     her claims.

21             So my petition went through a time line

22     which I thought would be helpful in terms of when

23     things occurred, when the period for claims was to be

24     made and, you know, how it was missed and what was

25     done in following.  But it may be helpful just to go

1    through it a little bit again just to bring you up to

2    date.

3             Mr. Ailes passed away on May 18th of 2017.

4    We're almost at the two-year mark.  At the time of his

5    death, there were pending actions by and between Ms.

6    Tantaros and the decedent and Fox News in the New York

7    Supreme Court and in the Southern District of New

8    York, an arbitration proceeding commenced by Fox News

9    was coupled with Ms. Tantaros' complaint as filed in

10   the New York Supreme Court.  So those were brought

11   together.

12            But on June 5th, 2017, Ms. Tantaros' lawyer

13   in the arbitration informed the Court that she was

14   voluntarily dismissing the claims against the

15   decedent, and I quote, "instead of waiting for his

16   estate to be substituted in", which was acknowledged

17   by the arbitration panel on the same day.

18            Then the following day, on June 6th, 2017,

19   Ms. Tantaros, by and through counsel, also voluntarily

20   dismissed the other action against the decedent in the

21   Southern District of New York, and an order was

22   entered on June 19th of 2017 dismissing Roger Ailes

23   from that case.

24                   So, at the time that the estate was

25   opened, which was, this Court appointed Elizabeth

Page 5

1    Ailes on July 27th, there were no pending actions

2    against Roger Ailes.  Both of those had been

3    dismissed.  And when letters were issued to Ms. Ailes,

4    she did not serve Ms. Tantaros because she was not a

5    known or reasonably ascertainable creditor because she

6    dismissed her claims.

7            But on August 15th and August 22nd, the

8    notice to creditors was published.  And it began the

9    creditors period, which would end on November 15th,

10   2017.  Importantly, and this was discovered later, on

11   October 5th, 2017, unbeknownst to the personal

12   representative, Ms. Tantaros moved to join The Estate

13   of Roger Ailes in the Southern District of New York

14   action, which was still pending.  Remember he had been

15   dismissed from that action individually, and at this

16   point, I believe, she was moving to join the estate.

17   But this was not found out until later, because I

18   believe there were service issues.  So on that date,

19   it shows unequivocally that Ms. Tantaros had notice

20   of, obviously, of his passing, but also that the

21   estate was being administered, because she sought to

22   join it.

23           But when November 15th came and went, Ms.

24   Tantaros failed to file a timely claim in this Court

25   in Mr. Ailes' estate.  Her amended complaint in the

1    Southern District of New York was filed on January 29,

2    2018, also after the creditors period, and named Roger

3    Ailes individually as a defendant, but still did not

4    name the estate.

5          Ms. Tantaros filed a statement of claim

6    against the estate on January 31st of last year,

7    over two months after the deadline.  And, as stated,

8    the estate moved to strike that claim on February 2nd.

9    And then she filed an amended claim on February 21st,

10   a couple weeks later, which the estate also moved to

11   strike.

12         And at that point we've got almost a month

13   going on where there hasn't been anything done other

14   than filing claims and moving to strike.  But this

15   Court entered an order striking both of those claims,

16   the original and the amended on March 8 of 2018, and

17   as you know, the first claim was filed January 31st.

18   A reasonable amount of time had passed.

19         On March 22nd, well after this Court had

20   struck the untimely claims, Ms. Tantaros, by and

21   through her counsel, filed a response and memorandum

22   in opposition to the petition for order striking the

23   untimely filed claim.  So this is after they have

24   already been stricken.  And a week later, on March

25   30th, she filed a motion for rehearing and

1    reconsideration in this Court of the order striking

2    the claim, or in the alternative, to have the Court

3    treat her March 22nd filing as a timely filed motion

4    for rehearing, because she had missed the date as well

5    to ask for a rehearing on that issue.

6              So we set the motion, specially set before

7    Judge Keiser on May 15th of last year.  And in the

8    interim between March 22nd and May 15th, on April 6th,

9    Ms. Tantaros, by and through counsel, filed a notice

10   of appeal which brought this case up to the appellate

11   court also seeking to overturn the order striking her

12   claim.

13             On May 15, 2018, I appeared, other counsel

14   appeared and Ms. Tantaros' counsel appeared, but Ms.

15   Tantaros was unable to appear.  I believe she was

16   dealing with estate matters in New York at the time.

17   And she filed an affidavit advising the court of same.

18   And when we appeared before the Court, the judge said,

19   "I agree with counsel.  I really don't have

20   jurisdiction to hear this matter.  It's on appeal.

