**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANDREA TANTAROS,

Petitioner,                          19-cv-7131 (ALC)

v.

FOX NEWS NETWORK, LLC., WILLIAM
SHINE, THE ESTATE OF ROGER AILES,
SUZANNE SCOTT, IRENA BRIGANTI,
AND DIANNE BRANDI,

Respondents.

**PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS FOX**
**NEWS NETWORK, LLC, SUZANNE SCOTT, DIANNE BRANDI AND IRENA**
**BRIGANTI'S MOTION TO DISMISS (ECF NO. 100) AND RESPONDENT WILLIAM**
**SHINE'S MOTION TO DISMISS (ECF NO. 103)**

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   SUMMARY OF FACTUAL BACKGROUND ......................................................... 2

III.  STANDARD OF REVIEW ...................................................................................... 5

IV.   ARGUMENT .............................................................................................................. 5

    A.   The Arbitration Agreement Is Null and Void Under CPLR § 7515(b)(iii). .................. 5

        i.    The Federal Arbitration Act ("FAA") Does Not Preempt CPLR § 7515. ................ 6

        ii.   CPLR § 7515(b)(iii) Applies Retroactively. ............................................................ 9

            a.   Neither statutory direction nor legislative history limits CPLR § 7515(b)(iii) to prospective application only. ................................................. 9

            b.   No manifest injustice results from the retroactive application of CPLR § 7515(b)(iii). ......................................................................................... 13

        iii.  Petitioner Did Not Waive Her Right to Challenge the Arbitration Clause. ........... 14

    B.   Petitioners' Arbitration Agreement Is Unenforceable Because It Is Unreasonable and Unconscionable. .......................................................................................................... 15

        i.    The Arbitration Agreement is Unreasonable and Procedurally Unconscionable. ... 16

        ii.   The Arbitration Agreement is Substantively Unconscionable. .............................. 18

        iii.  Arbitration Failed to and Cannot Provide Ms. Tantaros With Sufficient Due Process and Fundamental Fairness Protections. ..................................................... 20

            a.   Prohibitive fees make the arbitration clause unenforceable. ...................... 21

            b.   The Panel has deprived Ms. Tantaros of a fair hearing. ............................. 22

            c.   Delay in the arbitration proceeding amounts to denial of a fair hearing. ... 23

            d.   The Panel is unable to protect Ms. Tantaros from Fox News's ongoing retaliation. ................................................................................................. 23

V.    CONCLUSION ......................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                 **PAGE(S)**

*Altman v. Salem Media of N.Y., LLC*,
   188 A.D.3d 515 (N.Y. App. Div. 2020) ..................................................................12

*Bernhardt v. Polygraphic Co. of Am.*,
   350 U.S. 198 (1956).........................................................................................................8

*Bradley v. School Board of Richmond*,
   416 U.S. 696 (1974).....................................................................................................9, 13

*Brady v. Williams Cap. Grp., L.P.*,
   64 A.D.3d 127 (N.Y. 2009), *aff'd as modified*, 928 N.E.2d 383 (2010) ..................................22

*Brennan v. Bally Total Fitness*,
   153 F. Supp. 2d 408 (S.D.N.Y. 2001) ..................................................................18

*Brennan v. Bally Total Fitness*,
   198 F. Supp. 2d 377 (S.D.N.Y. 2002) ..................................................................16

*Cooper v. Bruckner*,
   21 A.D. 3d 758 (N.Y. App. Div. 2005) ..................................................................15

*Eisen v. Venulum Ltd.*,
   244 F. Supp. 3d 324 (W.D.N.Y. 2017) ..............................................................15, 18

*In re Friedman*,
   64 A.D. 2d 70 (N.Y. App. Div. 1978) ..................................................................16

*Friedman v Connecticut Gen. Life Ins. Co.*,
   877 N.E.2d 281 (N.Y. 2007)...........................................................................................11

*Gilbert v. Indeed, Inc.*,
   513 F. Supp. 3d 374 (S.D.N.Y. 2021) ....................................................................8

*Gillman v. Chase Manhattan Bank, N.A.*,
   534 N.E.2d 824 (N.Y. 1988)..........................................................................................15

*Gonder v. Dollar Tree Stores, Inc.*,
   144 F. Supp. 3d 522 (S.D.N.Y. 2015) ....................................................................5

*Green Tree Financial Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000).........................................................................................................21

*Jalee Consulting Grp., Inc. v. XenoOne, Inc.*,
   908 F. Supp. 2d 387 (S.D.N.Y. 2012) ........................................................6, 16, 20

*Kaplan v. Alfred Dunhill of London, Inc.*,
   No. 96 CIV. 0258, 1996 WL 640901 (S.D.N.Y. Nov. 4, 1996)..........................................21, 23

*Landgraf v. USI Film Prod.*,
   511 U.S. 244 (1994)...................................................................................................13, 14

*Martin v. United Way of Erie County*,
   829 F.2d 445 (3d Cir. 1987) ................................................................................................9

*McLaughlin v. Advanced Commc'ns, Inc.*,
   No. 09 Civ. 2311, 2010 WL 11626961, at *3 (E.D.N.Y. Mar. 25, 2010), *report
   and rec'n adopted*, 2010 WL 11626962 (E.D.N.Y. Apr. 15, 2010)........................................17

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ..................................................................................................5

*Newton v. LVMH Moët Hennessy Louis Vuitton Inc.*,
   No. 154178/2019, 2020 WL 3961988 (N.Y. Sup. Ct. July 10, 2020) .......................7, 8, 11, 12

*Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*,
   192 A.D.3d 540, 541 (N.Y. App. Div. 2021) .......................................................................12

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ................................................................................................5

*Niesig v. Team I*,
   558 N.E.2d 1030 (N.Y. 1990)............................................................................................19

*Matter of OnBank & Trust Co.*,
   688 N.E.2d 245 (N.Y. 1997)..............................................................................................11

*Phillips v Manhattan & Bronx Surface Transit Operating Auth.*,
   132 A.D. 3d 149 (N.Y. App. Div. 2015) ...............................................................................5

*Ragone v. Atl. Video at Manhattan Ctr.*,
   595 F.3d 115 (2d Cir. 2010) ..............................................................................................15

*Ramos v. Superior Ct.*,
   28 Cal. App. 5th 1042, 1065-67 (2018), *as modified* (Nov. 28, 2018)..............................19, 20

*Rodriguez v Perez*,
   No. 158367/2019, 2020 WL 888485 (N.Y. Sup. Ct., Feb. 19, 2020).......................................12

*Slaughter v. Stewart Enterprises, Inc.*,
   No. C 07-01157MHP, 2007 WL 2255221 (N.D. Cal. Aug. 3, 2007)....................................7, 8

