UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREA TANTAROS,

    Petitioner,

-against-

FOX NEWS NETWORK, LLC., WILLIAM SHINE, THE ESTATE OF ROGER AILES, SUZANNE SCOTT, IRENA BRIGANTI, AND DIANNE BRANDI,

    Respondents.

Case No. 1:19-cv-07131-ALC-RWL

# REPLY IN SUPPORT OF MOTION TO DISMISS PETITION FOR INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

BAKER & McKENZIE LLP

452 Fifth Avenue
New York, NY 10018

Tel: 212.626.4100

*Attorneys for Respondents
Fox News Network, LLC,
Suzanne Scott, Dianne
Brandi, and Irena Briganti*

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ....................................................................................................................... 1

    A. The Federal Arbitration Act Preempts Section 7515. ................................................... 1

    B. Section 7515 Is Not Retroactive ................................................................................... 3

    C. Ms. Tantaros' Arguments About The Enforceability Of Her Underlying Arbitration Agreement Are Misplaced And Incorrect. ..................................................................... 6

        1. Ms. Tantaros' Petition Addresses Only Section 7515. ............................................. 6

        2. Res Judicata Bars Ms. Tantaros' Challenge To The Enforceability Of Her Arbitration Agreement ............................................................................................. 6

        3. Ms. Tantaros' Agreement Is Not Unreasonable Or Unenforceable. ......................... 8

III. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Family Life Assur. Co. of N.Y. v. Baker*,
 778 Fed. Appx. 24 (2d. Cir 2019) ................................................................................. 8, 9

*Ciago v. Ameriquest Mortg. Co.*,
 295 F. Supp. 2d 324 (S.D.N.Y. 2003) ................................................................................ 8

*Citizens Bank v. Alafabco, Inc.*,
 539 U.S. 52 (2003) ............................................................................................................ 2

*Curtis v. Marino*,
 2022 WL 243063, 2022 N.Y. Slip Op. 00499 (N.Y. App. Div. 2022) .............................. 4

*Ferraro v. N.Y.C. Dep't of Educ.*,
 99 A.D.3d 516 (App. Div. 1st Dept.) ................................................................................ 7

*Gilbert v. Indeed, Inc.*,
 513 F. Supp. 3d 374 (S.D.N.Y. 2021) ................................................................................ 2

*Guyden v. Aetna, Inc.*,
 544 F.3d 376 (2d Cir. 2008) .............................................................................................. 9

*I.N.S. v. St. Cyr*,
 533 U.S. 289 (2001) .......................................................................................................... 4

*Landgraf v. USI Film Prods.*,
 511 U.S. 244 (1994) ..................................................................................................... 4, 5

*Mancilla v. ABM Indus.*,
 U.S. Dist. LEXIS 136484 (S.D.N.Y. 2020) ...................................................................... 8

*Meyer v. Starwood Hotels & Resorts Worldwide, Inc.*,
 2001 U.S. Dist. LEXIS 6663 (S.D.N.Y 2011) .................................................................. 3

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
 465 U.S. 75 (1984) ............................................................................................................ 7

*Newton v. LVMH Moet Hennessy Louis Vuitton*,
 192 A.D.3d 540 (N.Y. App. Div. 2021) ............................................................................ 4

*Niesig v. Team I*,
 558 N.E.2d 1030 (N.Y. 1990) ............................................................................................ 9

*Ragone v. Atlantic Video*,
    595 F.3d 115,121 (2d. Cir 2010) ................................................................................... 3

*Ramos v. Superior Ct.*
    28 Cal. App. 5th 1042 (2018) ........................................................................................ 9

*Slaughter v. Stewart Enterprises, Inc.*,
    07-01157, 2007 WL 2255221 (N.D. Cal. Aug. 3, 2007) ............................................... 3

*Sorkin v. Devore Assocs.*,
    2010 U.S. Dist. LEXIS 165114 (S.D.N.Y. Feb. 1, 2010) .............................................. 7

*United States v. Morrison*,
    529 U.S. 598 (2000) .................................................................................................. 2, 3

**Statutes**

9 U.S.C. § 2 ............................................................................................................................ 2