21   The jurisdiction is moot."

22             So we discussed and agreed that we should

23   relinquish jurisdiction from the appellate court to

24   bring it back, because the Court still had not made a

25   determination whether or not to grant a rehearing on

1     that motion.  It was not an order that would reset the

2     motion.  It was just to have her actually determine

3     whether or not she was going to grant the hearing.

4              On May 17th we filed that joint order giving

5     45 days.  During those 45 days I had health issues, as

6     Ms. Tantaros alluded to in her communication with the

7     Court.  I don't know if you received it, but I did.  I

8     filed a notice of unavailability.  I was battling

9     cancer.  But I basically had some time out of the

10    office for part of last year.  But during that time,

11    we extended for 45 days, and upon request of counsel,

12    we extended again for 45 days.  And even after the

13    45-day period was extended the second time by

14    agreement, no new hearing was ever set by Ms. Tantaros

15    or her counsel.

16             Unfortunately, Ms. Tantaros' counsel

17    withdrew as her counsel both in this court and in the

18    appeal on August 14th and 17th respectively.  And each

19    court, both this one and the appellate court gave her

20    20 days to obtain new counsel.  And the appellate

21    court also put the onus on Ms. Tantaros to keep them

22    informed, and also that if additional requests were

23    necessary to extend relinquishment of the

24    jurisdiction, that it would be on her to request it.

25             No further request was made.  It went back

Page 9

1      up to the appellate court.  No new counsel appeared in

2      either matter, no hearing was set.

3             The appellate court reached out to Ms.

4      Tantaros several times in the fall of last year asking

5      for a status update.  I believe I attached copies of

6      those to my motion.  And the appellate court, after

7      giving her opportunity, dismissed her action on

8      November 15th, after sending those notices which went

9      without reply.

10            These claims were originally stricken for

11     failure to be filed timely.  This is a hard deadline

12     by our courts and there's a reason for it,

13     specifically because it keeps an estate open and

14     subjects it to claims unnecessarily.  It's a hard line

15     rule, absent other extenuating circumstances.

16            Ms. Tantaros, unfortunately, sat on her

17     rights as to any rehearing in this court and in the

18     appellate court, and effectively abandoned seeking

19     relief in either court.  The original order striking

20     her claim should be deemed final and dismissed with

21     prejudice, as well as her motion for rehearing denied.

22     This Court gave the opportunity to be heard and it

23     wasn't taken.  And we did sit here with Judge Keyser

24     and talked about whether or not a rehearing would be

25     advisable, and she would not address the issue until

1    jurisdiction came back to her.  But when it did

2    nothing was filed at the time.

3          There are other issues out of state, I

4    believe that that's exactly where they are.  They're

5    out of state.  And this Court can only focus on that

6    which is before it, which would be the claims in this

7    estate.  It does not necessarily change anything that

8    happens in the Southern District of New York, the

9    arbitration, anything that's going on.  But this Court

10   needs to have an order with regard to her original

11   motion, because since that wasn't set for hearing, I'm

12   effectively setting it for hearing right now and then

13   I'm asking for a final order.  Thank you so much, Your

14   Honor.

15          THE COURT:  Thank you.  Ms. Tantaros...

16          MS. TANTAROS:  I do have some corrections I

17   want to make to Ms. Huber's timeline.  Yes, it's true,

18   Mr. Ailes passed away when we were in arbitration, a

19   sexual harassment hostile workplace and retaliation

20   arbitration against Mr. Ailes, Fox News Channel and a

21   number of others.

22          My counsel at the time wrote counsel for

23   Elizabeth Ailes, who we expected to be the

24   administrator, on July 5th asking if this would be

25   probate and who would be the administrator.  Mr.

Page 11

1     Calamari, who represents Ms. Ailes in the estate in

2     New York, said that he was not sure.  He did not know.

3     We dismissed Mr. Ailes because we were going to add

4     him back.  We dismissed without prejudice while we

5     were waiting for the estate to be formed.

6             The paperwork for the estate was filed on

7     May 28th.  So on July 5th, Mr. Calamari, and I have

8     the e-mails right here, essentially lied to my counsel

9     when he said he wasn't sure whether this was going to

10     be probated.  He would have had knowledge at the

11     time --

12             MS. HUBER:  Objection.

13             MS. TANTAROS:  -- of where the estate was

14     going to be probated because of the paperwork that had

15     been filed and who the administrator would be.  That

16     was on July 5th.  Subsequently --

17             THE COURT:  You can't really attest to what he

18     knew.  So I'm going to sustain the objection.

19             MS. TANTAROS:  Okay.  I only have the e-mails

20     and I can only say that he was dismissed without

21     prejudice with the intention to add him back in, which

22     is exactly what we did.  On October 5th, Ms. Huber is

23     correct, on October 5th, there was an action filed in

24     the Southern District of New York that included the

25     Estate of Roger Ailes.  And on that day, on October

1   5th, there was a motion filed to add the estate of

2   Roger Ailes, which would have been within the time

3   line of this specific court to bring any claim against

4   the estate, October 5th.  So that was plenty of time.