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984).................................................................................................................7

*United States v. Harris*,
    838 F.3d 98 (2d Cir. 2016) ................................................................11

*United States v. Morrison*,
    529 U.S. 598 (2000)............................................................................7

*Yonir Techs., Inc. v. Duration Sys. (1992) Ltd.,*
    244 F. Supp. 2d 195 (S.D.N.Y. 2002) ..............................................21

**Statutes**

42 U.S.C. § 2000e(b) ................................................................................9

N.Y. Civil Practice Law and Rules § 7515............................................ passim

N.Y. Civil Practice Law and Rules § 7503............................................14

N.Y. Exec. Law § 296 Section (1)(e) ......................................................6

N.Y. Stat. Law § 96 ..................................................................................9

**Other Authorities**

2019 N.Y. Assembly Bill No. 8421, New York Two Hundred Forty-Second
    Legislative Session .............................................................................10

https://abcnews.go.com/US/accusing-roger-ailes-sexual-harassment-career-suicide-
    mission/story?id=43545806...............................................................21

https://www.adr.org/employment ............................................................21

https://www.nysenate.gov/newsroom/press-releases/catharine-young/2018-19-
    state-budget-includes-landmark-sexual-harassment-law (Catharine Young)...........................16

https://www.nysenate.gov/newsroom/press-releases/chris-jacobs/jacobs-votes-
    enact-comprehensive-sexual-harassment-reform-0 (Chris Jacobs) ...........................16

https://www.nysenate.gov/newsroom/press-releases/elaine-phillips/senator-
    phillips-announces-2018-2019-budget-includes (Elaine Philips)............................16

https://www.nytimes.com/2017/06/24/nyregion/bo-dietl-new-york-mayor.html
    (last visited Jan.19, 2022) ..................................................................24

"Mandatory Arbitration" (https://www.ny.gov/combating-sexual-harassment-
    workplace/combating-sexual-harassment-frequently-asked-questions)...................................12

N.Y. State Senate, Stenographic Rec., 241st Leg., Reg. Sess., at 1853, 1855 (Mar.
    30, 2018) .............................................................................................6

## I.      INTRODUCTION

Petitioner Andrea Tantaros's ("Petitioner" or "Ms. Tantaros") requests for declaratory

and injunctive relief against arbitration should be granted and Fox News Network, LLC's ("Fox

News"), Suzanne Scott, Diane Brandi, Irena Briganti, and William Shine's (together,

"Respondents") Motions to Dismiss should be denied. Ms. Tantaros's arbitration agreement with

Fox News is null and void under New York's Civil Practice Law and Rules ("CPLR") § 7515

and is unconscionable, and the arbitration proceedings deprive her of due process and

fundamental fairness.

The New York Legislature enacted CPLR § 7515, rendering mandatory arbitration

clauses for claims of discrimination "null and void," because of brave women like Ms. Tantaros

who stood up to sexual harassment by their powerful employers and exposed their pervasive

workplace violations. Memorializing the strong public policy against silencing these women,

CPLR § 7515 is also designed to protect them. As the sponsor of the legislation incorporating the

mandatory arbitration ban announced in her official press release:

> With this law, New York is embracing the call to action demanded by the
> many courageous voices who have brought the issue of sexual
> harassment out of the darkness and into the light. Victims will no longer
> be silenced and abusers will no longer be protected by antiquated laws
> and by a culture that has too often looked the other way[.][1]

The unique nature of this case, involving a profound imbalance of power between

Petitioner and Respondents, the prohibitive costs of arbitration, a strict confidentiality provision

in the arbitration clause precluding Ms. Tantaros from seeking important discovery, and the lack

---

[1] https://www.nysenate.gov/newsroom/press-releases/catharine-young/2018-19-state-budget-includes-landmark-sexual-harassment-law ("2018-19 State Budget Includes Landmark Sexual Harassment Law," Press Release of former N.Y. State Senator Catharine Young, dated March 30, 2018) (last visited Jan. 19, 2022).

of due process in the arbitration proceedings render the removal of the arbitration matter to courts particularly warranted.

## II.   SUMMARY OF FACTUAL BACKGROUND[2]

Ms. Tantaros's substantive claims of sexual harassment and retaliation are very strong, and Fox News, having unlimited resources, has used every possible procedural device, including arbitration, to sabotage her case, silence her, and exhaust her financial and emotional resources.

Starting in 2011, when Ms. Tantaros began working at Fox News as a television show host, and continuing throughout her entire tenure there, various Fox News wardrobe staffers and executives – male and female – repeatedly told Ms. Tantaros that she could not wear pants on air because "Roger [Ailes] wants to see your legs." (State Court Complaint ¶ 20, Index No. 157054/2016 ("Compl."), Dkt. No. 2, Ex. 1). Commencing in the late summer of 2014, Mr. Ailes's, Fox News's then-President, harassment of Ms. Tantaros's worsened. Among other things, he asked her on two separate occasions to "turn around so I can get a good look at you" (known at Fox News as "the twirl"), asked her to "come over here so I can give you a hug," told her "I bet you look good in a bikini," asked her about the sexual relationships of other Fox News employees, and made other inappropriate comments of a sexual nature to Ms. Tantaros. (*Id.* ¶ 5). Because Ms. Tantaros rebuffed Mr. Ailes's advances and refused to engage in inappropriate conversations, Mr. Ailes retaliated against her by removing her from a show that aired at a highly desirable time to a show airing at noon, when very few people watched. (*Id.* ¶ 6).

At the same time as this harassment and retaliation, in September 2014, Fox News renegotiated Ms. Tantaros's employment agreement, which attached and incorporated "Standard Terms and Conditions," i.e. terms and conditions that were not subject to negotiation. The

---

[2] All Exhibits are attached to the Declaration of Cara E. Greene ("Greene Decl."), filed herewith.

Standard Terms and Conditions included the mandatory arbitration clause at issue here. (*Id.* ¶ 25; Exhibit A to the Employment Agreement, Section 8, Ex. 2). The arbitration clause contained a strict confidentiality requirement, stating that "[s]uch arbitration, all filings, evidence and testimony connected with arbitration, and all relevant allegations and events leading up to the arbitration, shall be held in strict confidence." (*Id.*). With no negotiating leverage and fearing further retaliation, after having experienced the power and vindictiveness of Mr. Ailes, Ms. Tantaros signed the agreement. (Declaration of Andrea Tantaros ("Tantaros Decl.") ¶ 6).