**Other Authorities**

CPLR § 5003-b ...................................................................................................................... 9

CPLR § 7515 ................................................................................................................. *passim*

I.   INTRODUCTION

Ms. Tantaros' Petition is controlled by one question: Whether New York law CPLR § 7515, which was enacted after she entered into a contract with Fox News, allows her to avoid her contractual obligation to arbitrate sexual harassment claims. And the answer is clear: No; Section 7515 has no impact on the forum where Ms. Tantaros must litigate her claims. New York state and federal courts have repeatedly held that Section 7515 is preempted by the Federal Arbitration Act ("FAA"), meaning, under the terms of her employment contract, Ms. Tantaros' claims belong in the already pending arbitration as a matter of law. Also barring Ms. Tantaros' reliance on Section 7515 are the repeated rulings by New York state and federal courts that Section 7515 does not apply retroactively to agreements, like Ms. Tantaros', that were entered into before the statute's enactment. Accordingly, Section 7515 is inapplicable. In addition, Ms. Tantaros is barred by *res judicata* from re-litigating whether her arbitration agreement is enforceable for reasons other than the application of Section 7515 -- a New York state court has already ruled that it is. Nor can she use her Petition as a way to complain about the currently sitting arbitration panel -- that has no bearing on whether Section 7515 applies. For these reasons, the Fox Parties respectfully request that the Court grant their Motion to Dismiss.

II.  ARGUMENT

A.   The Federal Arbitration Act Preempts Section 7515.

The caselaw to date overwhelming holds that the FAA preempts Section 7515. To avoid this inevitable conclusion, Ms. Tantaros makes two arguments: (1) the Court should ignore the holdings and analysis of every court to have considered the issue to date and instead hold that those decisions are incorrect; and (2) Ms. Tantaros' work for Fox News -- which included appearing on national news programs -- does not involve interstate commerce, rendering it outside the scope of the FAA. Neither argument avoids FAA preemption.

First, the law is well-established that the FAA preempts Section 7515. Absent from Ms. Tantaros' Opposition is *even a single authoritative case* finding that the FAA does not preempt Section 7515. The only case on which Ms. Tantaros relies was reversed on appeal. Simply put, there is no case to support Ms. Tantaros' argument that Section 7515 survives the FAA. And Ms. Tantaros' view that these decisions are incorrect is insufficient to avoid preemption.

Second, Ms. Tantaros cannot plausibly contend that her contract with Fox News -- which was for the purpose of hosting nationwide news programs -- does not involve interstate commerce. The FAA applies to "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' -- words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Thus, the FAA extends to those activities which, "in the aggregate . . . would represent 'a general practice . . . subject to federal control.'" For employment agreements, this means "the relevant question is not whether *the claim* arises from a transaction involving commerce, but rather whether *the contract* containing the arbitration clause evidences a transaction involving commerce." *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 400 (S.D.N.Y. 2021).[1]

Therefore, it is irrelevant that Ms. Tantaros worked only in New York and alleges that the offending conduct occurred only in New York (*see* Opp. at 7). What matters is whether the nature of Fox News' business and Ms. Tantaros' work in the aggregate are subject to federal control, and, indisputably, they are.[2] Fox News broadcasts television programs nationwide, and Ms. Tantaros

---

[1] Contrary to Ms. Tantaros' argument, *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.* is not "instructive." (Opp. at 7). To start, it was reversed on appeal. Additionally, it asked the wrong question, focusing on the conduct, not the contract, when assessing the interstate commerce question. Ms. Tantaros is also wrong on her analysis of *Gilbert v. Indeed, Inc.* (Opp. at 8.) *Gilbert* did not hold that every employment contract is subject to the FAA; it applied the interstate commerce requirement and found it satisfied where the employee worked in New York, the employer was incorporated in Delaware, and some employee training occurred in Connecticut.