5           So Ms. Ailes claiming that she didn't know

6   that I was a reasonably ascertainable creditor is not

7   believable.  She would have known, because that was a

8   very, very, very timely filed motion.

9           Also, we added a motion to the arbitration

10  to substitute the Ailes Estate.  That was granted by

11  the American Arbitration Association on December 14th

12  of 2017.  And it was reaffirmed by the New York State

13  Supreme Court.  The words that Ms. Huber cites from

14  Judge Cohen did not come out of his mouth.  He didn't

15  mention the probate action in Florida.  He simply said

16  these claims stand.  This is a timely filed claim.

17  Under New York law you have two years to continue on

18  arbitration.  If someone dies or is deceased, you have

19  two years to bring your claims against that person.

20  And so your claims are timely filed.  And I will

21  reaffirm the triple A's decision.  That was the

22  outcome of the hearing on May 16th, 2017.

23          So we are well into this arbitration that's

24  coming to a close with multiple claims against the

25  estate of Roger Ailes, multiple timely filed claims.

Page 13

1    One of the issues is that a paper was filed with this

2    court, Your Honor, a petition to extend time for

3    filing final accounting and petition for discharge.

4    In number five it says the only persons, other than

5    the petitioner, having an interest in this proceeding

6    and their respective addresses are, and it states

7    none.  Which would be a misrepresentation to this

8    Court, because my case against the Ailes estate that

9    is ongoing, this action, is in contingency.  And I am

10   a likely ascertainable creditor, given this is a very

11   significant multimillion dollar arbitration that is

12   almost over.  We're in the throes of it, as we speak.

13   So the Ailes estate has been participating in this

14   arbitration.

15          Also, during the hearing on May 16th, Your

16   Honor, the Ailes estate took no issue with the claims

17   that were brought or that they were timely filed.

18   They simply wanted to have a second arbitration

19   between myself and the Ailes Estate.  So they had no

20   issue with the claim that I was bringing, they

21   proposed to Justice Cohen that we have a separate

22   arbitration, which the judge did not agree to because

23   he believed that I did not have an arbitration

24   agreement with the estate, so he would then order them

25   to participate in this arbitration.  So it's not that

Page 14

1    they had an issue with the claims or that they were

2    untimely filed.  The estate wanted a separate

3    arbitration, and the judge denied that request.

4         When the paperwork was originally filed with

5    this Court, Your Honor, the presiding judge at the

6    time, Janice Keyser, made her ruling to strike my

7    claims five days before she received our reply papers,

8    the papers filed by my prior counsel, five days.  We

9    reached out to the counsel that preceded Ms. Huber,

10   Mr. Paul Baldovin, to ask him if he would consider

11   having a rehearing since my due process was denied,

12   and he did not respond to prior counsel.  Thus, we

13   sought to have another hearing on this issue, because

14   I was denied due process, so that my claims could be

15   heard and the evidence could, in fact, be heard by

16   this Court.

17        We did seek an extension from the appellate,

18   because we did file a motion to appeal, and we were

19   granted a 45-day extension.  Ms. Keyser was inclined

20   to give us that hearing, that evidentiary hearing.

21        THE COURT:  What was the appeal on?

22        MS. TANTAROS:  The appeal was on --

23        THE COURT:  Striking of the claims?

24        MS. TANTAROS:  Yes, Your Honor.  So she was

25   inclined to have that hearing.  We needed the

1     appellate to relinquish its jurisdiction in order for

2     her to have a rehearing and to reconsider.

3                  Unfortunately, Ms. Huber was ill and was not

4     able to accommodate the hearing in the 45-day time

5     period.  There was another litigator that could have

6     handled the issue at the time, I'm not sure why that

7     was.  But then we did seek a second extension with the

8     appellate to accommodate the Ailes Estate to have this

9     hearing.  I discussed with counsel whether or not we

10    should continue with the appeal based on the fact that

11    the arbitration was well underway and we were -- there

12    are confidentiality rules around the arbitration, Your

13    Honor, you understand why I can't --

14         THE COURT:  I really can't even comment on

15    what's going on there anyway.  So you can cut out all

16    of that.

17         MS. TANTAROS:  Exactly.  And I'm not allowed

18    to comment on the details of it, as well.  But as soon

19    as they were ordered into the proceeding on May 16th,

20    Your Honor, the estate was a participant and continues

21    to be a participant with multiple claims against it.