Shortly after Ms. Tantaros refused to do the "twirl" for Mr. Ailes for the second time (in December 2014), Fox News started a media campaign against her, including, *inter alia*, crafting and placing insulting stories about Tantaros, based upon baseless and malicious leaks about Tantaros from unnamed Fox News sources (Compl. ¶¶ 6, 26, 28). Throughout 2015 and early 2016, Ms. Tantaros made a number of complaints of retaliation stemming from her initial opposition to Ms. Ailes's sexual harassment, but Fox News's retaliation continued. (*Id.* ¶¶ 29-53). Furthermore, starting in February 2016, Fox News host Bill O'Reilly started sexually harassing Ms. Tantaros by, *inter alia*, asking her to come to stay with him on Long Island where it would be "very private." (*Id.* ¶ 54).

Fox News's retaliation against Ms. Tantaros escalated after she complained to Suzanne Scott (Head of Fox News' Programming at that time), on February 19, 2016, about sexual harassment, including by Mr. O'Reilly. (*Id.* ¶ 55; March 16, 2016, Letter from Ms. Tantaros's entertainment attorney to Fox News, p. 2, Ex. 3). On March 1, 2016, Fox News concocted a false narrative that Ms. Tantaros violated Fox News's book publishing guidelines with respect to the book she authored, and which was scheduled to be published imminently. (Compl. ¶ 57). On March 16, 2016, Ms. Tantaros's attorney sent a letter to Fox News specifically mentioning the

meeting on February 19 and the "permissive climate of inappropriate male behavior at Fox." (Ex. 3, at 2). On April 25, 2016, Fox News removed Ms. Tantaros from air. (Compl. ¶ 62). In May 2016, in an effort to further silence her, Fox News commenced an arbitration against her, claiming that she breached her employment agreement by failing to comply with book publishing guidelines. (*Id.* ¶ 67). All acts of sexual harassment described in the Complaint took place in New York. (Tantaros Decl. ¶ 2).

On August 22, 2016, Petitioner filed a Complaint in the Supreme Court of New York against Respondents alleging sexual harassment, hostile work environment, and retaliation. (*See* Compl.) On March 9, 2017, the court compelled her to arbitration in AAA and, on or about May 5, 2017, she filed her counterclaims against Respondents in the AAA arbitration Fox News had commenced against her in retaliation for her complaints. (Greene Decl. ¶¶ 2, 3).

In the arbitration, Ms. Tantaros was responsible for filing fees and is responsible for 50% of the ongoing arbitration costs. Incredibly, Ms. Tantaros had to pay $40,000 in AAA filing fees in addition to the already exorbitant $13,000 administrative fee for her counterclaims of discrimination and retaliation. (Tantaros Decl. ¶7; Summary Invoice, Ex. 4). The $13,000 fee itself is more than 37 times the amount for commencing a federal court action and more than 60 times the amount required to commence a state court action. (Greene Decl. ¶ 3). To date, before substantive motions and any hearing on the matter, her filing fees and portion of the arbitration costs already exceed $115,000. (Tantaros Decl. ¶ 8).  This amount will only grow if the arbitration continues. Given that Ms. Tantaros has been unable to find a comparable job (likely due to Fox News's retaliatory actions (*see, e.g.*, Compl. ¶¶ 35, 49, 53; n.6, *infra*), such exorbitant arbitration expenses impose a serious financial hardship on her and materially interfere with the vindication of her rights. (Tantaros Decl. ¶ 9).

Furthermore, due to the strict confidentiality provision in the arbitration agreement and the Panel's failure to protect her from Respondents' abuse of the discovery process, Ms. Tantaros has been deprived of the ability to present evidence in support of her claims. Additionally, the Panel's refusal to set depositions deadlines and hearing dates (April 12, 2019 Panel Order, Ex. 5), even though more than three years have passed since the beginning of the arbitration, has created such a significant delay that it deprives Ms. Tantaros of basic due process and fundamental fairness rights to a hearing, and the Panel is powerless to protect Ms. Tantatos from Fox News's ongoing retaliation while the arbitration is pending.

## III.    STANDARD OF REVIEW

Courts in this circuit commonly construe a motion to dismiss based on an arbitration clause as a motion to compel arbitration. *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (gathering cases). When deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quotations omitted); *see Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 525 (S.D.N.Y. 2015). On such a motion, "the court consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Meyer*, 868 F.3d at 74 (quotations omitted).

## IV.    ARGUMENT

### A.    <u>The Arbitration Agreement Is Null and Void Under CPLR § 7515(b)(iii).</u>

New York state has a "a well-defined and dominant public policy" "against sexual harassment in the work place." *See Phillips v Manhattan & Bronx Surface Transit Operating Auth.*, 132 A.D. 3d 149, 155 (N.Y. App. Div. 2015). It is against this public policy backdrop, and

in the wake of the #MeToo movement, that the Legislature in July 2018 enacted CPLR § 7515, invalidating mandatory arbitration provisions applicable to employers' "unlawful discriminatory practice[s] based on sexual harassment." CPLR § 7515 was enacted among other provisions of Part KK, Subpart B, of the 2018-19 New York State Budget Bill, sharing a place with various other protections afforded by our Legislature in that bill to victims, and potential victims, of sexual harassment. During floor debates of the bill prior to its enactment, it was hailed as "sweeping legislation that deals with the scourge of sexual harassment." N.Y. State Senate, Stenographic Rec., 241st Leg., Reg. Sess., at 1853, 1855 (Mar. 30, 2018).

In October 2019, the legislature expanded CPLR § 7515 to invalidate mandatory arbitration provisions for claims under all laws prohibiting discrimination, "including but not limited to, article fifteen of the executive law." Because article fifteen of the executive law includes retaliation in its definition of discrimination (*see* N.Y. Exec. Law § 296 Section (1)(e)), the revised CPLR § 7515 now also makes null and void forced arbitration of retaliation claims.

Given the strong public policy against sexual harassment and discrimination in the workplace, the New York Legislature's clear intent to provide the broadest protections to employees subject to these unlawful actions, and the State's interest in regulating its domestic affairs, the Court should find CPLR § 7515 enforceable. *See Jalee Consulting Grp., Inc. v. XenoOne, Inc.*, 908 F. Supp. 2d 387, 393–94 (S.D.N.Y. 2012) ("The Second Circuit has recognized [certain] circumstances in which arbitral forum selection clauses may be unenforceable …[including] if the clauses contravene a strong public policy of the forum state.") (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir.1993) (internal quotation marks omitted).

    i.    *The Federal Arbitration Act ("FAA") Does Not Preempt CPLR § 7515.*

The FAA rests on the authority of Congress to enact substantive rules under the Commerce Clause. *Southland Corp. v. Keating*, 465 U.S. 1 (1984). However, it does not automatically apply to all employment situations as "[i]t cannot be true that all employment relationships necessarily involve interstate commerce." *Slaughter v. Stewart Enterps., Inc.*, No. 07-01157MHP, 2007 WL 2255221, at *5 (N.D. Cal. Aug. 3, 2007). Employment relationship must both be "economic" and "truly national" for the FAA to apply. *See Id.* at *5-6 (quoting *United States v. Morrison*, 529 U.S. 598, 618 (2000)).