[2] Ms. Tantaros cites *United States v. Morrison*, 529 U.S. 598 (2000), to support her argument that her contract

hosted television shows that could be viewed around the country. This stands in stark contrast to the circumstances in *Slaughter v. Stewart Enterprises, Inc.*, 07-01157, 2007 WL 2255221 (N.D. Cal. Aug. 3, 2007), upon which Ms. Tantaros relies. In *Slaughter*, the plaintiff worked for a crematorium in California and argued that he was legally prohibited from carrying bodies over state lines, meaning his work did not and could not involve interstate commerce. In finding that the plaintiff's contract was among "the few located in the narrow territory beyond the reaches of the Commerce Clause," the court pointed to the local nature of the crematory industry, which is licensed and controlled by states. *Id.* *12-13. By contrast, Ms. Tantaros' contract focused on work that not only reached all corners of this country (and many parts of the world), but also provided content carried by cable companies that are regulated by the Federal Communications Commission, meaning the issue of whether it and Fox News' business affects interstate commerce is beyond dispute. *See Ragone v. Atlantic Video*, 595 F.3d 115,121 (2d. Cir 2010) (enforcing television broadcast company's arbitration agreement with a make-up artist and finding no dispute that it *affected* interstate commerce); *Meyer v. Starwood Hotels & Resorts Worldwide, Inc*., 2001 U.S. Dist. LEXIS 6663 (S.D.N.Y 2011) (finding hotel's arbitration agreement enforceable because the hotel's operations *affected* interstate commerce).

B.    **Section 7515 Is Not Retroactive.**

The law is also unequivocal that Section 7515 is *not* retroactive. To avoid the overwhelming authority that refutes her position, Ms. Tantaros argues that (1) every case decided to date is "wrong"; (2) Supreme Court precedent supports retroactive application; and (3) the New

---

with Fox News does not affect interstate commerce (Opp. at 7). That case involved the creation, through a federal statute, of a civil remedy for victims of gender-motivated violence. There, the Court held gender-motivated intrastate violence is not directed at "the instrumentalities, channels, or goods involved in interstate commerce" and "has always been the province of the States." *Morrison*, 529 U.S. at 617. This decision has no relevance to the matter at hand where the issue is an employment contract that "affects interstate commerce."

York legislature intended Section 7515 to apply retroactively despite the fact that it never so stated and no court has ever so concluded. Each of these arguments is entirely without merit.

First, Ms. Tantaros again fails to identify *any authoritative case* holding that Section 7515 applies retroactively to arbitration agreements entered into before July 2018. She argues that a New York state trial court's decision in N*ewton* is "instructive." (Opp. at 11.) However, the appellate court reversed the trial court decision, holding Section 7515 does not apply retroactively to arbitration agreements entered into before July 2018. *Newton v. LVMH Moet Hennessy Louis Vuitton* ,192 A.D.3d 540, 541 (N.Y. App. Div. 2021) ("The provisions of CPLR 7515 . . . are not retroactively applicable to arbitration agreements . . . that were entered into preceding the enactment of the law in 2018."). And, as recently as January 27, 2022, courts have continued to hold that Section 7515 applies prospectively only. *Curtis v. Marino*, 2022 WL 243063, 2022 N.Y. Slip Op. 00499 (N.Y. App. Div. 2022). Ms. Tantaros offers no authority to the contrary. Instead, she offers only her own opinion that every case to address the issue is "wrongly decided."[3]

Second, contrary to Ms. Tantaros' arguments, Supreme Court precedent provides that even if Section 7515 were ambiguous as to retroactivity, which it is not, that ambiguity renders the statute "unambiguously prospective." *I.N.S. v. St. Cyr*, 533 U.S. 289, 320 n.45 (2001); *Landgraf v. USI Film Prods*., 511 U.S. 244, 272 (1994) (holding a court will not give legislation retroactive effect "unless compelled to do so by language so clear and positive as to leave no room to doubt that such was the intention of the legislature"). In a futile attempt to avoid this precedent, Ms. Tantaros cites an *earlier* Supreme Court decision, *Bradley v. School Board of Richmond*. But she

---

[3] Ms. Tantaros also attempts to explain away the Fox Parties' other arguments about the prospective application of Section 7515. First, she claims that statements on New York State's website, which acknowledge the prospective nature of Section 7515 "do[] not have the force of law" (Opp. at 12). This argument misses the point -- it is not that they have "the force of law" but rather that they reflect the State's own interpretation of the law. Second, Ms. Tantaros attempts to reconcile Section 7515's delayed effective date and her own arguments (Opp. at 13). She fails, however, to offer a single citation to support her arguments, in contrast to the clear authority cited by the Fox Parties (Memo at 10).

is incorrect to do so. The Supreme Court has repeatedly confirmed that, notwithstanding *Bradley*, the common law rule prevails -- statutes are not retroactive unless they expressly so state.[4] *See supra*. And the plain language of Section 7515 gives no indication of retroactive application.