22    So we've been in litigation up and to this point.

23                  The appeal, contrary to the representations

24    made by Ms. Huber, nothing was abandoned, in fact, my

25    claims are very well alive and proceeding in a

1    confidential arbitration.  The rehearing, again, did

2    not occur because we asked for two separate extensions

3    and opposing counsel was not able to appear at these

4    hearings.  There appeared to be no reason to appeal

5    this decision at the time because the arbitration was

6    well underway deeming me a very likely ascertainable

7    creditor.

8            So I know that, according to the document I

9    referenced earlier, the petition to extend time for

10   filing final accounting and petition for discharge of

11   the estate with this court is until September 30th,

12   2019.  That's when I believe the estate anticipates it

13   will have its legal issues resolved with the Internal

14   Revenue Service.  But it is a misrepresentation to say

15   that I don't have an interest in the estate's

16   finalization.  I do, I'm a very likely ascertainable

17   creditor.  And given ten days for this hearing, I've

18   been in touch with Ms. Huber back and forth about

19   scheduling the hearing in front of Your Honor to give

20   me time to bring counsel in, of course, so I wouldn't

21   have to appear by myself.  And I have to travel quite

22   a ways to get here, and I did for ten days.  But I

23   would humbly ask that because the estate won't be

24   finalized until at least September 30th, when there's

25   a very good chance that the arbitration will be over

1    by then, I humbly ask Your Honor to at least afford

2    the time for me to retain counsel and have a hearing,

3    since the prior presiding judge was willing to have a

4    rehearing on the issue.

5         MS. HUBER:  The Court hasn't necessarily said

6    that she was willing to have a rehearing on this

7    issue.  On that date, on May 15th, she said she was

8    going to listen to arguments as to whether or not to

9    give a rehearing on the order.  That is what the

10   hearing was about.  It was a hearing on whether or not

11   to grant a rehearing.  That hearing was never made,

12   and she has had since August 14th of last year to

13   retain counsel.  That is when her counsel stepped

14   off.

15         I believe we're comparing apples and

16   oranges, because we're dealing with issues that are in

17   this Court, as opposed to issues that are pending in

18   the arbitration in New York.  What's important here is

19   the claims that were filed that were basically

20   abandoned for this long.

21         Yes, I had some time out of the office

22   there's no question.  It's part of the record.  I have

23   a notice of unavailability that shows the start and

24   stop dates.  I was certainly back in the office by

25   August 14th.  And I was certainly in the office before

1    then and all the way through the fall until November

2    of my, you know, of another surgery.  But there's no

3    question that there was ample time to have this heard.

4         The closure of the estate is not before the

5    Court today.  What's before this Court is simply an

6    order on the rehearing, which I believe this Court

7    should deny.  The question isn't whether or not

8    there's pending matters of any kind in any

9    jurisdiction among these parties.

10        I believe, obfuscating the issue is not to

11   the benefit of the estate.  Our question is limited to

12   the original motion for reconsideration and rehearing

13   as filed by Ms. Tantaros by and through counsel

14   literally over a year ago, seeking a rehearing on this

15   order, which dismissed her untimely filed claims.

16        There are only so many bites one may take at

17   the apple.  There's been ample time and opportunity

18   available, both while she was represented by counsel

19   and after.  And we've given a lot of leeway,

20   particularly because she's a pro se litigant, agreeing

21   to extensions both in the appellate court and anything

22   she needed down here.  But even the appellate court

23   felt that she was unresponsive when the onus was on

24   her to pursue.  The appellate court saw fit to dismiss

25   the action as abandoned and we ask that this Court do

Page 19

1    so as well.

2         THE COURT:  Okay.  The probate rules are very

3    strict, especially with, you know, we have to comply

4    with exactly what it says.  There is a time for

5    creditors to file their claims.  Any claims that are

6    not filed within that period are barred.  The

7    publication was August 15, 2017.  The time for the

8    expiration of claims was November 15, 2017.  And I

9    understand that you took out Mr. Ailes and then

10   substituted the estate on October 5, 2017.  So at that

11   point a claim should have been filed down here.  By

12   not filing that claim, essentially, your claim is

13   barred.  It's stricken.

14         Your request for rehearing, given all the

15   circumstances, it was appealed, the motion to strike,

16   the striking of the claim was appealed.  It was

17   dismissed by the appellate court.  It's back here.

18   And I don't see there is going to be any benefit to a

19   rehearing.  So a rehearing is denied.  Please produce

20   an order.

21         (Hearing concluded at 9:59 a.m.)

22

23

24

25

Page 20

1   THE STATE OF FLORIDA )

2   COUNTY OF PALM BEACH )

3

4

5          I, Raquel Robinson, RPR, certify that I was

6   authorized to and did stenographically report the

7   foregoing proceedings and that the transcript is a true

8   and complete record of my stenographic notes.

9

10

11

12          Dated this 17th day of June, 2019.

13

14

15   _____

16          Raquel Robinson, RPR

17

18

19

20

21

22

23

24

25