The issue in dispute here is an employer's sexual harassment against an employee, which occurred solely in New York. (Tantaros Decl. ¶ 2). Neither are economic nor interstate. The nature of the sexual harassment is in fact almost identical to the gender-based violence addressed by the Violence Against Women Act ("VAWA"), which was invalidated on Commerce Clause grounds by the Supreme Court in *Morrison*. 529 U.S. 598. In *Morrison*, the Supreme Court concluded that (1) "[g]ender motivated crimes of violence are not, in any sense of the phrase, economic activity" (*Id.* at 613) and (2) "[t]he regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States" (*Id.* at 618). The same is true here.

The reasoning in *Newton v. LVMH Moët Hennessy Louis Vuitton Inc.*, No. 154178/2019, 2020 WL 3961988 (N.Y. Sup. Ct. July 10, 2020) (*rev'd on other grounds*, 192 A.D.3d 540, 541 (N.Y. App. Div. 2021) is instructive. In *Newton*, the New York Supreme Court held that:

> at the outset, the acts of sexual harassment and related retaliation alleged in the complaint occurred intrastate -- in defendant's New York City offices. Nothing relating to that conduct could possibly be cast as "interstate" or "economic in nature." Absent such variables, there can be no possible application of the FAA to the prohibited and nullified arbitration provisions[.]

*Id*, 2020 WL 3961988, at *4.

The only case that addresses Newton's reasoning on the Commerce Clause is *Gilbert v. Indeed, Inc*., 513 F. Supp. 3d 374 (S.D.N.Y. 2021). Although the Court in *Gilbert* disagreed with it, the *Newton* decision makes a strong case in favor of upholding this logic, stating, *inter alia*:

> At the same time, both today and in 1925, it was generally understood that the Commerce Clause power did not extend to such items as purely intrastate gender-motivated violence. Such matters fall within the police powers of the states. [citing *Morrison*] **It is anomalous to presume that Congress, which lacked the power to protect victims of domestic abuse with a federal remedy, has the power (and has exercised it) to deny the states the ability to provide victims of such abuse in the workplace a non-waivable right to a public forum**.

513 F. Supp. at 398–99 (S.D.N.Y. 2021) (emphasis added). Nevertheless, the Court proceeded to summarily dismiss its well-reasoned observations and concluded that "[b]ut that all appears to be water under the bridge. Congress has held that arbitration agreements are enforceable 'save upon such grounds as exist at law or in equity for the revocation of any contract,' 9 U.S.C. § 2, and the Supreme Court has held that such language applies equally to state statutory as to state common law claims." *Id.*

However, if *Gilbert*'s ultimate conclusion was correct, every single employment contract would be subject to the FAA, which is not the case. *See Bernhardt v. Polygraphic Co. of Am*., 350 U.S. 198, 200-01 (1956) (noting that the employment contract at issue did not involve commerce pursuant to the meaning of the FAA); *see also Slaughter,* 2007 WL 2255221, at *5 ("Title VII's jurisdictional statement suggests that there must be some employment contracts beyond its reach and by inference beyond the reach of the Commerce Clause…Title VII applies to employers, defined as 'a person engaged in an industry affecting commerce who has fifteen or more employees.' [42 U.S.C. § 2000e(b)]; *Martin v. United Way of Erie Cnty*, 829 F.2d 445, 448 (3d Cir. 1987) (Title VII encompasses the 'the fullest jurisdictional breadth constitutionally

permissible under the Commerce Clause.'"). Therefore, the rationale of *Morrison* and *Newton* is much more appropriate in this case and CPLR § 7515 should be upheld.

      ii.    *CPLR § 7515(b)(iii) Applies Retroactively.*

The principles of determining whether a statute applies retroactively has been proscribed by the U.S. Supreme Court in *Bradley v. School Board of Richmond*, 416 U.S. 696, 711 (1974). There, the Supreme Court observed that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in [(a)] manifest injustice or [(b)] there is statutory direction or [(c)] legislative history to the contrary." CPLR § 7515(b)(iii) makes null and void contracts containing forced arbitration agreements – in effect, creating a retroactive application.

      a.    <u>Neither statutory direction nor legislative history limits CPLR § 7515(b)(iii) to prospective application only.</u>

That CPLR § 7515(b)(iii) applies retroactively is evident when reviewing legislative history and the language of the statute itself. "A basic consideration in the interpretation of a statute is the general spirit and purpose underlying its enactment, and that construction is to be preferred which furthers the object, spirit and purpose of the statute." N.Y. Stat. Law § 96 (McKinney). The legislative history of CPLR § 7515 supports the conclusion that subdivision (b)(iii) applies to contracts in existence at the time the statute was enacted into law. This subdivision renders mandatory arbitration clauses applicable to a party asserting discrimination claims (hereinafter, "Prohibited Clauses") "null and void" without limiting it to contracts entered into after the effective date of this section. The legislative history supports retroactive application of this subdivision because it is consistent with the New York Legislature's broad intent to combat sexual harassment. In fact, in a Justification for enacting the bill expanding the statute to

all forms of unlawful discrimination, the Legislature evidenced its intent for the broadest

application of the section by noting that:

> During the year 2017 sexual harassment became a national issue with
> dozens of high profile incidents finding the light of day and hundreds of
> protests sweeping the nation. As a result the "Me Too" movement and
> "Times Up" movement were formed to combat sexual harassment and
> discrimination i[n] all of its ugly forms. It is more imperative than ever
> that the work of these movements continue and translate into actual
> policy and change. The time for complacency is no more.

2019 N.Y. Assembly Bill No. 8421, New York Two Hundred Forty-Second Legislative Session.

Furthermore, the statement of the original bill's sponsor strongly suggests that the ban on

mandatory arbitrations would apply to contracts and arbitrations in existence at the time CPLR §

7515 was enacted. As described above, Ms. Young in her press release regarding the passage of

this law emphasized that "[v]ictims will no longer be silenced and abusers will no longer be

protected by antiquated laws and by a culture that has too often looked the other way," meaning

that if a victim was silenced by virtue of mandatory arbitration at the time CPLR § 7515 came

into place, she would now be freed by the statute. *See* FN 1, *supra.*

The statutory direction also does not limit subdivision (b)(iii) to contracts entered after

the effective date of CPLR § 7515. Respondents argue that the prospective language of a

different subdivision – (b)(i) – applies to subdivision (b)(iii), but this argument is unpersuasive.