Last, Ms. Tantaros' speculation about the New York State legislature's intent does not make Section 7515 retroactive. If the legislature wished for Section 7515 to apply retroactively, it needed to use "clear and positive [language] as to leave no room to doubt that such was the intention." *Landgraf*, 511 U.S. at 272. Amending Section 7515 in 2019 to include discrimination claims in addition to sexual harassment claims is not "clear and positive" intent of retroactivity in the original statute. Likewise, a comment by the bill's sponsor in a press release stating that "[v]ictims will no longer be silenced and abusers will no longer be protected by antiquated laws and by a culture that has too often looked the other way" is not "clear and positive" intent in Section 7515 itself. In fact, it says nothing at all about retroactive application of the statute.

Nor can Ms. Tantaros misconstrue the purposes of Subsections (b)(i) and (b)(iii) to create ambiguity that she claims should lead to retroactive application. These are two separate sections that do entirely different things. Subsection (b)(i) provides that contracts entered into on or after the effective date should not contain a "prohibited clause." Subsection (b)(iii) renders prohibited clauses null and void. This involves no redundancy because *prohibiting* a contractual provision does not necessarily render it null and void.

The unanimous authority supports that Section 7515 applies prospectively only and Ms. Tantaros has no sound argument to support a contrary result.[5]

---

[4] Ms. Tantaros also argues under *Bradley* that the Fox Parties would not suffer manifest injustice from the retroactive application of Section 7515. This is irrelevant given the inapplicably of *Bradley*, but even if it were relevant, the Fox Parties have litigated against Ms. Tantaros in arbitration since 2016. To hold now that arbitration is improper and the matter should start anew would be a manifest injustice.

[5] Ms. Tantaros' argument that she has not waived her right to challenge the arbitration clause (Opp. at 14-15) is also unpersuasive. She actively participated in the arbitration for more than a year after Section 7515 was enacted. Even if Section 7503(c) does not apply, basic rules of equity dictate that her delay results in waiver.

### C. Ms. Tantaros' Arguments About The Enforceability Of Her Underlying Arbitration Agreement Are Misplaced And Incorrect.

Ms. Tantaros argues that even if Section 7515 does not apply, the Court should still allow her to avoid arbitration because her arbitration agreement is unenforceable. (Opp. at 15-24.) This argument fails for three independent reasons: (1) Ms. Tantaros' Petition in this Court seeks only a declaratory judgment regarding the applicability of Section 7515; (2) Ms. Tantaros is barred by res judicata from seeking a declaration that her arbitration agreement is unenforceable because a New York State Court has already held, years ago, that Ms. Tantaros' agreement is enforceable; and (3) Ms. Tantaros' agreement is not unconscionable or unreasonable.

#### 1. *Ms. Tantaros' Petition Addresses Only Section 7515.*

Ms. Tantaros' arguments that, Section 7515 aside, her arbitration agreement is unenforceable and the arbitration proceedings have "failed" are irrelevant to this action. Both wrongly ignore that in her Petition, Ms. Tantaros seeks only "a declaratory judgment that CPLR section 7515 prohibits AAA . . . from continuing to arbitrate Petitioner's sexual harassment allegations and claims" on the basis that "CPLR 7515 mak[es] mandatory arbitration clauses . . . unenforceable." (*See* Dkt. 1-2 at 8 of 87.) Her sole cause of action is a request that the Court declare that Section 7515 renders her arbitration agreement unenforceable. The Fox Parties have moved to dismiss because Section 7515 has no bearing here. Her other arguments (Opp. at 15-24) are irrelevant and provide no valid basis to sustain the deficient complaint.