Under (b)(i), "no written contract, entered into on or after the effective date of this section shall

contain a [Prohibited Clause]," while (b)(iii) makes existing Prohibited Clauses null and vo*Id.*

The Legislature clearly intended for CPLR § 7515 to apply both prospectively (through

subdivision (b)(i)) and retroactively (through subdivision (b)(iii)) and to that end, it did not insert

the prospective-only language in subdivision (b)(iii). The fact that the Legislature inserted

10

"[e]xcept where inconsistent with federal law" language in both subdivisions but did not insert the prospective-only limitation in (b)(iii) further evidences that this omission is not incidental.

The recognized principle of avoiding a statutory interpretation that makes some of the statute's provisions superfluous or insignificant also weighs in favor of retroactive application of subdivision (b)(iii). To hold that subdivision (b)(iii) makes Prohibited Clauses unenforceable only in contracts entered into after CPLR § 7515 went into effect would make it superfluous and insignificant, as subdivision (b)(i) already accomplishes that goal. *See United States v. Harris*, 838 F.3d 98, 106 (2d Cir. 2016) ("courts must give effect to all of a statute's provisions 'so that no part will be inoperative or superfluous, void or insignificant.'")(quoting *Corley v. United States*, 556 U.S. 303, 314 (2009); *Friedman v Conn. Gen. Life Ins*. Co., 877 N.E.2d 281 (N.Y. 2007) ("A court must consider a statute as a whole, reading and construing all parts of an act together to determine legislative intent, and, where possible, should harmonize all parts of a statute with each other and give effect and meaning to the entire statute and every part and word thereof."); *Matter of OnBank & Trust Co*., 688 N.E.2d 245 (N.Y. 1997)(applying statute retroactively even in the absence of express language to that effect, because a prospective-only interpretation rendered other statutory provisions superfluous and meaningless).

The New York Supreme Court's reasoning in *Newton* is instructive here. There, the court held that:

> unlike subdivision (b) (i) of the statute, where the language specifically provides that the prohibition applies only to contracts "entered into on or after the effective date," subdivision (b) (iii) of the statute contains no such limitation. Rather, that subdivision broadly states that "any clause or provision in **any** contract" (emphasis added) that forces sexual harassment victims to arbitrate their claims "shall be null and vo*Id*." Thus, the statute's plain language indicates that the "null and void" clause also applies to arbitration clauses already in existence.

*Newton*, 2020 WL 3961988, at *6. Though *Newton* was overturned on appeal by the First Department, the First Department's opinion did not address the sound reasoning of the lower court and did not explain its holding other than by conclusory citing to another case – *Altman v. Salem Media of N.Y., LLC,* 188 A.D.3d 515, 516 (N.Y. App. Div. 2020). *See Newton*, 192 A.D.3d at 541. *Altman*, however, focused on subdivision (b)(i), did not address the arguments above, and, moreover, wrongly concluded that "CPLR § 7515 … provides that the statute applies **only** to contracts entered into 'on or after the effective date of this section.'" *Altman*, 188 A.D.3d at 516 (emphasis added). Critically, CPLR § 7515 does not contain any such limiting language. Similarly, *Rodriguez v Perez*, No. 158367/2019, 2020 WL 888485 (N.Y. Sup. Ct., Feb. 19, 2020), which held that CPLR § 7515 "is not to be applied retroactively," was wrongly decided. The holding in that case was based solely on that court's focus on subdivision (b) (i) – the "Prohibition" subdivision of the statute, without targeted analysis of subdivision (b) (iii) – the "null and void" subdivision of the statute.

Respondents' argument that language found in a segment of the New York State government website titled "Combating Sexual Harassment: Frequently Asked Questions," under the rubric "Mandatory Arbitration" (https://www.ny.gov/combating-sexual-harassment-workplace/combating-sexual-harassment-frequently-asked-questions), Question and Answer No. 4, which mentions the prospective nature of the "prohibition" subdivision of CPLR 7515 (subdivision (b)(i)), supports a finding against retroactivity is misplaced. The language of the question and answer does not have the force of law and does not address the "null and void" language CPLR § 7515(b)(iii).

Respondents' argument that any ambiguities in CPLR § 7515 should be resolved against retroactive application is unpersuasive. As the Supreme Court in *Bradley*, explained, the courts "must reject the contention that a change in law is to be given effect in a pending case only where that is the clear and stated intention of the legislature." 416 U.S. at 715. As the Court further held, "insofar as the legislative history of [a statute] is supportive of either position [i.e., whether the new statute applies to pending cases or not], it would seem to provide at least implicit support for the application of the statute of pending cases." *Id.* at 716.[3] Respondents' argument that a postponed effective date is "inexplicable" and makes the presumption against retroactive application "particularly strong" is also unavailing. (Resps' Mem. at 12, 15). The delayed effective date has at least one reasonable and logical explanation: balancing the rights of employees and companies, the Legislature likely intended to allow employers additional time to make their arbitration agreements compliant with CPLR §7515(b)(iii) (e.g., by making them non-mandatory), to avoid rendering them null and void when the statute became effective.

      b.  <u>No manifest injustice results from the retroactive application of CPLR § 7515(b)(iii).</u>

Respondents would not be prejudiced if arbitration clauses that predated CPLR § 7515(b)(iii) are found to be null and void because the statute does not affect their rights and defenses in Petitioner's underlying claims of sexual harassment and retaliation. Any rights they

---

[3] As the Supreme Court explained in *Landgraf v. USI Film Prod.*, 511 U.S. 244, 277 (1994), "*Bradley* did not alter the well-settled presumption against application of the class of new statutes that would have genuinely 'retroactive' effect. Like the new hearing requirement . . . the attorney's fee provision at issue in *Bradley* did not resemble the cases in which we have invoked the presumption against statutory retroactivity. Attorney's fee determinations, we have observed, are 'collateral to the main cause of action' and 'uniquely separable from the cause of action to be proved at trial.'" (citations omitted). Because CPLR § 7515 only affects the forum where discrimination claims are to be decided, it is "collateral to the main cause of action" and therefore *Bradley*'s framework applies.

had to arbitrate their claims were "collateral to the main cause of action" and "uniquely separable from the cause of action to be proved at trial." *See Landgraf*, 511 U.S. at 277 (citing cases). On the other hand, the women who were sexually harassed, including Ms. Tantaros, would experience manifest injustice if they are silenced by virtue of non-public arbitration proceedings, which are often confidential and lack the breadth of discovery and other protections provided by the courts.

    iii.    *Petitioner Did Not Waive Her Right to Challenge the Arbitration Clause.*

Respondents' argument that Ms. Tantaros's current Petition is untimely because she waited a year after CPLR § 7515(b)(iii) went into effect to file the Petition is unavailing because, as discussed in Section III below, she did not avail herself of the benefits of arbitration, important discovery has been frozen, and no hearing or deposition dates had been set in the three years the arbitration was pending before it was stayed until resolution of the current Petition.