#### 2. *Res Judicata Bars Ms. Tantaros' Challenge To The Enforceability Of Her Arbitration Agreement.*

Nor can Ms. Tantaros attempt to amend her claim on the fly and assert unenforceability as a new basis for her claim because she is barred from doing so. Ms. Tantaros has already had a full and fair opportunity to litigate that issue in her separate case brought more than five years ago, and she lost: The court held her arbitration agreement to be enforceable and her claims subject to

arbitration. As she concedes in her Opposition, Ms. Tantaros originally filed her sexual harassment claims against the Fox Parties on August 22, 2016 in the Supreme Court of New York. (Opp. at 4.) The Fox Parties moved to compel arbitration. Ms. Tantaros opposed and argued that that her arbitration agreement was unenforceable and her claims not subject to arbitration.[6] However, the court granted the Fox Parties' motion, held the arbitration agreement enforceable, and disposed of the matter. Declaration of Paul Evans at Ex. 1. Ms. Tanatros initially filed a Notice of Appeal but failed to pursue it. *Id.*

Any effort by Ms. Tantaros to relitigate this issue now is barred by res judicata. Federal courts give the same preclusive effect to a state court judgment as would be required by the res judicata rules of that state. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under New York state law, a final judgment in an action between the same parties bars relitigation of the same issue in subsequent actions between those parties. *Ferraro v. N.Y.C. Dep't of Educ.*, 99 A.D.3d 516, 519 (App. Div. 1st Dept.). Applying this doctrine, federal courts have held that decisions by other courts compelling arbitration preclude relitigation of the enforceability of arbitration agreements.

For example, in *Marillo v. Shearson Hayden Stone, Inc.*, the District Court was faced with virtually identical circumstances. 983 U.S. Dist. LEXIS 18478 (W.D.N.Y. Mar. 17, 1983). A litigant's arbitration provision was found to be enforceable in an earlier action. *Id.* When the litigant sought to relitigate the enforceability of the provision, the court held that the earlier action decided the issue of arbitration on the merits and the litigant's effort to challenge the provision again was barred. *Id.* at *4-5; *see also Sorkin v. Devore Assocs.*, 2010 U.S. Dist. LEXIS 165114,

---

[6] Twelve of the 14 cases upon which Ms. Tantaros now relies were decided before August 2016 and could have been argued then.

at *9 (S.D.N.Y. Feb. 1, 2010) ("All of the elements of *res judicata* are met, and therefore the Connecticut court's order to compel arbitration is conclusive."). The same is true here.

### 3. Ms. Tantaros' Agreement Is Not Unreasonable Or Unenforceable.

Even if Ms. Tantaros' arguments regarding the enforceability of her arbitration agreement and her grievances regarding the arbitration panel were not barred by res judicata and were somehow relevant to the claim she actually asserts here, Ms. Tantaros still could not avoid arbitration because her agreement is procedurally and substantively sound. And her representations regarding the arbitration are, at best, incomplete and inaccurate.[7]

First, Ms. Tantaros' arbitration agreement is procedurally sound. Contrary to Ms. Tantaros' representations, she had bargaining power. On-air talent like Ms. Tantaros commonly negotiate their contracts. But even if Ms. Tantaros had no bargaining power, her argument still fails. Courts have routinely held that arbitration agreements between employers and employees are not procedurally unconscionable due to unequal bargaining power, as Ms. Tantaros contends. *Am. Family Life Assur. Co. of New York v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) ("[N]either the FAA nor New York law precludes the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration."); *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003) (holding unequal bargaining power will not invalidate arbitration agreement and "the mere fact that an agreement to arbitrate was required as a condition of employment, or continued employment, also is insufficient to invalidate the provision"); *Mancilla v. ABM Indus.*, U.S. Dist. LEXIS 136484 (S.D.N.Y. 2020)

---

[7] Ms. Tantaros makes much of Fox News' recent settlement with the New York City Commission on Human Rights, which provides that *prospective contracts* will not require arbitration of sexual harassment claims under the New York City Human Rights Law. (Opp. at 16-17.) That agreement has no relevance to Ms. Tantaros' arbitration agreement, which was entered into in 2014, and certainly does not support an argument that her arbitration agreement was procedurally unconscionable and/or unreasonable.