Furthermore, nothing in CPLR § 7515(b)(iii) requires a party to move for a stay of arbitration within a certain period of time. CPLR § 7503, which requires that an application to stay arbitration be made within twenty days, is limited to new arbitrations and does not address pending arbitrations in which arbitration clauses were made null and void by CPLR §7515(b)(iii). *See* CPLR § 7503 ("An application to stay arbitration must be made by the party served within twenty days *after service upon him of the notice [of intention to arbitrate] or demand [for arbitration]*, or he shall be so precluded.") (emphasis added).

Additionally, the twenty-day deadline of CPLR § 7503 does not apply to this matter because Respondents did not warn Petitioner of this deadline in the Demand for Arbitration as required in the section. *See* CPLR § 7503(c) ("A party may serve upon another party a demand for arbitration or a notice of intention to arbitrate … stating that unless the party served applies to

stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made [.]"); Ex. 6 (Demand for Arbitration); *Cooper v. Bruckner*, 21 A.D.3d 758, 759-60 (N.Y. App. Div. 2005) (failure to comply with CPLR §7503's requirement to give the warning of the 20-day deadline "rendered the demand ineffective to preclude [plaintiff] from raising threshold issues after the 20-day limit").

In any case, even if Ms. Tantaros was untimely – which she was not – in bringing her current Petition under the prior version of CPLR § 7515, which went into effect in April 2018 and which banned mandatory arbitration only with respect to claims of sexual harassment, Petitioner certainly did not waive her right to invoke the current version of the statute, which also covers retaliation claims. The latter went into effect in October 2019 – after Ms. Tantaros made her current application.

**B.     Petitioners' Arbitration Agreement Is Unenforceable Because It Is Unreasonable and Unconscionable.**

Even if CPLR § 7515(b)(iii) does not apply, the arbitration provision is unenforceable because it is unreasonable and unconscionable. "[I]t is possible that an arbitration agreement may contain terms so onerous as to render it unenforceable under Section 2 of the FAA. Further, it is clear that questions of contractual validity relating to the unconscionability of an arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (citing *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir.2003); *see Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 339 (W.D.N.Y. 2017) (same). Under New York law, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable ... according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824 (N.Y.

15

1988). "In determining whether a contract is unconscionable, a court should take a 'flexible' approach, examining 'all the facts and circumstances of a particular case.'" *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002) (citing *In re Friedman*, 64 A.D.2d 70 (N.Y. App. Div. 1978)).

      i.     *The Arbitration Agreement is Unreasonable and Procedurally Unconscionable.*

"[A]rbitral forum selection clauses may be unenforceable due to their unreasonableness … if the clauses contravene a strong public policy of the forum state." *Jalee Consulting Grp., Inc.*, 908 F. Supp. 2d at 393-94 (citing *Roby*, 996 F.2d at 1363 (citations and internal quotation marks omitted). Furthermore, a contract is procedurally unconscionable when one of the parties lacked a meaningful choice in its execution. *In re Friedman*, 64 A.D.2d at 85 ("High pressure sales tactics, misrepresentation and unequal bargaining position have been recognized as procedurally unconscionable.")

The New York Legislature has consistently recognized that "[m]andatory arbitration clauses are often used by employers to force sexual harassment victims into private arbitration proceedings, which precludes their ability to seek legal action."[4] The recent New York City Commission on Human Rights' ("NYCCHR") Complaint against Fox News, which resulted in civil sanctions imposed on Fox as part of a Conciliation Agreement between Fox News and the NYCCHR, evidence that individual female employees like Ms. Tantaros were powerless to resist mandatory arbitration provisions Fox News inserted in its employment contracts with them. The

---

[4]*See, e.g.*, N.Y. State Senators' 2018 press releases: https://www.nysenate.gov/newsroom/press-releases/catharine-young/2018-19-state-budget-includes-landmark-sexual-harassment-law (Catharine Young); https://www.nysenate.gov/newsroom/press-releases/elaine-phillips/senator-phillips-announces-2018-2019-budget-includes (Elaine Phillips); https://www.nysenate.gov/newsroom/press-releases/chris-jacobs/jacobs-votes-enact-comprehensive-sexual-harassment-reform-0 (Chris Jacobs).

NYCCHR Complaint alleged that "Respondent Fox News has required some employees … to arbitrate any employment disputes. Upon information and belief, Respondent Fox News has inserted such arbitration clauses into employment contracts to prevent employees' … lawsuits, including suits for harassment and discrimination. …Upon information and belief, women who complained about discrimination have not retained their positions at Fox News" (Ex. 7, at 21, NYCCHR Compl. ¶¶ 10-11). As part of the requested relief, the NYCCHR sought a judgment "[p]rohibiting Respondents from forcing employees … to arbitrate." It was so important for the Commission to ensure that Fox News cannot force its employees to enter into arbitration provisions that as part of its civil sanctions against the company, it required that Fox News for four years after the Conciliation Agreement "will not include NYCHRL claims in any mandatory arbitration clause in any talent contracts, employment agreements, or Contributor agreements that are executed within that time period." (*Id.*, at 9, ¶ 8). If Fox News's employees could freely refuse to be bound by arbitration clauses, such specific and forceful measures by the Commission would not be necessary. Ms. Tantaros was powerless to reject Fox News's insistence on the mandatory arbitration provision. CITE [Declaration]. Unreasonableness and procedural unconscionability are therefore apparent here and specifically recognized by the public policy. Unreasonableness and procedural unconscionability are therefore apparent here and specifically recognized by the public policy. *See McLaughlin v. Advanced Commc'ns, Inc.*, No. 09 Civ. 2311, 2010 WL 11626961, at *3 (E.D.N.Y. Mar. 25, 2010), *report and rec'n adopted*, 2010 WL 11626962 (E.D.N.Y. Apr. 15, 2010)(finding procedural unconscionability and concluding that "the fact that plaintiff was already employed by [employer] for more than three years when asked to sign the Arbitration Agreement, and therefore may have been terminated had he refused to sign, demonstrate[d] that [employer] had 'significantly more

17

bargaining power' over plaintiff") (citing *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 385 (6th Cir. 2005)).