("[M]ere inequality in bargaining power between employers and employees is not alone sufficient to hold arbitration agreements unenforceable.).

Second, the obligation to maintain the confidentiality of the arbitration proceedings and allegations does not render the arbitration agreement substantively unconscionable. Indeed, the Second Circuit has made clear that the arbitration proceedings are routinely conducted on a confidential basis, and courts routinely hold that requiring confidentiality does not void the agreement.[8] *Am. Family Life Assur. Co. of N.Y. v. Baker*, 778 Fed. Appx. 24, 27-28 (2d. Cir 2019) (holding arbitration agreement was not unconscionable because it contained a confidentiality provision); *Guyden v. Aetna, Inc.*, 544 F.3d 376, 384-385 (2d Cir. 2008) (upholding arbitration agreement containing confidentiality clause because "confidentiality clauses are so common in the arbitration context that an attack on the confidentiality provision is, in part, an attack on the character of arbitration itself . . . ").

Further, nothing about the arbitration agreement itself is preventing Ms. Tantaros from accessing confidential information during the course of the arbitration. Consistent with applicable discovery rules, Ms. Tantaros is free to seek discovery on relevant topics, even those that may be confidential. However, Ms. Tantaros has, to date, refused to sign a routine confidentiality stipulation in connection with the arbitration (despite being ordered to do so), leading the panel to hold that the Fox Parties need not turn over additional confidential information until she does so.[9] This has nothing to do with the arbitration agreement itself and does not render it unconscionable.

---

[8] The cases cited by Ms. Tantaros are unpersuasive and inapposite. The first is a California state court case applying California law (*Ramos v. Superior Ct.* 28 Cal. App. 5th 1042 (2018)) and the second, *Niesig v. Team I*, 558 N.E.2d 1030 (N.Y. 1990), related to whether a corporate defendant's employees were "parties" to the litigation for purposes of the Professional Rules of Conduct.

[9] Through counsel, Ms. Tantaros did initially sign a confidentiality agreement and received discovery, but later she changed her mind and her counsel.

Nor does CPLR § 5003-b have any impact on the enforceability of Ms. Tantaros' arbitration agreement. Section 5003-b provides:

> [I]n *resolving* [any claim of discrimination] by agreed judgment, stipulation, decree, agreement to settle, assurance of discontinuance or otherwise, no employer [] shall have the authority to include or agree to include *in such resolution* any term or condition that would prevent the disclosure of the underlying facts and circumstances to the claim or action unless the condition of confidentiality is the plaintiff's preference.

(Emphasis added). Thus, on its face, the statute applies to agreements to resolve allegations such as settlement agreements; it does not apply to arbitration agreements.

Lastly, the arbitration has not denied Ms. Tantaros her day in court. The parties have litigated for years, but the proceedings have been plagued with delays of Ms. Tantaros' own making. To start, she has switched arbitration counsel *nine times* -- with several of the changes occurring shortly before litigation deadlines and all of these changes creating delays in the progression of the arbitration. Ms. Tantaros has also refused to comply with several of the arbitration panel's orders, including an order requiring that she search her personal devices for relevant information, a second order on the same topic issued after Ms. Tantaros failed to comply with the first, and an order that she sign a standard confidentiality stipulation. And as to the arbitration fees, to the Fox Parties' knowledge, Ms. Tantaros has not requested that the employment fee schedule be applied to arbitration, something the Fox Parties would not oppose.

In sum, there are no arguments, procedural, substantive, or otherwise, to invalidate Ms. Tantaros' arbitration agreement.

## III. CONCLUSION

For the foregoing reasons, the Fox Parties respectfully request that the Court grant their Motion to Dismiss Ms. Tantaros' petition.

Dated: February 2, 2022

Respectfully submitted,

*/s/ Paul Evans*
Paul Evans
BAKER & McKENZIE LLP
452 Fifth Avenue
New York, NY 10018
Tel: 212.626.4100
paul.evans@bakermckenzie.com

*Attorneys for Respondents Fox News Network, LLC, Suzanne Scott, Dianne Brandi, and Irena Briganti*