Further, the circumstances and timing of the mandatory arbitration clause evidences coercion. As described above, Fox News renegotiated Ms. Tantaros's employment agreement, which attached and incorporated "Standard Terms and Conditions," i.e. terms and conditions that were not subject to negotiation, shortly (approximately within a month) after Ms. Tantaros rebuffed Mr. Ailes's advances and Mr. Ailes retaliated against her by removing her from a highly desirable air time. Fear of further retaliation constrained Ms. Tantaros and deprived her of any bargaining power she may have had. *See*, *e.g.*, *Brennan v. Bally Total Fitness*, 153 F. Supp. 2d 408, 416 (S.D.N.Y. 2001) (arbitration agreement was procedurally unconscionable due to, *inter alia*, "considerable disparity in bargaining power between employer and employee.")

ii.    *The Arbitration Agreement is Substantively Unconscionable.*

The arbitration provision is substantively unconscionable, and thus is unenforceable. "New York law allows for a finding of unconscionability, in exceptional cases, even where there was no procedural unconscionability." *Eisen*, 244 F. Supp. 3d at 342 (citing cases). "Contract terms are substantively unconscionable when they are unreasonably balanced in favor of one party over the other. ... Examples of terms that are substantively unconscionable include 'contract provisions that are oppressive, unjust, and unreasonably deprive a party of the benefits of his or her bargain.'" *Id.* at 342.

Here, the arbitration clause is substantively unconscionable because its strict confidentiality provisions preclude Ms. Tantaros from obtaining valuable informal discovery from Fox News employees or former employees while Fox News, by virtue of its employment relationships with its employees, is not similarly restricted.  The arbitration clause at issue states: "Such arbitration, all filings, evidence and testimony connected with the arbitration, and all

18

relevant allegations and events leading up to the arbitration, shall be held in strict confidence. …
Breach of confidentiality by any party shall be considered to be material breach of this
Agreement." (Ex. 2, Section 8). This confidentiality provision is an effect a universal gag order
as applied to Petitioner and prevents her from engaging in informal discovery and even asking
individuals if they would be willing to appear as witnesses at the hearing. *See Ramos v. Superior
Ct.*, 28 Cal. App. 5th 1042, 1065-67 (2018), *as modified* (Nov. 28, 2018) (finding that the
provision requiring all aspects of the arbitration be maintained in strict confidence was
substantively unconscionable because "[i]t is hard to see how [plaintiff] could engage in informal
discovery or contact witnesses without violating the prohibition against revealing an 'aspect of
the arbitration.'"); *see also Niesig v. Team I*, 558 N.E.2d 1030 (N.Y. 1990)("[I]nformal
discovery of information … may serve both the litigants and the entire justice system by
uncovering relevant facts, thus promoting the expeditious resolution of disputes. Foreclosing all
direct, informal interviews of employees of the corporate party unnecessarily sacrifices the long-
recognized potential value of such sessions.").

It is clear that Fox News intends to enforce these confidentiality clauses to the full extent
to prevent Ms. Tantaros from collecting evidence to support her claims. In the pending
arbitration, Fox News requested that Ms. Tantaros sign a far-reaching confidentiality stipulation,
which the Panel, on April 12, 2019, directed her to do. (*See* Order, Ex. 5). Because Ms. Tantaros
opposed this stipulation and refused to sign it, the Panel penalized her by allowing Fox News to
withhold any discovery it deems confidential (Ex. 5, ¶ 1), which included responsive documents
relating to similar claims by her colleagues. Such discovery is clearly relevant and important to
Ms. Tantaros's claims and it is unconscionable that her arbitration agreement prevents her from
seeking it. *See Ramos*, 28 Cal. App. 5th at 1066 ("As written, the provision hampers an

19

employee's ability to prove a pattern of discrimination or to take advantage of findings in past arbitrations. Moreover, keeping past findings secret undermines an employee's confidence in the fairness and honesty of the arbitration process, and thus potentially discourages that employee from pursuing a valid discrimination claim.")

Furthermore, the confidentiality language of the arbitration clause serves as a non-disclosure agreement, as it precludes Ms. Tantaros from discussing the sexual harassment and retaliation that happened during her tenure at Fox News and the subsequent retaliation. Such provisions are prohibited by CPLR § 5003-b and N.Y. G.O.B. § 5-336, further making the arbitration clause unenforceable. The arbitration clause, and the NDA that it imposes, is also unconscionable as it operates as a prospective gag order; it constrained Ms. Tantaros from discussing events that had not taken place as of the time she entered into the agreement and offered no consideration for this future obligation.

    iii.    *Arbitration Failed to and Cannot Provide Ms. Tantaros With Sufficient Due Process and Fundamental Fairness Protections.*

This action should proceed in court as the AAA arbitration has failed to provide Ms. Tantaros with due process and has been fundamentally unfair. "[A]rbitral forum selection clauses may be unenforceable … if the complaining party will for all practical purposes be deprived of [her] day in court, due to the grave inconvenience or unfairness of the selected forum." *Jalee Consulting Grp.*, 908 F. Supp. 2d at 393-94 (citing *Roby,* 996 F.2d at 1363 (citations and internal quotation marks omitted). Furthermore, "[T]here is a general requirement under New York law that arbitration procedures comport with due process of law by providing a party with notice and an opportunity to be heard…. Under federal law, 'fundamental fairness' requires that each party have an opportunity to present its evidence and argument." *Yonir Techs., Inc. v. Duration Sys.* (1992) Ltd., 244 F. Supp. 2d 195, 208-09 (S.D.N.Y. 2002) (citations omitted); *see Kaplan v.*

*Alfred Dunhill of London, Inc.*, No. 96 CIV. 0258, 1996 WL 640901, at *5 (S.D.N.Y. Nov. 4, 1996) ("A fundamentally fair hearing requires that the parties be permitted to present evidence and cross-examine adverse witnesses"). Here, AAA has failed to provide basic due process safeguards to Ms. Tantaros and is inherently incapable of protecting her from the escalating retaliation by Respondents. The cost prohibitive nature of the arbitration, the enormous imbalance of power between the parties, and the lack of transparency and procedural devices available to mitigate against the abuse resulting from the imbalance (such as the ability to enforce strict sanctions, including through the power of contempt), deprive Ms. Tantaros of a level playing field to such an extent that a fair arbitration hearing is impossible.

      a.  <u>Prohibitive fees make the arbitration clause unenforceable.</u>

      The exorbitant fees Ms. Tantaros has had to pay to the three-person arbitration Panel (currently six figures)[5] while not being able to find employment due to Fox News' retaliatory actions, make the arbitration fundamentally unfair to her.[6] *See Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) ("the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum."); *Brady*, 64 A.D.3d 127, 138, (N.Y. 2009), *aff'd as modified*, 928 N.E.2d 383 (N.Y. 2010) (finding

---

[5]In 2016, shortly after Fox News filed its Arbitration Demand, AAA decided to apply its Commercial Fee Schedule to the case, which is extremely financially taxing on individual litigants who may be required to pay arbitrators' fees. (Ex. 8). Later, AAA adopted the Employment/Workplace Fee Schedule, which limits employee's total responsibility for arbitration fees and costs to $300 (*see* https://www.adr.org/employment) but this schedule was never applied to Ms. Tantaros and she has continued to be bound by the Commercial Fee Schedule.

[6]Fox News' retaliation against women who raise complaints of sexual harassment is well-known. *See, e.g.*, https://abcnews.go.com/US/accusing-roger-ailes-sexual-harassment-career-suicide-mission/story?id=43545806 (Megyn Kelly recognized it would have been "a suicide mission" for her professionally if she publicly accused Ailes of harassment at the time it occurred.); NYCCHR Compl. ¶¶ 6-9 (Ex. 7, at 17-21).

arbitration clause unenforceable where plaintiff established that the arbitration fees and costs were so high as to discourage her from vindicating her state and federal statutory rights in the arbitral forum).

      b.  <u>The Panel has deprived Ms. Tantaros of a fair hearing.</u>

The Panel has so severely restricted Ms. Tantaros's ability to collect evidence through discovery, further deepening the power imbalance between the parties, that she is precluded from having a fair hearing. Specifically:

(a) AAA has failed to protect Ms. Tantaros against Respondents' spoliation of evidence. The Panel, without explanation, denied her Motion for Spoliation Sanctions (Ex. 9, January 1, 2019 Order, at 2-3) when Fox News failed to preserve an entire source of potential evidence (messages sent via internal messaging system) and failed to place a litigation hold until September 1, 2016 (Ex. 10, Tantaros Mot. to Compel, at 9-11) – after it had commenced arbitration and more than a year after Ms. Tantaros made a complaint of sexual harassment. (Compl. ¶ 7).

(b) The Panel has failed to penalize Fox News for its failure to timely place a litigation hold and for remotely wiping her work Blackberry, even though there was ample evidence of such violation. Ms. Tantaros presented a report by a reputable cyber-security company concluding that the Blackberry was partially wiped (Ex. 11, Cycura report), with Fox News being the only party who would have had that capability as administrator. (Ex. 12, Tantaros Opp. to Fox News' Mot. to Compel, at 5).

(c) The Panel has not provide reasoned decisions in violation of the arbitration clause, which provides that "The arbitrators shall issue a full written opinion setting forth the reasons for their decisions." (Ex. 2, Section 8). The Panel has failed to provide a full written opinion setting forth the reasons for such case-altering orders as Orders on Supplemental Discovery (Ex. 5) and Motion to Compel (Ex. 9). Without such reasoning, Ms. Tantaros is deprived of due process as she is not able to properly challenge the orders.

(d) The Panel has ordered Ms. Tantaros to sign a broad Confidentiality Stipulation (Ex. 5), which as described above will preclude Ms. Tantaros from conducting valuable informal discovery.

(e) Because Ms. Tantaros has refused to sign a Confidentiality Stipulation that would further gag her, the Panel has allowed Fox News to withhold any discovery it deems confidential (Ex. 5), including any responsive documents about complaints, settlements, investigations or material related to sexual harassment, retaliation and hostile workplace made by her colleagues.

(f) The Panel has failed to compel Respondents to produce metadata for its document production (Ex. 13, Tantaros April 5, 2019 Ltr. Mot., at 3; Ex. 5, Order summarily denying Tantaros Mot. ¶5), preventing Ms. Tantaros from verifying things like the custodians and authenticity of the production. This is especially important as, in a related case, Defendant produced fabricated evidence. (Ex. 14, Cycura Report, August 6, 2017.).

*See Kaplan*, 1996 WL 640901, at *5 (finding due process violation where an arbitrator failed to give "a *full opportunity* to present its case to the arbitrator for consideration").

  c.   Delay in the arbitration proceeding amounts to denial of a fair hearing.

At the time Ms. Tantaros filed the current Petition, more than three years had passed, yet the Panel had refused to allow even the scheduling of depositions and hearing dates. (Ex. 5, April 12, 2019 Order, at ¶3). With unlimited resources and no judicial oversight, Respondents abuse the arbitration process by filing baseless motions and multiplying the proceedings in an apparent attempt to deflect attention from the merits of Ms. Tantaros serious sexual harassment and retaliation claims, deplete her financial and emotional resources, and indefinitely delay key discovery and hearing. *See Kaplan*, 1996 WL 640901, at *5.

  d.   The Panel is unable to protect Ms. Tantaros from Fox News's ongoing retaliation.

There is now ample evidence that Fox News has engaged in a campaign of terror against women who challenged discrimination in the workplace, including Ms. Tantaros. Multiple sources indicate that Fox News spied on its female employees who reported sexual harassment. For example, in an interview with the New York Times, Bo Dietl, a retired police detective and former Fox News contributor, admitted that he was hired by Fox News to investigate Ms. Tantaros and "cast a wide net for the inquiries into [her]" and one investigator "tried to persuade

the ghostwriter[7] of Ms. Tantaros's book to provide compromising information about her."[8]

Furthermore, the NYCCHR, after an investigation, recently imposed $1,000,000 in civil

penalties against Fox News as a settlement for its Complaint alleging that Fox News, inter alia,

engaged in a pattern and practice of retaliation against female employees complaining about

sexual harassment that has taken the form of "surveilling text message exchanges of employees

…; erasing valuable computer data … and otherwise manipulating computer systems of those

who complain." (*See* Ex. 7, ¶ 6, at 18). This is consistent with Ms. Tantaros's experience and

other conclusions of the cyber-security firm. The Panel, which lacks the full powers of a court, is

powerless to stop and protect Ms. Tantaros from these unlawful actions.

### V.   CONCLUSION

For the foregoing reasons, Petitioner respectfully asks this Court to deny Respondents

Motion to Dismiss.

Dated:  New York, New York
        January 20, 2022

**OUTTEN & GOLDEN LLP**
Cara E. Greene
Aliaksandra Ramanenka
Brittany E. Arnold
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

*Attorneys for Petitioner*

---

[7] That person was not in fact a "ghostwriter," and Ms. Tantaros, in a separate lawsuit, has prevailed on a summary judgment on defamation and breach of contract claims against him. (*See* October 10, 2019 Order, N.Y. Sup. Ct., Index No. 650476/2018, Doc. No. 188).
[8] https://www.nytimes.com/2017/06/24/nyregion/bo-dietl-new-york-mayor.html (last visited Jan.19, 2022).

24